**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| IN RE: | |
| CURTIS PARKER, | |
| Debtor. | CIVIL ACTION FILE NO. 25-61216-BEM |
| CURTIS PARKER, | Chapter 7 |
| Movant, | Contested Matter |
| v. | |
| 2017-1 IH Borrower, LP | |
| Respondent. | |

### Respondent's Witness and Exhibit List

COMES NOW 2017-1 IH Borrower, LP ("Respondent"), by and through its undersigned counsel, and hereby files its Exhibits and Witness List in connection with that certain hearing scheduled before this Court on January 20, 2026, at 11:00 AM, pursuant to the applicable Rules and this Court's order:

### WITNESSES

1. Any impeachment or rebuttal witnesses.

2. Curtis Parker

3. Matthew F. Totten – *as to attorney's fees and costs of litigation*

4. Patricia Williams – *THR Property Management LP d/b/a Invitation Homes*

5. Keshia Taylor - *THR Property Management LP d/b/a Invitation Homes*

6. Marcos Hernandez - *THR Property Management LP d/b/a Invitation Homes*

7. Danielle Derico - *THR Property Management LP d/b/a Invitation Homes*

8. Dashia Harris - *THR Property Management LP d/b/a Invitation Homes*

**EXHIBIT LIST**

| Exhibit | Description | Off. | Obj. | Adm. |
|---|---|---|---|---|
| A. | January 1, 2026, Rental Ledger of Debtor re 1149 Autumn Glen Wy – Pre-settlement Application | | | |
| B. | December 31, 2025, Email from Debtor to Respondent – Confirming AirBnB Delisting | | | |
| C. | Debtor's AirBnB Listing of 1149 Autumn Glen Wy, Dated 12/22/2025 | | | |
| D. | December 26, 2025, Email from Debtor to Respondent – Settlement Offer | | | |
| E. | December 29, 2025, 12:26pm Email from Debtor to Respondent, Specifying Purported Automatic Stay Violations of "Invitation Homes" | | | |
| F. | December 29, 2025, 3:44pm Settlement Offer Email from Respondent to Debtor | | | |
| G. | December 29, 2025, 5:09pm Settlement Acceptance Email from Debtor to Respondent | | | |
| H. | December 29, 2025, Letter re Termination of Lease and Demand for Possession of 1149 Autumn Glen Wy | | | |
| I. | January 9, 2026 Email from Respondent Counsel to Debtor re Performance under Settlement | | | |
| J. | Composite Exhibit – Four (4) January 10, 2026 Emails from Debtor to Respondent and One (1) January 15, 2026, Email from Debtor to Respondent | | | |
| K. | January 10, 2026, Email from Respondent to Debtor re Respondent Compliance with Settlement | | | |
| L. | January 15, 2026, Email from Debtor to Respondent re Debtor Anticipatory Breach | | | |
| M. | Residential Lease Agreement, 1149 Autumn Glen Wy, Debtor and Respondent-Landlord | | | |
| N. | Doc. 1, Debtor Voluntary Petition for Bankruptcy | | | |
| O. | Doc. 32, "Debtor Motion to Dismiss Based on Settlement" | | | |
| P. | Doc. 33, Order Granting Debtor Motion to Dismiss With Prejudice | | | |
| Q. | January 9, 2026, Rental Ledger of Debtor re 1149 Autumn Glen Wy – Post-settlement Application | | | |
| R. | Any exhibits necessary for rebuttal | | | |
| S. | Any duly admitted exhibits used by movant | | | |
| T. | Any pleading or other document filed with the Court on the docket of the above-captioned Chapter 7 matter | | | |

The foregoing Exhibits are contemporaneously filed with this Court's docket and shall be marked via CM/ECF labelling with the corresponding Exhibit label.

Respondent reserves the right to supplement, amend, modify or withdraw this Witness and Exhibit List at any time. Respondent further reserves the right to ask this Court to take judicial notice of pleadings or documents filed in or in connection with this matter, to offer rebuttal exhibits including to supplement or amend this Witness and Exhibit.

Designation of any exhibit above does not waive any objections Respondent may have to any exhibit (or witness) listed on any other party's witness and exhibit list.

Respectfully submitted, this 16th day of January, 2026.

THE TOTTEN FIRM, LLC                     /s/ Matthew F. Totten_____
5579 Chamblee-Dunwoody Rd              Matthew F. Totten
Ste B-136                              Georgia Bar No. 798589
Atlanta, GA 30338                      Attorney for Respondent
(404) 692-4342 (Telephone)
mft@tottenfirm.com (E-mail)

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| IN RE: | |
| CURTIS PARKER, | |
| Debtor. | CIVIL ACTION FILE NO. 25-61216-BEM |
| CURTIS PARKER, | Chapter 7 |
| Movant, | Contested Matter |
| v. | |
| 2017-1 IH Borrower, LP | |
| Respondent. | |

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed the **Respondent Residential's Witness and Exhibit List** using the CM/ECF system, which will automatically send email notification of such filing to all interested parties. Additionally, I have served the same by First Class U.S. Mail and e-mail upon the below pro se party:

Curtis Parker, *Pro se*
1149 Autumn Glen Way
Dacula, GA 30019
curtis.parker1776@gmail.com

This 16th day of January, 2026.

THE TOTTEN FIRM, LLC                    /s/ Matthew F. Totten_____
5579 Chamblee-Dunwoody Rd            Matthew F. Totten
Ste B-136                                        Georgia Bar No. 798589
Atlanta, GA 30338                           Attorney for Respondent
(404) 692-4342 (Telephone)
mft@tottenfirm.com (E-mail)



**Date: 01/01/2026**

| Code | t0317101 | Property | 10105318 | Lease From | 04/13/2025 |
|---|---|---|---|---|---|
| Name | Curtis Parker | Unit | 10105318 | Lease To | 04/12/2026 |
| Address | 1149 Autumn Glen Way | Status | Eviction | Move In | 04/13/2023 |
| | | Rent | 2408.00 | Move Out | 02/11/2026 |
| City | Dacula, GA 30019 | Phone (H) | (770) 369-6521 | Phone (W) | |

| Date | Chg Code | Description | Charge | Payment | Balance | Chg/Rec |
|---|---|---|---|---|---|---|
| 03/04/2023 | appfee | Application Charges (Curtis Parker) | 50.00 | | 50.00 | 29756637 |
| 03/04/2023 | | chk# 176933067 Credit Card On-Line Payment ; Web - Online Leasing | | 50.00 | 0.00 | 9554025 |
| 03/05/2023 | holdfee | Pre-Lease Hold Fee | 500.00 | | 500.00 | 29765229 |
| 03/07/2023 | | chk# 177388992 Debit Card On-Line Payment ; Web - Online Leasing | | 500.00 | 0.00 | 9566017 |
| 04/12/2023 | deposit | Security Deposit | 2,241.00 | | 2,241.00 | 30643816 |
| 04/12/2023 | movein | Move in Funds | 924.57 | | 3,165.57 | 30644148 |
| 04/12/2023 | | chk# 182075391 Debit Card On-Line Payment ; Web - Online Leasing | | 2,241.00 | 924.57 | 9843310 |
| 04/12/2023 | | chk# 182075392 Debit Card On-Line Payment ; Web - Online Leasing | | 924.57 | 0.00 | 9843311 |
| 04/13/2023 | movein | Move-In Funds | (924.57) | | (924.57) | 30660850 |
| 04/13/2023 | rent | Rent for 18 days :Reversed by Charge Ctrl# 30660870 | 1,281.00 | | 356.43 | 30660851 |
| 04/13/2023 | smtreng2 | Smart Home Fee w/ Video Doorbell for 18 days | 24.00 | | 380.43 | 30660852 |
| 04/13/2023 | filter | HVAC Filter Fee for 18 days | 5.97 | | 386.40 | 30660853 |
| 04/13/2023 | admin | Administrative Setup Fee | 50.00 | | 436.40 | 30660854 |
| 04/13/2023 | holdfee | Pre-Lease Hold Fee - Reallocated to rent | (500.00) | | (63.60) | 30660855 |
| 04/14/2023 | rent | rent: Corrected prorated rent | 1,344.60 | | 1,281.00 | 30660864 |
| 04/14/2023 | rent | :Reverse Charge Ctrl#30660851 Incorrect Prorated Rent | (1,281.00) | | 0.00 | 30660870 |
| 04/27/2023 | | chk# 183048458 Debit Card On-Line Payment ; Mobile Web - Resident Services | | 2,290.95 | (2,290.95) | 9918570 |
| 05/01/2023 | rent | Resident Rent (05/2023) | 2,241.00 | | (49.95) | 31109418 |
| 05/01/2023 | smtreng2 | Smart Home Fee w/ Video Doorbell (05/2023) | 40.00 | | (9.95) | 31109419 |
| 05/01/2023 | filter | HVAC Filter (05/2023) | 9.95 | | 0.00 | 31109420 |
| 06/01/2023 | rent | Resident Rent (06/2023) | 2,241.00 | | 2,241.00 | 31945594 |
| 06/01/2023 | smtreng2 | Smart Home Fee w/ Video Doorbell (06/2023) | 40.00 | | 2,281.00 | 31945595 |
| 06/01/2023 | filter | HVAC Filter (06/2023) | 9.95 | | 2,290.95 | 31945596 |
| 06/04/2023 | late | Late Fee, 10% of $2241.00 | 224.10 | | 2,515.05 | 32246647 |
| 06/04/2023 | | chk# 189748264 Debit Card On-Line Payment ; Mobile Web - Resident Services | | 2,290.95 | 224.10 | 10262432 |
| 06/07/2023 | | chk# 190358050 Debit Card On-Line Payment ; Mobile Web - Resident Services | | 224.10 | 0.00 | 10285233 |
| 07/01/2023 | utlsetup | Acct. Setup | 25.00 | | 25.00 | 32398453 |
| 07/01/2023 | utlsetup | Service Fee | 9.95 | | 34.95 | 32398454 |
| 07/01/2023 | utlsewcb | Sewer - 04/13/23-05/04/23 | 25.03 | | 59.98 | 32398455 |
| 07/01/2023 | utlgascb | Vacant Gas - 04/13/23-04/28/23 | 24.80 | | 84.78 | 32398456 |
| 07/01/2023 | utlsetup | Vacant Service Fee - 04/13/23-04/28/23 | 25.00 | | 109.78 | 32398457 |
| 07/01/2023 | utlwatcb | Water - 04/13/23-05/04/23 | 17.31 | | 127.09 | 32398458 |
| 07/01/2023 | rent | Resident Rent (07/2023) | 2,241.00 | | 2,368.09 | 32792927 |
| 07/01/2023 | smtreng2 | Smart Home Fee w/ Video Doorbell (07/2023) | 40.00 | | 2,408.09 | 32792928 |
| 07/01/2023 | filter | HVAC Filter (07/2023) | 9.95 | | 2,418.04 | 32792929 |
| 07/03/2023 | | chk# :ACH-WEB Online Payment - EFT Payment. Mobile Web - Resident Services | | 2,418.04 | 0.00 | 10498026 |
| 08/01/2023 | utlsetup | Service Fee | 9.95 | | 9.95 | 33252167 |
| 08/01/2023 | utlsewcb | Sewer - 05/05/23-06/06/23 | 55.31 | | 65.26 | 33252168 |
| 08/01/2023 | utlgascb | Vacant Gas - 04/28/23-05/30/23 | 54.92 | | 120.18 | 33252169 |
| 08/01/2023 | utlsetup | Vacant Service Fee - 04/28/23-05/30/23 | 25.00 | | 145.18 | 33252170 |
| 08/01/2023 | utlwatcb | Water - 05/05/23-06/06/23 | 36.41 | | 181.59 | 33252171 |

| Date | Code | Description | Charge | Payment | Balance | ID |
|---|---|---|---|---|---|---|
| 08/01/2023 | filter | HVAC Filter (08/2023) | 9.95 | | 2,472.54 | 33657265 |
| 08/03/2023 | | chk# :ACH-WEB Online Payment - EFT Payment. Mobile Web - Resident Services | | 2,472.54 | 0.00 | 10758272 |
| 09/01/2023 | utlsetup | Service Fee | 9.95 | | 9.95 | 34114801 |
| 09/01/2023 | utlsewcb | Sewer - 06/07/23-07/07/23 | 46.29 | | 56.24 | 34114802 |
| 09/01/2023 | utlgascb | Vacant Gas - 05/30/23-06/30/23 | 48.99 | | 105.23 | 34114803 |
| 09/01/2023 | utlsetup | Vacant Service Fee - 05/30/23-06/30/23 | 25.00 | | 130.23 | 34114804 |
| 09/01/2023 | utlwatcb | Water - 06/07/23-07/07/23 | 30.88 | | 161.11 | 34114805 |
| 09/01/2023 | rent | Resident Rent (09/2023) | 2,241.00 | | 2,402.11 | 34501736 |
| 09/01/2023 | smtreng2 | Smart Home Fee w/ Video Doorbell (09/2023) | 40.00 | | 2,442.11 | 34501737 |
| 09/01/2023 | filter | HVAC Filter (09/2023) | 9.95 | | 2,452.06 | 34501738 |
| 09/03/2023 | | chk# :ACH-WEB Online Payment - EFT Payment. Mobile Web - Resident Services | | 2,452.06 | 0.00 | 10996734 |
| 10/01/2023 | utlsetup | Service Fee | 9.95 | | 9.95 | 34932938 |
| 10/01/2023 | utlsewcb | Sewer - 07/08/23-08/07/23 | 42.68 | | 52.63 | 34932939 |
| 10/01/2023 | utlgascb | Vacant Gas - 06/30/23-07/28/23 | 46.60 | | 99.23 | 34932940 |
| 10/01/2023 | utlsetup | Vacant Service Fee - 06/30/23-07/28/23 | 25.00 | | 124.23 | 34932941 |
| 10/01/2023 | utlwatcb | Water - 07/08/23-08/07/23 | 28.67 | | 152.90 | 34932942 |
| 10/01/2023 | filter | HVAC Filter (10/2023) | 9.95 | | 162.85 | 35362503 |
| 10/01/2023 | smtreng2 | Smart Home Fee w/ Video Doorbell (10/2023) | 40.00 | | 202.85 | 35362504 |
| 10/01/2023 | rent | Resident Rent (10/2023) | 2,241.00 | | 2,443.85 | 35362505 |
| 10/02/2023 | | chk# :ACH-WEB Online Payment - EFT Payment. Mobile Web - Resident Services | | 2,443.85 | 0.00 | 11221012 |
| 11/01/2023 | utlsetup | Service Fee | 9.95 | | 9.95 | 35837394 |
| 11/01/2023 | utlsewcb | Sewer - 08/08/23-09/07/23 | 34.56 | | 44.51 | 35837395 |
| 11/01/2023 | utlgascb | Vacant Gas - 07/28/23-08/30/23 | 47.83 | | 92.34 | 35837396 |
| 11/01/2023 | utlsetup | Vacant Service Fee - 07/28/23-08/30/23 | 25.00 | | 117.34 | 35837397 |
| 11/01/2023 | utlwatcb | Water - 08/08/23-09/07/23 | 23.69 | | 141.03 | 35837398 |
| 11/01/2023 | rent | Resident Rent (11/2023) | 2,241.00 | | 2,382.03 | 36210553 |
| 11/01/2023 | smtreng2 | Smart Home Fee w/ Video Doorbell (11/2023) | 40.00 | | 2,422.03 | 36210554 |
| 11/01/2023 | filter | HVAC Filter (11/2023) | 9.95 | | 2,431.98 | 36210555 |
| 11/03/2023 | | chk# :ACH-WEB Online Payment - EFT Payment. Web - Resident Services | | 2,431.98 | 0.00 | 11481334 |
| 12/01/2023 | utlsetup | Service Fee | 9.95 | | 9.95 | 36671798 |
| 12/01/2023 | utlsewcb | Sewer - 09/08/23-10/05/23 | 48.99 | | 58.94 | 36671799 |
| 12/01/2023 | utlgascb | Vacant Gas - 08/30/23-09/27/23 | 49.12 | | 108.06 | 36671800 |
| 12/01/2023 | utlsetup | Vacant Service Fee - 08/30/23-09/27/23 | 25.00 | | 133.06 | 36671801 |
| 12/01/2023 | utlwatcb | Water - 09/08/23-10/05/23 | 32.54 | | 165.60 | 36671802 |
| 12/01/2023 | rent | Resident Rent (12/2023) | 2,241.00 | | 2,406.60 | 37045135 |
| 12/01/2023 | filter | HVAC Filter (12/2023) | 9.95 | | 2,416.55 | 37045136 |
| 12/01/2023 | smtreng2 | Smart Home Fee w/ Video Doorbell (12/2023) | 40.00 | | 2,456.55 | 37045137 |
| 12/02/2023 | | chk# :ACH-WEB Online Payment - EFT Payment. Mobile Web - Resident Services | | 2,456.55 | 0.00 | 11691591 |
| 01/01/2024 | utlsetup | Service Fee | 9.95 | | 9.95 | 37510944 |
| 01/01/2024 | utlsewcb | Sewer - 10/06/23-11/02/23 | 41.78 | | 51.73 | 37510945 |
| 01/01/2024 | utlgascb | Vacant Gas - 09/27/23-10/27/23 | 53.36 | | 105.09 | 37510946 |
| 01/01/2024 | utlsetup | Vacant Service Fee - 09/27/23-10/27/23 | 25.00 | | 130.09 | 37510947 |
| 01/01/2024 | utlwatcb | Water - 10/06/23-11/02/23 | 28.11 | | 158.20 | 37510948 |
| 01/01/2024 | filter | HVAC Filter (01/2024) | 9.95 | | 168.15 | 37891021 |
| 01/01/2024 | smtreng2 | Smart Home Fee w/ Video Doorbell (01/2024) | 40.00 | | 208.15 | 37892785 |
| 01/01/2024 | rent | Resident Rent (01/2024) | 2,241.00 | | 2,449.15 | 37892877 |
| 01/03/2024 | | chk# :ACH-WEB Online Payment - EFT Payment. Mobile Web - Resident Services | | 2,449.15 | 0.00 | 11914006 |
| 02/01/2024 | utlsetup | Service Fee | 9.95 | | 9.95 | 38402402 |
| 02/01/2024 | utlsewcb | Sewer - 11/03/23-12/05/23 | 47.19 | | 57.14 | 38402403 |
| 02/01/2024 | utlgascb | Vacant Gas - 10/27/23-11/30/23 | 99.83 | | 156.97 | 38402404 |
| 02/01/2024 | utlsetup | Vacant Service Fee - 10/27/23-11/30/23 | 25.00 | | 181.97 | 38402405 |
| 02/01/2024 | utlwatcb | Water - 11/03/23-12/05/23 | 31.43 | | 213.40 | 38402406 |
| 02/01/2024 | rent | Resident Rent (02/2024) | 2,241.00 | | 2,454.40 | 38791845 |
| 02/01/2024 | smtreng2 | Smart Home Fee w/ Video Doorbell (02/2024) | 40.00 | | 2,494.40 | 38791846 |
| 02/01/2024 | filter | HVAC Filter (02/2024) | 9.95 | | 2,504.35 | 38791847 |

| Date | Code | Description | Charge | Payment | Balance | Ref |
|---|---|---|---|---|---|---|
| 03/01/2024 | utlsetup | Service Fee | 9.95 | | 9.95 | 39314947 |
| 03/01/2024 | utlsewcb | Sewer - 12/06/23-01/05/24 | 47.19 | | 57.14 | 39314948 |
| 03/01/2024 | utlgascb | Vacant Gas - 11/30/23-12/29/23 | 141.62 | | 198.76 | 39314949 |
| 03/01/2024 | utlsetup | Vacant Service Fee - 11/30/23-12/29/23 | 25.00 | | 223.76 | 39314950 |
| 03/01/2024 | utlwatcb | Water - 12/06/23-01/05/24 | 31.43 | | 255.19 | 39314951 |
| 03/01/2024 | rent | Resident Rent (03/2024) | 2,241.00 | | 2,496.19 | 39762250 |
| 03/01/2024 | smtreng2 | Smart Home Fee w/ Video Doorbell (03/2024) | 40.00 | | 2,536.19 | 39762251 |
| 03/01/2024 | filter | HVAC Filter (03/2024) | 9.95 | | 2,546.14 | 39762252 |
| 03/03/2024 | | chk# :ACH-WEB Online Payment - EFT Payment. Mobile Web - Resident Services | | 2,546.14 | 0.00 | 12533457 |
| 04/01/2024 | utlsetup | Service Fee | 9.95 | | 9.95 | 40227683 |
| 04/01/2024 | utlsewcb | Sewer - 01/06/24-02/05/24 | 44.48 | | 54.43 | 40227684 |
| 04/01/2024 | utlgascb | Vacant Gas - 12/29/23-01/30/24 | 201.83 | | 256.26 | 40227685 |
| 04/01/2024 | utlsetup | Vacant Service Fee - 12/29/23-01/30/24 | 25.00 | | 281.26 | 40227686 |
| 04/01/2024 | utlwatcb | Water - 01/06/24-02/05/24 | 29.77 | | 311.03 | 40227687 |
| 04/01/2024 | rent | Resident Rent (04/2024) 12 days | 896.40 | | 1,207.43 | 40703971 |
| 04/01/2024 | rent | Resident Rent (04/2024) 18 days | 1,444.80 | | 2,652.23 | 40703972 |
| 04/01/2024 | smtreng2 | Smart Home Fee w/ Video Doorbell (04/2024) | 40.00 | | 2,692.23 | 40703973 |
| 04/01/2024 | filter | HVAC Filter (04/2024) | 9.95 | | 2,702.18 | 40703974 |
| 04/03/2024 | | chk# 234087226 Debit Card On-Line Payment ; Web - Resident Services | | 2,702.18 | 0.00 | 12818029 |
| 05/01/2024 | utlsetup | Service Fee | 9.95 | | 9.95 | 41198686 |
| 05/01/2024 | utlsewcb | Sewer - 02/06/24-03/05/24 | 40.87 | | 50.82 | 41198687 |
| 05/01/2024 | utlgascb | Vacant Gas - 01/30/24-02/29/24 | 138.13 | | 188.95 | 41198688 |
| 05/01/2024 | utlsetup | Vacant Service Fee - 01/30/24-02/29/24 | 25.00 | | 213.95 | 41198689 |
| 05/01/2024 | utlwatcb | Water - 02/06/24-03/05/24 | 27.56 | | 241.51 | 41198690 |
| 05/01/2024 | filter | HVAC Filter (05/2024) | 9.95 | | 251.46 | 41674276 |
| 05/01/2024 | smtreng2 | Smart Home Fee w/ Video Doorbell (05/2024) | 40.00 | | 291.46 | 41674277 |
| 05/01/2024 | rent | Resident Rent (05/2024) | 2,408.00 | | 2,699.46 | 41674278 |
| 05/03/2024 | | chk# 238482351 Debit Card On-Line Payment ; Web - Resident Services | | 2,699.46 | 0.00 | 13071934 |
| 06/01/2024 | utlsetup | Service Fee | 9.95 | | 9.95 | 42165020 |
| 06/01/2024 | utlsewcb | Sewer - 03/06/24-04/03/24 | 47.19 | | 57.14 | 42165021 |
| 06/01/2024 | utlgascb | Vacant Gas - 02/29/24-03/28/24 | 89.10 | | 146.24 | 42165022 |
| 06/01/2024 | utlsetup | Vacant Service Fee - 02/29/24-03/28/24 | 25.00 | | 171.24 | 42165023 |
| 06/01/2024 | utlwatcb | Water - 03/06/24-04/03/24 | 31.43 | | 202.67 | 42165024 |
| 06/01/2024 | rent | Resident Rent (06/2024) | 2,408.00 | | 2,610.67 | 42658618 |
| 06/01/2024 | smtreng2 | Smart Home Fee w/ Video Doorbell (06/2024) | 40.00 | | 2,650.67 | 42658619 |
| 06/01/2024 | filter | HVAC Filter (06/2024) | 9.95 | | 2,660.62 | 42658620 |
| 06/03/2024 | | chk# :ACH-WEB Online Payment - EFT Payment. Mobile Web - Resident Services | | 2,660.62 | 0.00 | 13317636 |
| 07/01/2024 | utlsetup | Service Fee | 9.95 | | 9.95 | 43196373 |
| 07/01/2024 | utlsewcb | Sewer - 04/04/24-05/03/24 | 47.19 | | 57.14 | 43196374 |
| 07/01/2024 | utlgascb | Vacant Gas - 03/28/24-04/30/24 | 73.06 | | 130.20 | 43196375 |
| 07/01/2024 | utlsetup | Vacant Service Fee - 03/28/24-04/30/24 | 25.00 | | 155.20 | 43196376 |
| 07/01/2024 | utlwatcb | Water - 04/04/24-05/03/24 | 31.43 | | 186.63 | 43196377 |
| 07/01/2024 | smtreng2 | Smart Home Fee w/ Video Doorbell (07/2024) | 40.00 | | 226.63 | 43706210 |
| 07/01/2024 | filter | HVAC Filter (07/2024) | 9.95 | | 236.58 | 43706211 |
| 07/01/2024 | rent | Resident Rent (07/2024) | 2,408.00 | | 2,644.58 | 43706212 |
| 07/03/2024 | | chk# :ACH-WEB Online Payment - EFT Payment. Mobile Web - Resident Services | | 2,644.58 | 0.00 | 13623787 |
| 08/01/2024 | utlsetup | Service Fee | 9.95 | | 9.95 | 44198608 |
| 08/01/2024 | utlsewcb | Sewer - 05/04/24-06/05/24 | 76.95 | | 86.90 | 44198609 |
| 08/01/2024 | utlgascb | Vacant Gas - 04/30/24-05/31/24 | 59.55 | | 146.45 | 44198610 |
| 08/01/2024 | utlsetup | Vacant Service Fee - 04/30/24-05/31/24 | 25.00 | | 171.45 | 44198611 |
| 08/01/2024 | utlwatcb | Water - 05/04/24-06/05/24 | 49.68 | | 221.13 | 44198612 |
| 08/01/2024 | smtreng2 | Smart Home Fee w/ Video Doorbell (08/2024) | 40.00 | | 261.13 | 44708284 |
| 08/01/2024 | filter | HVAC Filter (08/2024) | 9.95 | | 271.08 | 44708285 |
| 08/01/2024 | rent | Resident Rent (08/2024) | 2,408.00 | | 2,679.08 | 44708286 |
| 08/03/2024 | | chk# :ACH-WEB Online Payment - EFT Payment. Mobile Web - Resident Services | | 2,679.08 | 0.00 | 13896687 |
| 09/01/2024 | utlsetup | Service Fee | 9.95 | | 9.95 | 45216019 |

| Date | Code | Description | Charge | Payment | Balance | Ref |
|---|---|---|---:|---:|---:|---|
| 09/01/2024 | utlsetup | Vacant Service Fee - 05/31/24-06/28/24 | 25.00 | | 227.03 | 45216022 |
| 09/01/2024 | utlwatcb | Water - 06/07/24-07/05/24 | 111.06 | | 338.09 | 45216020 |
| 09/01/2024 | smtreng2 | Smart Home Fee w/ Video Doorbell (09/2024) | 40.00 | | 378.09 | 45768778 |
| 09/01/2024 | filter | HVAC Filter (09/2024) | 9.95 | | 388.04 | 45768779 |
| 09/01/2024 | rent | Resident Rent (09/2024) | 2,408.00 | | 2,796.04 | 45768780 |
| 09/03/2024 | | chk# ACH-WEB Online Payment - EFT Payment. Web - Resident Services | | 2,796.04 | 0.00 | 14145370 |
| 10/01/2024 | utlsetup | Service Fee | 9.95 | | 9.95 | 46272324 |
| 10/01/2024 | utlsewcb | Sewer - 07/06/24-08/06/24 | 155.43 | | 165.38 | 46272325 |
| 10/01/2024 | utlgascb | Vacant Gas - 06/28/24-07/30/24 | 62.93 | | 228.31 | 46272326 |
| 10/01/2024 | utlsetup | Vacant Service Fee - 06/28/24-07/30/24 | 25.00 | | 253.31 | 46272327 |
| 10/01/2024 | utlwatcb | Water - 07/06/24-08/06/24 | 133.18 | | 386.49 | 46272328 |
| 10/01/2024 | smtreng2 | Smart Home Fee w/ Video Doorbell (10/2024) | 40.00 | | 426.49 | 46802047 |
| 10/01/2024 | filter | HVAC Filter (10/2024) | 9.95 | | 436.44 | 46802048 |
| 10/01/2024 | rent | Resident Rent (10/2024) | 2,408.00 | | 2,844.44 | 46802049 |
| 10/03/2024 | | chk# 260062951 Debit Card On-Line Payment ; Web - Resident Services | | 2,844.44 | 0.00 | 14463013 |
| 10/30/2024 | | chk# 262691847 Debit Card On-Line Payment ; Web - Resident Services | | 2,753.02 | (2,753.02) | 14687481 |
| 11/01/2024 | utlsetup | Service Fee | 9.95 | | (2,743.07) | 47277166 |
| 11/01/2024 | utlsewcb | Sewer - 08/07/24-09/06/24 | 117.54 | | (2,625.53) | 47277167 |
| 11/01/2024 | utlgascb | Vacant Gas - 07/30/24-08/30/24 | 55.85 | | (2,569.68) | 47277168 |
| 11/01/2024 | utlsetup | Vacant Service Fee - 07/30/24-08/30/24 | 25.00 | | (2,544.68) | 47277169 |
| 11/01/2024 | utlwatcb | Water - 08/07/24-09/06/24 | 86.73 | | (2,457.95) | 47277170 |
| 11/01/2024 | rent | Resident Rent (11/2024) | 2,408.00 | | (49.95) | 47819400 |
| 11/01/2024 | filter | HVAC Filter (11/2024) | 9.95 | | (40.00) | 47819401 |
| 11/01/2024 | smtreng2 | Smart Home Fee w/ Video Doorbell (11/2024) | 40.00 | | 0.00 | 47819402 |
| 12/01/2024 | utlsetup | Service Fee | 9.95 | | 9.95 | 48414829 |
| 12/01/2024 | utlsewcb | Sewer - 09/07/24-10/05/24 | 53.50 | | 63.45 | 48414830 |
| 12/01/2024 | utlgascb | Vacant Gas - 08/30/24-09/30/24 | 59.00 | | 122.45 | 48414831 |
| 12/01/2024 | utlsetup | Vacant Service Fee - 08/30/24-09/30/24 | 25.00 | | 147.45 | 48414832 |
| 12/01/2024 | utlwatcb | Water - 09/07/24-10/05/24 | 35.30 | | 182.75 | 48414833 |
| 12/01/2024 | smtreng2 | Smart Home Fee w/ Video Doorbell (12/2024) | 40.00 | | 222.75 | 49000752 |
| 12/01/2024 | rent | Resident Rent (12/2024) | 2,408.00 | | 2,630.75 | 49000753 |
| 12/01/2024 | filter | HVAC Filter (12/2024) | 9.95 | | 2,640.70 | 49000754 |
| 12/03/2024 | | chk# 268296578 Debit Card On-Line Payment ; Web - Resident Services | | 2,640.70 | 0.00 | 15153458 |
| 01/01/2025 | utlsetup | Service Fee | 9.95 | | 9.95 | 49444542 |
| 01/01/2025 | utlsewcb | Sewer - 10/06/24-11/05/24 | 60.72 | | 70.67 | 49444543 |
| 01/01/2025 | utlgascb | Vacant Gas - 09/30/24-10/30/24 | 71.81 | | 142.48 | 49444544 |
| 01/01/2025 | utlsetup | Vacant Service Fee - 09/30/24-10/30/24 | 25.00 | | 167.48 | 49444545 |
| 01/01/2025 | utlwatcb | Water - 10/06/24-11/05/24 | 39.73 | | 207.21 | 49444546 |
| 01/01/2025 | rent | Resident Rent (01/2025) | 2,408.00 | | 2,615.21 | 50027960 |
| 01/01/2025 | smtreng2 | Smart Home Fee w/ Video Doorbell (01/2025) | 40.00 | | 2,655.21 | 50030573 |
| 01/01/2025 | filter | HVAC Filter (01/2025) | 9.95 | | 2,665.16 | 50030719 |
| 01/03/2025 | | chk# 272172476 Debit Card On-Line Payment ; Web - Resident Services | | 2,665.16 | 0.00 | 15439733 |
| 02/01/2025 | utlsetup | Service Fee | 9.95 | | 9.95 | 50495597 |
| 02/01/2025 | utlsewcb | Sewer - 11/06/24-12/05/24 | 61.62 | | 71.57 | 50495598 |
| 02/01/2025 | utlgascb | Vacant Gas - 10/30/24-11/26/24 | 90.00 | | 161.57 | 50495599 |
| 02/01/2025 | utlsetup | Vacant Service Fee - 10/30/24-11/26/24 | 25.00 | | 186.57 | 50495600 |
| 02/01/2025 | utlwatcb | Water - 11/06/24-12/05/24 | 40.28 | | 226.85 | 50495601 |
| 02/01/2025 | filter | HVAC Filter (02/2025) | 9.95 | | 236.80 | 50955648 |
| 02/01/2025 | smtreng2 | Smart Home Fee w/ Video Doorbell (02/2025) | 40.00 | | 276.80 | 50955649 |
| 02/01/2025 | rent | Resident Rent (02/2025) | 2,408.00 | | 2,684.80 | 50955650 |
| 02/03/2025 | | chk# :ACH-WEB Online Payment - EFT Payment. Web - Resident Services NSFed by ctrl# 15800395 Automatic NSF 0Z3HFWVRLJ4, Return Code: R01 Uncollected NSF | | 2,684.80 | 0.00 | 15752635 |
| 02/04/2025 | late | Late Fee | 115.00 | | 115.00 | 51239196 |
| 02/07/2025 | nsf | Returned check charge | 30.00 | | 145.00 | 51235989 |
| 02/07/2025 | | chk# :ACH-WEB NSF receipt Ctrl# 15752635 Automatic NSF 0Z3HFWVRLJ4, Return Code: R01 Uncollected NSF | | (2,684.80) | 2,829.80 | 15800395 |
| 02/08/2025 | | chk# 277579635 Debit Card On-Line Payment ; Web - Resident Services | | 2,829.80 | 0.00 | 15807429 |
| 03/01/2025 | utlsetup | Service Fee | 9.95 | | 9.95 | 51332902 |
| 03/01/2025 | utlsewcb | Sewer - 12/06/24-01/07/25 | 68.55 | | 78.50 | 51332903 |

| Date | Code | Description | Charge | Payment | Balance | Ref |
|---|---|---|---|---|---|---|
| 03/01/2025 | utlwatcb | Water - 12/06/24-01/07/25 | 44.50 | | 379.01 | 51332906 |
| 03/01/2025 | filter | HVAC Filter (03/2025) | 9.95 | | 388.96 | 51920168 |
| 03/01/2025 | rent | Resident Rent (03/2025) | 2,408.00 | | 2,796.96 | 51920169 |
| 03/01/2025 | smtreng2 | Smart Home Fee w/ Video Doorbell (03/2025) | 40.00 | | 2,836.96 | 51920170 |
| 03/02/2025 | | chk# :ACH-WEB Online Payment - EFT Payment. Web - Resident Services NSFed by ctrl# 16064067 Automatic NSF G07YXLYRLJ4, Return Code: R01 Uncollected NSF | | 2,836.96 | 0.00 | 16007869 |
| 03/04/2025 | late | Late Fee | 115.00 | | 115.00 | 52178219 |
| 03/06/2025 | nsf | Returned check charge | 30.00 | | 145.00 | 52174179 |
| 03/06/2025 | | chk# :ACH-WEB NSF receipt Ctrl# 16007869 Automatic NSF G07YXLYRLJ, Return Code: R01 Uncollected NSF | | (2,836.96) | 2,981.96 | 16064067 |
| 03/07/2025 | | chk# 281681878 Credit Card On-Line Payment ; Web - Resident Services | | 2,981.96 | 0.00 | 16074854 |
| 04/01/2025 | utlsewcb | Sewer - 01/08/25-02/05/25 | 66.91 | | 66.91 | 52286106 |
| 04/01/2025 | utlgascb | Vacant Gas - 12/30/24-01/30/25 | 258.15 | | 325.06 | 52286107 |
| 04/01/2025 | utlsetup | Vacant Service Fee - 12/30/24-01/30/25 | 25.00 | | 350.06 | 52286108 |
| 04/01/2025 | utlwatcb | Water - 01/08/25-02/05/25 | 43.51 | | 393.57 | 52286109 |
| 04/01/2025 | rent | Resident Rent (04/2025) 12 days | 963.20 | | 1,356.77 | 52878681 |
| 04/01/2025 | rent | Resident Rent (04/2025) 18 days | 1,444.80 | | 2,801.57 | 52878682 |
| 04/01/2025 | smtreng2 | Smart Home Fee w/ Video Doorbell (04/2025) | 40.00 | | 2,841.57 | 52878683 |
| 04/01/2025 | filter | HVAC Filter (04/2025) | 9.95 | | 2,851.52 | 52878684 |
| 04/03/2025 | | chk# 285328292 Debit Card On-Line Payment ; Web - Resident Services | | 2,851.52 | 0.00 | 16353743 |
| 05/01/2025 | utlsetup | Service Fee | 9.95 | | 9.95 | 53379026 |
| 05/01/2025 | utlsewcb | Sewer - 02/06/25-03/06/25 | 59.37 | | 69.32 | 53379027 |
| 05/01/2025 | utlgascb | Vacant Gas - 01/30/25-02/28/25 | 162.26 | | 231.58 | 53379028 |
| 05/01/2025 | utlsetup | Vacant Service Fee - 01/30/25-02/28/25 | 25.00 | | 256.58 | 53379029 |
| 05/01/2025 | utlwatcb | Water - 02/06/25-03/06/25 | 38.89 | | 295.47 | 53379030 |
| 05/01/2025 | filter | HVAC Filter (05/2025) | 9.95 | | 305.42 | 53889003 |
| 05/01/2025 | smtreng2 | Smart Home Fee w/ Video Doorbell (05/2025) | 40.00 | | 345.42 | 53889004 |
| 05/01/2025 | rent | Resident Rent (05/2025) | 2,408.00 | | 2,753.42 | 53889005 |
| 05/04/2025 | late | Late Fee | 115.00 | | 2,868.42 | 54126359 |
| 05/11/2025 | | chk# 290811029 Credit Card On-Line Payment ; Web - Resident Services | | 2,868.42 | 0.00 | 16695234 |
| 06/01/2025 | utlsetup | Service Fee | 9.95 | | 9.95 | 54242152 |
| 06/01/2025 | utlsewcb | Sewer - 03/07/25-04/03/25 | 41.45 | | 51.40 | 54242153 |
| 06/01/2025 | utlgascb | Vacant Gas - 02/28/25-03/31/25 | 119.68 | | 171.08 | 54242154 |
| 06/01/2025 | utlsetup | Vacant Service Fee - 02/28/25-03/31/25 | 25.00 | | 196.08 | 54242155 |
| 06/01/2025 | utlwatcb | Water - 03/07/25-04/03/25 | 27.91 | | 223.99 | 54242156 |
| 06/01/2025 | smtreng2 | Smart Home Fee w/ Video Doorbell (06/2025) | 40.00 | | 263.99 | 54859083 |
| 06/01/2025 | filter | HVAC Filter (06/2025) | 9.95 | | 273.94 | 54859084 |
| 06/01/2025 | rent | Resident Rent (06/2025) | 2,408.00 | | 2,681.94 | 54859085 |
| 06/04/2025 | late | Late Fee | 115.00 | | 2,796.94 | 55102549 |
| 06/14/2025 | | chk# 295612244 Debit Card On-Line Payment ; Web - Resident Services | | 2,796.94 | 0.00 | 16983999 |
| 07/01/2025 | utlsetup | Service Fee | 9.95 | | 9.95 | 55215564 |
| 07/01/2025 | utlsewcb | Sewer - 04/04/25-05/05/25 | 42.39 | | 52.34 | 55215565 |
| 07/01/2025 | utlgascb | Vacant Gas - 03/31/25-04/30/25 | 57.85 | | 110.19 | 55215566 |
| 07/01/2025 | utlsetup | Vacant Service Fee - 03/31/25-04/30/25 | 25.00 | | 135.19 | 55215567 |
| 07/01/2025 | utlwatcb | Water - 04/04/25-05/05/25 | 28.49 | | 163.68 | 55215568 |
| 07/01/2025 | filter | HVAC Filter (07/2025) | 9.95 | | 173.63 | 55817419 |
| 07/01/2025 | smtreng2 | Smart Home Fee w/ Video Doorbell (07/2025) | 40.00 | | 213.63 | 55817420 |
| 07/01/2025 | rent | Resident Rent (07/2025) | 2,408.00 | | 2,621.63 | 55817421 |
| 07/04/2025 | late | Late Fee | 115.00 | | 2,736.63 | 56105596 |
| 07/12/2025 | | chk# 299965713 Debit Card On-Line Payment ; Web - Resident Services | | 2,736.63 | 0.00 | 17252838 |
| 07/25/2025 | vioadmin | VI-366084 | 35.00 | | 35.00 | 56663159 |
| 08/01/2025 | utlsetup | Service Fee | 9.95 | | 44.95 | 56217815 |
| 08/01/2025 | utlsewcb | Sewer - 05/06/25-06/05/25 | 31.08 | | 76.03 | 56217816 |
| 08/01/2025 | utlgascb | Vacant Gas - 04/30/25-05/29/25 | 53.39 | | 129.42 | 56217817 |
| 08/01/2025 | utlsetup | Vacant Service Fee - 04/30/25-05/29/25 | 25.00 | | 154.42 | 56217818 |
| 08/01/2025 | utlwatcb | Water - 05/06/25-06/05/25 | 21.55 | | 175.97 | 56217819 |
| 08/01/2025 | smtreng2 | Smart Home Fee w/ Video Doorbell (08/2025) | 40.00 | | 215.97 | 56838046 |
| 08/01/2025 | filter | HVAC Filter (08/2025) | 9.95 | | 225.92 | 56838047 |
| 08/01/2025 | rent | Resident Rent (08/2025) | 2,408.00 | | 2,633.92 | 56838048 |

| Date | Code | Description | Charge | Payment | Balance | Ref |
|---|---|---|---|---|---|---|
| 09/01/2025 | utlsewcb | Sewer - 06/06/25-07/07/25 | 80.11 | | 2,838.98 | 57199427 |
| 09/01/2025 | utlgascb | Vacant Gas - 05/29/25-06/30/25 | 48.84 | | 2,887.82 | 57199428 |
| 09/01/2025 | utlsetup | Vacant Service Fee - 05/29/25-06/30/25 | 25.00 | | 2,912.82 | 57199429 |
| 09/01/2025 | utlwatcb | Water - 06/06/25-07/07/25 | 51.61 | | 2,964.43 | 57199430 |
| 09/01/2025 | filter | HVAC Filter (09/2025) | 9.95 | | 2,974.38 | 57802426 |
| 09/01/2025 | smtreng2 | Smart Home Fee w/ Video Doorbell (09/2025) | 40.00 | | 3,014.38 | 57802427 |
| 09/01/2025 | rent | Resident Rent (09/2025) | 2,408.00 | | 5,422.38 | 57802428 |
| 09/02/2025 | | chk# 40197691264118 :CHECKscan Payment | | 500.00 | 4,922.38 | 17748801 |
| 09/02/2025 | | chk# 40197691264100 :CHECKscan Payment | | 500.00 | 4,422.38 | 17748802 |
| 09/02/2025 | | chk# 40197691264091 :CHECKscan Payment | | 500.00 | 3,922.38 | 17748803 |
| 09/02/2025 | | chk# 40197691264073 :CHECKscan Payment | | 500.00 | 3,422.38 | 17748804 |
| 09/02/2025 | | chk# 40197691264082 :CHECKscan Payment | | 500.00 | 2,922.38 | 17748805 |
| 09/02/2025 | | chk# 40197691264127 :CHECKscan Payment | | 250.00 | 2,672.38 | 17748806 |
| 09/04/2025 | late | Late Fee | 115.00 | | 2,787.38 | 58048938 |
| 10/01/2025 | utlsetup | Service Fee | 9.95 | | 2,797.33 | 58289113 |
| 10/01/2025 | utlsewcb | Sewer - 07/08/25-08/06/25 | 40.51 | | 2,837.84 | 58289114 |
| 10/01/2025 | utlgascb | Vacant Gas - 06/30/25-07/30/25 | 45.17 | | 2,883.01 | 58289115 |
| 10/01/2025 | utlsetup | Vacant Service Fee - 06/30/25-07/30/25 | 25.00 | | 2,908.01 | 58289116 |
| 10/01/2025 | utlwatcb | Water - 07/08/25-08/06/25 | 27.33 | | 2,935.34 | 58289117 |
| 10/01/2025 | smtreng2 | Smart Home Fee w/ Video Doorbell (10/2025) | 40.00 | | 2,975.34 | 58788212 |
| 10/01/2025 | rent | Resident Rent (10/2025) | 2,408.00 | | 5,383.34 | 58788213 |
| 10/01/2025 | filter | HVAC Filter (10/2025) | 9.95 | | 5,393.29 | 58788214 |
| 10/04/2025 | late | Late Fee | 115.00 | | 5,508.29 | 59028547 |
| 10/14/2025 | legalfee | Legal Fee | 100.00 | | 5,608.29 | 59083748 |
| 11/01/2025 | utlsetup | Service Fee | 9.95 | | 5,618.24 | 59142436 |
| 11/01/2025 | utlsewcb | Sewer - 08/07/25-09/04/25 | 48.99 | | 5,667.23 | 59142437 |
| 11/01/2025 | utlgascb | Vacant Gas - 07/30/25-08/28/25 | 53.73 | | 5,720.96 | 59142438 |
| 11/01/2025 | utlsetup | Vacant Service Fee - 07/30/25-08/28/25 | 25.00 | | 5,745.96 | 59142439 |
| 11/01/2025 | utlwatcb | Water - 08/07/25-09/04/25 | 32.53 | | 5,778.49 | 59142440 |
| 11/01/2025 | filter | HVAC Filter (11/2025) | 9.95 | | 5,788.44 | 59743567 |
| 11/01/2025 | rent | Resident Rent (11/2025) | 2,408.00 | | 8,196.44 | 59743568 |
| 11/01/2025 | smtreng2 | Smart Home Fee w/ Video Doorbell (11/2025) | 40.00 | | 8,236.44 | 59743569 |
| 11/04/2025 | late | Late Fee | 115.00 | | 8,351.44 | 60106402 |
| 12/01/2025 | utlsetup | Service Fee | 9.95 | | 8,361.39 | 60276624 |
| 12/01/2025 | utlsewcb | Sewer - 09/05/25-10/03/25 | 55.59 | | 8,416.98 | 60276625 |
| 12/01/2025 | utlgascb | Vacant Gas - 08/28/25-09/29/25 | 59.07 | | 8,476.05 | 60276626 |
| 12/01/2025 | utlsetup | Vacant Service Fee - 08/28/25-09/29/25 | 25.00 | | 8,501.05 | 60276627 |
| 12/01/2025 | utlwatcb | Water - 09/05/25-10/03/25 | 36.58 | | 8,537.63 | 60276628 |
| 12/01/2025 | smtreng2 | Smart Home Fee w/ Video Doorbell (12/2025) | 40.00 | | 8,577.63 | 60862640 |
| 12/01/2025 | rent | Resident Rent (12/2025) | 2,408.00 | | 10,985.63 | 60862641 |
| 12/01/2025 | filter | HVAC Filter (12/2025) | 9.95 | | 10,995.58 | 60862642 |
| 12/04/2025 | late | Late Fee | 115.00 | | 11,110.58 | 61094471 |
| 01/01/2026 | utlsetup | Service Fee | 9.95 | | 11,120.53 | 61243672 |
| 01/01/2026 | utlsewcb | Sewer - 10/04/25-11/04/25 | 55.59 | | 11,176.12 | 61243673 |
| 01/01/2026 | utlgascb | Vacant Gas - 09/29/25-10/31/25 | 73.62 | | 11,249.74 | 61243674 |
| 01/01/2026 | utlsetup | Vacant Service Fee - 09/29/25-10/31/25 | 25.00 | | 11,274.74 | 61243675 |
| 01/01/2026 | utlwatcb | Water - 10/04/25-11/04/25 | 36.58 | | 11,311.32 | 61243676 |
| 01/01/2026 | smtreng2 | Smart Home Fee w/ Video Doorbell (01/2026) | 40.00 | | 11,351.32 | 61828821 |
| 01/01/2026 | rent | Resident Rent (01/2026) | 2,408.00 | | 13,759.32 | 61830055 |
| 01/01/2026 | filter | HVAC Filter (01/2026) | 9.95 | | 13,769.27 | 61837479 |

## Matthew Totten

| | |
|---|---|
| **From:** | Curtis Parker <curtis.parker1776@gmail.com> |
| **Sent:** | Wednesday, December 31, 2025 11:50 AM |
| **To:** | Matthew Totten |
| **Subject:** | Re: 25-61216-bem Notice (BK) |

**External Sender** - From: (Curtis Parker
<curtis.parker1776@gmail.com>)                                                          Learn More
This message came from outside your organization.

Hello Mr Totten,
I wanted to make you aware the house is no longer listed on Airbnb effective yesterday. I was also
wanting to request the funds be direct deposited into my account due to the mail is being forwarded.
Please advise what account information is needed.
Thanks

Sent from my iPhone


On Dec 29, 2025, at 5:38 PM, Matthew Totten <mft@tottenfirm.com> wrote:


Mr. Parker –

See attached notice filed with the bankruptcy court, as filed.

Thanks

<image001.png>

**Matthew F. Totten**
*Managing Attorney*

**Phone** (404) 692-4342    **Email** mft@tottenfirm.com
**Mailing Address** 5579 Chamblee-Dunwoody Rd, Ste B-136, Atlanta, GA
30338
**Web** http://www.tottenfirm.com

<image002.png>

**Notice**: This e-mail message and all attachments transmitted with it may contain legally privileged and confidential information
intended solely for the use of the addressee. If the reader of this message is not the intended recipient, you are hereby notified that
any reading, dissemination, distribution, copying, or other use of this message or its attachments is strictly prohibited. If you have
received this message in error, please notify the sender immediately by the telephone number listed above and delete this message
and all copies and backups thereof. Thank you.

**From:** no-reply-notices@ganb.uscourts.gov <no-reply-notices@ganb.uscourts.gov>
**Sent:** Monday, December 29, 2025 5:36 PM
**To:** CourtMail@ganb.uscourts.gov
**Subject:** 25-61216-bem Notice (BK)

https://www.airbnb.com/rooms/1355077863701094619?location=Dacula%2C%20GA%203...

Parks - Houses for Rent in Dacula, Georgia, United States - Airbnb



## Parks







Show all photos

☐ Share   ♡ Save

Anywhere    Any week    Add guests

⊕   ☰

# Entire home in Dacula, Georgia

6 guests · 3 bedrooms · 3 beds · 2 baths

**Guest favorite**

One of the most loved homes on Airbnb, according to guests

**4.88**
★★★★★

**41**
Reviews

**Hosted by Curtis**
9 months hosting

**Self check-in**
Check yourself in with the keypad.

**Extra spacious**
Guests love this home's spaciousness for a comfortable stay.

**Peace and quiet**
Guests say this home is in a quiet area.

Some info has been automatically translated. **Show original**

Relax with the whole family at this peaceful place to stay.

## Add dates for prices

| CHECK-IN | CHECKOUT |
|---|---|
| Add date | Add date |

GUESTS
1 guest

>

**Check availability**

🚩 <u>Report this listing</u>

https://www.airbnb.com/rooms/1355077863701094619?location=Dacula%2C%20GA%203...

12/22/2025, 10:38 PM

## Where you'll sleep

1 / 2







**Bedroom 1**
1 king bed

**Bedroom 2**
1 queen bed

## What this place offers

Kitchen

Wifi

Free parking on premises

Pets allowed

TV

◎ Washer

◎ Free dryer

❄ Air conditioning

▦ Indoor fireplace

📷 Exterior security cameras on property

Show all 21 amenities

## Select check-in date

Add your travel dates for exact pricing

### December 2025

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 |   |   |   |

### January 2026

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 |

Clear dates

# 4.88

## Guest favorite

This home is a guest favorite based on
ratings, reviews, and reliability

| Overall rating | Cleanliness | Accuracy | Check-in | Communication | Location | Value |
|---|---|---|---|---|---|---|
| 5 | 4.8 | 4.9 | 5.0 | 4.9 | 5.0 | 4.8 |
| 4 | | | | | | |
| 3 | | | | | | |
| 2 | | | | | | |
| 1 | | | | | | |

**Tram**
4 years on Airbnb

★★★★★ · 1 day ago · Group trip

Great stay! The place was very clean, comfortable, and

**Shaneika**
Grovetown, Georgia

★★★★★ · 2 weeks ago · Stayed one night

This home was a great fit for my close friends and I. It

was peaceful, pleasant, and beautiful. We felt safe and comfortable for our one night stay.



**Jodie**
Hoschton, Georgia

★★★★★ · 4 weeks ago · Stayed a few nights

This home was perfect and Curtis was very responsive. It was near everything including shopping, I-85, Mall of Georgia, restaurants, etc. The house was spotless an...

Show more



**Cortney**
Chapin, South Carolina

★★★★★ · 3 weeks ago · Group trip

Sweet house in a quiet established neighborhood. We appreciated that there were plenty of bathroom linens and hot water. The huge tv was a hit with our teens. A...

Show more

Show all 41 reviews    How reviews work

**Sharon**
Taylors, South Carolina

★★★★★ · 1 week ago · Stayed one night

Great space for a girlfriend weekend getaway. Extremely clean and spacious. Highly recommend, we would stay there again.

**Kimberly**
Greenville, South Carolina

★★★★☆ · November 2025 · Stayed with a pet

Very spacious home in nice neighborhood. Great fenced yard for pets. It is listed as no essentials and that is the case. Also, no extra linens, pillows, blankets...

Show more

# Where you'll be

https://www.airbnb.com/rooms/1355077863701094619?location=Dacula%2C%20GA%203...

12/22/2025, 10:38 PM

Parks - Houses for Rent in Dacula, Georgia, United States - Airbnb

Dacula, Georgia, United States

## Meet your host

**C**

## Curtis
Host

**41**
Reviews

**4.88★**
Rating

**9**
Months hosting

## Host details

Response rate: 100%
Responds within an hour

### Message host

 To help protect your payment, always use Airbnb to send money and communicate with hosts.

## Things to know

### Cancellation policy
Add your trip dates to get the
cancellation details for this stay.
Add dates

### House rules
Check-in after 3:00 PM
Checkout before 11:00 AM
6 guests maximum
Learn more

### Safety & property
Exterior security cameras on property
Carbon monoxide alarm
Smoke alarm
Learn more

Airbnb  ›  United States  ›  Georgia  ›  Gwinnett County

## Support

Help Center

Get help with a safety issue

AirCover

Travel insurance

Anti-discrimination

Disability support

Cancellation options

Report neighborhood concern

## Hosting

Airbnb your home

Airbnb your experience

Airbnb your service

AirCover for Hosts

Hosting resources

Community forum

Hosting responsibly

Airbnb-friendly apartments

Join a free Hosting class

Find a co-host

Refer a host

## Airbnb

2025 Summer Release

Newsroom

Careers

Investors

Gift cards

Airbnb.org emergency stays

© 2025 Airbnb, Inc.  ·  Privacy  ·  Terms  ·  Your Privacy Choices

⊕ English (US)    $ USD

**Matthew Totten**

| | |
|---|---|
| **From:** | Curtis Parker <curtis.parker1776@gmail.com> |
| **Sent:** | Friday, December 26, 2025 1:27 PM |
| **To:** | Matthew Totten |
| **Subject:** | Voice mail to Curtis Parker |

**External Sender** - From: (Curtis Parker <curtis.parker1776@gmail.com>)
This message came from outside your organization.

Learn More

Mr. Totten,

I am in receipt of your voicemail regarding the above-referenced matter.

At this time, I prefer that all communications occur in writing. This ensures clarity and avoids any misunderstanding, particularly given that the conduct at issue involves violations of the automatic stay while I was under the protection of Chapter 7 bankruptcy.

As you are aware, direct contact with a debtor during the pendency of a bankruptcy case may constitute a violation of 11 U.S.C. § 362. In an effort to resolve this matter efficiently and without further litigation, I am willing to discuss settlement under the following terms:

**Settlement Options**

1. **Monetary Resolution**
   Invitation Homes may elect to resolve this matter through payment of statutory damages in the amount of **$1,000 per violation of the automatic stay**, along with the **return of my full security deposit**, after which the parties would negotiate an agreed move-out date.

**OR**

2. **Lease Term Resolution**
   Invitation Homes may agree to allow my household to **remain in the property through the end of the existing lease term (April 2026)** with no further interference. In exchange, I would withdraw all pending motions and pleadings related to the stay violations.

If Invitation Homes declines both options, I am prepared to continue litigating this matter and to present all available evidence in the appropriate forums, including evidence of repeated stay violations and any non-compliance with applicable federal agreements and consumer protection obligations.

This correspondence is made for settlement purposes only and is not a waiver of any rights, claims, or remedies available to me under bankruptcy law, federal law, or otherwise.

If your client wishes to discuss resolution, please respond in writing.

Regards,
Curtis Parker

**Matthew Totten**

| | |
|---|---|
| **From:** | Curtis Parker <curtis.parker1776@gmail.com> |
| **Sent:** | Monday, December 29, 2025 12:26 PM |
| **To:** | Matthew Totten |
| **Subject:** | Re: Voice mail to Curtis Parker |
| **Attachments:** | Invitation Homes Violations Outline 12.29.25.pdf |

**External Sender** - From: (Curtis Parker
<curtis.parker1776@gmail.com>)
This message came from outside your organization.

Learn More

Mr. Totten,

As per our communication last week, please see the attached letter which outlines Invitation Homes Stay Violations.

Regards,

Curtis Parker

On Sat, Dec 27, 2025 at 2:15 PM Matthew Totten <mft@tottenfirm.com> wrote:

Mr. Parker –


Respectfully, there is no coercion or implied undertone, or any other sort of 'condition' expressed.


I requested you specify the asserted bankruptcy violations and their corresponding dates to frame your offer to my client as well as ensure the terms of your offer were clear.


I look forward to hearing back from you regarding the specific terms of your offer #1, as previously requested.


Sincerely,

**THE TOTTEN FIRM**
REAL ESTATE ATTORNEYS

**Matthew F. Totten**

*Managing Attorney*

**Phone** (404) 692-4342    **Email** mft@tottenfirm.com

**Mailing Address** 5579 Chamblee-Dunwoody Rd, Ste B-136, Atlanta, GA 30338

**Web** http://www.tottenfirm.com



**Notice**: This e-mail message and all attachments transmitted with it may contain legally privileged and confidential information intended solely for the use of the addressee. If the reader of this message is not the intended recipient, you are hereby notified that any reading, dissemination, distribution, copying, or other use of this message or its attachments is strictly prohibited. If you have received this message in error, please notify the sender immediately by the telephone number listed above and delete this message and all copies and backups thereof. Thank you.

**From:** Curtis Parker <curtis.parker1776@gmail.com>
**Sent:** Friday, December 26, 2025 3:45 PM
**To:** Matthew Totten <mft@tottenfirm.com>
**Subject:** Re: Voice mail to Curtis Parker

Mr. Totten,

I write in response to your email below.

First, with respect to your request that I immediately dismiss my pending motions with prejudice, that request is rejected. There is no legal or factual basis requiring dismissal of asserted automatic stay violations, particularly where those violations have already occurred and are supported by documentary evidence.

Second, your statement that your client "believes there may be a basis" to object to the entirety of my Chapter 7 discharge under 11 U.S.C. § 727 is concerning and is viewed as retaliatory. The factual circumstances you reference—specifically any alleged Airbnb-related use—have been known to your client for several months, including prior to and during the creditors' meeting. Despite that knowledge, your client took no action, raised no objection, and continued to accept rent payments without issue. The evidence will reflect that your client knowingly acquiesced in the status quo so long as rent was being paid.

Any attempt to now weaponize the impending objection deadline to force dismissal of valid stay-violation claims will be presented to the Court for what it is: an improper and coercive tactic. If your client intends to pursue an objection to discharge, it should be based on good-faith factual and legal grounds—not as leverage to extinguish pending claims arising from its own misconduct.

With respect to your request for specificity, the automatic stay violations consist of repeated post-petition contacts and enforcement actions undertaken after notice of the bankruptcy filing. These violations are documented and will be presented in detail in the appropriate forum. I am under no obligation to condition enforcement of federal bankruptcy protections on withdrawal of those claims with prejudice.

Please ensure that your client has fully disclosed to you all pertinent facts regarding its prior knowledge, its acceptance of rent, and its decision not to act until faced with accountability for stay violations. Should your client proceed with an objection to discharge under these circumstances, that conduct will be addressed accordingly.

This correspondence is written in furtherance of resolution and an equitable settlement of this matter. Please advise what your client proposes to resolve the issues and bring this matter to rest. We are aware of your client's recent settlement with the FTC concerning conduct consistent with that outlined in our motions, and we remain open to an equitable resolution.

Regards,

Curtis Parker


On Fri, Dec 26, 2025 at 1:39 PM Matthew Totten <mft@tottenfirm.com> wrote:

Mr. Parker -


Can you specify each asserted bankruptcy violations and their corresponding dates to frame your offer #1?


Also, please be advised my client believes there may be a basis for it to object to the entirety of your bankruptcy discharge under 11 USC 727.


Because of the timeline to object to the discharge is very short (12/30), my client believes your motions against my client need to be dismissed with prejudice immediately.


If you are able to dismiss with prejudice the asserted automatic stay violations today, the foregoing may all be mooted.


Thanks

Get Outlook for iOS

---

**From:** Curtis Parker <curtis.parker1776@gmail.com>
**Sent:** Friday, December 26, 2025 1:27 PM
**To:** Matthew Totten <mft@tottenfirm.com>
**Subject:** Voice mail to Curtis Parker

External Sender - From: (Curtis Parker <curtis.parker1776@gmail.com>)
This message came from outside your organization.

Learn More

Mr. Totten,

I am in receipt of your voicemail regarding the above-referenced matter.

At this time, I prefer that all communications occur in writing. This ensures clarity and avoids any misunderstanding, particularly given that the conduct at issue involves violations of the automatic stay while I was under the protection of Chapter 7 bankruptcy.

As you are aware, direct contact with a debtor during the pendency of a bankruptcy case may constitute a violation of 11 U.S.C. § 362. In an effort to resolve this matter efficiently and without further litigation, I am willing to discuss settlement under the following terms:

**Settlement Options**

1. **Monetary Resolution**
   Invitation Homes may elect to resolve this matter through payment of statutory damages in the amount of **$1,000 per violation of the automatic stay**, along with the **return of my full security deposit**, after which the parties would negotiate an agreed move-out date.

**OR**

2. **Lease Term Resolution**
   Invitation Homes may agree to allow my household to **remain in the property through the end of the existing lease term (April 2026)** with no further interference. In exchange, I would withdraw all pending motions and pleadings related to the stay violations.

If Invitation Homes declines both options, I am prepared to continue litigating this matter and to present all available evidence in the appropriate forums, including evidence of repeated stay violations and any non-compliance with applicable federal agreements and consumer protection obligations.

This correspondence is made for settlement purposes only and is not a waiver of any rights, claims, or remedies available to me under bankruptcy law, federal law, or otherwise.

If your client wishes to discuss resolution, please respond in writing.

Regards,
Curtis Parker

December 29, 2025

Matthew F. Totten, Esq.
The Totten Law Firm, LLC
5579 Chamblee-Dunwoody Road, Suite B-136
Atlanta, Georgia 30338

Counsel:

I write in response to your email requesting an outline of the dates on which Invitation Homes communicated with me after receiving notice of my bankruptcy filing. As you are aware, those communications constituted violations of the automatic stay, and I am seeking appropriate compensation and other relief arising from Invitation Homes' unlawful conduct.

This letter outlines the **specific violations, dates, individuals involved, and the statutory provisions breached**

---

## I. NOTICE OF BANKRUPTCY AND APPLICABILITY OF THE AUTOMATIC STAY

The Debtor filed a **Chapter 7 petition on September 29, 2025**, thereby triggering the automatic stay under **11 U.S.C. § 362(a)**. Invitation Homes had **actual notice** of the bankruptcy filing prior to each of the communications identified below.

Despite this knowledge, Invitation Homes **continued affirmative acts to enforce prepetition claims, coerce compliance, and threaten financial liability**, without seeking or obtaining relief from stay under § 362(d).

---

## II. SPECIFIC AUTOMATIC STAY VIOLATIONS

### Violation #1 — November 24, 2025

**Actor:** Invitation Homes representative (Property Management / Customer Service)
**Medium:** Email communication

Invitation Homes contacted the Debtor demanding **"proof or evidence"** regarding an alleged HOA violation and requesting information regarding what would be required to **"cure"** the alleged violation.

**Violations:**

- § 362(a)(6): Act to collect or recover a prepetition claim

- § 362(a)(3): Act to exercise control over property of the estate

- § 362(a)(1): Continuation of a prepetition enforcement process

The alleged HOA violation **predates the bankruptcy filing (July 2025)** and therefore constitutes a **prepetition claim**. Demanding proof, participation, or remediation is prohibited enforcement activity.

---

### Violation #2 — November 25, 2025

**Actor:** Invitation Homes
**Medium:** Email escalation

Invitation Homes escalated the matter by stating the violation **"will be forwarded"** and directing the Debtor to engage with Invitation Homes' internal dispute system to contest or resolve the matter.

**Violations:**

- § 362(a)(1): Continuation of enforcement proceedings

- § 362(a)(3): Exercising control over estate property

- § 362(a)(6): Coercive attempt to compel compliance

Requiring the Debtor to navigate an internal compliance or enforcement system constitutes **continued collection and enforcement activity** barred by the automatic stay.

---

### Violation #3 — November 25, 2025 (Demand Email with Financial Threats)

**Actor:** Invitation Homes
**Medium:** Formal "Violation Notice" Email

Invitation Homes issued a demand notice stating, inter alia:

- "You are responsible for fines, fees, or the cost to resolve or cure this violation."

- "Per your lease agreement, you are responsible for any fines, fees, and chargebacks."

- A mandatory **"Respond Now"** directive requiring action.

**Violations:**

- § 362(a)(6): Direct attempt to collect a prepetition debt

- § 362(a)(3): Exercise of control over estate property

- § 362(a)(1): Enforcement of prepetition obligations

This communication constitutes an **explicit demand for payment**, accompanied by **financial threats**, and is the most egregious violation due to its coercive and intimidating nature.

---

### III. ADDITIONAL VIOLATIONS — DECEMBER 3, 2025, EMAIL COMMUNICATIONS

**Violation #4 — December 3, 2025**

**Actor:** Invitation Homes representatives
**Medium:** Direct communications with the Debtor

On December 3, 2025, Invitation Homes **continued direct communications with the Debtor** despite:

- Full knowledge of the active Chapter 7 case

- The pending dispute regarding prior stay violations

- The prohibition on further contact concerning prepetition matters

These communications were **not informational**, but were reasonably calculated to **pressure, intimidate, or influence the Debtor's occupancy and compliance**, and therefore constitute **continued willful violations of the automatic stay** under §§ 362(a)(3) and (a)(6).

Once a creditor is placed on notice of a potential stay violation, **continued contact aggravates liability and supports punitive damages**.

**Violation #5 – December 9, 2025**

- Email regarding Violation Details (subject line)

**Violation #6 – December 10, 2025**

- Official Breach of Lease Email

---

## IV. WILLFULNESS AND AGGRAVATION

Willfulness under § 362(k) requires only:

1. Knowledge of the bankruptcy, and

2. An intentional act that violates the stay.

Both elements are satisfied here. **Repeated violations**, escalating tone, financial threats, and post-motion communications demonstrate **reckless disregard for the Bankruptcy Code**.

Internal error, misunderstanding, or reliance on automated systems is **not a defense**.

---

**Violation #7 – December 26, 2025**

## VI. IMPROPER THREATENING AND INTIMIDATION REGARDING DISCHARGE

We understand that IH disagree with this assessment ,but we present it for the record and seek $2000.00 for this violation alone: Invitation Homes, **through its attorney**, further engaged in **blatant intimidation and coercion** by asserting that it would **object to the entirety of Mr. Parker's Chapter 7 discharge** unless he **immediately dismissed his Motion for Sanctions with prejudice**.

This threat was made **outside of any filed pleading**, without legal or factual basis, and for the **sole purpose of chilling the Debtor's exercise of his statutory rights** under the Bankruptcy Code.

Using the threat of a **global discharge objection** as leverage to force withdrawal of a sanctions motion constitutes:

- **Bad-faith litigation conduct**

- **Abuse of the bankruptcy process**

- **Improper coercion of a debtor protected by the automatic stay**

- **Retaliation for asserting rights under 11 U.S.C. § 362(k)**

Courts have consistently held that threatening adverse bankruptcy consequences to extract dismissal of a debtor's lawful motion is **sanctionable misconduct** and supports **punitive damages**.

This intimidation is **separate and independent** from the automatic stay violations outlined above and further demonstrates a **pattern of willful, coercive, and retaliatory conduct** by Invitation Homes and its counsel.

For this conduct as well, **Invitation Homes must be held accountable**.

Nothing in this letter constitutes a waiver of any rights, remedies, or claims, all of which are expressly reserved.

**All security deposits paid in connection with the property must be returned in full**.  Invitation Homes must **immediately cease and desist from communicating, reporting, or conveying any eviction status, eviction threat, or eviction-related information** regarding the property to any third party, including but not limited to credit reporting agencies, tenant screening services, internal databases, property management systems, or affiliated entities.

## Summary of Settlement Offer

- Violations #1–6: $1,000 each occurrence — $6,000 total
- Violation #7: $2,000
- Return of Deposit: $2,400

Subtotal: $6,000 (Violations #1–6) + $2,000 (Violation #7) = $8,000 (Violations)

Total Settlement Amount: $8,000 (Violations) + $2,400 (Deposit) = $10,400

Mr. Parker proposes a move-out date of January 30, 2026.

If you agree to these terms, please confirm in writing by January 5, 2026, so we may proceed with filing the Motion to Withdraw Stay Violations.

Sincerely,

Curtis Parker
Debtor, Pro Se

**Matthew Totten**

| | |
|---|---|
| **From:** | Matthew Totten |
| **Sent:** | Monday, December 29, 2025 3:44 PM |
| **To:** | 'Curtis Parker' |
| **Subject:** | RE: Voice mail to Curtis Parker |
| **Attachments:** | (Proposed) Notice of Settlement.docx; (Proposed) Dismissal with prejudice.docx |

FOR PURPOSES OF SETTLEMENT AND COMPROMISE

Mr. Parker –

Thank you again for breaking out your assertions with particularity to clarify the ask on your settlement offer.

My client counteroffers your settlement terms as follows:

- The parties shall file a joint notice of dismissal upon an email accepting the instant terms with the bankruptcy court. *See attached to be filed upon acceptance via email, which will be filed by my office*.
- Within seven days of an email accepting the instant terms, Parker shall dismiss with prejudice the pending claims against 2017-1 IH Borrower LP as to any asserted violations of the bankruptcy automatic stay. *See attached, as drafted for your convenience*.
  - In entering this settlement, Parker expressly stipulates that this settlement encompasses all purported violations of the bankruptcy automatic stay by 2017-1 IH Borrower LP, its employees, and its agents
- 2017-1 IH Borrower LP shall account and remit $7,000.00 to Parker and provide evidence of the same to Parker within ten business days of acceptance.
- Parker expressly stipulates that he shall vacate the subject Premises (known as 1149 Autumn Glen Way, Dacula, GA 30019) on/before January 30, 2026, and that the Premises shall be abandoned as property of the bankruptcy estate upon discharge; this settlement agreement does not constitute a ratification or novation of the lease agreement for the subject Premises.
  - The security deposit for the subject Premises shall be treated in accordance with Georgia law subsequent to Parker vacating the Premises. See O.C.G.A. 44-7-30 – 44-7-37.
- Each party shall bear its own attorneys' fees in this action; to the extent any party may incur attorneys' fees in enforcing this settlement, the prevailing party is entitled to its costs and attorneys' fees in enforcing this settlement.

**Time is of the essence in this settlement offer** – should you fail to accept the foregoing terms via email by 12:00 p.m. EST on 12/30/2025, said offer shall automatically expire by its terms.

Thanks



**Matthew F. Totten**
*Managing Attorney*

**Phone** (404) 692-4342    **Email** mft@tottenfirm.com
**Mailing Address** 5579 Chamblee-Dunwoody Rd, Ste B-136, Atlanta, GA 30338
**Web** http://www.tottenfirm.com



**Notice**: This e-mail message and all attachments transmitted with it may contain legally privileged and confidential information intended solely for the use of the addressee. If the reader of this message is not the intended recipient, you are hereby notified that any reading, dissemination, distribution, copying, or other use of this message or its attachments is strictly prohibited. If you have received this message in error, please notify the sender immediately by the telephone number listed above and delete this message and all copies and backups thereof. Thank you.

**From:** Curtis Parker <curtis.parker1776@gmail.com>
**Sent:** Monday, December 29, 2025 12:26 PM
**To:** Matthew Totten <mft@tottenfirm.com>
**Subject:** Re: Voice mail to Curtis Parker

**External Sender** - From: (Curtis Parker <curtis.parker1776@gmail.com>)
This message came from outside your organization.

Learn More

Mr. Totten,

As per our communication last week, please see the attached letter which outlines Invitation Homes Stay Violations.

Regards,

Curtis Parker

On Sat, Dec 27, 2025 at 2:15 PM Matthew Totten <mft@tottenfirm.com> wrote:

Mr. Parker –


Respectfully, there is no coercion or implied undertone, or any other sort of 'condition' expressed.


I requested you specify the asserted bankruptcy violations and their corresponding dates to frame your offer to my client as well as ensure the terms of your offer were clear.


I look forward to hearing back from you regarding the specific terms of your offer #1, as previously requested.

Sincerely,



**Matthew F. Totten**

*Managing Attorney*

Phone (404) 692-4342    Email mft@tottenfirm.com

Mailing Address 5579 Chamblee-Dunwoody Rd, Ste B-136, Atlanta, GA 30338

Web http://www.tottenfirm.com



**Notice**: This e-mail message and all attachments transmitted with it may contain legally privileged and confidential information intended solely for the use of the addressee. If the reader of this message is not the intended recipient, you are hereby notified that any reading, dissemination, distribution, copying, or other use of this message or its attachments is strictly prohibited. If you have received this message in error, please notify the sender immediately by the telephone number listed above and delete this message and all copies and backups thereof. Thank you.

---

**From:** Curtis Parker <curtis.parker1776@gmail.com>
**Sent:** Friday, December 26, 2025 3:45 PM
**To:** Matthew Totten <mft@tottenfirm.com>
**Subject:** Re: Voice mail to Curtis Parker

Mr. Totten,

I write in response to your email below.

First, with respect to your request that I immediately dismiss my pending motions with prejudice, that request is rejected. There is no legal or factual basis requiring dismissal of asserted automatic stay violations, particularly where those violations have already occurred and are supported by documentary evidence.

Second, your statement that your client "believes there may be a basis" to object to the entirety of my Chapter 7 discharge under 11 U.S.C. § 727 is concerning and is viewed as retaliatory. The factual circumstances you reference—specifically any alleged Airbnb-related use—have been known to your client for several months, including prior to and during the creditors' meeting. Despite that knowledge, your client took no action, raised no objection, and continued to accept rent payments without issue. The evidence will reflect that your client knowingly acquiesced in the status quo so long as rent was being paid.

Any attempt to now weaponize the impending objection deadline to force dismissal of valid stay-violation claims will be presented to the Court for what it is: an improper and coercive tactic. If your client intends to pursue an objection to discharge, it should be based on good-faith factual and legal grounds—not as leverage to extinguish pending claims arising from its own misconduct.

With respect to your request for specificity, the automatic stay violations consist of repeated post-petition contacts and enforcement actions undertaken after notice of the bankruptcy filing. These violations are documented and will be presented in detail in the appropriate forum. I am under no obligation to condition enforcement of federal bankruptcy protections on withdrawal of those claims with prejudice.

Please ensure that your client has fully disclosed to you all pertinent facts regarding its prior knowledge, its acceptance of rent, and its decision not to act until faced with accountability for stay violations. Should your client proceed with an objection to discharge under these circumstances, that conduct will be addressed accordingly.

This correspondence is written in furtherance of resolution and an equitable settlement of this matter. Please advise what your client proposes to resolve the issues and bring this matter to rest. We are aware of your client's recent settlement with the FTC concerning conduct consistent with that outlined in our motions, and we remain open to an equitable resolution.

Regards,

Curtis Parker

On Fri, Dec 26, 2025 at 1:39 PM Matthew Totten <mft@tottenfirm.com> wrote:

> Mr. Parker -
>
> Can you specify each asserted bankruptcy violations and their corresponding dates to frame your offer #1?
>
> Also, please be advised my client believes there may be a basis for it to object to the entirety of your bankruptcy discharge under 11 USC 727.
>
> Because of the timeline to object to the discharge is very short (12/30), my client believes your motions against my client need to be dismissed with prejudice immediately.

If you are able to dismiss with prejudice the asserted automatic stay violations today, the foregoing may all be mooted.


Thanks


Get Outlook for iOS

---

**From:** Curtis Parker <curtis.parker1776@gmail.com>
**Sent:** Friday, December 26, 2025 1:27 PM
**To:** Matthew Totten <mft@tottenfirm.com>
**Subject:** Voice mail to Curtis Parker


External Sender - From: (Curtis Parker                                           Learn More
<curtis.parker1776@gmail.com>)
This message came from outside your organization.


Mr. Totten,

I am in receipt of your voicemail regarding the above-referenced matter.

At this time, I prefer that all communications occur in writing. This ensures clarity and avoids any misunderstanding, particularly given that the conduct at issue involves violations of the automatic stay while I was under the protection of Chapter 7 bankruptcy.

As you are aware, direct contact with a debtor during the pendency of a bankruptcy case may constitute a violation of 11 U.S.C. § 362. In an effort to resolve this matter efficiently and without further litigation, I am willing to discuss settlement under the following terms:

**Settlement Options**

1. **Monetary Resolution**
   Invitation Homes may elect to resolve this matter through payment of statutory damages in the amount of **$1,000 per violation of the automatic stay**, along with the **return of my full security deposit**, after which the parties would negotiate an agreed move-out date.

**OR**

2. **Lease Term Resolution**
   Invitation Homes may agree to allow my household to **remain in the property through the end of the existing lease term (April 2026)** with no further interference. In exchange, I would withdraw all pending motions and pleadings related to the stay violations.

If Invitation Homes declines both options, I am prepared to continue litigating this matter and to present all available evidence in the appropriate forums, including evidence of repeated stay violations and any non-compliance with applicable federal agreements and consumer protection obligations.

This correspondence is made for settlement purposes only and is not a waiver of any rights, claims, or remedies available to me under bankruptcy law, federal law, or otherwise.

If your client wishes to discuss resolution, please respond in writing.

Regards,
Curtis Parker

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

IN RE:

CURTIS PARKER,

Debtor.

CURTIS PARKER,

Movant,

v.

2017-1 IH Borrower, LP

Respondent.

CIVIL ACTION FILE NO.
25-61216-BEM

Chapter 7

Contested Matter

**NOTICE OF SETTLEMENT, DEBTOR'S MOTIONS AGAINST RESPONDENT**

NOTICE IS HEREBY GIVEN that the parties to the instant action have entered into a

settlement resolving all claims pending against Respondent in this matter. See Doc. No. 21, 22,

23. Plaintiff hereby respectfully requests that this Court administratively close the foregoing

referenced motions pending the parties filing the necessary documentation, pursuant to the terms

of the settlement, to finally dispose of the foregoing motions.

This ____ day of _____, 2025.

THE TOTTEN FIRM, LLC
5579 Chamblee-Dunwoody Rd
Ste B-136
Atlanta, GA 30338
(404) 692-4342 (Telephone)
mft@tottenfirm.com (E-mail)

_____
Matthew F. Totten
Georgia Bar No. 798589
Attorney for Plaintiff

1149 Autumn Glen Way
Dacula, GA 30019
curtis.parker1776@gmail.com (E-mail)

_____
Curtis Parker, *pro se*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this _____, served the within and foregoing

**NOTICE OF SETTLEMENT, DEBTOR'S MOTIONS AGAINST RESPONDENT** by

statutory electronic service and/or placing a true and correct copy of same in the United States

Mail, with prepaid first-class postage affixed thereto, properly addressed as follows:


Curtis Parker, *PRO SE*
1149 Autumn Glen Way
Dacula, GA 30019
curtis.parker1776@gmail.com (E-mail)


Respectfully submitted,


THE TOTTEN FIRM, LLC
5579 Chamblee-Dunwoody Rd        _____
Ste B-136
Atlanta, GA 30338                Matthew F. Totten
(404) 692-4342 (Telephone)       Georgia Bar No. 798589
mft@tottenfirm.com (E-mail)       Attorney for Plaintiff

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| IN RE: | |
| CURTIS PARKER, | |
| Debtor. | CIVIL ACTION FILE NO. 25-61216-BEM |
| CURTIS PARKER, | Chapter 7 |
| Movant, | Contested Matter |
| v. | |
| 2017-1 IH Borrower, LP | |
| Respondent. | |

**DISMISSAL WITH PREJUDICE, DEBTOR'S MOTIONS AGAINST RESPONDENT**

COMES NOW Curtis Parker, pro se, and herein dismisses with prejudice all pending claims asserted against Respondent as to purported violations of the bankruptcy automatic stay. See Doc. No. 21, 22, 23.

This _____ day of _____, 202__.


THE TOTTEN FIRM, LLC
5579 Chamblee-Dunwoody Rd
Ste B-136
Atlanta, GA 30338
(404) 692-4342 (Telephone)
mft@tottenfirm.com (E-mail)

_____
Matthew F. Totten
Georgia Bar No. 798589
Attorney for Plaintiff


1149 Autumn Glen Way
Dacula, GA 30019
curtis.parker1776@gmail.com (E-mail)

_____
Curtis Parker, *pro se*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this _____, served the within and foregoing

**NOTICE OF SETTLEMENT, DEBTOR'S MOTIONS AGAINST RESPONDENT** by

statutory electronic service and/or placing a true and correct copy of same in the United States

Mail, with prepaid first-class postage affixed thereto, properly addressed as follows:


                              Matthew F. Totten
                              THE TOTTEN FIRM, LLC
                              5579 Chamblee-Dunwoody Rd
                              Ste B-136
                              Atlanta, GA 30338
                              mft@tottenfirm.com (E-mail)

                              Respectfully submitted,


1149 Autumn Glen Way
Dacula, GA 30019
curtis.parker1776@gmail.com (E-mail)        _____
                                            Curtis Parker, *pro se*

**Matthew Totten**

| | |
|---|---|
| **From:** | Curtis Parker <curtis.parker1776@gmail.com> |
| **Sent:** | Monday, December 29, 2025 5:09 PM |
| **To:** | Matthew Totten |
| **Subject:** | Re: Voice mail to Curtis Parker |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |

**External Sender** - From: (Curtis Parker <curtis.parker1776@gmail.com>)
This message came from outside your organization.

Learn More

Good evening Mr. Totten,

After careful review, I accept the counter offer from
your client, Invitation Homes. I have also reviewed the attached document to be filed with the court and
am approving.

Thank you for your prompt attention to this matter.

Regards,

Curtis Parker.

On Monday, December 29, 2025, Matthew Totten <mft@tottenfirm.com> wrote:

FOR PURPOSES OF SETTLEMENT AND COMPROMISE


Mr. Parker –


Thank you again for breaking out your assertions with particularity to clarify the ask on your settlement
offer.


My client counteroffers your settlement terms as follows:

- The parties shall file a joint notice of dismissal upon an email accepting the instant terms with the bankruptcy court. *See attached to be filed upon acceptance via email, which will be filed by my office.*
- Within seven days of an email accepting the instant terms, Parker shall dismiss with prejudice the pending claims against 2017-1 IH Borrower LP as to any asserted violations of the bankruptcy automatic stay. *See attached, as drafted for your convenience.*
  - In entering this settlement, Parker expressly stipulates that this settlement encompasses all purported violations of the bankruptcy automatic stay by 2017-1 IH Borrower LP, its employees, and its agents
- 2017-1 IH Borrower LP shall account and remit $7,000.00 to Parker and provide evidence of the same to Parker within ten business days of acceptance.
- Parker expressly stipulates that he shall vacate the subject Premises (known as 1149 Autumn Glen Way, Dacula, GA 30019)  on/before January 30, 2026, and that the Premises shall be abandoned as property of the bankruptcy estate upon discharge; this settlement agreement does not constitute a ratification or novation of the lease agreement for the subject Premises.
  - The security deposit for the subject Premises shall be treated in accordance with Georgia law subsequent to Parker vacating the Premises. See O.C.G.A. 44-7-30 – 44-7-37.
- Each party shall bear its own attorneys' fees in this action; to the extent any party may incur attorneys' fees in enforcing this settlement, the prevailing party is entitled to its costs and attorneys' fees in enforcing this settlement.


**Time is of the essence in this settlement offer** – should you fail to accept the foregoing terms via email by 12:00 p.m. EST on 12/30/2025, said offer shall automatically expire by its terms.


Thanks




**Matthew F. Totten**

***Managing Attorney***

**Phone** (404) 692-4342     **Email** mft@tottenfirm.com

**Mailing Address** 5579 Chamblee-Dunwoody Rd, Ste B-136, Atlanta, GA 30338

**Web** http://www.tottenfirm.com



**Notice**: This e-mail message and all attachments transmitted with it may contain legally privileged and confidential information intended solely for the use of the addressee. If the reader of this message is not the intended recipient, you are hereby notified that any reading, dissemination, distribution,

copying, or other use of this message or its attachments is strictly prohibited. If you have received this message in error, please notify the sender immediately by the telephone number listed above and delete this message and all copies and backups thereof. Thank you.

**From:** Curtis Parker <curtis.parker1776@gmail.com>
**Sent:** Monday, December 29, 2025 12:26 PM
**To:** Matthew Totten <mft@tottenfirm.com>
**Subject:** Re: Voice mail to Curtis Parker

Mr. Totten,

As per our communication last week, please see the attached letter which outlines Invitation Homes Stay Violations.

Regards,

Curtis Parker

On Sat, Dec 27, 2025 at 2:15 PM Matthew Totten <mft@tottenfirm.com> wrote:

Mr. Parker –

Respectfully, there is no coercion or implied undertone, or any other sort of 'condition' expressed.

I requested you specify the asserted bankruptcy violations and their corresponding dates to frame your offer to my client as well as ensure the terms of your offer were clear.

I look forward to hearing back from you regarding the specific terms of your offer #1, as previously requested.

Sincerely,



**Matthew F. Totten**

*Managing Attorney*

**Phone** (404) 692-4342    **Email** mft@tottenfirm.com

**Mailing Address** 5579 Chamblee-Dunwoody Rd, Ste B-136, Atlanta, GA 30338

**Web** http://www.tottenfirm.com



**Notice**: This e-mail message and all attachments transmitted with it may contain legally privileged and confidential information intended solely for the use of the addressee. If the reader of this message is not the intended recipient, you are hereby notified that any reading, dissemination, distribution, copying, or other use of this message or its attachments is strictly prohibited. If you have received this message in error, please notify the sender immediately by the telephone number listed above and delete this message and all copies and backups thereof. Thank you.

**From:** Curtis Parker <curtis.parker1776@gmail.com>
**Sent:** Friday, December 26, 2025 3:45 PM
**To:** Matthew Totten <mft@tottenfirm.com>
**Subject:** Re: Voice mail to Curtis Parker

Mr. Totten,

I write in response to your email below.

First, with respect to your request that I immediately dismiss my pending motions with prejudice, that request is rejected. There is no legal or factual basis requiring dismissal of asserted automatic stay violations, particularly where those violations have already occurred and are supported by documentary evidence.

Second, your statement that your client "believes there may be a basis" to object to the entirety of my Chapter 7 discharge under 11 U.S.C. § 727 is concerning and is viewed as retaliatory. The factual circumstances you reference—specifically any alleged Airbnb-related use—have been known to your client for several months, including prior to and during the creditors' meeting. Despite that knowledge, your client took no action, raised no objection, and continued to accept rent payments without issue. The evidence will reflect that your client knowingly acquiesced in the status quo so long as rent was being paid.

Any attempt to now weaponize the impending objection deadline to force dismissal of valid stay-violation claims will be presented to the Court for what it is: an improper and coercive tactic. If your client intends to pursue an objection to discharge, it should be based on good-faith factual and legal grounds—not as leverage to extinguish pending claims arising from its own misconduct.

With respect to your request for specificity, the automatic stay violations consist of repeated post-petition contacts and enforcement actions undertaken after notice of the bankruptcy filing. These violations are documented and will be presented in detail in the appropriate forum. I am under no obligation to condition enforcement of federal bankruptcy protections on withdrawal of those claims with prejudice.

Please ensure that your client has fully disclosed to you all pertinent facts regarding its prior knowledge, its acceptance of rent, and its decision not to act until faced with accountability for stay violations. Should your client proceed with an objection to discharge under these circumstances, that conduct will be addressed accordingly.

This correspondence is written in furtherance of resolution and an equitable settlement of this matter. Please advise what your client proposes to resolve the issues and bring this matter to rest. We are aware of your client's recent settlement with the FTC concerning conduct consistent with that outlined in our motions, and we remain open to an equitable resolution.

Regards,

Curtis Parker


On Fri, Dec 26, 2025 at 1:39 PM Matthew Totten <mft@tottenfirm.com> wrote:

Mr. Parker -


Can you specify each asserted bankruptcy violations and their corresponding dates to frame your offer #1?


Also, please be advised my client believes there may be a basis for it to object to the entirety of your bankruptcy discharge under 11 USC 727.


Because of the timeline to object to the discharge is very short (12/30), my client believes your motions against my client need to be dismissed with prejudice immediately.

If you are able to dismiss with prejudice the asserted automatic stay violations today, the foregoing may all be mooted.


Thanks


Get Outlook for iOS

---

**From:** Curtis Parker <curtis.parker1776@gmail.com>
**Sent:** Friday, December 26, 2025 1:27 PM
**To:** Matthew Totten <mft@tottenfirm.com>
**Subject:** Voice mail to Curtis Parker


External Sender - From: (Curtis Parker                                    Learn More
<curtis.parker1776@gmail.com>)
This message came from outside your organization.


Mr. Totten,

I am in receipt of your voicemail regarding the above-referenced matter.

At this time, I prefer that all communications occur in writing. This ensures clarity and avoids any misunderstanding, particularly given that the conduct at issue involves violations of the automatic stay while I was under the protection of Chapter 7 bankruptcy.

As you are aware, direct contact with a debtor during the pendency of a bankruptcy case may constitute a violation of 11 U.S.C. § 362. In an effort to resolve this matter efficiently and without further litigation, I am willing to discuss settlement under the following terms:

**Settlement Options**

1. **Monetary Resolution**
   Invitation Homes may elect to resolve this matter through payment of statutory damages in the amount of **$1,000 per violation of the automatic stay**, along with the **return of my full security deposit**, after which the parties would negotiate an agreed move-out date.

**OR**

2. **Lease Term Resolution**
Invitation Homes may agree to allow my household to **remain in the property through the end of the existing lease term (April 2026)** with no further interference. In exchange, I would withdraw all pending motions and pleadings related to the stay violations.

If Invitation Homes declines both options, I am prepared to continue litigating this matter and to present all available evidence in the appropriate forums, including evidence of repeated stay violations and any non-compliance with applicable federal agreements and consumer protection obligations.

This correspondence is made for settlement purposes only and is not a waiver of any rights, claims, or remedies available to me under bankruptcy law, federal law, or otherwise.

If your client wishes to discuss resolution, please respond in writing.

Regards,
Curtis Parker



**THE TOTTEN FIRM**
R E A L   E S T A T E   A T T O R N E Y S

2090 Dunwoody Club Dr, Ste 106-33, Atlanta, GA 30350

Matthew F. Totten, Esq.
Direct Dial: (404) 692-4342
Email: mft@tottenfirm.com

December 29, 2025

**VIA UPS (#1ZK056E90234680591) AND POSTING**

Curtis Parker, all others
1149 Autumn Glen Way
Dacula, GA 30019

RE:  Termination of Lease and Demand for Possession of 1149 Autumn Glen Way, hereinafter, the "Premises"

Dear Occupants:

Please be advised that this firm has been retained to represent **2017-1 IH Borrower LP** ("Landlord") regarding the Premises.

As you are aware, under the terms of the Lease for the Premises, your Lease specifically limits who may occupy the Premises as a tenant. See Lease, Sec. 2, 2.1. Only those persons identified within the Lease are authorized to reside at the Premises, and any person not specifically identified in the Lease who desire to reside therein must apply and notify Landlord. Id. Subletting or assignment of the Premises for others to reside therein is expressly barred under the Lease and serves as additional basis for default and termination of the Lease. Lease, Sec. 8. Notably, the prohibition against subletting the Premises is inclusive of any short-term rental of the Premises.

Any breach of the foregoing provisions authorizes Landlord to default and terminate you under the terms of the Lease for the Premises. See e.g. Lease, Sec. 12, 18.

As you know, you impermissibly – and without authorization – sublet and/or used the Premises as a short-term rental, as evidenced by your public history on a prominent short-term rental platform, AirBnB. See attachments included hereto.

Based on the foregoing, you are in default of the lease for the Premises. In light of the foregoing default, the Landlord herein elects to terminate your lease for the Premises. The Landlord resultingly demands immediate possession of the Property.

Please contact your Landlord to return your keys and schedule a move-out inspection. Should you fail to vacate the Premises, the Landlord will pursue all rights and remedies it may have under Georgia law,

including filing for an eviction against you as a tenant at sufferance.

The foregoing is not intended to be an exhaustive recitation of the entirety of your breaches of the Lease for the Premises, but instead is merely illustrative of one express basis to terminate the Lease for the Premises. Nothing in this letter shall be deemed a waiver of any of Landlord's rights or remedies under the Lease or Georgia law.


Sincerely,

THE TOTTEN FIRM, LLC

Matthew F. Totten, Esq.



https://www.airbnb.com/rooms/13550778637010946192location=Dacula%2C%20GA%203...

Parks - Houses for Rent in Dacula, Georgia, United States - Airbnb



airbnb

| Anywhere | Any week | Add guests |

⊕  ≡

⌃ Share   ♡ Save







Show all photos

Parks

https://www.airbnb.com/rooms/1355077863701094619?location=Dacula%2C%20GA%203...

# Entire home in Dacula, Georgia

6 guests · 3 bedrooms · 3 beds · 2 baths

🪺 Guest favorite 🪺 | One of the most loved homes on Airbnb, according to guests | **4.88** ★★★★★ | **41** Reviews

**Hosted by Curtis**

9 months hosting

⬚ Self check-in
Check yourself in with the keypad.

◇ Extra spacious
Guests love this home's spaciousness for a comfortable stay.

◎ Peace and quiet
Guests say this home is in a quiet area.

Some info has been automatically translated. **Show original**

Relax with the whole family at this peaceful place to stay.

## Add dates for prices

| CHECK-IN Add date | CHECKOUT Add date | ⟩ |

GUESTS
1 guest

**Check availability**

🚩 Report this listing

Parks - Houses for Rent in Dacula, Georgia, United States - Airbnb

https://www.airbnb.com/rooms/1355077863701094619?location=Dacula%2C%20GA%203...

Parks - Houses for Rent in Dacula, Georgia, United States - Airbnb

12/22/2025, 10:38 PM

## Where you'll sleep

1 / 2





**Bedroom 1**
1 king bed

**Bedroom 2**
1 queen bed

## What this place offers

Kitchen

Wifi

Free parking on premises

Pets allowed

TV

https://www.airbnb.com/rooms/13550778637010946119?location=Dacula%2C%20GA%203...

Parks - Houses for Rent in Dacula, Georgia, United States - Airbnb

12/22/2025, 10:38 PM

4 of 9

Washer

Free dryer

Air conditioning

Indoor fireplace

Exterior security cameras on property

**Show all 21 amenities**

# Select check-in date

Add your travel dates for exact pricing

**December 2025**

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 |   |   |   |

**January 2026**

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 |

https://www.airbnb.com/rooms/135507786370109461?location=Dacula%2C%20GA%203...
Parks - Houses for Rent in Dacula, Georgia, United States - Airbnb
12/22/2025, 10:38 PM
5 of 9

Clear dates



# 4.88

## Guest favorite

This home is a guest favorite based on ratings, reviews, and reliability

| Overall rating | Cleanliness | Accuracy | Check-in | Communication | Location | Value |
|---|---|---|---|---|---|---|
| 5 | 4.8 | 4.9 | 5.0 | 4.9 | 5.0 | 4.8 |
| 4 | | | | | | |
| 3 | | | | | | |
| 2 | | | | | | |
| 1 | | | | | | |

**Tram**
4 years on Airbnb

★★★★★ · 1 day ago · Group trip

Great stay! The place was very clean, comfortable, and

**Shaneika**
Grovetown, Georgia

★★★★★ · 2 weeks ago · Stayed one night

This home was a great fit for my close friends and I. It



was peaceful, pleasant, and beautiful. We felt safe and comfortable for our one night stay.

exactly as described. The host was friendly and responsive. Would definitely stay again.



**Jodie**
Hoschton, Georgia

★★★★★ · 4 weeks ago · Stayed a few nights

This home was perfect and Curtis was very responsive. It was near everything including shopping, I-85, Mall of Georgia, restaurants, etc. The house was spotless an...

Show more

**Sharon**
Taylors, South Carolina

★★★★★ · 1 week ago · Stayed one night

Great space for a girlfriend weekend getaway. Extremely clean and spacious. Highly recommend, we would stay there again.



**Cortney**
Chapin, South Carolina

★★★★★ · 3 weeks ago · Group trip

Sweet house in a quiet established neighborhood. We appreciated that there were plenty of bathroom linens and hot water. The huge tv was a hit with our teens. A...

Show more

**Kimberly**
Greenville, South Carolina

★★★★☆ · November 2025 · Stayed with a pet

Very spacious home in nice neighborhood. Great fenced yard for pets. It is listed as no essentials and that is the case. Also, no extra linens, pillows, blankets...

Show more

Show all 41 reviews    How reviews work

# Where you'll be

https://www.airbnb.com/rooms/1355077863701094619?location=Dacula%2C%20GA%203...

Parks - Houses for Rent in Dacula, Georgia, United States - Airbnb

Dacula, Georgia, United States

## Meet your host

**Curtis**
Host

**41**
Reviews

**4.88★**
Rating

**9**
Months hosting

## Host details

Response rate: 100%
Responds within an hour

**Message host**

 To help protect your payment, always use Airbnb to send money and communicate with hosts.

## Things to know

**Cancellation policy**
Add your trip dates to get the
cancellation details for this stay.
Add dates

**House rules**
Check-in after 3:00 PM
Checkout before 11:00 AM
6 guests maximum
Learn more

**Safety & property**
Exterior security cameras on property
Carbon monoxide alarm
Smoke alarm
Learn more

Airbnb › United States › Georgia › Gwinnett County



## Support

Help Center

Get help with a safety issue

AirCover

Travel insurance

Anti-discrimination

Disability support

Cancellation options

Report neighborhood concern

## Hosting

Airbnb your home

Airbnb your experience

Airbnb your service

AirCover for Hosts

Hosting resources

Community forum

Hosting responsibly

Airbnb-friendly apartments

Join a free Hosting class

Find a co-host

Refer a host

## Airbnb

2025 Summer Release

Newsroom

Careers

Investors

Gift cards

Airbnb.org emergency stays

© 2025 Airbnb, Inc. · Privacy · Terms · Your Privacy Choices

⊕ English (US)    $ USD

**Matthew Totten**

| | |
|---|---|
| **From:** | Matthew Totten |
| **Sent:** | Friday, January 9, 2026 9:36 PM |
| **To:** | Curtis Parker |
| **Subject:** | RE: Voice mail to Curtis Parker |
| **Attachments:** | t0317101_ResLedger.PDF |

Mr. Parker –

Thank you for the email – it was a very hectic day today so only am able to circle back now.

Pursuant to the settlement, please see the attached accounting reflecting the application of a $7,000.00 credit to your account. As you can also see within the attached ledger, based on your filing of bankruptcy on 9/29/25, the credit addresses a substantial portion of your post-petition rental obligations which would not otherwise be discharged in the course of bankruptcy. Prior to the credit, the ledger reflects an amount of $13,884.27, of which $2,787.38 being pre-petition and $11,096.89 being post-petition.

Thanks,



**Matthew F. Totten**
*Managing Attorney*

**Phone** (404) 692-4342    **Email** mft@tottenfirm.com
**Mailing Address** 5579 Chamblee-Dunwoody Rd, Ste B-136, Atlanta, GA 30338
**Web** http://www.tottenfirm.com


**Notice**: This e-mail message and all attachments transmitted with it may contain legally privileged and confidential information intended solely for the use of the addressee. If the reader of this message is not the intended recipient, you are hereby notified that any reading, dissemination, distribution, copying, or other use of this message or its attachments is strictly prohibited. If you have received this message in error, please notify the sender immediately by the telephone number listed above and delete this message and all copies and backups thereof. Thank you.

**From:** Curtis Parker <curtis.parker1776@gmail.com>
**Sent:** Friday, January 9, 2026 7:46 AM
**To:** Matthew Totten <mft@tottenfirm.com>
**Subject:** Re: Voice mail to Curtis Parker

**External Sender** - From: (Curtis Parker <curtis.parker1776@gmail.com>)
This message came from outside your organization.                                    Learn More

Good morning Mr.Totten,
I was wanting to confirm that I should expect funds/ check to be delivered today?  I believe per the settlement agreement today would be the 10th day.
Thanks
Sent from my iPhone

On Jan 6, 2026, at 11:16 AM, Curtis Parker <curtis.parker1776@gmail.com> wrote:

Thank you,
I will file by 3:00 pm today
Sent from my iPhone

> On Jan 6, 2026, at 11:14 AM, Matthew Totten <mft@tottenfirm.com> wrote:
>
> Yes, you will need to file the dismissal - the court's electronic system will not let me file the dismissal for you
>
> Thanks
>
> Get Outlook for iOS
> ───────────────────
> **From:** Curtis Parker <curtis.parker1776@gmail.com>
> **Sent:** Tuesday, January 6, 2026 11:12:31 AM
> **To:** Matthew Totten <mft@tottenfirm.com>
> **Subject:** Re: Voice mail to Curtis Parker
>
> Hello Mr. Totten,
> I was under the impression your last filing reflected that, I can go to court house today and file the required documents. Please advise..
>
> Thanks
> Sent from my iPhone
>
>> On Jan 6, 2026, at 10:31 AM, Matthew Totten <mft@tottenfirm.com> wrote:
>>
>> Mr. Parker –
>>
>> Good morning; I wanted to follow up with you regarding the status of your filing the document previously drafted/circulated within the accepted settlement / bullet point #2.
>>
>> Thanks in advance,
>>
>> <image001.png>
>>
>> **Matthew F. Totten**
>> *Managing Attorney*
>>
>> **Phone** (404) 692-4342    **Email** mft@tottenfirm.com
>> **Mailing Address** 5579 Chamblee-Dunwoody Rd, Ste B-136, Atlanta, GA 30338
>> **Web** http://www.tottenfirm.com
>> <image002.png>
>>
>> **Notice**: This e-mail message and all attachments transmitted with it may contain legally privileged and confidential information intended solely for the use of the addressee. If the

reader of this message is not the intended recipient, you are hereby notified that any reading, dissemination, distribution, copying, or other use of this message or its attachments is strictly prohibited. If you have received this message in error, please notify the sender immediately by the telephone number listed above and delete this message and all copies and backups thereof. Thank you.

**From:** Curtis Parker <curtis.parker1776@gmail.com>
**Sent:** Monday, December 29, 2025 5:09 PM
**To:** Matthew Totten <mft@tottenfirm.com>
**Subject:** Re: Voice mail to Curtis Parker

Good evening Mr. Totten,

After careful review, I accept the counter offer from your client, Invitation Homes. I have also reviewed the attached document to be filed with the court and am approving.

Thank you for your prompt attention to this matter.

Regards,

Curtis Parker.

On Monday, December 29, 2025, Matthew Totten <mft@tottenfirm.com> wrote:

FOR PURPOSES OF SETTLEMENT AND COMPROMISE

Mr. Parker –

Thank you again for breaking out your assertions with particularity to clarify the ask on your settlement offer.

My client counteroffers your settlement terms as follows:

- The parties shall file a joint notice of dismissal upon an email accepting the instant terms with the bankruptcy court. *See attached to be filed upon acceptance via email, which will be filed by my office*.
- Within seven days of an email accepting the instant terms, Parker shall dismiss with prejudice the pending claims against 2017-1 IH Borrower LP as to any asserted violations of the bankruptcy automatic stay. *See attached, as drafted for your convenience*.
  - In entering this settlement, Parker expressly stipulates that this settlement encompasses all purported violations of the bankruptcy

automatic stay by 2017-1 IH Borrower LP, its employees, and its agents

- 2017-1 IH Borrower LP shall account and remit $7,000.00 to Parker and provide evidence of the same to Parker within ten business days of acceptance.
- Parker expressly stipulates that he shall vacate the subject Premises (known as 1149 Autumn Glen Way, Dacula, GA 30019) on/before January 30, 2026, and that the Premises shall be abandoned as property of the bankruptcy estate upon discharge; this settlement agreement does not constitute a ratification or novation of the lease agreement for the subject Premises.
    - The security deposit for the subject Premises shall be treated in accordance with Georgia law subsequent to Parker vacating the Premises. See O.C.G.A. 44-7-30 – 44-7-37.
- Each party shall bear its own attorneys' fees in this action; to the extent any party may incur attorneys' fees in enforcing this settlement, the prevailing party is entitled to its costs and attorneys' fees in enforcing this settlement.

**Time is of the essence in this settlement offer** – should you fail to accept the foregoing terms via email by 12:00 p.m. EST on 12/30/2025, said offer shall automatically expire by its terms.

Thanks



**Matthew F. Totten**
*Managing Attorney*

**Phone** (404) 692-4342    **Email** mft@tottenfirm.com
**Mailing Address** 5579 Chamblee-Dunwoody Rd, Ste B-136, Atlanta, GA 30338
**Web** http://www.tottenfirm.com
<image002.png>

**Notice**: This e-mail message and all attachments transmitted with it may contain legally privileged and confidential information intended solely for the use of the addressee. If the reader of this message is not the intended recipient, you are hereby notified that any reading, dissemination, distribution, copying, or other use of this message or its attachments is strictly prohibited. If you have received this message in error, please notify the sender immediately by the telephone number listed above and delete this message and all copies and backups thereof. Thank you.

**From:** Curtis Parker <curtis.parker1776@gmail.com>
**Sent:** Monday, December 29, 2025 12:26 PM
**To:** Matthew Totten <mft@tottenfirm.com>
**Subject:** Re: Voice mail to Curtis Parker

Mr. Totten,

As per our communication last week, please see the attached letter which outlines Invitation Homes Stay Violations.

Regards,

Curtis Parker

On Sat, Dec 27, 2025 at 2:15 PM Matthew Totten <mft@tottenfirm.com> wrote:

Mr. Parker –

Respectfully, there is no coercion or implied undertone, or any other sort of 'condition' expressed.

I requested you specify the asserted bankruptcy violations and their corresponding dates to frame your offer to my client as well as ensure the terms of your offer were clear.

I look forward to hearing back from you regarding the specific terms of your offer #1, as previously requested.

Sincerely,

<image001.png>

**Matthew F. Totten**
*Managing Attorney*

**Phone** (404) 692-4342    **Email** mft@tottenfirm.com
**Mailing Address** 5579 Chamblee-Dunwoody Rd, Ste B-136, Atlanta, GA 30338
**Web** http://www.tottenfirm.com
<image002.png>

Notice: This e-mail message and all attachments transmitted with it may contain legally privileged and confidential information intended solely for the use of the addressee. If the reader of this message is not the intended recipient, you are hereby notified that any reading, dissemination, distribution, copying, or other use of this message or its attachments is strictly prohibited. If you have received this message in error, please notify the sender immediately by the telephone number listed above and delete this message and all copies and backups thereof. Thank you.

**From:** Curtis Parker <curtis.parker1776@gmail.com>
**Sent:** Friday, December 26, 2025 3:45 PM
**To:** Matthew Totten <mft@tottenfirm.com>
**Subject:** Re: Voice mail to Curtis Parker

Mr. Totten,

I write in response to your email below.

First, with respect to your request that I immediately dismiss my pending motions with prejudice, that request is rejected. There is no legal or factual basis requiring dismissal of asserted automatic stay violations, particularly where those violations have already occurred and are supported by documentary evidence.

Second, your statement that your client "believes there may be a basis" to object to the entirety of my Chapter 7 discharge under 11 U.S.C. § 727 is concerning and is viewed as retaliatory. The factual circumstances you reference—specifically any alleged Airbnb-related use—have been known to your client for several months, including prior to and during the creditors' meeting. Despite that knowledge, your client took no action, raised no objection, and continued to accept rent payments without issue. The evidence will reflect that your client knowingly acquiesced in the status quo so long as rent was being paid.

Any attempt to now weaponize the impending objection deadline to force dismissal of valid stay-violation claims will be presented to the Court for what it is: an improper and coercive tactic. If your client intends to pursue an objection to discharge, it should be based on good-faith factual and legal grounds—not as leverage to extinguish pending claims arising from its own misconduct.

With respect to your request for specificity, the automatic stay violations consist of repeated post-petition contacts and enforcement actions undertaken after notice of the bankruptcy filing. These violations are documented and will be presented in detail in the appropriate forum. I am under no obligation to condition enforcement of federal bankruptcy protections on withdrawal of those claims with prejudice.

Please ensure that your client has fully disclosed to you all pertinent facts regarding its prior knowledge, its acceptance of rent, and its decision not to act until faced with accountability for stay violations. Should your client proceed with an objection to discharge under these circumstances, that conduct will be addressed accordingly.

 This correspondence is written in furtherance of resolution and an equitable settlement of this matter. Please advise what your client proposes to resolve the issues and bring this matter to rest. We are aware of your client's recent settlement with the FTC concerning conduct consistent with

that outlined in our motions, and we remain open to an equitable resolution.

Regards,

Curtis Parker

On Fri, Dec 26, 2025 at 1:39 PM Matthew Totten <mft@tottenfirm.com> wrote:

> Mr. Parker -
>
> Can you specify each asserted bankruptcy violations and their corresponding dates to frame your offer #1?
>
> Also, please be advised my client believes there may be a basis for it to object to the entirety of your bankruptcy discharge under 11 USC 727.
>
> Because of the timeline to object to the discharge is very short (12/30), my client believes your motions against my client need to be dismissed with prejudice immediately.
>
> If you are able to dismiss with prejudice the asserted automatic stay violations today, the foregoing may all be mooted.
>
> Thanks
>
> Get Outlook for iOS
>
> ---
>
> **From:** Curtis Parker <curtis.parker1776@gmail.com>
> **Sent:** Friday, December 26, 2025 1:27 PM
> **To:** Matthew Totten <mft@tottenfirm.com>
> **Subject:** Voice mail to Curtis Parker
>
> External Sender - From: (Curtis Parker <curtis.parker1776@gmail.com>)
> This message came from outside your organization.
>
> Mr. Totten,
>
> I am in receipt of your voicemail regarding the above-referenced matter.

At this time, I prefer that all communications occur in writing. This ensures clarity and avoids any misunderstanding, particularly given that the conduct at issue involves violations of the automatic stay while I was under the protection of Chapter 7 bankruptcy.

As you are aware, direct contact with a debtor during the pendency of a bankruptcy case may constitute a violation of 11 U.S.C. § 362. In an effort to resolve this matter efficiently and without further litigation, I am willing to discuss settlement under the following terms:

**Settlement Options**

1. **Monetary Resolution**
   Invitation Homes may elect to resolve this matter through payment of statutory damages in the amount of **$1,000 per violation of the automatic stay**, along with the **return of my full security deposit**, after which the parties would negotiate an agreed move-out date.

**OR**

2. **Lease Term Resolution**
   Invitation Homes may agree to allow my household to **remain in the property through the end of the existing lease term (April 2026)** with no further interference. In exchange, I would withdraw all pending motions and pleadings related to the stay violations.

If Invitation Homes declines both options, I am prepared to continue litigating this matter and to present all available evidence in the appropriate forums, including evidence of repeated stay violations and any non-compliance with applicable federal agreements and consumer protection obligations.

This correspondence is made for settlement purposes only and is not a waiver of any rights, claims, or remedies available to me under bankruptcy law, federal law, or otherwise.

If your client wishes to discuss resolution, please respond in writing.

Regards,
Curtis Parker

**Resident Ledger**



**Date: 01/09/2026**

| Code | t0317101 | Property | 10105318 | Lease From | 04/13/2025 |
|------|----------|----------|----------|------------|------------|
| Name | Curtis Parker | Unit | 10105318 | Lease To | 04/12/2026 |
| Address | 1149 Autumn Glen Way | Status | Eviction | Move In | 04/13/2023 |
| | | Rent | 2408.00 | Move Out | 01/30/2026 |
| City | Dacula, GA 30019 | Phone (H) | (770) 369-6521 | Phone (W) | |

| Date | Chg Code | Description | Charge | Payment | Balance | Chg/Rec |
|------|----------|-------------|--------|---------|---------|---------|
| 03/04/2023 | appfee | Application Charges (Curtis Parker) | 50.00 | | 50.00 | 29756637 |
| 03/04/2023 | | chk# 176933067 Credit Card On-Line Payment ; Web - Online Leasing | | 50.00 | 0.00 | 9554025 |
| 03/05/2023 | holdfee | Pre-Lease Hold Fee | 500.00 | | 500.00 | 29765229 |
| 03/07/2023 | | chk# 177388992 Debit Card On-Line Payment ; Web - Online Leasing | | 500.00 | 0.00 | 9566017 |
| 04/12/2023 | deposit | Security Deposit | 2,241.00 | | 2,241.00 | 30643816 |
| 04/12/2023 | movein | Move in Funds | 924.57 | | 3,165.57 | 30644148 |
| 04/12/2023 | | chk# 182075391 Debit Card On-Line Payment ; Web - Online Leasing | | 2,241.00 | 924.57 | 9843310 |
| 04/12/2023 | | chk# 182075392 Debit Card On-Line Payment ; Web - Online Leasing | | 924.57 | 0.00 | 9843311 |
| 04/13/2023 | movein | Move-In Funds | (924.57) | | (924.57) | 30660850 |
| 04/13/2023 | rent | Rent for 18 days :Reversed by Charge Ctrl# 30660870 | 1,281.00 | | 356.43 | 30660851 |
| 04/13/2023 | smtreng2 | Smart Home Fee w/ Video Doorbell for 18 days | 24.00 | | 380.43 | 30660852 |
| 04/13/2023 | filter | HVAC Filter Fee for 18 days | 5.97 | | 386.40 | 30660853 |
| 04/13/2023 | admin | Administrative Setup Fee | 50.00 | | 436.40 | 30660854 |
| 04/13/2023 | holdfee | Pre-Lease Hold Fee - Reallocated to rent | (500.00) | | (63.60) | 30660855 |
| 04/14/2023 | rent | rent: Corrected prorated rent | 1,344.60 | | 1,281.00 | 30660864 |
| 04/14/2023 | rent | :Reverse Charge Ctrl#30660851 Incorrect Prorated Rent | (1,281.00) | | 0.00 | 30660870 |
| 04/27/2023 | | chk# 183048458 Debit Card On-Line Payment ; Mobile Web - Resident Services | | 2,290.95 | (2,290.95) | 9918570 |
| 05/01/2023 | rent | Resident Rent (05/2023) | 2,241.00 | | (49.95) | 31109418 |
| 05/01/2023 | smtreng2 | Smart Home Fee w/ Video Doorbell (05/2023) | 40.00 | | (9.95) | 31109419 |
| 05/01/2023 | filter | HVAC Filter (05/2023) | 9.95 | | 0.00 | 31109420 |
| 06/01/2023 | rent | Resident Rent (06/2023) | 2,241.00 | | 2,241.00 | 31945594 |
| 06/01/2023 | smtreng2 | Smart Home Fee w/ Video Doorbell (06/2023) | 40.00 | | 2,281.00 | 31945595 |
| 06/01/2023 | filter | HVAC Filter (06/2023) | 9.95 | | 2,290.95 | 31945596 |
| 06/04/2023 | late | Late Fee, 10% of $2241.00 | 224.10 | | 2,515.05 | 32246647 |
| 06/04/2023 | | chk# 189748264 Debit Card On-Line Payment ; Mobile Web - Resident Services | | 2,290.95 | 224.10 | 10262432 |
| 06/07/2023 | | chk# 190358050 Debit Card On-Line Payment ; Mobile Web - Resident Services | | 224.10 | 0.00 | 10285233 |
| 07/01/2023 | utlsetup | Acct. Setup | 25.00 | | 25.00 | 32398453 |
| 07/01/2023 | utlsetup | Service Fee | 9.95 | | 34.95 | 32398454 |
| 07/01/2023 | utlsewcb | Sewer - 04/13/23-05/04/23 | 25.03 | | 59.98 | 32398455 |
| 07/01/2023 | utlgascb | Vacant Gas - 04/13/23-04/28/23 | 24.80 | | 84.78 | 32398456 |
| 07/01/2023 | utlsetup | Vacant Service Fee - 04/13/23-04/28/23 | 25.00 | | 109.78 | 32398457 |
| 07/01/2023 | utlwatcb | Water - 04/13/23-05/04/23 | 17.31 | | 127.09 | 32398458 |
| 07/01/2023 | rent | Resident Rent (07/2023) | 2,241.00 | | 2,368.09 | 32792927 |
| 07/01/2023 | smtreng2 | Smart Home Fee w/ Video Doorbell (07/2023) | 40.00 | | 2,408.09 | 32792928 |
| 07/01/2023 | filter | HVAC Filter (07/2023) | 9.95 | | 2,418.04 | 32792929 |
| 07/03/2023 | | chk# :ACH-WEB Online Payment - EFT Payment. Mobile Web - Resident Services | | 2,418.04 | 0.00 | 10498026 |
| 08/01/2023 | utlsetup | Service Fee | 9.95 | | 9.95 | 33252167 |
| 08/01/2023 | utlsewcb | Sewer - 05/05/23-06/06/23 | 55.31 | | 65.26 | 33252168 |
| 08/01/2023 | utlgascb | Vacant Gas - 04/28/23-05/30/23 | 54.92 | | 120.18 | 33252169 |
| 08/01/2023 | utlsetup | Vacant Service Fee - 04/28/23-05/30/23 | 25.00 | | 145.18 | 33252170 |
| 08/01/2023 | utlwatcb | Water - 05/05/23-06/06/23 | 36.41 | | 181.59 | 33252171 |

| Date | Code | Description | Charges | Payments | Balance | ID |
|---|---|---|---|---|---|---|
| 08/01/2023 | filter | HVAC Filter (08/2023) | 9.95 | | 2,472.54 | 33657265 |
| 08/03/2023 | | chk# :ACH-WEB Online Payment - EFT Payment. Mobile Web - Resident Services | | 2,472.54 | 0.00 | 10758272 |
| 09/01/2023 | utlsetup | Service Fee | 9.95 | | 9.95 | 34114801 |
| 09/01/2023 | utlsewcb | Sewer - 06/07/23-07/07/23 | 46.29 | | 56.24 | 34114802 |
| 09/01/2023 | utlgascb | Vacant Gas - 05/30/23-06/30/23 | 48.99 | | 105.23 | 34114803 |
| 09/01/2023 | utlsetup | Vacant Service Fee - 05/30/23-06/30/23 | 25.00 | | 130.23 | 34114804 |
| 09/01/2023 | utlwatcb | Water - 06/07/23-07/07/23 | 30.88 | | 161.11 | 34114805 |
| 09/01/2023 | rent | Resident Rent (09/2023) | 2,241.00 | | 2,402.11 | 34501736 |
| 09/01/2023 | smtreng2 | Smart Home Fee w/ Video Doorbell (09/2023) | 40.00 | | 2,442.11 | 34501737 |
| 09/01/2023 | filter | HVAC Filter (09/2023) | 9.95 | | 2,452.06 | 34501738 |
| 09/03/2023 | | chk# :ACH-WEB Online Payment - EFT Payment. Mobile Web - Resident Services | | 2,452.06 | 0.00 | 10996734 |
| 10/01/2023 | utlsetup | Service Fee | 9.95 | | 9.95 | 34932938 |
| 10/01/2023 | utlsewcb | Sewer - 07/08/23-08/07/23 | 42.68 | | 52.63 | 34932939 |
| 10/01/2023 | utlgascb | Vacant Gas - 06/30/23-07/28/23 | 46.60 | | 99.23 | 34932940 |
| 10/01/2023 | utlsetup | Vacant Service Fee - 06/30/23-07/28/23 | 25.00 | | 124.23 | 34932941 |
| 10/01/2023 | utlwatcb | Water - 07/08/23-08/07/23 | 28.67 | | 152.90 | 34932942 |
| 10/01/2023 | filter | HVAC Filter (10/2023) | 9.95 | | 162.85 | 35362503 |
| 10/01/2023 | smtreng2 | Smart Home Fee w/ Video Doorbell (10/2023) | 40.00 | | 202.85 | 35362504 |
| 10/01/2023 | rent | Resident Rent (10/2023) | 2,241.00 | | 2,443.85 | 35362505 |
| 10/02/2023 | | chk# :ACH-WEB Online Payment - EFT Payment. Mobile Web - Resident Services | | 2,443.85 | 0.00 | 11221012 |
| 11/01/2023 | utlsetup | Service Fee | 9.95 | | 9.95 | 35837394 |
| 11/01/2023 | utlsewcb | Sewer - 08/08/23-09/07/23 | 34.56 | | 44.51 | 35837395 |
| 11/01/2023 | utlgascb | Vacant Gas - 07/28/23-08/30/23 | 47.83 | | 92.34 | 35837396 |
| 11/01/2023 | utlsetup | Vacant Service Fee - 07/28/23-08/30/23 | 25.00 | | 117.34 | 35837397 |
| 11/01/2023 | utlwatcb | Water - 08/08/23-09/07/23 | 23.69 | | 141.03 | 35837398 |
| 11/01/2023 | rent | Resident Rent (11/2023) | 2,241.00 | | 2,382.03 | 36210553 |
| 11/01/2023 | smtreng2 | Smart Home Fee w/ Video Doorbell (11/2023) | 40.00 | | 2,422.03 | 36210554 |
| 11/01/2023 | filter | HVAC Filter (11/2023) | 9.95 | | 2,431.98 | 36210555 |
| 11/03/2023 | | chk# :ACH-WEB Online Payment - EFT Payment. Web - Resident Services | | 2,431.98 | 0.00 | 11481334 |
| 12/01/2023 | utlsetup | Service Fee | 9.95 | | 9.95 | 36671798 |
| 12/01/2023 | utlsewcb | Sewer - 09/08/23-10/05/23 | 48.99 | | 58.94 | 36671799 |
| 12/01/2023 | utlgascb | Vacant Gas - 08/30/23-09/27/23 | 49.12 | | 108.06 | 36671800 |
| 12/01/2023 | utlsetup | Vacant Service Fee - 08/30/23-09/27/23 | 25.00 | | 133.06 | 36671801 |
| 12/01/2023 | utlwatcb | Water - 09/08/23-10/05/23 | 32.54 | | 165.60 | 36671802 |
| 12/01/2023 | rent | Resident Rent (12/2023) | 2,241.00 | | 2,406.60 | 37045135 |
| 12/01/2023 | filter | HVAC Filter (12/2023) | 9.95 | | 2,416.55 | 37045136 |
| 12/01/2023 | smtreng2 | Smart Home Fee w/ Video Doorbell (12/2023) | 40.00 | | 2,456.55 | 37045137 |
| 12/02/2023 | | chk# :ACH-WEB Online Payment - EFT Payment. Mobile Web - Resident Services | | 2,456.55 | 0.00 | 11691591 |
| 01/01/2024 | utlsetup | Service Fee | 9.95 | | 9.95 | 37510944 |
| 01/01/2024 | utlsewcb | Sewer - 10/06/23-11/02/23 | 41.78 | | 51.73 | 37510945 |
| 01/01/2024 | utlgascb | Vacant Gas - 09/27/23-10/27/23 | 53.36 | | 105.09 | 37510946 |
| 01/01/2024 | utlsetup | Vacant Service Fee - 09/27/23-10/27/23 | 25.00 | | 130.09 | 37510947 |
| 01/01/2024 | utlwatcb | Water - 10/06/23-11/02/23 | 28.11 | | 158.20 | 37510948 |
| 01/01/2024 | filter | HVAC Filter (01/2024) | 9.95 | | 168.15 | 37891021 |
| 01/01/2024 | smtreng2 | Smart Home Fee w/ Video Doorbell (01/2024) | 40.00 | | 208.15 | 37892785 |
| 01/01/2024 | rent | Resident Rent (01/2024) | 2,241.00 | | 2,449.15 | 37892877 |
| 01/03/2024 | | chk# :ACH-WEB Online Payment - EFT Payment. Mobile Web - Resident Services | | 2,449.15 | 0.00 | 11914006 |
| 02/01/2024 | utlsetup | Service Fee | 9.95 | | 9.95 | 38402402 |
| 02/01/2024 | utlsewcb | Sewer - 11/03/23-12/05/23 | 47.19 | | 57.14 | 38402403 |
| 02/01/2024 | utlgascb | Vacant Gas - 10/27/23-11/30/23 | 99.83 | | 156.97 | 38402404 |
| 02/01/2024 | utlsetup | Vacant Service Fee - 10/27/23-11/30/23 | 25.00 | | 181.97 | 38402405 |
| 02/01/2024 | utlwatcb | Water - 11/03/23-12/05/23 | 31.43 | | 213.40 | 38402406 |
| 02/01/2024 | rent | Resident Rent (02/2024) | 2,241.00 | | 2,454.40 | 38791845 |
| 02/01/2024 | smtreng2 | Smart Home Fee w/ Video Doorbell (02/2024) | 40.00 | | 2,494.40 | 38791846 |
| 02/01/2024 | filter | HVAC Filter (02/2024) | 9.95 | | 2,504.35 | 38791847 |

| Date | Code | Description | Charge | Payment | Balance | Ref |
|---|---|---|---|---|---|---|
| 03/01/2024 | utlsetup | Service Fee | 9.95 | | 9.95 | 39314947 |
| 03/01/2024 | utlsewcb | Sewer - 12/06/23-01/05/24 | | | 57.14 | 39314948 |
| 03/01/2024 | utlgascb | Vacant Gas - 11/30/23-12/29/23 | 141.62 | | 198.76 | 39314949 |
| 03/01/2024 | utlsetup | Vacant Service Fee - 11/30/23-12/29/23 | 25.00 | | 223.76 | 39314950 |
| 03/01/2024 | utlwatcb | Water - 12/06/23-01/05/24 | 31.43 | | 255.19 | 39314951 |
| 03/01/2024 | rent | Resident Rent (03/2024) | 2,241.00 | | 2,496.19 | 39762250 |
| 03/01/2024 | smtreng2 | Smart Home Fee w/ Video Doorbell (03/2024) | 40.00 | | 2,536.19 | 39762251 |
| 03/01/2024 | filter | HVAC Filter (03/2024) | 9.95 | | 2,546.14 | 39762252 |
| 03/03/2024 | | chk# :ACH-WEB Online Payment - EFT Payment. Mobile Web - Resident Services | | 2,546.14 | 0.00 | 12533457 |
| 04/01/2024 | utlsetup | Service Fee | 9.95 | | 9.95 | 40227683 |
| 04/01/2024 | utlsewcb | Sewer - 01/06/24-02/05/24 | 44.48 | | 54.43 | 40227684 |
| 04/01/2024 | utlgascb | Vacant Gas - 12/29/23-01/30/24 | 201.83 | | 256.26 | 40227685 |
| 04/01/2024 | utlsetup | Vacant Service Fee - 12/29/23-01/30/24 | 25.00 | | 281.26 | 40227686 |
| 04/01/2024 | utlwatcb | Water - 01/06/24-02/05/24 | 29.77 | | 311.03 | 40227687 |
| 04/01/2024 | rent | Resident Rent (04/2024) 12 days | 896.40 | | 1,207.43 | 40703971 |
| 04/01/2024 | rent | Resident Rent (04/2024) 18 days | 1,444.80 | | 2,652.23 | 40703972 |
| 04/01/2024 | smtreng2 | Smart Home Fee w/ Video Doorbell (04/2024) | 40.00 | | 2,692.23 | 40703973 |
| 04/01/2024 | filter | HVAC Filter (04/2024) | 9.95 | | 2,702.18 | 40703974 |
| 04/03/2024 | | chk# 234087226 Debit Card On-Line Payment ; Web - Resident Services | | 2,702.18 | 0.00 | 12818029 |
| 05/01/2024 | utlsetup | Service Fee | 9.95 | | 9.95 | 41198686 |
| 05/01/2024 | utlsewcb | Sewer - 02/06/24-03/05/24 | 40.87 | | 50.82 | 41198687 |
| 05/01/2024 | utlgascb | Vacant Gas - 01/30/24-02/29/24 | 138.13 | | 188.95 | 41198688 |
| 05/01/2024 | utlsetup | Vacant Service Fee - 01/30/24-02/29/24 | 25.00 | | 213.95 | 41198689 |
| 05/01/2024 | utlwatcb | Water - 02/06/24-03/05/24 | 27.56 | | 241.51 | 41198690 |
| 05/01/2024 | filter | HVAC Filter (05/2024) | 9.95 | | 251.46 | 41674276 |
| 05/01/2024 | smtreng2 | Smart Home Fee w/ Video Doorbell (05/2024) | 40.00 | | 291.46 | 41674277 |
| 05/01/2024 | rent | Resident Rent (05/2024) | 2,408.00 | | 2,699.46 | 41674278 |
| 05/03/2024 | | chk# 238482351 Debit Card On-Line Payment ; Web - Resident Services | | 2,699.46 | 0.00 | 13071934 |
| 06/01/2024 | utlsetup | Service Fee | 9.95 | | 9.95 | 42165020 |
| 06/01/2024 | utlsewcb | Sewer - 03/06/24-04/03/24 | 47.19 | | 57.14 | 42165021 |
| 06/01/2024 | utlgascb | Vacant Gas - 02/29/24-03/28/24 | 89.10 | | 146.24 | 42165022 |
| 06/01/2024 | utlsetup | Vacant Service Fee - 02/29/24-03/28/24 | 25.00 | | 171.24 | 42165023 |
| 06/01/2024 | utlwatcb | Water - 03/06/24-04/03/24 | 31.43 | | 202.67 | 42165024 |
| 06/01/2024 | rent | Resident Rent (06/2024) | 2,408.00 | | 2,610.67 | 42658618 |
| 06/01/2024 | smtreng2 | Smart Home Fee w/ Video Doorbell (06/2024) | 40.00 | | 2,650.67 | 42658619 |
| 06/01/2024 | filter | HVAC Filter (06/2024) | 9.95 | | 2,660.62 | 42658620 |
| 06/03/2024 | | chk# :ACH-WEB Online Payment - EFT Payment. Mobile Web - Resident Services | | 2,660.62 | 0.00 | 13317636 |
| 07/01/2024 | utlsetup | Service Fee | 9.95 | | 9.95 | 43196373 |
| 07/01/2024 | utlsewcb | Sewer - 04/04/24-05/03/24 | 47.19 | | 57.14 | 43196374 |
| 07/01/2024 | utlgascb | Vacant Gas - 03/28/24-04/30/24 | 73.06 | | 130.20 | 43196375 |
| 07/01/2024 | utlsetup | Vacant Service Fee - 03/28/24-04/30/24 | 25.00 | | 155.20 | 43196376 |
| 07/01/2024 | utlwatcb | Water - 04/04/24-05/03/24 | 31.43 | | 186.63 | 43196377 |
| 07/01/2024 | smtreng2 | Smart Home Fee w/ Video Doorbell (07/2024) | 40.00 | | 226.63 | 43706210 |
| 07/01/2024 | filter | HVAC Filter (07/2024) | 9.95 | | 236.58 | 43706211 |
| 07/01/2024 | rent | Resident Rent (07/2024) | 2,408.00 | | 2,644.58 | 43706212 |
| 07/03/2024 | | chk# :ACH-WEB Online Payment - EFT Payment. Mobile Web - Resident Services | | 2,644.58 | 0.00 | 13623787 |
| 08/01/2024 | utlsetup | Service Fee | 9.95 | | 9.95 | 44198608 |
| 08/01/2024 | utlsewcb | Sewer - 05/04/24-06/05/24 | 76.95 | | 86.90 | 44198609 |
| 08/01/2024 | utlgascb | Vacant Gas - 04/30/24-05/31/24 | 59.55 | | 146.45 | 44198610 |
| 08/01/2024 | utlsetup | Vacant Service Fee - 04/30/24-05/31/24 | 25.00 | | 171.45 | 44198611 |
| 08/01/2024 | utlwatcb | Water - 05/04/24-06/05/24 | 49.68 | | 221.13 | 44198612 |
| 08/01/2024 | smtreng2 | Smart Home Fee w/ Video Doorbell (08/2024) | 40.00 | | 261.13 | 44708284 |
| 08/01/2024 | filter | HVAC Filter (08/2024) | 9.95 | | 271.08 | 44708285 |
| 08/01/2024 | rent | Resident Rent (08/2024) | 2,408.00 | | 2,679.08 | 44708286 |
| 08/03/2024 | | chk# :ACH-WEB Online Payment - EFT Payment. Mobile Web - Resident Services | | 2,679.08 | 0.00 | 13896687 |
| 09/01/2024 | utlsetup | Service Fee | 9.95 | | 9.95 | 45216019 |

| Date | Code | Description | Charge | Payment | Balance | Ref |
|---|---|---|---|---|---|---|
| 09/01/2024 | utlsetup | Vacant Service Fee - 05/31/24-06/28/24 | 25.00 | | 227.03 | 45216022 |
| 09/01/2024 | utlwatcb | Water - 06/06/24-07/06/24 | 111.06 | | 338.09 | 45216023 |
| 09/01/2024 | smtreng2 | Smart Home Fee w/ Video Doorbell (09/2024) | 40.00 | | 378.09 | 45768778 |
| 09/01/2024 | filter | HVAC Filter (09/2024) | 9.95 | | 388.04 | 45768779 |
| 09/01/2024 | rent | Resident Rent (09/2024) | 2,408.00 | | 2,796.04 | 45768780 |
| 09/03/2024 | | chk# :ACH-WEB Online Payment - EFT Payment. Web - Resident Services | | 2,796.04 | 0.00 | 14145370 |
| 10/01/2024 | utlsetup | Service Fee | 9.95 | | 9.95 | 46272324 |
| 10/01/2024 | utlsewcb | Sewer - 07/06/24-08/06/24 | 155.43 | | 165.38 | 46272325 |
| 10/01/2024 | utlgascb | Vacant Gas - 06/28/24-07/30/24 | 62.93 | | 228.31 | 46272326 |
| 10/01/2024 | utlsetup | Vacant Service Fee - 06/28/24-07/30/24 | 25.00 | | 253.31 | 46272327 |
| 10/01/2024 | utlwatcb | Water - 07/06/24-08/06/24 | 133.18 | | 386.49 | 46272328 |
| 10/01/2024 | smtreng2 | Smart Home Fee w/ Video Doorbell (10/2024) | 40.00 | | 426.49 | 46802047 |
| 10/01/2024 | filter | HVAC Filter (10/2024) | 9.95 | | 436.44 | 46802048 |
| 10/01/2024 | rent | Resident Rent (10/2024) | 2,408.00 | | 2,844.44 | 46802049 |
| 10/03/2024 | | chk# 260062951 Debit Card On-Line Payment ; Web - Resident Services | | 2,844.44 | 0.00 | 14463013 |
| 10/30/2024 | | chk# 262691847 Debit Card On-Line Payment ; Web - Resident Services | | 2,753.02 | (2,753.02) | 14687481 |
| 11/01/2024 | utlsetup | Service Fee | 9.95 | | (2,743.07) | 47277166 |
| 11/01/2024 | utlsewcb | Sewer - 08/07/24-09/06/24 | 117.54 | | (2,625.53) | 47277167 |
| 11/01/2024 | utlgascb | Vacant Gas - 07/30/24-08/30/24 | 55.85 | | (2,569.68) | 47277168 |
| 11/01/2024 | utlsetup | Vacant Service Fee - 07/30/24-08/30/24 | 25.00 | | (2,544.68) | 47277169 |
| 11/01/2024 | utlwatcb | Water - 08/07/24-09/06/24 | 86.73 | | (2,457.95) | 47277170 |
| 11/01/2024 | rent | Resident Rent (11/2024) | 2,408.00 | | (49.95) | 47819400 |
| 11/01/2024 | filter | HVAC Filter (11/2024) | 9.95 | | (40.00) | 47819401 |
| 11/01/2024 | smtreng2 | Smart Home Fee w/ Video Doorbell (11/2024) | 40.00 | | 0.00 | 47819402 |
| 12/01/2024 | utlsetup | Service Fee | 9.95 | | 9.95 | 48414829 |
| 12/01/2024 | utlsewcb | Sewer - 09/07/24-10/05/24 | 53.50 | | 63.45 | 48414830 |
| 12/01/2024 | utlgascb | Vacant Gas - 08/30/24-09/30/24 | 59.00 | | 122.45 | 48414831 |
| 12/01/2024 | utlsetup | Vacant Service Fee - 08/30/24-09/30/24 | 25.00 | | 147.45 | 48414832 |
| 12/01/2024 | utlwatcb | Water - 09/07/24-10/05/24 | 35.30 | | 182.75 | 48414833 |
| 12/01/2024 | smtreng2 | Smart Home Fee w/ Video Doorbell (12/2024) | 40.00 | | 222.75 | 49000752 |
| 12/01/2024 | rent | Resident Rent (12/2024) | 2,408.00 | | 2,630.75 | 49000753 |
| 12/01/2024 | filter | HVAC Filter (12/2024) | 9.95 | | 2,640.70 | 49000754 |
| 12/03/2024 | | chk# 268296578 Debit Card On-Line Payment ; Web - Resident Services | | 2,640.70 | 0.00 | 15153458 |
| 01/01/2025 | utlsetup | Service Fee | 9.95 | | 9.95 | 49444542 |
| 01/01/2025 | utlsewcb | Sewer - 10/06/24-11/05/24 | 60.72 | | 70.67 | 49444543 |
| 01/01/2025 | utlgascb | Vacant Gas - 09/30/24-10/30/24 | 71.81 | | 142.48 | 49444544 |
| 01/01/2025 | utlsetup | Vacant Service Fee - 09/30/24-10/30/24 | 25.00 | | 167.48 | 49444545 |
| 01/01/2025 | utlwatcb | Water - 10/06/24-11/05/24 | 39.73 | | 207.21 | 49444546 |
| 01/01/2025 | rent | Resident Rent (01/2025) | 2,408.00 | | 2,615.21 | 50027960 |
| 01/01/2025 | smtreng2 | Smart Home Fee w/ Video Doorbell (01/2025) | 40.00 | | 2,655.21 | 50030573 |
| 01/01/2025 | filter | HVAC Filter (01/2025) | 9.95 | | 2,665.16 | 50030719 |
| 01/03/2025 | | chk# 272172476 Debit Card On-Line Payment ; Web - Resident Services | | 2,665.16 | 0.00 | 15439733 |
| 02/01/2025 | utlsetup | Service Fee | 9.95 | | 9.95 | 50495597 |
| 02/01/2025 | utlsewcb | Sewer - 11/06/24-12/05/24 | 61.62 | | 71.57 | 50495598 |
| 02/01/2025 | utlgascb | Vacant Gas - 10/30/24-11/26/24 | 90.00 | | 161.57 | 50495599 |
| 02/01/2025 | utlsetup | Vacant Service Fee - 10/30/24-11/26/24 | 25.00 | | 186.57 | 50495600 |
| 02/01/2025 | utlwatcb | Water - 11/06/24-12/05/24 | 40.28 | | 226.85 | 50495601 |
| 02/01/2025 | filter | HVAC Filter (02/2025) | 9.95 | | 236.80 | 50955648 |
| 02/01/2025 | smtreng2 | Smart Home Fee w/ Video Doorbell (02/2025) | 40.00 | | 276.80 | 50955649 |
| 02/01/2025 | rent | Resident Rent (02/2025) | 2,408.00 | | 2,684.80 | 50955650 |
| 02/03/2025 | | chk# :ACH-WEB Online Payment - EFT Payment. Web - Resident Services NSFed by ctrl# 15800395 Automatic NSF 0Z3HFWVRLJ4, Return Code: R01 Uncollected NSF | | 2,684.80 | 0.00 | 15752635 |
| 02/04/2025 | late | Late Fee | 115.00 | | 115.00 | 51239196 |
| 02/07/2025 | nsf | Returned check charge | 30.00 | | 145.00 | 51235989 |
| 02/07/2025 | | chk# :ACH-WEB NSF receipt Ctrl# 15752635 Automatic NSF 0Z3HFWVRLJ4, Return Code: R01 Uncollected NSF | | (2,684.80) | 2,829.80 | 15800395 |
| 02/08/2025 | | chk# 277579635 Debit Card On-Line Payment ; Web - Resident Services | | 2,829.80 | 0.00 | 15807429 |
| 03/01/2025 | utlsetup | Service Fee | 9.95 | | 9.95 | 51332902 |
| 03/01/2025 | utlsewcb | Sewer - 12/06/24-01/07/25 | 68.55 | | 78.50 | 51332903 |

| Date | Code | Description | Charges | Payments | Balance | Ref |
|---|---|---|---|---|---|---|
| 03/01/2025 | utlwatcb | Water - 12/06/24-01/07/25 | 44.50 | | 379.01 | 51332906 |
| 03/01/2025 | filter | HVAC Filter (03/2025) | 9.95 | | 388.96 | 51920168 |
| 03/01/2025 | rent | Resident Rent (03/2025) | 2,408.00 | | 2,796.96 | 51920169 |
| 03/01/2025 | smtreng2 | Smart Home Fee w/ Video Doorbell (03/2025) | 40.00 | | 2,836.96 | 51920170 |
| 03/02/2025 | | chk# :ACH-WEB Online Payment - EFT Payment. Web - Resident Services NSFed by ctrl# 16064067 Automatic NSF G07YXLYRLJ4, Return Code: R01 Uncollected NSF | | 2,836.96 | 0.00 | 16007869 |
| 03/04/2025 | late | Late Fee | 115.00 | | 115.00 | 52178219 |
| 03/06/2025 | nsf | Returned check charge | 30.00 | | 145.00 | 52174179 |
| 03/06/2025 | | chk# :ACH-WEB NSF receipt Ctrl# 16007869 Automatic NSF G07YXLYRLJ4, Return Code: R01 Uncollected NSF | | (2,836.96) | 2,981.96 | 16064067 |
| 03/07/2025 | | chk# 281681878 Credit Card On-Line Payment ; Web - Resident Services | | 2,981.96 | 0.00 | 16074854 |
| 04/01/2025 | utlsewcb | Sewer - 01/08/25-02/05/25 | 66.91 | | 66.91 | 52286106 |
| 04/01/2025 | utlgascb | Vacant Gas - 12/30/24-01/30/25 | 258.15 | | 325.06 | 52286107 |
| 04/01/2025 | utlsetup | Vacant Service Fee - 12/30/24-01/30/25 | 25.00 | | 350.06 | 52286108 |
| 04/01/2025 | utlwatcb | Water - 01/08/25-02/05/25 | 43.51 | | 393.57 | 52286109 |
| 04/01/2025 | rent | Resident Rent (04/2025) 12 days | 963.20 | | 1,356.77 | 52878681 |
| 04/01/2025 | rent | Resident Rent (04/2025) 18 days | 1,444.80 | | 2,801.57 | 52878682 |
| 04/01/2025 | smtreng2 | Smart Home Fee w/ Video Doorbell (04/2025) | 40.00 | | 2,841.57 | 52878683 |
| 04/01/2025 | filter | HVAC Filter (04/2025) | 9.95 | | 2,851.52 | 52878684 |
| 04/03/2025 | | chk# 285328292 Debit Card On-Line Payment ; Web - Resident Services | | 2,851.52 | 0.00 | 16353743 |
| 05/01/2025 | utlsetup | Service Fee | 9.95 | | 9.95 | 53379026 |
| 05/01/2025 | utlsewcb | Sewer - 02/06/25-03/06/25 | 59.37 | | 69.32 | 53379027 |
| 05/01/2025 | utlgascb | Vacant Gas - 01/30/25-02/28/25 | 162.26 | | 231.58 | 53379028 |
| 05/01/2025 | utlsetup | Vacant Service Fee - 01/30/25-02/28/25 | 25.00 | | 256.58 | 53379029 |
| 05/01/2025 | utlwatcb | Water - 02/06/25-03/06/25 | 38.89 | | 295.47 | 53379030 |
| 05/01/2025 | filter | HVAC Filter (05/2025) | 9.95 | | 305.42 | 53889003 |
| 05/01/2025 | smtreng2 | Smart Home Fee w/ Video Doorbell (05/2025) | 40.00 | | 345.42 | 53889004 |
| 05/01/2025 | rent | Resident Rent (05/2025) | 2,408.00 | | 2,753.42 | 53889005 |
| 05/04/2025 | late | Late Fee | 115.00 | | 2,868.42 | 54126359 |
| 05/11/2025 | | chk# 290811029 Credit Card On-Line Payment ; Web - Resident Services | | 2,868.42 | 0.00 | 16695234 |
| 06/01/2025 | utlsetup | Service Fee | 9.95 | | 9.95 | 54242152 |
| 06/01/2025 | utlsewcb | Sewer - 03/07/25-04/03/25 | 41.45 | | 51.40 | 54242153 |
| 06/01/2025 | utlgascb | Vacant Gas - 02/28/25-03/31/25 | 119.68 | | 171.08 | 54242154 |
| 06/01/2025 | utlsetup | Vacant Service Fee - 02/28/25-03/31/25 | 25.00 | | 196.08 | 54242155 |
| 06/01/2025 | utlwatcb | Water - 03/07/25-04/03/25 | 27.91 | | 223.99 | 54242156 |
| 06/01/2025 | smtreng2 | Smart Home Fee w/ Video Doorbell (06/2025) | 40.00 | | 263.99 | 54859083 |
| 06/01/2025 | filter | HVAC Filter (06/2025) | 9.95 | | 273.94 | 54859084 |
| 06/01/2025 | rent | Resident Rent (06/2025) | 2,408.00 | | 2,681.94 | 54859085 |
| 06/04/2025 | late | Late Fee | 115.00 | | 2,796.94 | 55102549 |
| 06/14/2025 | | chk# 295612244 Debit Card On-Line Payment ; Web - Resident Services | | 2,796.94 | 0.00 | 16983999 |
| 07/01/2025 | utlsetup | Service Fee | 9.95 | | 9.95 | 55215564 |
| 07/01/2025 | utlsewcb | Sewer - 04/04/25-05/05/25 | 42.39 | | 52.34 | 55215565 |
| 07/01/2025 | utlgascb | Vacant Gas - 03/31/25-04/30/25 | 57.85 | | 110.19 | 55215566 |
| 07/01/2025 | utlsetup | Vacant Service Fee - 03/31/25-04/30/25 | 25.00 | | 135.19 | 55215567 |
| 07/01/2025 | utlwatcb | Water - 04/04/25-05/05/25 | 28.49 | | 163.68 | 55215568 |
| 07/01/2025 | filter | HVAC Filter (07/2025) | 9.95 | | 173.63 | 55817419 |
| 07/01/2025 | smtreng2 | Smart Home Fee w/ Video Doorbell (07/2025) | 40.00 | | 213.63 | 55817420 |
| 07/01/2025 | rent | Resident Rent (07/2025) | 2,408.00 | | 2,621.63 | 55817421 |
| 07/04/2025 | late | Late Fee | 115.00 | | 2,736.63 | 56105596 |
| 07/12/2025 | | chk# 299965713 Debit Card On-Line Payment ; Web - Resident Services | | 2,736.63 | 0.00 | 17252838 |
| 07/25/2025 | vioadmin | VI-366084 | 35.00 | | 35.00 | 56663159 |
| 08/01/2025 | utlsetup | Service Fee | 9.95 | | 44.95 | 56217815 |
| 08/01/2025 | utlsewcb | Sewer - 05/06/25-06/05/25 | 31.08 | | 76.03 | 56217816 |
| 08/01/2025 | utlgascb | Vacant Gas - 04/30/25-05/29/25 | 53.39 | | 129.42 | 56217817 |
| 08/01/2025 | utlsetup | Vacant Service Fee - 04/30/25-05/29/25 | 25.00 | | 154.42 | 56217818 |
| 08/01/2025 | utlwatcb | Water - 05/06/25-06/05/25 | 21.55 | | 175.97 | 56217819 |
| 08/01/2025 | smtreng2 | Smart Home Fee w/ Video Doorbell (08/2025) | 40.00 | | 215.97 | 56838046 |
| 08/01/2025 | filter | HVAC Filter (08/2025) | 9.95 | | 225.92 | 56838047 |
| 08/01/2025 | rent | Resident Rent (08/2025) | 2,408.00 | | 2,633.92 | 56838048 |

| Date | Code | Description | Charge | Payment | Balance | Ref |
|---|---|---|---|---|---|---|
| 09/01/2025 | utlsetup | Service Fee | 9.95 | | 2,838.98 | 57199427 |
| 09/01/2025 | utlsewcb | Sewer - 06/06/25-07/07/25 | 80.11 | | 2,838.98 | 57199427 |
| 09/01/2025 | utlgascb | Vacant Gas - 05/29/25-06/30/25 | 48.84 | | 2,887.82 | 57199428 |
| 09/01/2025 | utlsetup | Vacant Service Fee - 05/29/25-06/30/25 | 25.00 | | 2,912.82 | 57199429 |
| 09/01/2025 | utlwatcb | Water - 06/06/25-07/07/25 | 51.61 | | 2,964.43 | 57199430 |
| 09/01/2025 | filter | HVAC Filter (09/2025) | 9.95 | | 2,974.38 | 57802426 |
| 09/01/2025 | smtreng2 | Smart Home Fee w/ Video Doorbell (09/2025) | 40.00 | | 3,014.38 | 57802427 |
| 09/01/2025 | rent | Resident Rent (09/2025) | 2,408.00 | | 5,422.38 | 57802428 |
| 09/02/2025 | | chk# 40197691264118 :CHECKscan Payment | | 500.00 | 4,922.38 | 17748801 |
| 09/02/2025 | | chk# 40197691264100 :CHECKscan Payment | | 500.00 | 4,422.38 | 17748802 |
| 09/02/2025 | | chk# 40197691264091 :CHECKscan Payment | | 500.00 | 3,922.38 | 17748803 |
| 09/02/2025 | | chk# 40197691264073 :CHECKscan Payment | | 500.00 | 3,422.38 | 17748804 |
| 09/02/2025 | | chk# 40197691264082 :CHECKscan Payment | | 500.00 | 2,922.38 | 17748805 |
| 09/02/2025 | | chk# 40197691264127 :CHECKscan Payment | | 250.00 | 2,672.38 | 17748806 |
| 09/04/2025 | late | Late Fee | 115.00 | | 2,787.38 | 58048938 |
| 10/01/2025 | utlsetup | Service Fee | 9.95 | | 2,797.33 | 58289113 |
| 10/01/2025 | utlsewcb | Sewer - 07/08/25-08/06/25 | 40.51 | | 2,837.84 | 58289114 |
| 10/01/2025 | utlgascb | Vacant Gas - 06/30/25-07/30/25 | 45.17 | | 2,883.01 | 58289115 |
| 10/01/2025 | utlsetup | Vacant Service Fee - 06/30/25-07/30/25 | 25.00 | | 2,908.01 | 58289116 |
| 10/01/2025 | utlwatcb | Water - 07/08/25-08/06/25 | 27.33 | | 2,935.34 | 58289117 |
| 10/01/2025 | smtreng2 | Smart Home Fee w/ Video Doorbell (10/2025) | 40.00 | | 2,975.34 | 58788212 |
| 10/01/2025 | rent | Resident Rent (10/2025) | 2,408.00 | | 5,383.34 | 58788213 |
| 10/01/2025 | filter | HVAC Filter (10/2025) | 9.95 | | 5,393.29 | 58788214 |
| 10/04/2025 | late | Late Fee | 115.00 | | 5,508.29 | 59028547 |
| 10/14/2025 | legalfee | Legal Fee | 100.00 | | 5,608.29 | 59083748 |
| 11/01/2025 | utlsetup | Service Fee | 9.95 | | 5,618.24 | 59142436 |
| 11/01/2025 | utlsewcb | Sewer - 08/07/25-09/04/25 | 48.99 | | 5,667.23 | 59142437 |
| 11/01/2025 | utlgascb | Vacant Gas - 07/30/25-08/28/25 | 53.73 | | 5,720.96 | 59142438 |
| 11/01/2025 | utlsetup | Vacant Service Fee - 07/30/25-08/28/25 | 25.00 | | 5,745.96 | 59142439 |
| 11/01/2025 | utlwatcb | Water - 08/07/25-09/04/25 | 32.53 | | 5,778.49 | 59142440 |
| 11/01/2025 | filter | HVAC Filter (11/2025) | 9.95 | | 5,788.44 | 59743567 |
| 11/01/2025 | rent | Resident Rent (11/2025) | 2,408.00 | | 8,196.44 | 59743568 |
| 11/01/2025 | smtreng2 | Smart Home Fee w/ Video Doorbell (11/2025) | 40.00 | | 8,236.44 | 59743569 |
| 11/04/2025 | late | Late Fee | 115.00 | | 8,351.44 | 60106402 |
| 12/01/2025 | utlsetup | Service Fee | 9.95 | | 8,361.39 | 60276624 |
| 12/01/2025 | utlsewcb | Sewer - 09/05/25-10/03/25 | 55.59 | | 8,416.98 | 60276625 |
| 12/01/2025 | utlgascb | Vacant Gas - 08/28/25-09/29/25 | 59.07 | | 8,476.05 | 60276626 |
| 12/01/2025 | utlsetup | Vacant Service Fee - 08/28/25-09/29/25 | 25.00 | | 8,501.05 | 60276627 |
| 12/01/2025 | utlwatcb | Water - 09/05/25-10/03/25 | 36.58 | | 8,537.63 | 60276628 |
| 12/01/2025 | smtreng2 | Smart Home Fee w/ Video Doorbell (12/2025) | 40.00 | | 8,577.63 | 60862640 |
| 12/01/2025 | rent | Resident Rent (12/2025) | 2,408.00 | | 10,985.63 | 60862641 |
| 12/01/2025 | filter | HVAC Filter (12/2025) | 9.95 | | 10,995.58 | 60862642 |
| 12/04/2025 | late | Late Fee | 115.00 | | 11,110.58 | 61094471 |
| 01/01/2026 | utlsetup | Service Fee | 9.95 | | 11,120.53 | 61243672 |
| 01/01/2026 | utlsewcb | Sewer - 10/04/25-11/04/25 | 55.59 | | 11,176.12 | 61243673 |
| 01/01/2026 | utlgascb | Vacant Gas - 09/29/25-10/31/25 | 73.62 | | 11,249.74 | 61243674 |
| 01/01/2026 | utlsetup | Vacant Service Fee - 09/29/25-10/31/25 | 25.00 | | 11,274.74 | 61243675 |
| 01/01/2026 | utlwatcb | Water - 10/04/25-11/04/25 | 36.58 | | 11,311.32 | 61243676 |
| 01/01/2026 | smtreng2 | Smart Home Fee w/ Video Doorbell (01/2026) | 40.00 | | 11,351.32 | 61828821 |
| 01/01/2026 | rent | Resident Rent (01/2026) | 2,408.00 | | 13,759.32 | 61830055 |
| 01/01/2026 | filter | HVAC Filter (01/2026) | 9.95 | | 13,769.27 | 61837479 |
| 01/04/2026 | late | Late Fee | 115.00 | | 13,884.27 | 62068434 |
| 01/05/2026 | baddebt | Settlement due to defaulting on BK Filing | (7,000.00) | | 6,884.27 | 62082532 |

**Matthew Totten**

| | |
|---|---|
| **From:** | Curtis Parker <curtis.parker1776@gmail.com> |
| **Sent:** | Saturday, January 10, 2026 6:19 AM |
| **To:** | Matthew Totten |
| **Subject:** | Re: Voice mail to Curtis Parker |

**External Sender** - From: (Curtis Parker <curtis.parker1776@gmail.com>)
This message came from outside your organization.

Learn More

Mr. Totten and all concerned,
We consider this treachery and will act accordingly, first we will file motions Monday to rescind our Motion to dismiss and seek the evidence hearing as scheduled.

We considered this matter resolved, I will sue your client for any harm I suffer for this emotionally and financially. Additionally email to follow to the local media and FTC.

See you in court
Sent from my iPhone

On Jan 9, 2026, at 9:36 PM, Matthew Totten <mft@tottenfirm.com> wrote:

Mr. Parker –

Thank you for the email – it was a very hectic day today so only am able to circle back now.

Pursuant to the settlement, please see the attached accounting reflecting the application of a $7,000.00 credit to your account. As you can also see within the attached ledger, based on your filing of bankruptcy on 9/29/25, the credit addresses a substantial portion of your post-petition rental obligations which would not otherwise be discharged in the course of bankruptcy. Prior to the credit, the ledger reflects an amount of $13,884.27, of which $2,787.38 being pre-petition and $11,096.89 being post-petition.

Thanks,

<image001.png>

**Matthew F. Totten**
*Managing Attorney*

**Phone** (404) 692-4342    **Email** mft@tottenfirm.com
**Mailing Address** 5579 Chamblee-Dunwoody Rd, Ste B-136, Atlanta, GA 30338
**Web** http://www.tottenfirm.com
<image002.png>

**Notice**: This e-mail message and all attachments transmitted with it may contain legally privileged and confidential information intended solely for the use of the addressee. If the reader of this message is not the intended recipient, you are hereby notified that

**Matthew Totten**

| | |
|---|---|
| **From:** | Curtis Parker <curtis.parker1776@gmail.com> |
| **Sent:** | Saturday, January 10, 2026 8:14 AM |
| **To:** | Matthew Totten |
| **Subject:** | Re: Voice mail to Curtis Parker |
| **Attachments:** | 1.10.26 Motion to Enforce Settlement.pdf; Email From M. Totten dated 1.2.26.pdf; M. Totten email dated 1.10.26.pdf; 12.29.25 Offer Letter from M. Totten on behalf of Invitation Homes.pdf; 1.10.26 Formal Letter to FTC.pdf; 1.10.26 Letter to the Media regarding Invitation Homes.pdf |

**External Sender** - From: (Curtis Parker <curtis.parker1776@gmail.com>)
This message came from outside your organization.

Learn More

Mr. Totten,

I am in receipt of your email and the attached ledger.

You and your client's unilateral decision to apply the agreed-upon $7,000.00 settlement payment as a "credit" toward an alleged rental balance constitutes a material breach of the settlement agreement.

There is **nothing in the settlement terms**—express or implied—that authorizes Invitation Homes or 2017-1 IH Borrower LP to apply the settlement funds to any balance, ledger, or accounting. The agreement plainly states that your client "shall account and remit $7,000.00 to Parker" within ten business days. "Remit" does not mean internally offset, recharacterize, or condition payment on disputed accounting entries. You and your client requested the address by which to remit the funds as agreed,

The settlement, read as a whole, gives the clear and reasonable impression that the matter was being **resolved**, not converted into a unilateral accounting maneuver to your client's benefit after acceptance. Any ambiguity would be construed against the drafter—your client.

Critically, I relied on this agreement to my detriment. In good faith compliance with the settlement, I provided a Motion to Dismiss to the Bankruptcy Court after being requested to do so by yourself **before any funds were disbursed**, relinquishing active claims and leverage in reliance on your client's performance. Your client's post-acceptance conduct undermines the very basis of that reliance. I would ask that you review and consider this action as being cause for a Georgia Bar complaint.

We consider this action treacherous and a breach of contract. **As a result, your client's conduct voids the agreed-upon contract unless immediately cured. If not cured before motions are filed the new settlement amount is $25,000**

Unless the $7,000.00 settlement payment is promptly remitted to me as agreed—separate and apart from any internal ledger, offset, or accounting manipulation—I will proceed accordingly. This includes, but is not limited to:

- Seeking relief from the Bankruptcy Court based on breach of settlement and **misrepresentation**;

- Pursuing enforcement and damages for breach of contract; and

- Referring this matter to the Federal Trade Commission, **including requesting that the FTC pursue action on my behalf for breach of this settlement and for your client's conduct in connection with it.**

Please advise immediately how your client intends to cure this breach.

Attached:

- Motion to enforce settlement with (3) email attachments
- Letter to Federal Trade Commission
- Letter to media outlets

Regards,

Curtis Parker

On Fri, Jan 9, 2026 at 9:36 PM Matthew Totten <mft@tottenfirm.com> wrote:

Mr. Parker –

Thank you for the email – it was a very hectic day today so only am able to circle back now.

Pursuant to the settlement, please see the attached accounting reflecting the application of a $7,000.00 credit to your account. As you can also see within the attached ledger, based on your filing of bankruptcy on 9/29/25, the credit addresses a substantial portion of your post-petition rental obligations which would not otherwise be discharged in the course of bankruptcy. Prior to the credit, the ledger reflects an amount of $13,884.27, of which $2,787.38 being pre-petition and $11,096.89 being post-petition.

Thanks,



**Matthew F. Totten**

*Managing Attorney*

**Phone** (404) 692-4342    **Email** mft@tottenfirm.com

**Mailing Address** 5579 Chamblee-Dunwoody Rd, Ste B-136, Atlanta, GA 30338

**Web** http://www.tottenfirm.com



# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF GEORGIA

# ATLANTA DIVISION

CURTIS PARKER, Debtor.

V.

2017-1 IH Borrower LP's ("IH")

**Chapter 7 Case No. 25-61216-bem**

**MOTION TO ENFORCE SETTLEMENT AGREEMENT, FOR DAMAGES, AND FOR FURTHER RELIEF**

**I. INTRODUCTION**

Debtor Curtis Parker ("Parker"), proceeding pro se, moves this Court to enforce a binding settlement agreement entered into with **2017-1 IH Borrower LP** ("Invitation Homes"), and for damages and further relief. Although Parker fully performed his obligations under the agreement—including dismissing claims to his detriment—Invitation Homes materially breached the settlement by unilaterally applying the agreed $7,000.00 settlement payment as an internal "credit" against a disputed ledger balance rather than remitting payment as expressly required.

**II. UNDISPUTED FACTS**

1. On **December 29, 2025**, Invitation Homes—through counsel—made a written settlement offer expressly stating that it was **"FOR PURPOSES OF SETTLEMENT AND COMPROMISE."**

2. The settlement required Invitation Homes to **"account and remit $7,000.00 to Parker within ten business days of acceptance."**

3. The agreement **contains no language** authorizing offsets, credits, ledger applications, or conditional payment.

4. Parker timely **accepted the settlement via email** and fully complied with its terms.

5. In reliance on the settlement, Parker **filed a Motion to Dismiss** pending claims **before any funds were disbursed**, materially changing his legal position to his detriment.

6. On **January 9, 2026**, Invitation Homes' counsel advised that the $7,000.00 was not remitted, but instead **applied internally as a "credit"** toward alleged post-petition rent.

7. This action was taken **unilaterally, without consent, and contrary to the express settlement terms.**


## III. ARGUMENT

### A. A Binding Settlement Exists

A settlement agreement is a binding contract once accepted. Email acceptance satisfies contract formation requirements. No additional conditions precedent existed.

### B. Invitation Homes Materially Breached the Agreement

The term "remit" has a plain and ordinary meaning: to **pay or send** funds to another party.

It does **not** authorize:

- Internal offsets

- Ledger credits

- Conditional accounting maneuvers

Any ambiguity would be construed against Invitation Homes as the drafter.

### C. Parker Detrimentally Relied on the Agreement

Parker dismissed active claims and surrendered leverage in reliance on performance. This satisfies detrimental reliance and estoppel principles.

**D. Remedies Are Warranted**

The Court has inherent authority to:

- Enforce settlements;

- Vacate dismissals procured through non-performance; and

- Award damages caused by breach.

**IV. REQUESTED RELIEF**

Parker respectfully requests that the Court:

1. **Enforce the settlement agreement**;

2. Order Invitation Homes to **immediately remit $7,000.00** directly to Parker;

3. Award **damages** resulting from breach, including costs incurred;

4. Alternatively, **vacate any dismissal** entered in reliance on the settlement;

5. Retain jurisdiction to enforce compliance; and

6. Grant such other relief as the Court deems just and proper.

Respectfully submitted,

January 12, 2026

/s/ Curtis Parker

Pro Se Plaintiff

1149 Autumn Glen Way

Dacula, GA  30019

(770) 369-6521

## CERTIFICATE OF SERVICE

This is to certify that I have this day served the foregoing Motion To Dismiss due to Settlement

by way of regular U.S. Mail and Email to the following party of record:

Matthew F. Totten
Email: mft@tottenfirm.com
Georgia Bar No. 798589
The Totten Law Firm, LLC
5579 Chamblee-Dunwoody Road, Suite B-136
Atlanta, Georgia 30338
Attorney of records for Invitation Homes

**On January 12, 2026.**

Curtis Parker
*Pro Se* Plaintiff
1149 Autumn Glen Way
Dacula, GA  30019

Email from M. Totten dated January 2, 2026

On Jan 2, 2026, at 1:19 PM, Matthew Totten <mft@tottenfirm.com> wrote:

Mr. Parker –

Can you please provide your forwarding address?

Thanks

<image001.png>

**Matthew F. Totten**
*Managing Attorney*

**Phone** (404) 692-4342    **Email** mft@tottenfirm.com
**Mailing Address** 5579 Chamblee-Dunwoody Rd, Ste B-136, Atlanta, GA 30338
**Web** http://www.tottenfirm.com

Email from Matthew Totten dated January 10, 2026



**Matthew Totten**                                                    Fri, Jan 9,
                                                                      9:36 PM (9
                                                                      hours ago)

to me

Mr. Parker –

Thank you for the email – it was a very hectic day today so only am able to circle back now.

Pursuant to the settlement, please see the attached accounting reflecting the application of a $7,000.00 credit to your account. As you can also see within the attached ledger, based on your filing of bankruptcy on 9/29/25, the credit addresses a substantial portion of your post-petition rental obligations which would not otherwise be discharged in the course of bankruptcy. Prior to the credit, the ledger reflects an amount of $13,884.27, of which $2,787.38 being pre-petition and $11,096.89 being post-petition.

Thanks,

**Matthew F. Totten**

***Managing Attorney***

**Phone** (404) 692-4342    **Email** mft@tottenfirm.com

**Mailing Address** 5579 Chamblee-Dunwoody Rd, Ste B-136, Atlanta, GA 30338

**Web** http://www.tottenfirm.com

**Notice**: This e-mail message and all attachments transmitted with it may contain legally privileged and confidential information intended solely for the use of the addressee. If the reader of this

message is not the intended recipient, you are hereby notified that any reading, dissemination, distribution, copying, or other use of this message or its attachments is strictly prohibited. If you have received this message in error, please notify the sender immediately by the telephone number listed above and delete this message and all copies and backups thereof. Thank you.

On Monday, December 29, 2025, Matthew Totten <mff@tottenfirm.com> wrote:

FOR PURPOSES OF SETTLEMENT AND COMPROMISE

Mr. Parker –

Thank you again for breaking out your assertions with particularity to clarify the ask on your settlement offer.

My client counteroffers your settlement terms as follows:

- The parties shall file a joint notice of dismissal upon an email accepting the instant terms with the bankruptcy court. *See attached to be filed upon acceptance via email, which will be filed by my office.*
- Within seven days of an email accepting the instant terms, Parker shall dismiss with prejudice the pending claims against 2017-1 IH Borrower LP as to any asserted violations of the bankruptcy automatic stay. *See attached, as drafted for your convenience.*
  - ○ In entering this settlement, Parker expressly stipulates that this settlement encompasses all purported violations of the bankruptcy automatic stay by 2017-1 IH Borrower LP, its employees, and its agents
- 2017-1 IH Borrower LP shall account and remit $7,000.00 to Parker and provide evidence of the same to Parker within ten business days of acceptance
- Parker expressly stipulates that he shall vacate the subject Premises (known as 1149 Autumn Glen Way, Dacula, GA 30019) on/before January 30, 2026, and that the Premises shall be abandoned as property of the bankruptcy estate upon discharge, this settlement agreement does not constitute a ratification or novation of the lease agreement for the subject Premises.
  - ○ The security deposit for the subject Premises shall be treated in accordance with Georgia law subsequent to Parker vacating the Premises. See O.C.G.A. 44-7-30 – 44-7-37.
- Each party shall bear its own attorneys' fees in this action; to the extent any party may incur attorneys' fees in enforcing this settlement, the prevailing party is entitled to its costs and attorneys' fees in enforcing this settlement.

**Time is of the essence in this settlement offer** – should you fail to accept the foregoing terms via email by 12:00 p.m. EST on 12/30/2025, said offer shall automatically expire by its terms.

Thanks

Matthew F. Totten
*Managing Attorney*

Phone (404) 692-4342    Email mff@tottenfirm.com
Mailing Address 5579 Chamblee-Dunwoody Rd, Ste B-136, Atlanta, GA 30338
Web http://www.tottenfirm.com

**FTC Complaint – Breach of Settlement & Deceptive Practices**

Federal Trade Commission
Submission via email: https://reportfraud.ftc.gov/
Office of the Secretary
600 Pennsylvania Avenue, NW
Washington, DC 20580

**Complaint Against Invitation Homes / 2017-1 IH Borrower LP**

**I. COMPLAINANT**

Curtis Parker
1149 Autumn Glen Way
Dacula, GA  30019

(770) 369-6521

---

**II. RESPONDENT**

Invitation Homes, Inc.
2017-1 IH Borrower LP
And their agents, employees, and attorneys

---

**III. SUMMARY OF COMPLAINT**

This complaint concerns **deceptive settlement practices, unfair contract manipulation, and post-bankruptcy coercive conduct** by Invitation Homes. After offering and securing acceptance of a settlement resolving alleged violations of the bankruptcy automatic stay, Invitation Homes deliberately failed to honor the payment terms and instead recharacterized settlement funds as an internal ledger "credit" to extinguish disputed obligations.

**IV. FACTUAL BACKGROUND**

1. Invitation Homes was accused of **violating the automatic stay** under federal bankruptcy law.

2. To resolve those violations, Invitation Homes offered a **cash settlement of $7,000.00**, explicitly conditioned on dismissal of claims.

3. The settlement was accepted, and the complainant **performed fully**, including dismissing claims.

4. Only after securing dismissal did Invitation Homes:

- o Refuse to remit payment; and

- o Apply the settlement amount to an alleged rental balance not referenced in the agreement.

5. This conduct effectively **converted a settlement payment into a debt-collection offset**, without disclosure or consent.

## V. UNFAIR AND DECEPTIVE PRACTICES

Invitation Homes' conduct constitutes:

- **Deceptive acts or practices** under Section 5 of the FTC Act.

- **Unfair settlement manipulation**, depriving consumers of bargained-for consideration.

- **Post-bankruptcy coercion**, leveraging dismissal to impose unilateral terms.

- Conduct consistent with patterns previously identified in FTC enforcement actions involving Invitation Homes.

## VI. CONSUMER HARM

The complainant suffered:

- Loss of settlement consideration.

- Legal prejudice due to dismissal reliance.

- Coercive pressure tied to housing instability.

- Financial and procedural harm caused by deceptive conduct.

## VII. REQUESTED FTC ACTION

The complainant respectfully requests that the FTC:

1. Investigate Invitation Homes' settlement and accounting practices.

2. Pursue enforcement for deceptive and unfair conduct.

3. Seek restitution and damages on behalf of the complainant.

4. Impose injunctive relief preventing similar conduct against other consumers.

Regards,

Curtis Parker

January 10, 2026

Editorial Desk,

I am writing to bring to your attention ongoing practices by **Invitation Homes** that raise serious consumer protection concerns, particularly in the context of settlements and bankruptcy-related disputes.

In late December 2025, Invitation Homes—through counsel—offered a written settlement to resolve alleged violations of the federal bankruptcy automatic stay. The settlement expressly required the company to **remit a cash payment** within a specified time frame in exchange for dismissal of claims. I accepted the offer and relied on it to my detriment by filing a dismissal with the bankruptcy court before any funds were disbursed.

After securing dismissal, Invitation Homes did not remit the settlement payment. Instead, the company unilaterally recharacterized the agreed settlement amount as an internal "credit" against a disputed rental ledger—terms that were never disclosed, negotiated, or included in the settlement agreement. This maneuver effectively converted a settlement payment into a post-hoc accounting offset.

The concern here extends beyond a single dispute. This practice—offering settlement to induce dismissal and then altering performance after acceptance—undermines the integrity of settlement agreements, particularly where consumers are vulnerable due to housing instability or bankruptcy proceedings. It raises broader questions about whether similar practices are being used against other tenants or consumers who lack the resources to challenge them.

I believe this issue is newsworthy because it implicates:

- The enforceability and good-faith execution of settlement agreements;

- Post-bankruptcy conduct affecting consumers' housing security; and

- Whether large institutional landlords are using accounting mechanisms to avoid paying agreed settlements after claims are withdrawn.

I am prepared to provide documentation, including the written settlement offer, acceptance, court filings made in reliance, and subsequent communications evidencing the recharacterization of funds.

Thank you for your consideration. I believe public scrutiny of these practices is in the public interest.

Sincerely,
Curtis Parker

**Matthew Totten**

| | |
|---|---|
| **From:** | Curtis Parker <curtis.parker1776@gmail.com> |
| **Sent:** | Saturday, January 10, 2026 1:31 PM |
| **To:** | Matthew Totten |
| **Subject:** | Re: Voice mail to Curtis Parker |

**External Sender** - From: (Curtis Parker <curtis.parker1776@gmail.com>)
This message came from outside your organization.

Learn More

Mr. Totten,

I acknowledge receipt of your January 10, 2026 email.

Your message does not cure your client's material breach of the settlement agreement and, instead, introduces additional misstatements of law, mischaracterizations of the contract, and improper threats.

**1. "Account and remit" means payment, not internal offset**

Your attempt to redefine "account and remit" to mean a unilateral ledger credit is contrary to both ordinary contract law and the plain meaning of the settlement. "Remit" means to **pay, send, or deliver funds**. Transmitting a statement showing an internal credit is not remittance. No reasonable contracting party would interpret "remit $7,000.00 to Parker" to mean "apply the amount against an internal balance."

If your client intended an offset, that term had to be expressly stated. It was not. Silence on offsets bars them.

**2. Your client induced performance, then changed the deal**

I relied on the settlement by dismissing claims and surrendering litigation leverage **before any funds were paid**. Your client then unilaterally altered how it would perform. That constitutes material breach and equitable estoppel. The law does not permit a party to secure dismissal and then substitute a different form of performance after the fact.

**3. Post-petition rent and HOA issues are irrelevant**

Your attempt to introduce allegations about Airbnb activity, HOA fines, or lease compliance is legally improper and irrelevant to settlement performance. Those issues were not included as conditions, offsets, or carve-outs in the settlement. A party cannot retroactively rewrite a settlement by appending unrelated allegations after acceptance.

**4. Your defamation and abuse-of-process threats are improper**

Your email threatens me with defamation liability and "malicious abuse of process" for asserting breach of contract and regulatory complaints. That is not advocacy — it is an attempt to intimidate a pro se litigant from enforcing a written agreement.

Reporting suspected unfair or deceptive practices to regulators and seeking judicial enforcement of a settlement are **absolutely privileged activities** under federal and Georgia law. Threatening defamation claims for protected petitioning activity itself constitutes potential attorney misconduct.

**5. Your "anticipatory breach" theory is legally baseless**

Exercising contractual rights to enforce a settlement does not constitute anticipatory breach. Attempting to characterize lawful enforcement as a default is coercive and unsupported by law.

**6. Your client remains in breach**

The settlement requires your client to **remit $7,000.00 to Parker**. That has not occurred. A ledger entry is not payment. Until funds are transmitted to me, your client is not in compliance.

---

**Demand to Cure**

To avoid court and regulatory intervention, your client must, no later than 5:00 pm today** January 10, 2026**, transmit the $7,000.00 settlement payment to me in cash or equivalent (check, ACH, or wire), independent of any ledger or accounting offsets.

Absent timely cure, I will proceed with:

- A motion to enforce the settlement and vacate any dismissal entered in reliance on it;

- Claims for breach and damages; and

- Regulatory and court filings reflecting your client's conduct and your correspondence.

This email preserves all rights and remedies.


Curtis Parker


On Sat, Jan 10, 2026 at 11:19 AM Matthew Totten <mft@tottenfirm.com> wrote:

> Mr. Parker –
>
>
> Your statements and recitation in the below email are baseless and unfounded – resultingly, any of your threatened action would be defamatory and malicious abuse of process, at a minimum.
>
>
> Particularly, within the settlement terms it was agreed that my client would "account and remit" a certain amount. An "accounting" is defined as a "statement by which someone seeks to describe or explain an event", including a "detailed statement of the debits and credits between parties to a contract." ACCOUNT, Black's Law Dictionary (12th ed. 2024). My client has accomplished exactly that in crediting the ledger provided as to post-petition sums accruing due to your continued occupancy of the subject real property in the agreed amount. My client similarly timely remitted – transmitted, as defined within Black's Law – the statement applying the agreed upon sum to you, as you acknowledge in your threatening email. There unequivocally is no ambiguity here.

**Matthew Totten**

| | |
|---|---|
| **From:** | Curtis Parker <curtis.parker1776@gmail.com> |
| **Sent:** | Saturday, January 10, 2026 1:33 PM |
| **To:** | Matthew Totten |
| **Subject:** | Formal Complaint of Attorney Misconduct |
| **Attachments:** | 1.12.26 Formal Complain to Georgia Bar Association.pdf |

**External Sender** - From: (Curtis Parker <curtis.parker1776@gmail.com>)
This message came from outside your organization.

Learn More

Mr. Totten,

Please see attached which will be filed with Georgia Bar on Monday.

Governing Accordingly,

Curtis Parker

## STATE BAR OF GEORGIA — FORMAL COMPLAINT

**Complainant Information**

Name: Curtis Parker
Address: 1149 Autumn Glen Way
City/State/Zip: Dacula, GA 30019
Phone: (770) 369-6521
Email: curtis.parker1776@gmail.com

---

**Attorney of Complaint**

Name: Matthew F. Totten
Law Firm: Totten Law Firm
Address: 5579 Chamblee-Dunwoody Rd., Ste B-136
City/State/Zip: Atlanta, GA 30338
Phone: (404) 692-4342
Email: mft@tottenfirm.com

**Georgia Bar No. 798589**

**Nature of Legal Matter**

Bankruptcy litigation, threats and settlement enforcement relating to violations of the federal automatic stay by Invitation Homes / 2017-1 IH Borrower LP.

**Summary of Complaint**

Matthew Totten engaged in **misrepresentation, coercion, and intimidation** in connection with a binding settlement agreement resolving bankruptcy stay violations. After inducing dismissal of claims through a written settlement promising to "account and remit $7,000.00," his client refused to pay and instead applied an internal ledger credit. Mr. Totten then threatened me with defamation, abuse of process, attorney's fees, and eviction for attempting to enforce the agreement and for reporting the conduct to regulators.

**Detailed Statement of Facts**

1. On **December 29, 2025**, Mr. Totten sent a written settlement offer stating that his client, 2017-1 IH Borrower LP, would **"account and remit $7,000.00 to Parker"** within ten business days in exchange for dismissal of claims for bankruptcy automatic stay violations.

2. I accepted the settlement and complied by submitting a motion to dismiss my claims with the Bankruptcy Court.

3. On **January 9, 2026**, instead of sending payment, Mr. Totten sent a ledger showing the $7,000.00 applied as a credit against alleged rent.

4. No part of the settlement authorized any offset, credit, or accounting maneuver in lieu of payment.

5. On **January 10, 2026**, Mr. Totten sent an email claiming that transmitting a ledger constituted "remittance" and asserting that I would be committing **defamation** and **malicious abuse of process** if I pursued court enforcement or contacted regulators.

6. He further threatened:

   o To treat court enforcement as an **anticipatory breach**;

   o To seek attorney's fees and eviction against me for asserting my rights.

7. These statements are legally false. Enforcing a settlement and reporting misconduct are protected activities. Mr. Totten's threats were designed to intimidate me, a pro se litigant, into abandoning enforcement of a binding contract.

---

**Rules Violated**

Mr. Totten's conduct violates:

- **Rule 3.1** — Frivolous legal positions

- **Rule 4.1** — False statements of law and fact

- **Rule 4.4(a)** — Using means to harass, intimidate, or burden

- **Rule 8.4(a), (c), (d)** — Dishonesty, misrepresentation, and conduct prejudicial to justice

Threatening defamation and abuse-of-process claims to suppress lawful court filings and regulatory complaints is unethical and coercive.

---

**Harm Caused**

Mr. Totten's conduct:

- Prevented payment of a settlement;

- Attempted to block court enforcement;

- Attempted to deter regulatory reporting;

- Placed me under improper legal threat as a bankruptcy debtor and tenant.

---

**Relief Requested**

I respectfully request that the State Bar of Georgia:

- Thoroughly Investigate Mr. Totten's conduct in this case and all related Invitation Homes cases;

- Impose appropriate discipline; and

- Review whether his firm engages in similar coercive settlement practices.

---

**Signature**

Curtis Parker
(770) 369-6521

**Matthew Totten**

| | |
|---|---|
| **From:** | Curtis Parker <curtis.parker1776@gmail.com> |
| **Sent:** | Thursday, January 15, 2026 7:06 PM |
| **To:** | Matthew Totten |
| **Subject:** | Fwd: Receipt of Grievance |
| **Attachments:** | 1_GA Bar Association Complaint.pdf; Motion to Enforce Settlement Agreement.pdf |

**External Sender** - From: (Curtis Parker <curtis.parker1776@gmail.com>)
This message came from outside your organization.

<span style="float:right">Learn More</span>

The following was submitted on behalf of Curtis Parker, Pro Se Plantiff.

Regards.

 Emergency Motion for Temporary Restraining Order.pdf

---------- Forwarded message ---------
From: **OGC** <OGC@gabar.org>
Date: Thu, Jan 15, 2026 at 7:02 PM
Subject: Receipt of Grievance
To: Curtis Parker <Curtis.Parker1776@gmail.com>

The State Bar of Georgia is in receipt of your grievance submitted via our online portal. Your grievance will be placed in line for review. Please be aware that it may take several weeks for the initial review to be completed depending on the number of grievances we have received. Please do not make multiple or duplicate submissions as this will delay processing.

**Please do not reply to this email. This email address is not monitored.**

**Matthew Totten**

| | |
|---|---|
| **From:** | Matthew Totten |
| **Sent:** | Saturday, January 10, 2026 11:20 AM |
| **To:** | 'Curtis Parker' |
| **Subject:** | RE: Voice mail to Curtis Parker |
| **Attachments:** | Re: Voice mail to Curtis Parker; Re: 25-61216-bem Notice (BK); AIRBNB Parks - Houses for Rent in Dacula, Georgia - Airbnb.pdf; Re: 25-61216-bem Notice (BK) |

Mr. Parker –

Your statements and recitation in the below email are baseless and unfounded – resultingly, any of your threatened action would be defamatory and malicious abuse of process, at a minimum.

Particularly, within the settlement terms it was agreed that my client would "account and remit" a certain amount. An "accounting" is defined as a "statement by which someone seeks to describe or explain an event", including a "detailed statement of the debits and credits between parties to a contract." ACCOUNT, Black's Law Dictionary (12th ed. 2024). My client has accomplished exactly that in crediting the ledger provided as to post-petition sums accruing due to your continued occupancy of the subject real property in the agreed amount. My client similarly timely remitted – transmitted, as defined within Black's Law – the statement applying the agreed upon sum to you, as you acknowledge in your threatening email. There unequivocally is no ambiguity here.

My client expressly did not address whatsoever or waive any of the post-petition sums owed to it within the settlement – I have attached it again hereto as a reference. Resultingly, based upon the agreed settlement terms, my client has fully performed its to-date obligations within the settlement.

Moreover, in light of your express acknowledgment in writing – which was previously verified independently via AirBnB as reflected in the attached – you admittedly were in violation of several of the lease provisions prohibiting subletting of the property as an income-producing short term rental (until December 30th, when you admittedly ceased such operations), which was also an express violation of the HOA bylaws and resulted in fines being assessed by the HOA against my client.

I will not go through and correct your numerous misstatements of fact in your email, but at no point did I "request[] the address by which to remit the funds" – I simply asked for you to confirm your forwarding address. See attached.

To the extent that you do elect to frivolously move forward with any threatened motion to enforce the agreed-upon and performed (at least by my client to-date) settlement, my client intends to enforce the settlement provisions and seek recovery of its attorney's fees against you in doing so, as contemplated within the settlement.

My client may also elect to consider your filing of such a frivolous motion – should you elect to pursue such baseless action on Monday, as threatened - as an anticipatory breach of the settlement by you, namely you refusing to vacate the subject property by 1/30/26. In either event, my client would be well-founded in seeking its attorney's fees incurred in any dispossessory proceeding filed, as authorized by the order entered modifying the automatic stay, in similarly enforcing the settlement agreement.

Govern yourself accordingly.



**Matthew F. Totten**
*Managing Attorney*

Phone (404) 692-4342    Email mft@tottenfirm.com
Mailing Address 5579 Chamblee-Dunwoody Rd, Ste B-136, Atlanta, GA 30338
Web http://www.tottenfirm.com



**Notice**: This e-mail message and all attachments transmitted with it may contain legally privileged and confidential information intended solely for the use of the addressee. If the reader of this message is not the intended recipient, you are hereby notified that any reading, dissemination, distribution, copying, or other use of this message or its attachments is strictly prohibited. If you have received this message in error, please notify the sender immediately by the telephone number listed above and delete this message and all copies and backups thereof. Thank you.

---

**From:** Curtis Parker <curtis.parker1776@gmail.com>
**Sent:** Saturday, January 10, 2026 8:14 AM
**To:** Matthew Totten <mft@tottenfirm.com>
**Subject:** Re: Voice mail to Curtis Parker

**External Sender** - From: (Curtis Parker <curtis.parker1776@gmail.com>)
This message came from outside your organization.

Learn More

Mr. Totten,

I am in receipt of your email and the attached ledger.

You and your client's unilateral decision to apply the agreed-upon $7,000.00 settlement payment as a "credit" toward an alleged rental balance constitutes a material breach of the settlement agreement.

There is **nothing in the settlement terms**—express or implied—that authorizes Invitation Homes or 2017-1 IH Borrower LP to apply the settlement funds to any balance, ledger, or accounting. The agreement plainly states that your client "shall account and remit $7,000.00 to Parker" within ten business days. "Remit" does not mean internally offset, recharacterize, or condition payment on disputed accounting entries. You and your client requested the address by which to remit the funds as agreed,

The settlement, read as a whole, gives the clear and reasonable impression that the matter was being **resolved**, not converted into a unilateral accounting maneuver to your client's benefit after acceptance. Any ambiguity would be construed against the drafter—your client.

Critically, I relied on this agreement to my detriment. In good faith compliance with the settlement, I provided a Motion to Dismiss to the Bankruptcy Court after being requested to do so by yourself **before any funds were disbursed**, relinquishing active claims and leverage in reliance on your client's performance. Your client's post-acceptance conduct undermines the very basis of that reliance. I would ask that you review and consider this action as being cause for a Georgia Bar complaint.

We consider this action treacherous and a breach of contract. **As a result, your client's conduct voids the agreed-upon contract unless immediately cured. If not cured before motions are filed the new settlement amount is $25,000**

Unless the $7,000.00 settlement payment is promptly remitted to me as agreed—separate and apart from any internal ledger, offset, or accounting manipulation—I will proceed accordingly. This includes, but is not limited to:

2

**Matthew Totten**

---

| | |
|---|---|
| **From:** | Curtis Parker <curtis.parker1776@gmail.com> |
| **Sent:** | Monday, December 29, 2025 5:09 PM |
| **To:** | Matthew Totten |
| **Subject:** | Re: Voice mail to Curtis Parker |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |

**External Sender** - From: (Curtis Parker <curtis.parker1776@gmail.com>) This message came from outside your organization.    Learn More

Good evening Mr. Totten,

After careful review, I accept the counter offer from
your client, Invitation Homes. I have also reviewed the attached document to be filed with the court and
am approving.

Thank you for your prompt attention to this matter.

Regards,

Curtis Parker.

On Monday, December 29, 2025, Matthew Totten <mft@tottenfirm.com> wrote:

FOR PURPOSES OF SETTLEMENT AND COMPROMISE


Mr. Parker –


Thank you again for breaking out your assertions with particularity to clarify the ask on your settlement
offer.


My client counteroffers your settlement terms as follows:

**Matthew Totten**

| | |
|---|---|
| **From:** | Curtis Parker <curtis.parker1776@gmail.com> |
| **Sent:** | Wednesday, December 31, 2025 11:50 AM |
| **To:** | Matthew Totten |
| **Subject:** | Re: 25-61216-bem Notice (BK) |

**External Sender** - From: (Curtis Parker <curtis.parker1776@gmail.com>)
This message came from outside your organization.

Learn More

Hello Mr Totten,
I wanted to make you aware the house is no longer listed on Airbnb effective yesterday. I was also wanting to request the funds be direct deposited into my account due to the mail is being forwarded. Please advise what account information is needed.
Thanks

Sent from my iPhone


On Dec 29, 2025, at 5:38 PM, Matthew Totten <mft@tottenfirm.com> wrote:


Mr. Parker –

See attached notice filed with the bankruptcy court, as filed.

Thanks



**Matthew F. Totten**
*Managing Attorney*

**Phone** (404) 692-4342    **Email** mft@tottenfirm.com
**Mailing Address** 5579 Chamblee-Dunwoody Rd, Ste B-136, Atlanta, GA 30338
**Web** http://www.tottenfirm.com

<image002.png>

**Notice**: This e-mail message and all attachments transmitted with it may contain legally privileged and confidential information intended solely for the use of the addressee. If the reader of this message is not the intended recipient, you are hereby notified that any reading, dissemination, distribution, copying, or other use of this message or its attachments is strictly prohibited. If you have received this message in error, please notify the sender immediately by the telephone number listed above and delete this message and all copies and backups thereof. Thank you.

**From:** no-reply-notices@ganb.uscourts.gov <no-reply-notices@ganb.uscourts.gov>
**Sent:** Monday, December 29, 2025 5:36 PM
**To:** CourtMail@ganb.uscourts.gov
**Subject:** 25-61216-bem Notice (BK)

https://www.airbnb.com/rooms/13550778637010946192location=Dacula%2C%20GA%203...



Anywhere    Any week    Add guests




Show all photos






 Parks

Parks - Houses for Rent in Dacula, Georgia, United States - Airbnb

Parks - Houses for Rent in Dacula, Georgia, United States - Airbnb    https://www.airbnb.com/rooms/13550778637010946192?location=Dacula%2C%20GA%203...

12/22/2025, 10:38 PM

# Entire home in Dacula, Georgia

6 guests · 3 bedrooms · 3 beds · 2 baths

| Guest favorite | One of the most loved homes on Airbnb, according to guests | 4.88 ★★★★★ | 41 Reviews |



**Hosted by Curtis**

9 months hosting

**Self check-in**
Check yourself in with the keypad.

**Extra spacious**
Guests love this home's spaciousness for a comfortable stay.

**Peace and quiet**
Guests say this home is in a quiet area.

Some info has been automatically translated. **Show original**

Relax with the whole family at this peaceful place to stay.

## Add dates for prices

| CHECK-IN | CHECKOUT |
| Add date | Add date |

| GUESTS | |
| 1 guest | ⟩ |

Check availability

🚩 **Report this listing**

2 of 9

https://www.airbnb.com/rooms/13550778637010946197location=Dacula%2C%20GA%203...

Parks - Houses for Rent in Dacula, Georgia, United States - Airbnb

12/22/2025, 10:38 PM

## Where you'll sleep

1 / 2





**Bedroom 1**
1 king bed

**Bedroom 2**
1 queen bed

## What this place offers

Kitchen

Wifi

Free parking on premises

Pets allowed

TV



Parks - Houses for Rent in Dacula, Georgia, United States - Airbnb
https://www.airbnb.com/rooms/1355077863701094619?location=Dacula%2C%20GA%203...
12/22/2025, 10:38 PM
4 of 9

◎ Washer

◎ Free dryer

❄ Air conditioning

▦ Indoor fireplace

📷 Exterior security cameras on property

**Show all 21 amenities**

## Select check-in date

Add your travel dates for exact pricing

### December 2025

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 |   |   |   |

### January 2026

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 |

https://www.airbnb.com/rooms/1355077863701094619?location=Dacula%2C%20GA%203...

Parks - Houses for Rent in Dacula, Georgia, United States - Airbnb

12/22/2025, 10:38 PM

Clear dates

## 4.88

### Guest favorite

This home is a guest favorite based on ratings, reviews, and reliability

| Overall rating | Cleanliness | Accuracy | Check-in | Communication | Location | Value |
|---|---|---|---|---|---|---|
| 5 | 4.8 | 4.9 | 5.0 | 4.9 | 5.0 | 4.8 |
| 4 | | | | | | |
| 3 | | | | | | |
| 2 | | | | | | |
| 1 | | | | | | |

**Tram**
4 years on Airbnb

★★★★★ · 1 day ago · Group trip

Great stay! The place was very clean, comfortable, and

**Shaneika**
Grovetown, Georgia

★★★★★ · 2 weeks ago · Stayed one night

This home was a great fit for my close friends and I. It



5 of 9

was peaceful, pleasant, and beautiful. We felt safe and comfortable for our one night stay.

exactly as described. The host was friendly and responsive. Would definitely stay again.



**Sharon**
Taylors, South Carolina

★★★★★ · 1 week ago · Stayed one night

Great space for a girlfriend weekend getaway. Extremely clean and spacious. Highly recommend, we would stay there again.

**Jodie**
Hoschton, Georgia

★★★★★ · 4 weeks ago · Stayed a few nights

This home was perfect and Curtis was very responsive. It was near everything including shopping, I-85, Mall of Georgia, restaurants, etc. The house was spotless an...

Show more



**Kimberly**
Greenville, South Carolina

★★★★☆ · November 2025 · Stayed with a pet

Very spacious home in nice neighborhood. Great fenced yard for pets. It is listed as no essentials and that is the case. Also, no extra linens, pillows, blankets...

Show more

**Cortney**
Chapin, South Carolina

★★★★★ · 3 weeks ago · Group trip

Sweet house in a quiet established neighborhood. We appreciated that there were plenty of bathroom linens and hot water. The huge tv was a hit with our teens. A...

Show more

Show all 41 reviews          How reviews work

# Where you'll be

https://www.airbnb.com/rooms/135507786370109461 9?location=Dacula%2C%20GA%203...

12/22/2025, 10:38 PM

Parks - Houses for Rent in Dacula, Georgia, United States - Airbnb

Dacula, Georgia, United States

## Meet your host

## Host details

**C** Curtis
Host

**41**
Reviews

**4.88★**
Rating

**9**
Months hosting

Response rate: 100%
Responds within an hour

**Message host**

To help protect your payment, always use Airbnb to send money and communicate with hosts.

## Things to know

**Cancellation policy**
Add your trip dates to get the
cancellation details for this stay.
Add dates

**House rules**
Check-in after 3:00 PM
Checkout before 11:00 AM
6 guests maximum
Learn more

**Safety & property**
Exterior security cameras on property
Carbon monoxide alarm
Smoke alarm
Learn more

Airbnb  ›  United States  ›  Georgia  ›  Gwinnett County

## Support

Help Center

Get help with a safety issue

AirCover

Travel insurance

Anti-discrimination

Disability support

Cancellation options

Report neighborhood concern

## Hosting

Airbnb your home

Airbnb your experience

Airbnb your service

AirCover for Hosts

Hosting resources

Community forum

Hosting responsibly

Airbnb-friendly apartments

Join a free Hosting class

Find a co-host

Refer a host

## Airbnb

2025 Summer Release

Newsroom

Careers

Investors

Gift cards

Airbnb.org emergency stays

© 2025 Airbnb, Inc.  ·  Privacy  ·  Terms  ·  Your Privacy Choices

⊕ English (US)    $ USD

**Matthew Totten**

| | |
|---|---|
| **From:** | Curtis Parker <curtis.parker1776@gmail.com> |
| **Sent:** | Friday, January 2, 2026 2:29 PM |
| **To:** | Matthew Totten |
| **Subject:** | Re: 25-61216-bem Notice (BK) |

**External Sender** - From: (Curtis Parker <curtis.parker1776@gmail.com>)
This message came from outside your organization.

Learn More

Hello Mr Totten,
2805 Wadley Ln
Dacula Ga 30019.

Thanks
Sent from my iPhone

On Jan 2, 2026, at 1:19 PM, Matthew Totten <mft@tottenfirm.com> wrote:

Mr. Parker –

Can you please provide your forwarding address?

Thanks



**Matthew F. Totten**
*Managing Attorney*

**Phone** (404) 692-4342    **Email** mft@tottenfirm.com
**Mailing Address** 5579 Chamblee-Dunwoody Rd, Ste B-136, Atlanta, GA 30338
**Web** http://www.tottenfirm.com
<image002.png>

**Notice**: This e-mail message and all attachments transmitted with it may contain legally privileged and confidential information intended solely for the use of the addressee. If the reader of this message is not the intended recipient, you are hereby notified that any reading, dissemination, distribution, copying, or other use of this message or its attachments is strictly prohibited. If you have received this message in error, please notify the sender immediately by the telephone number listed above and delete this message and all copies and backups thereof. Thank you.

**From:** Curtis Parker <curtis.parker1776@gmail.com>
**Sent:** Wednesday, December 31, 2025 11:50 AM
**To:** Matthew Totten <mft@tottenfirm.com>
**Subject:** Re: 25-61216-bem Notice (BK)

Hello Mr Totten,

I wanted to make you aware the house is no longer listed on Airbnb effective yesterday. I was also wanting to request the funds be direct deposited into my account due to the mail is being forwarded. Please advise what account information is needed.
Thanks

Sent from my iPhone

On Dec 29, 2025, at 5:38 PM, Matthew Totten <mft@tottenfirm.com> wrote:

Mr. Parker –

See attached notice filed with the bankruptcy court, as filed.

Thanks

<image001.png>

**Matthew F. Totten**
*Managing Attorney*

**Phone** (404) 692-4342     **Email** mft@tottenfirm.com
**Mailing Address** 5579 Chamblee-Dunwoody Rd, Ste B-136, Atlanta, GA 30338
**Web** http://www.tottenfirm.com
<image002.png>

**Notice**: This e-mail message and all attachments transmitted with it may contain legally privileged and confidential information intended solely for the use of the addressee. If the reader of this message is not the intended recipient, you are hereby notified that any reading, dissemination, distribution, copying, or other use of this message or its attachments is strictly prohibited. If you have received this message in error, please notify the sender immediately by the telephone number listed above and delete this message and all copies and backups thereof. Thank you.

**From:** no-reply-notices@ganb.uscourts.gov <no-reply-notices@ganb.uscourts.gov>
**Sent:** Monday, December 29, 2025 5:36 PM
**To:** CourtMail@ganb.uscourts.gov
**Subject:** 25-61216-bem Notice (BK)

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30-page limit do not apply.**

**U.S. Bankruptcy Court**

**Northern District of Georgia**

Notice of Electronic Filing

The following transaction was received from Matthew Franklin Totten entered on 12/29/2025 at 5:36 PM EST and filed on 12/29/2025

**Case Name:**        Curtis Parker
**Case Number:**      25-61216-bem
**Document Number:** 30

**Docket Text:**
Notice of Settlement, Debtor's Motions Against Respondent Filed by Matthew Franklin Totten on behalf of 2017-1 IH Borrower LP. (related document(s) [11], [15], [17], [21], [22], [23])(Totten, Matthew)

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** Notice of Settlement.pdf
**Electronic document Stamp:**
[STAMP GANBStamp_ID=875559624 [Date=12/29/2025] [FileNumber=90725598-0 ] [ed755019a8051c240c7108bc57aba09e058f373cec4715549a8f2164968974a8a1c 5411692dd1d9849cc90bcd447b3b60cbecdf2a55cec11791d6b70cd6b1293]]

**25-61216-bem Notice will be electronically mailed to:**

Kyle A. Cooper
kylecoopertrustee@gmail.com, ecf.alert+Cooper@titlexi.com

Office of the United States Trustee
ustpregion21.at.ecf@usdoj.gov

Matthew Franklin Totten on behalf of Creditor 2017-1 IH Borrower LP
mft@tottenfirm.com, jet@tottenfirm.com,mtots@recap.email

**25-61216-bem Notice will not be electronically mailed to:**

Curtis Parker
1149 Autumn Glen Way
Dacula, GA 30019

<Doc 30 - Notice of settlement.pdf>

**Matthew Totten**

| | |
|---|---|
| **From:** | Curtis Parker <curtis.parker1776@gmail.com> |
| **Sent:** | Thursday, January 15, 2026 6:57 AM |
| **To:** | Elvis Gorinjac; Matthew Totten |
| **Subject:** | Re: 1149 Autumn Glen Way, Dacula, GA 30019 - Move Out/ Lock Box Drop Off |
| **Attachments:** | Lockbox Operation Instructions.pdf |

**External Sender** - From: (Curtis Parker
<curtis.parker1776@gmail.com>)
This message came from outside your organization.

Learn More

**Subject: Formal Notice of Breach and Demand to Cure**

Good morning Mr. Gorinjac,

Please take formal notice that Invitation Homes ("IH") is in **material breach** of the agreement under which IH committed to remit **Seven Thousand Dollars ($7,000.00)** to me in exchange for my agreement to vacate the premises on or before **January 30, 2026**.

IH's failure to remit the agreed-upon funds constitutes a **unilateral and material breach**, thereby rendering the agreement **null, void, and unenforceable in its entirety**, including but not limited to the stated move-out date, unless the breach is cured.

**Demand is hereby made** that IH cure this breach by remitting the full **$7,000.00 no later than 5:00 PM today**. Absent timely cure, I will consider the agreement rescinded and will pursue all available legal remedies without further notice.

Additionally, I have reason to believe that IH has attempted, or directed others, to interfere with utilities or services held in my name. Any attempt to alter, transfer, disconnect, or otherwise interfere with my utilities constitutes **unlawful self-help** and an additional violation of my rights. Any such action will give rise to **additional damages in the amount of $5,000.00**, without limitation to other remedies available at law or in equity.

IH is further directed to **cease and desist** from placing any lockbox at the property and to immediately reverse any attempts to modify or interfere with my utilities or services. IH shall not interrupt, discontinue, or request changes to any services associated with the premises.

This correspondence is provided **without waiver of any rights, claims, or remedies**, all of which are expressly reserved.

Regards,

Curtis Parker

Sent from my iPhone

On Jan 12, 2026, at 11:07 AM, Elvis Gorinjac <Elvis.Gorinjac@invitationhomes.com> wrote:

Good Morning,

Good Day Mr. Parker my name is Elvis Gorinjac I am with Invitation Homes. I am reaching out to you because we received communication from your property manager that you would be moving out as of 1/30/26 and we needed to schedule a lockbox drop off to which you can leave your keys in upon moving out. I have our superintendent Rick scheduled to come by the home on Monday 1/26/26 to drop off a lockbox for you. You are not required to be home for this the superintendent will just leave the lockbox on the front door and the code will be (1325).  Upon moving out if you could just place one key in the lockbox and take a picture and send it back to me confirming that you are out of the home and they key is in the lockbox. From there I will forward all of that back over to your property manager so they can notate your account accordingly. Any other keys or garage remotes you have can be left on the kitchen counter/ kitchen drawer we just need one key to be placed in the lockbox so that we are able to gain possession of the home without having to drill the locks. I have also included the lockbox operating instructions in the attachment above just in case you need them, if you have any further questions or concerns please feel free to reach out. Thank you for your time at Invitation Homes and have a great day.

Thank You,

**Elvis Gorinjac**
Customer Service Representative – Field Services

 

**phone** 678.381.0411
elvis.gorinjac@invitationhomes.com
8625 Dunwoody Pl, Sandy Springs, GA 30350

invitationhomes.com  |  Contact us  |  Maintenance  |  Payments  |  Download Maintenance App

**Please note as of March 19 our workspace is under construction. We will not be able to accommodate any in-person visits or face-to-face rent payments. We expect our office to reopen in November 2025. Learn more here.**

If you believe you have received this email in error, please notify the sender by reply transmission and delete the message. Any disclosure, copying, and/or distribution of this message, or the taking of any action based on it, by you is strictly prohibited.  Invitation Homes cannot guarantee that the contents of this email transmission, including any attachments, are error-free or secure from viruses or similar defects.  Invitation Homes urges using caution when opening attachments, navigating to hyperlinks, or otherwise responding to this email, and accepts no liability for any damages that may arise as a result of this email transmission.

# Lockbox Operation Instructions

**Vault Locks (Black with silver handle)**
1. Enter and center the lockbox code (**1325**)
2. Hold the top front of the lockbox and pull the cover towards you (the hinge is on the bottom)
3. Insert a key (place remaining keys and garage remotes on the kitchen counter)
4. Close the lockbox and scramble the numbers on the front (to any other number combination) to lock it.



**Master Lock (Black and gray with black handle)**
1. Slide down black cover that hides the numbers (if closed)
2. Enter and center the lockbox code (**1325**). The numbers should be centered along the gray raised line on the number panel
3. Pull down on the black lever at the left of the numbers: the lockbox cover should spring open towards you (hinge is on the bottom)
4. Insert a key (place remaining keys and garage remotes on the kitchen counter)
5. Close the lockbox and scramble the numbers on the front (to any other number combination) to lock it.







## Summary of Lease Charges

This Summary of Lease Charges ("Summary") is hereby incorporated by reference into and made part of the attached Renewal Rental Agreement ("Lease"). Each reference in the Lease to any term of this Summary shall have the meaning as set forth in this Summary. In the event of a conflict between the terms of this Summary and the Lease, the terms of the Lease shall prevail. Any capitalized terms used herein and not otherwise defined shall have the meaning as set forth in the Lease.

**Residence Address**: <u>1149 Autumn Glen Way, Dacula, GA 30019</u>

**Lease Term:**

<u>04/13/2025</u>      to      <u>04/12/2026</u>                $ <u>2408.00</u>

| MONTHLY RENTAL CHARGES | | DEPOSITS (Previously Paid) | |
|---|---|---|---|
| **Base Rent** | $ 2408.00 | **Refundable Security Deposit** | $ 2,241.00 |
| **Pet Rent** | $ 0.00 | **TOTAL DEPOSITS PAID** | $ 2,241.00 |
| **Pool Service Fee** | $ 0.00 | | |
| **Landscaping Fee** | $ 0.00 | | |
| **Smart Home** | $ 40.00 | | |
| **Air Filter Service Fee** | $ 9.95 | | |
| **Internet Package Fee** | $ 0.00 | | |
| **TOTAL MONTHLY RENT** | $ 2,457.95 | | |

Georgia_Renewal_Lease_2023UNL.v.1.03

Confidential and Proprietary – ©2023 Invitation Homes. All Rights Reserved.

# RENEWAL RENTAL AGREEMENT

This **Renewal Rental Agreement** ("**Lease**") is entered into on <u>2/18/2025</u> ("**Effective Date**") by and between <u>2017-1 IH Borrower LP</u>, the owner of the Residence ("**Landlord**"); and

| | |
|---|---|
| **Resident's Name**: <u>Curtis Parker</u><br>**Primary Phone #**: <u>7703696521</u> | **Resident's Name**:<br>**Primary Phone #**: |
| **Resident's Name**:<br>**Primary Phone #**: | **Resident's Name**:<br>**Primary Phone #**: |
| **Resident's Name**:<br>**Primary Phone #**: | **Resident's Name**:<br>**Primary Phone #**: |
| **Resident's Name**:<br>**Primary Phone #**: | **Resident's Name**:<br>**Primary Phone #**: |

(collectively, **"Resident"** whether one or more).

**1.     RENTAL PROPERTY**.  Resident agrees to rent from Landlord and Landlord agrees to rent to Resident the real property and any other improvements at the address specified on the Summary page (collectively, the "**Residence**" or "**Premises**").  Any current balance owed by Resident to Landlord shall not be canceled or extinguished by Landlord and Resident entering into this Lease and shall be a continuing obligation of Resident until paid in full.

**2.     OCCUPANTS**.  In addition to Resident, the following individuals will also reside at the Residence ("**Occupants**"): _____

_____.

     **2.1.     **Resident represents, warrants, and covenants that all persons who will reside at the Residence as Occupants are listed above.  All Occupants eighteen (18) and older are subject to the same criminal and credit background approval required of Residents.  No one else may occupy the Residence. Persons not listed above must not stay in the Residence for more than seven (7) consecutive days without Landlord's prior written consent, and no more than thirty (30) days in a calendar year.  Any new resident or occupant will require the prior written acceptance and approval of Landlord.  If an occupancy change is accepted and approved by Landlord during the Lease Term, a new lease or an amendment to this Lease shall be executed to memorialize such occupancy change as required by Landlord.  All references in this Lease to **"Resident Party"** or **"Resident Parties"** shall include Resident, the Occupants, and any guests or invitees of Resident or the Occupants.

**3.     LEASE TERM**.    The term of this Lease (the **"Lease Term"**) shall commence on <u>04/13/2025</u> (the "**Commencement Date**") and end on <u>04/12/2026</u> at 5:00 p.m. local time where the Residence is located.  Resident shall vacate the Residence immediately upon termination of the Lease unless: (a) Landlord and Resident have extended this Lease in writing or signed a new rental agreement, or (b) a month-to-month tenancy is created pursuant to the following paragraph.

     **3.1.     MONTH-TO-MONTH TENANCY**.  The Lease Term shall become month-to-month if, upon expiration of the initial Lease Term, the Lease Term has not otherwise been terminated, extended, or



Confidential and Proprietary – ©2023 Invitation Homes.  All Rights Reserved.

renewed.  Landlord may increase the monthly Rent by giving Resident written notice of such increase at least thirty (30) days prior to the commencement of the rental period for which the adjustment will apply or such notice period as may be required by Applicable Law.  Resident may remain in possession of the Residence and the tenancy will then be on a month-to-month basis at the increased monthly Rent rate and subject to all of the terms and conditions of this Lease until either party terminates the tenancy in accordance with this Lease and Applicable Law.  The term "**Applicable Law**" shall mean all laws, ordinances, directives, temporary orders, and rules and regulations enacted now or hereinafter by any governmental authority with jurisdiction over the Residence.

**3.2.    NOTICE TO VACATE**.  Prior to the expiration of the Lease Term, subject to Applicable Law, either party may terminate the Lease by providing at least sixty (60) days advance written notice (thirty (30) days for a month-to-month tenancy) to the other party.  Rent shall be due and payable through the end of the notice period or the expiration of the Lease Term, whichever occurs later.  Resident's failure to provide the full sixty (60) days' advance notice of intent to terminate the Lease (thirty (30) days for a month-to-month lease) will result in Resident being charged for the balance of the notice period in an amount equal to the daily pro rata rent, not to exceed two months' rent.

## 4.    RENT AND SECURITY DEPOSIT.

**4.1.    SECURITY DEPOSIT**.  The amount set forth on the Summary as Security Deposit ("**Security Deposit**") was previously paid to Landlord pursuant to Resident's initial lease agreement and that same amount has been transferred and deposited with Landlord as security for Resident's payment and performance of the obligations under this Lease.  Subject to Applicable Law, all or any portion of the Security Deposit may be used or retained by Landlord as reasonably necessary to: (a) clean, repair, and restore the Residence and any appliances, furniture, fixtures, equipment, and other property supplied by Landlord to its condition on the Commencement Date, excepting normal wear and tear; or (b) cure Resident's default in payment of any Rent, late charges, dishonored check charges, utility charges, or other charges which may be owed by Resident pursuant to this Lease.  The retention of the Security Deposit shall not limit Landlord's right to proceed against Resident for claims above the amount of the Security Deposit.  The Security Deposit shall not be used by Resident in lieu of payment of Rent, Late Charges, or other amounts owed.  No interest shall be paid on the Security Deposit unless required by Applicable Law.  The Security Deposit shall be held in a separate account at Bank of America, Northlake Branch, 4144 Lavista Rd, Tucker, GA 30084.

**4.2.    RENT**.  "Base Rent" shall mean the monthly rent amount as outlined on the Summary. Base Rent shall increase to $ _N/A_ beginning on ___N/A___.  "Rent" shall mean the total monthly rent as outlined on the Summary. Resident shall pay Rent in advance, on the 1st day of each month without demand or offset and with no grace period.    **All Rent payments should be made electronically as stated in Section 4.3, with the exception of when Landlord serves a written notice of non-payment of Rent or if payments of Rent are returned for non-sufficient funds**.

**4.3.    METHOD OF PAYMENTS**.  The Security Deposit and all Rent shall be paid to Landlord or such other agent of Landlord as Landlord may designate by written notice to Resident.  Rent payments will only be accepted from Resident or as required by Applicable Law.  If Landlord agrees or is required by Applicable Law to accept payment of Rent from a third party, acceptance of such payment shall not create a tenancy between Landlord and the third party.  **Subject to Applicable Law and pursuant to Section 4.2, monthly installments of Rent should be paid in U.S. Currency by electronic payment.**

**Electronic Payment:**  Resident shall use the online resident portal to pay Rent via electronic

Georgia_Renewal_Lease_2023UNL.v.1.03



payment at www.invitationhomes.com, following the instructions for current residents to Pay My Rent.  If Resident elects to pay online by credit card instead of ACH transfer, a convenience fee or surcharge may be charged by the merchant service provider in an amount not to exceed the maximum amount permitted by Applicable Law.  Landlord reserves the right to pass through such charge to Resident.

**4.4.    LATE CHARGES**.  If the total Rent is not received by 11:59 p.m. on the third (3rd) day of the month, Resident agrees to pay a late charge equal to $115.00 (the "**Late Charge**").  Resident acknowledges that late payment of Rent will cause Landlord to incur costs and expenses, including processing, enforcement and accounting expenses, and charges imposed on Landlord, the exact amounts of which are extremely difficult and impractical to determine.  Resident agrees that the Late Charge represents a fair and reasonable estimate of the costs Landlord may incur by reason of late payment. The Late Charge, which shall be considered additional Rent, does not establish a grace period; Landlord may serve a written notice of non-payment of Rent required by Applicable Law if Rent is not paid on its due date.  If Landlord serves a written notice of non-payment of rent, Landlord may require that the payment called for by the notice be made by certified cashier's check, in person, at the office location designated by Landlord.

**4.5.    NON-SUFFICIENT FUNDS**.  In addition to any Late Charges, Resident also agrees to pay a non-sufficient funds fee ("NSF Charge") of $30.00 for each check or payment that is not honored by Resident's bank or financial institution, which NSF Charge will not exceed the maximum amount that may be charged pursuant to Applicable Law.  In the event that any payments of Rent during the Lease Term are returned due to non-sufficient funds, Resident may be "locked out" of the online payment system and shall be required to make such payments, together with any and all of Resident's outstanding balance, Late Charge, NSF Charge, and any other amounts due to Landlord hereunder, by certified cashier's check, in person, at the office location, designated by Landlord in connection with this Lease. Only upon personal receipt by Landlord or Landlord's representative of such payment shall Resident be able to make subsequent electronic payments online.

Notwithstanding the foregoing, if any payments of Rent are returned due to non-sufficient funds during the Lease Term, Resident acknowledges and agrees that Landlord may, in its sole discretion, upon notice to Resident require Resident to make all subsequent payments required hereunder by certified cashier's check in person at the office location, designated by Landlord.

Any Late Charge or NSF Charge will be deemed additional Rent and must be paid with the current installment of Rent.  Landlord's acceptance of any Late Charge or NSF Charge will not constitute a waiver as to any default of Resident.  Landlord's right to collect a Late Charge or NSF Charge will not be deemed an extension of the date Rent is due or prevent Landlord from exercising any other rights and remedies under this Lease or Applicable Law.

**4.6.    APPLICATION OF PAYMENTS**.  Unless otherwise required by Applicable Law, payments received will be applied, without regard to their characterization or earmarking by Resident, as follows: (i) first to any arrears for Base Rent from previous month(s), (ii) then to the Base Rent for the current month (iii) then to other amounts owed that were accrued under the terms of this Lease.

**4.7.    DISCLOSURE TO CREDIT BUREAUS.** Resident acknowledges that and consents to Landlord or Landlord's agent disclosing information about Resident and Resident's tenancy, including but not limited to the amount and timing of rent payments and any debt outstanding to credit reporting agencies, which may then be used in a tenant record, credit report and credit score for the Resident and



Confidential and Proprietary – ©2023 Invitation Homes.  All Rights Reserved.

shared with other landlords and credit grantors. Resident further acknowledges that and consents to Landlord or Landlord's agent periodically making soft inquiries on Resident's credit profile throughout the term of the Lease. Such inquiries will have no impact on Resident's credit score and will not be used by Landlord as the sole reason for any adverse action taken against Resident including any decision not to offer Resident the opportunity to renew the Lease at the end of the term.

**5.    ANIMALS**. Prior to Move-In, Resident must execute the attached Animal Addendum and abide by its terms for the duration of the Lease Term. Resident shall not bring or allow any animal onto the Residence property, even temporarily, at any time without Landlord's prior written approval unless otherwise permitted by Applicable Law.

If Resident keeps a dog or cat that is not considered a service, assist, or companion animal ("Pet") at the Residence, Resident must pay additional fees related to the Pet and, if applicable and in Landlord's sole discretion, certain non-compliance fees as further described and in the amounts set forth in the Animal Addendum and consistent with Appliable Law.

Service, assist, or companion animals for the assistance of a Resident or Resident Parties with a disability shall be permitted by Landlord upon Resident's advance request, provided that Landlord may request documentation or other reasonable evidence verifying disability and a disability-related need for the animal, in compliance with Applicable Law.

**6.    MOVE-IN/MOVE-OUT**.

**6.1.    MOVE-IN.**  Resident has inspected the Residence, including all appliances, landscaping, fixtures, improvements, equipment, hardware, smoke detector(s) and carbon monoxide detector(s), if any, located at the Residence.  Resident shall confirm (a) that the Residence and all such items are clean, in good working order, and fit for use under the Lease, and (b) that the size, number, and features of all rooms and any parking areas or garage at the Residence are approved for Resident's use. Resident must notify Landlord or Landlord's agent of any pre-existing defective conditions within 48 hours of Resident's move-in either in person, via email, or otherwise designated by Landlord.  Otherwise, Resident accepts the Residence in the current "As-Is" condition and warrants that Resident has been given adequate opportunity to fully inspect the Residence and that Resident accepts the Residence, together with all furnishings, if applicable, as being in good condition.  Only items included in Resident's notice to Landlord described above shall be accepted as defective, missing, or in need of remedial action.  The absence of such notice shall be conclusive proof that there is no defective or hazardous equipment or conditions existing as of the start of the tenancy.  Resident agrees and understands such notice is not a request for repairs.  Any required repairs will need to be submitted through a separate work order.

**6.2.    MOVE-OUT**.  Upon vacating the Residence, Resident shall remove all personal possessions and rubbish, steam clean all floors in the Residence, and leave the Residence in as good or better condition as the condition on the Commencement Date, excepting normal wear and tear.  Upon move-out, if Resident chooses to have the carpets cleaned, such cleaning must be performed by a third-party professional carpet cleaning service reasonably acceptable to Landlord and receipt for such cleaning services must be provided to Landlord.  Unless the carpet is cleaned in the manner provided herein, Landlord reserves the right to use a portion of the Security Deposit to professionally clean the carpets.  Resident also shall return all keys and garage door openers, if applicable, or be liable for the replacement cost thereof, and shall provide Landlord with a written statement of forwarding address. Within the time required by Applicable Law, Landlord will provide Resident an itemized written



Docusign Envelope ID: EE8F3960-4434-4121-9D08-8CF3278BA4E9

statement of any amounts deducted and the reasons for the deductions from Resident's Security Deposit, along with a check for any balance of the Security Deposit due to Resident. Landlord may deliver the written statement and balance of the Security Deposit personally to Resident, or by mailing the statement and balance of the Security Deposit to Resident at Resident's forwarding address, or if that address is unknown, at Resident's last known address. The retention of the Security Deposit shall not limit Landlord's right to proceed against Resident for claims above the amount of the Security Deposit.

      **6.3.** **Pre-Move-Out Inspection and Repairs:** (i) After giving or receiving notice of termination of a tenancy, or before the end of the Lease, Resident may request and coordinate with Landlord to have an inspection of the Residence take place prior to termination of the Lease; (ii) If Resident requests such an inspection, Resident will be given an opportunity to remedy identified deficiencies caused by Resident or by Resident Parties prior to termination, consistent with the terms of this Lease; (iii) Any repairs or alterations made to the Residence as a result of this inspection (collectively, "Repairs") must be made at Resident's expense and only after obtaining the prior written approval of Landlord; (iv) Repairs may be performed by Resident or through others, who have adequate insurance and licenses and are approved by Landlord; (v) The work must comply with Applicable Law, including governmental permit, inspection, and approval requirements; (vi) Repairs must be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials; (vii) Landlord may request that Resident: (a) obtain receipts for Repairs performed by others; (b) prepare a written statement indicating the Repairs performed by Resident and the date of such Repairs; and (c) provide copies of receipts and statements to Landlord prior to termination. The pre-move out inspection is done solely as a courtesy and Landlord is not waiving any additional damages or claims it may find after Resident has vacated and returned possession. Comments or suggestions made during the pre-move out inspection do not create any warranty or guarantee as to amounts Resident may be liable, or not liable, for.

**7.** **CONDITION OF RESIDENCE.** Landlord makes absolutely no warranties or representations about the neighborhood or the condition of the Residence, the improvements, utilities, electrical, plumbing, or appliances, except to the extent as required by Applicable Law. Landlord shall not be responsible for loss or damage caused by failure of any appliance (including loss of or damage to food or other perishables) in the event an appliance ceases to operate properly. Resident must satisfy himself or herself prior to move-in as to the neighborhood or area conditions, including schools, proximity and adequacy of law enforcement, crime statistics, proximity of registered felons and other offenders, fire protection, other governmental services, availability, adequacy, and cost of any wired and/or wireless internet connections, other telecommunications or other technology services and installations, proximity to commercial, industrial, or agricultural activities, existing and proposed transportation, construction and development that may affect noise, view, or traffic, airport noise, noise or odor from any source, wild and domestic animals, other nuisances, hazards, or circumstances, cemeteries, facilities and condition of common areas, conditions and influences of significance to certain cultures and/or religions, and personal needs, requirements, and preferences of Resident.

**8.** **USE.** Resident shall not use or permit the Residence to be used for any purpose other than as the principal and primary residence of Resident and any Occupants. Resident agrees that, subject to Applicable Law, the Residence will not be used for operation of a business or other commercial enterprise without Landlord's prior written consent, nor will Resident utilize the Residence for any purpose or in any manner which violates applicable state, federal, or local law or the covenants, conditions, or rules of any applicable homeowner association. Resident is strictly prohibited from subletting all or any portion of the Premises.

Georgia_Renewal_Lease_2023UNL.v.1.03



Confidential and Proprietary – ©2023 Invitation Homes. All Rights Reserved.

**9.      NOTICES**.  Unless another method of delivery is permitted by Applicable Law, any notice to Landlord or Landlord's agent, including Property Manager identified below shall be in writing and delivered personally by hand, or by first class U.S. mail or express or overnight delivery to Landlord at the address below, which address is subject to change by written notice.  Except as otherwise stated in this Lease, and subject to Applicable Law, a notice from Landlord to Resident may be delivered by email to the email address(es) on file.

| **Landlord**: | **Property Manager**: |
|---|---|
| 2017-1 IH Borrower LP | THR Property Management L.P. d/b/a Invitation Homes |
| 8601 Dunwoody Place, Suite 520   Sandy Springs GA 30350 | 8601 Dunwoody Place, Suite 520   Sandy Springs GA 30350 |
| (770) 442-3372 | (770) 442-3372 |

The Property Manager identified above is authorized to manage the Residence and authorized to act for and on behalf of Landlord for service of process, prosecuting eviction actions, and for receiving notices and demands.

Notwithstanding anything in this section to the contrary, a Notice to Vacate pursuant to 3.2 Notice to Vacate, from Resident by email will be accepted by Landlord, and email notices from Landlord to Resident concerning the Lease status, termination, renewal, non-renewal and change in terms will be deemed accepted by Resident.

**10.      UTILITIES**.  Resident is responsible for payment of all utility charges incurred during the Lease Term unless prohibited by Applicable Law.  Subject to Applicable Law, and except as expressly provided herein, Resident shall place all utilities, including all those specified in the attached Utilities Addendum, in Resident's name as of the Commencement Date, and shall pay all charges and related costs directly to the provider until Resident terminates such services.  Resident is required to show proof of utility commencement prior to move-in.  Resident's failure to provide such evidence shall be a default under this Lease, entitling Landlord to enforce all available remedies.  Utilities that require proof are electricity, gas, water, sewer, and garbage services.   In the event that Applicable Law requires Landlord to pay for any utility directly, Resident acknowledges and agrees that Resident shall be obligated to reimburse Landlord for any such amounts paid by Landlord to utility providers, which reimbursement shall be payable electronically as part of Resident's Rent payment, unless some other form of payment is afforded to Resident in accordance with Applicable Law.  If for any reason Resident fails to transfer or maintain all utilities and services in Resident's own name, Resident agrees to reimburse Landlord the full cost of Resident's utility usage and agrees to pay to Landlord an utility administrative fee in the amount described in the Utilities Addendum ("**Utility Admin Fee**") for each utility bill received by Landlord. Resident shall not allow electricity or other utilities to be disconnected or discontinued for any reason or by any means (including nonpayment of bill) until the end of the Lease Term or renewal period.  If at any time any utility shall be turned off or discontinued due to nonpayment by Resident, Resident shall be in default under this Lease for the health and safety violation, and Landlord may, terminate Resident's occupancy of the Residence immediately and commence eviction and collection proceedings, subject to Applicable Law.

If any utilities are not separately metered or submetered, Resident shall pay Resident's proportional share, as reasonably determined and directed by Landlord in accordance with Applicable Laws. Resident shall obtain Landlord's prior written approval, which approval may be withheld in Landlord's sole and absolute discretion, prior to adding any telephone, cable, or data lines to the Residence.  Resident shall

Georgia_Renewal_Lease_2023UNL.v.1.03



Confidential and Proprietary – ©2023 Invitation Homes.  All Rights Reserved.

cooperate with any conservation and recycling program adopted and implemented by Landlord, if any. Landlord does not represent or warrant that any utilities servicing the Residence will not be interrupted because of repairs or alterations to the Residence, fire or other casualty, acts of God, any labor controversy, or other events beyond the control of Landlord.  Any such interruption shall never be deemed to be an eviction of Resident or a disturbance of Resident's use or occupancy of the Residence or render Landlord liable to Resident for damages.  Notwithstanding anything contained in this Lease to the contrary, Landlord does not represent or warrant the availability of telephone service, internet service, satellite or cable television service, or any other service to the Residence, and no such services are guaranteed to be available to the Residence.

Notwithstanding anything to the contrary in this Section, Landlord may, at its option and in its sole discretion, elect to contract directly with the utility service providers providing utilities or services to the Residence, including, without limitation, water, garbage and refuse removal, sewer, natural gas, and electricity.  In the event Landlord elects to contract for utilities directly with the utility or service providers, then Resident must reimburse Landlord for all charges incurred by Landlord along with the Utility Admin Fee and any set-up charges (all such charges being referred to in this Lease as the "Utility Charges") within fifteen (15) days of Landlord's request therefore accompanied by an invoice documenting such Utility Charges owed by Resident.  The Utility Charges will be deemed additional "Rent" under this Lease so that Resident's failure to pay the Utility Charges when due or failure to place and continuously maintain utilities and services in Resident's name, if applicable, will constitute a default under this Lease.

**11.    COMPLIANCE WITH RULES AND REGULATIONS**.  As provided by Applicable Law, Landlord will have the right to establish and, from time to time, change, alter, and amend, and to enforce against Resident reasonable rules and regulations as may be deemed necessary or advisable for the proper and efficient operation, maintenance, and repair of the Residence.  Resident will observe and comply with all reasonable and nondiscriminatory rules and regulations governing the Residence that are posted on the Residence, attached hereto and incorporated herein by this reference, or as may from time to time be delivered to Resident (the "Rules and Regulations").  Resident and any Resident Parties will observe and comply with the Rules and Regulations and with such amendments and additional Rules and Regulations as Landlord may adopt, effective ten (10) days after Landlord gives Resident written notice thereof, or as may be required by Applicable Law.  A violation of the Rules and Regulations after such notice shall be a default under this Lease.

**12.    PROHIBITED ACTIVITY**.  In addition to any requirements established by the municipality or county in which Residence is located, Resident or any Resident Party, shall not (a) engage in criminal activity or any act intended to facilitate criminal activity on or near the Residence, (b) permit the Residence to be used for or to facilitate criminal activity regardless of whether the individual engaging in such activity is a member of the household or a guest; (c) engage in any drug-related activity, including but not limited to, growing, producing, manufacturing, cultivating, possessing with intent to manufacture, selling, using, storing, keeping, or distributing marijuana or any controlled substance (legal or illegal) or drug paraphernalia at or from the Residence or otherwise; (d) engage in any illegal activity, including but not limited to, prostitution, criminal street gang activity, threatening or intimidating assault, including the unlawful use or possession of firearms, on or near the Residence, or threaten the health, safety and/or welfare of Landlord, its agents, other Residents, or neighbors in any manner that constitutes waste or nuisance upon or about the Residence; or (e) disrupt or interfere with Landlord's business operations, or communicate with Landlord, Landlord's agents, or their employees in an unreasonable, discourteous, rude, or hostile manner.  Resident understands and agrees that the use, possession, manufacturing or distribution of marijuana, whether medical or

Georgia_Renewal_Lease_2023UNL.v.1.03



recreational, is strictly prohibited and constitutes a material and irreparable breach of this Lease. Resident agrees and authorizes Landlord to use any arrest record or police-generated reports referring to Resident as reliable direct evidence of Resident's conduct or violation of this section.

**VIOLATION OF ANY OF THE PROVISIONS OF THIS SECTION, OR OF ANY FEDERAL OR APPLICABLE LAWS, SHALL BE A SERIOUS, MATERIAL, AND IRREPARABLE VIOLATION OF THIS LEASE AND GOOD CAUSE FOR IMMEDIATE TERMINATION OF THE TENANCY.**

13.   **MAINTENANCE**.

13.1.   **LANDLORD'S MAINTENANCE OBLIGATIONS**.  Maintenance and repairs of items that significantly impact habitability of the Residence as determined by Landlord in its sole and absolute discretion, or by Applicable Law, shall be deemed "**Major Repairs**."  Landlord shall be responsible for Major Repairs, including repairs to heating or air conditioning systems, roofing, and mechanical, electrical, and defective plumbing systems.

Landlord may, at Landlord's sole discretion, hire contractors to perform maintenance or repairs at the Residence; however, no contractor shall be considered an employee of Landlord.  Resident shall notify Landlord promptly if any contractor fails to perform requested maintenance or repairs.  Notification to a contractor of any further maintenance or repair request does not constitute sufficient notice to Landlord, and Resident agrees to make all maintenance and repair requests directly to Landlord in writing.

13.2.   **RESIDENT'S MAINTENANCE OBLIGATIONS**.  Resident shall, at all times, use, operate, and safeguard the Residence, including any and all furnishings, improvements, equipment, hardware, appliances, landscaping, fixtures, and all mechanical, electrical, gas, and plumbing fixtures located at the Residence, and maintain, at Resident's own expense, the same in a clean and sanitary condition and perform all other maintenance obligations imposed upon Resident under this Lease.  Resident shall be responsible for the performance of all maintenance and repairs that do not constitute a Major Repair and are not Landlord's obligation pursuant to Applicable Law.  Resident's maintenance obligations shall include, without limitation, (a) following all maintenance recommendations of Landlord and any manufacturer recommendations for appliances, equipment, plumbing, and other fixtures and furnishings, (b) maintaining the Residence in a clean, sanitary condition, (c) keeping all drains clear and free of hair, obstructions, and any foreign matter and repair and maintenance of any related drain and sink backups or blockages, (d) promptly removing any standing water, excess moisture, or damp conditions at the Residence to prevent mold growth or other damage, (e) regularly changing and cleaning all vents, filters, and fans located in the Residence (including the appliances and heating, ventilating, and any cooling systems), (f) replacing light bulbs, (g) checking and maintaining all smoke and carbon monoxide detectors and replacing batteries as needed, (h) properly ventilating kitchen and bathrooms, (i) routine insect and pest control, (j) maintenance of exterior landscaping as set forth in the Landscaping Addendum, (k) keeping sidewalks, driveways, and garages free from dirt and oil stains, (l) power washing the Premises as needed up to ten feet high, (m) keeping gutters less than 10 ft. in height clean and free from debris, and (n) otherwise employing proper maintenance activities at the Residence in accordance with the terms of this Lease to maintain the Residence in a good condition of maintenance and repair.  Resident shall immediately report to Landlord, in writing, conditions posing any problem, failure, malfunction, or damage at the Residence.  Resident shall not disable or tamper with any smoke detectors or carbon monoxide detectors installed in the Residence and shall maintain all such detectors in good working order and immediately report to Landlord in writing if any detector becomes inoperable or nonfunctional.  Resident shall take all reasonable and customary

Georgia_Renewal_Lease_2023UNL.v.1.03

Confidential and Proprietary – ©2023 Invitation Homes.  All Rights Reserved.



measures and shall comply with any emergency and temporary directives from law enforcement, to protect the Residence and Resident's personal property from damage from natural disasters (such as hurricanes, tornadoes, flooding, fires, and freezing) and shall follow any evacuation orders. The foregoing includes protecting pipes and other parts of the Residence during times of freezing temperature. Landlord may, from time to time, provide Resident with additional information or instructions regarding care of the Residence, including during times of disasters and severe weather, and Resident agrees to comply with such information or instructions.

Resident shall be responsible for any costs incurred by Landlord in inspecting the Residence and making repairs required due to Resident's failure to maintain the Residence as required under this Lease or due to damage that occurs while the Residence is in Resident's control and is not caused by weather, natural disaster, or Landlord. Resident shall also be responsible for any costs incurred in inspecting or repairing damage caused by Resident's failure to promptly report needed repairs. Resident's failure to maintain any item for which Resident is responsible will give Landlord the right to hire a vendor of its choosing to perform such maintenance and charge Resident to cover the cost of such maintenance. Resident shall be obligated to reimburse Landlord for all costs incurred by Landlord in performing such repairs as additional rent, including any costs associated with management of vendors and administration of work.

Resident must be physically present on the day of scheduled repair work to grant access to Landlord's vendors. Resident will be charged a $75.00 fee ("**Trip Fee**") if repairs or service must be rescheduled due to Resident's failure to be present or grant access on the scheduled date. All such charges shall be payable as additional rent. If Landlord is required because of the actions or inactions of Resident or any Resident Party to inspect the Residence or perform repairs, Landlord shall have the right to charge for all costs of such inspection and repairs. Routine repairs and maintenance that may be necessary at the Residence shall not excuse Resident from the timely payment of Rent.

**14.    ALTERATIONS.** Other than as specifically outlined herein, Resident will not make any alterations, modifications, or improvements in or about the Residence (collectively referred to as "**Alterations**") without the prior written consent of Landlord. Such Alterations include, but are not limited to: painting, wallpapering, finishing, coating, replacing, modifying, sampling, testing, analyzing, or evaluating any interior or exterior building materials or adding or changing locks at the Residence. In addition, Resident shall not install any fixtures in the exterior of the Residence (including above-ground pools), display any signs or exterior lights on the Residence (except temporary seasonal decorations), and no awnings or other projections shall be attached to the outside of the Residence without first obtaining the written consent of Landlord, which consent may be withheld in Landlord's sole and absolute discretion. Resident shall be required to obtain all necessary permits required by Applicable Law before commencing work on a Landlord-approved Alteration. Any work performed on the Residence, whether by Resident or other parties, shall be considered an independent contractor or agent of Resident and not an employee or agent of Landlord. Resident further warrants that Resident will be responsible for any damage or injury resulting from such work and will defend, indemnify, and hold harmless Landlord and Landlord's agents for, from, and against all claims, losses, and damages, including mechanic's and other liens. Prior to commencing any Alterations, Resident shall provide Landlord with thirty (30) days' notice to allow Landlord to post any notices of non-responsibility or such other notices permitted by Applicable Law. At Landlord's sole and absolute discretion, any permitted Alterations of the Residence shall be removed by Resident at Resident's sole cost and expense and the Residence restored to its original condition prior to the end of the tenancy unless Landlord gives Resident written notice that all or any designated portion of said Alterations shall remain in the Residence, in which event all improvements to the Residence shall be the property of

Georgia_Renewal_Lease_2023UNL.v.1.03



Landlord and shall remain attached to and be a part of the Residence when Resident vacates, subject to Applicable Law.

**15.    PEST CONTROL**.  Resident agrees to take all reasonable steps to maintain the cleanliness and proper housekeeping of the Residence, including, without limitation, ensuring the conditions at the Residence are not conducive to the presence, proliferation, or infestation of insects, bed bugs, rodents, or other pests.  Resident is responsible for keeping the Residence clean and free of all pests and, at its sole cost and expense, shall be responsible for all pest control.

Resident agrees that, upon notification or reasonable belief of a pest infestation, Landlord and its agents shall have access at reasonable times, subject to the notice requirements under this Lease and Applicable Law, to inspect the Residence and Resident's furnishings, clothing, possessions, and any other personal property present in the Residence.  Resident and any Resident Parties shall cooperate and not interfere with inspections or pest control treatments.  Subject to Applicable Law, Landlord shall have no responsibility for any damage or injury to Resident or any other person or property at the Residence as a result of pests or any pest control treatment.

Landlord shall arrange for treatment of the Residence at no cost to Resident if a pest infestation is reported to Landlord in writing within thirty (30) days of the Commencement Date.  Resident hereby accepts and assumes all responsibility for all pest control thereafter, including but not limited to bed bug infestations, subject to Applicable Law.  Any pests, including insects and rodents, not reported to Landlord in writing within the first thirty (30) days will be presumed to have entered the Residence after the start of Resident's residency.

**16.    ALARM SYSTEMS**.  Resident may arrange for the installation of an alarm system (the "**Alarm System**") at the Residence, subject to the following: (a) Resident shall engage a reputable, licensed and bonded security company for the installation of the Alarm System and for the provision of the resulting security service; (b) Resident shall be solely responsible for the full cost of the Alarm System, including all installation, service, permit costs, and maintenance fees; (c) Resident shall reimburse Landlord, immediately upon demand, for any amounts expended by Landlord in connection with Resident's default under Resident's agreement with its Alarm System provider, provided however that Landlord shall not be a party to any such agreement and shall bear absolutely no liability thereunder; and (d) upon the expiration or earlier termination of this Lease, Resident shall cause all components of any Alarm System to be removed, shall cancel the service, and shall restore the Residence to at least as good a condition as prior to the installation of the Alarm System.

**17.    STORAGE**.  Resident must store only personal property Resident owns and must not store property claimed by another or in which another has any right, title, or interest.  Resident must not store any flammable materials, explosives, hazardous waste or other inherently dangerous material, or illegal substances.  Basements are known to be prone to flooding and moisture; Resident is advised not to store any personal belongings in the basement.  No personal property may be stored outside, but for patio furniture.

**18.    DEFAULT**.  Resident will be in default under this Lease if Resident (i) fails to pay Rent or other charges when due, or (ii) fails to perform any other obligation or duty of Resident under this Lease, which failure to pay or perform continues after the delivery of written notice to Resident of such default in the manner required by Applicable Law (an "Event of Default").  In no event shall a cure period be given for any material and irreparable defaults.  Any notice required to be given for Resident to be in default hereunder will not be deemed to be in addition to any statutorily required

Georgia_Renewal_Lease_2023UNL.v.1.03



Confidential and Proprietary – ©2023 Invitation Homes.  All Rights Reserved.

Docusign Envelope ID: EE8F3960-4434-4121-9D08-8CF3278BA4F9

notice if the notice given hereunder otherwise complies with the terms of the applicable statute. Resident understands and agrees that each of the obligations imposed by this Lease shall be regarded as material in nature, and violation of any such obligation shall entitle Landlord to exercise those remedies provided by Applicable Law, this Lease, or in any separate agreement between Landlord and Resident whether such document is incorporated herein or not.

    **18.1.**    Resident is hereby notified that a negative credit report reflecting on Resident's credit record may be submitted to a credit reporting agency if Resident fails to fulfill the terms of the Lease by failing to pay Rent on time.

    **18.2.**    Resident's obligation to pay rent during the Term or any renewal term will continue and will not be waived, released or terminated by the service of a notice, demand for possession, notice of termination of tenancy, the filing of a forcible entry and detainer action, or judgment for possession or any other act resulting in termination of Resident's right of possession.

**19.**    **REMEDIES**.  After the occurrence of an Event of Default, Landlord will have the right to the following remedies.  These remedies are not exclusive; they are cumulative and in addition to any remedies allowed by Applicable Law or in equity.

    **19.1.**    The immediate option to terminate this Lease and all rights of Resident hereunder by giving Resident written notice of such intention to terminate, and pursuing applicable legal action, in which event Landlord may recover from Resident all of the following: (i) any unpaid Rent which had been earned at the time of such termination; plus (ii) the amount by which the unpaid Rent which would have been earned after termination until the time of award exceeds the amount of such rental loss Resident proves reasonably could have been avoided; plus (iii) the amount by which the unpaid Rent for the balance of the term exceeds the amount of such rental loss that Resident proves reasonably could be avoided; plus (iv) any other amount necessary to compensate Landlord for all the detriment proximately caused by Resident's failure to perform his or her obligations under this Lease, including, but not limited to: brokers' commissions; the costs of refurbishment, alterations, renovation, and repair of the Residence reasonably incurred for the sole purpose of reletting the Residence; and removal (including the repair of any damage caused by such removal) and storage (or disposal) of Resident's personal property, equipment, fixtures, alterations, and any other items which Resident is required under this Lease to remove but does not remove; plus (v) at Landlord's election, such other amounts in addition to or in lieu of the foregoing as may be permitted by Applicable Law; plus (vi) the amount of any concessions provided to Resident by Landlord in connection with this Lease at the time the parties entered into this Lease and/or at the time of Resident moving into the Residence.

    **19.2.**    Landlord, at any time after Resident commits a default, may cure the default at Resident's cost.  If Landlord, at any time, by reason of Resident's failure to cure a default within the required timeframe, pays any sum or does any act that requires the payment of any sum, the sum paid by Landlord shall be due immediately from Resident to Landlord and shall bear interest from the date the sum is paid by Landlord until Landlord is reimbursed by Resident, at the lesser of (a) ten percent (10%) per annum or (b) the maximum rate permitted by Applicable Law.  The sum, together with interest, shall be considered additional Rent and paid along with the monthly Rent.

**20.**    **ABANDONMENT**. Prior written notice, with provision of timely Rent payment, is required if Resident intends to be absent for an extended period.  If the Residence appears to be unoccupied for fifteen (15) days while Rent is due and unpaid, or for such other time as specified by Applicable Law and Resident has not given Landlord written notice of Resident's intention to remain, then Landlord is



Confidential and Proprietary – ©2023 Invitation Homes.  All Rights Reserved.

authorized to deem the Residence abandoned, to take immediate possession of the Residence, and to store, dispose of, or otherwise handle Resident's personal property subject to Applicable Law. Resident herein gives Landlord specific authority, at Resident's expense, and without limitation of Landlord's other remedies, to dispose of abandoned personal property in any manner Landlord chooses that does not violate Applicable Law, with no recourse whatsoever on the part of Resident.

**21.     OTHER TERMINATION**.  This Lease may be subject to immediate termination for certain acts as provided by Applicable Law, including any act that jeopardizes the health, safety, or welfare of Landlord, any agent or employee of Landlord, or another Resident, or which involves imminent or actual severe personal injury or property damage.

**22.     TENANT ESTOPPEL CERTIFICATES**.  Upon Landlord's request, Resident shall execute and return a tenant estoppel certificate delivered to Resident within five (5) days after its receipt.  Failure to comply with this requirement shall be deemed Resident's acknowledgment that the certificate is true and correct and may be relied upon by a lender or purchaser.

**23.     ASSIGNMENT AND SUBLETTING**.  Resident may not assign this Lease voluntarily or involuntarily nor sublet the whole or any portion of the Residence, which includes short-term rentals, without the prior written consent of Landlord.  The failure to obtain such prior consent shall be deemed a material breach of this Lease.  Subject to Applicable Law, any action or inaction or acceptance of any Rent or knowledge on the part of Landlord of the presence of a person other than Resident shall not be deemed to be a waiver of the requirement that Landlord's prior written consent must be obtained, nor shall it constitute a consent of any person as a "sub-tenant", approved occupant, or new tenant.  Any proposed assignee, transferee or sublessee shall submit to Landlord an application and credit information for Landlord's approval and, if approved, sign a separate written agreement with Landlord and Resident to amend this Lease. Landlord's consent to any one assignment, transfer, or sublease shall not be construed as consent to any subsequent assignment, transfer, or sublease and shall not release Resident of Resident's obligations under this Lease.  Landlord may assign this Lease at Landlord's sole and absolute discretion.  Should Landlord sell, exchange, or assign this Lease or the Residence, as applicable (other than a conditional assignment as security for a loan), then Landlord, as transferor, will be relieved of all obligations on the part of Landlord accruing under this Lease from and after the date of such transfer.

**24.     ACCESS**.  Subject to Applicable Law, Resident shall allow Landlord and any agent or contractor of Landlord access to the Residence, at all reasonable times, for any lawful purpose, including but not limited to, to inspect the Residence, make necessary or requested repairs, perform routine maintenance, make alterations or improvements, or to show the Residence to prospective residents, purchasers, or mortgagees or to any other person having a legitimate interest therein.  If practicable, Landlord shall give Resident reasonable notice prior to entering the Residence for routine situations requiring access. Landlord and Resident agree that 24-hour written notice will be reasonable and sufficient notice. No notice is required: (i) to enter in case of an emergency when immediate action is necessary in the opinion of Landlord or Landlord's agent for the protection of Resident or the Residence; (ii) if Resident is present and consents at the time of entry; or (iii) if Resident has abandoned or surrendered the Residence.  Resident's failure or refusal to grant Landlord (or Landlord's representatives) access to the Residence as provided in this Section will be a default by Resident under this Lease.  Written notice under this section may be provided by email, U.S. Mail, personal delivery, or by posting on, near, or under an entry door. Resident authorizes Landlord to place for sale or lease signs on the Residence without notice.

Georgia_Renewal_Lease_2023UNL.v.1.03



Confidential and Proprietary – ©2023 Invitation Homes.  All Rights Reserved.

**25.    LIABILITY**. To the full extent permitted by Applicable Law, (a) Landlord and Resident agree that Landlord will not be liable for any damages, injuries, or losses to any person or property related to or caused by any defective condition of the Residence, other residents or persons, theft, burglary, vandalism, or other crimes; (b) Landlord shall have no duty to furnish alarms of any kind, security guards, or additional locks, and latches and Resident shall not make any changes or additions to the existing locks for any reason without Landlord's prior written consent; and (c) Resident shall indemnify and hold Landlord and Landlord's agents, employees, lenders, and affiliates harmless from and against any and all claims, liabilities, damages, injuries, costs, or expenses that arise from or are related to Resident's or any Resident Party's use or occupancy of the Residence except to the extent solely caused by the intentional neglect or willful misconduct of Landlord, its agents, contractors, or employees.

Landlord's liability under this Lease will be limited to Landlord's unencumbered interest in the Residence.  Neither Landlord nor any of its partners, members, officers, directors, agents, employees, shareholders, successors, assigns, or pledges, including without limitation, any management company or the individual signing this Lease on Landlord's behalf, will in any way be personally liable under this Lease.

**26.    POSSESSION**.   Except as provided by Applicable Law, if Landlord is unable to deliver possession of the Residence within seven (7) days of the Commencement Date stated above, then this Lease may be terminated at Landlord's option and all funds received from Resident will be returned. Except Resident agrees to release and hold Landlord and its agents and representatives harmless from any further obligation or consequential damages related to any delay or inability to deliver possession of the Residence.

**27.    SEVERABILITY**. In the event any term or provision of this Lease shall be invalid or unenforceable under Applicable Law, the remaining provisions shall continue to be valid and shall remain binding.  In like manner, any obligations of either Landlord or Landlord's agent or of Resident which may become required by Applicable Law during the term of this Lease shall be binding as if included herein.  All rights granted to Landlord or Landlord's agent by Resident shall be cumulative and in addition to any existing law and any new law which might become effective. Any exercise, or failure to exercise, by Landlord or Landlord's agent of any right shall not act as a waiver of any other rights.

**28.    JOINT AND SEVERAL LIABILITY**.  Each Resident signing this Lease is individually and jointly and severally liable for the full and complete performance of all obligations of Resident under this Lease, jointly with every other Resident, and individually, whether or not such Resident continues in possession.

**29.    RESIDENT'S WARRANTIES**.   Resident represents and warrants that all statements and information in Resident's rental application are true and accurate as of the date hereof.  If any information or representation provided by Resident in the rental application is false, incorrect, or misleading, then Resident shall be deemed to have committed a material default under this Lease that Resident shall not be provided an opportunity to cure, and Resident shall be subject to eviction, damages and other remedies to Landlord as provided in this Lease and Applicable Law.  Resident represents and warrants that Resident (a) shall comply with all requirements, obligations and conditions of any senior interest holder such as Landlord's lenders; (b) shall not disturb, annoy, or endanger other neighbors or use the Residence for unlawful purposes; (c) shall comply with all Applicable Laws.



Confidential and Proprietary – ©2023 Invitation Homes.  All Rights Reserved.

**30.    NO SMOKING**. No smoking of any substance (including but not limited to tobacco, marijuana, or e-cigarettes) is allowed inside the home or on any portion of the Residence.  If smoking does occur at the Residence, (a) Resident shall be in breach of this Lease; (b) Resident shall be responsible for all damage caused by the smoking, including stains, burns, odors, and removal of debris; (c) Resident, guests, and all others may be required to leave the Residence; and (d) Resident acknowledges that in order to remove odor caused by smoking, Landlord may need to replace carpet and drapes and paint the entire home regardless of when these items were last cleaned, replaced, or repainted and such replacement, repainting, and cleaning will be performed at Resident's sole cost and expense.

**31.    FIRE SPRINKLERS**.  If the Residence contains fire sprinklers, Resident shall notify Landlord in writing if the sprinklers are not working properly or are missing any parts.  Resident shall not place hangers or any other items on the fire sprinklers.

**32.    HOMEOWNER ASSOCIATIONS AND MUNICIPALITIES**. Resident understands and agrees that this Lease may be subject to the prior approval of a homeowner association ("**HOA**") and, if such approval is not obtained, subject to Applicable Law, this Lease shall be null and void.  Resident agrees to comply with all applicable declarations, covenants, conditions and restrictions, rules, regulations, and other lawful directives ("**HOA Governing Documents**") of any HOA to which the Residence is subject.  Resident will cooperate with Landlord in performing all acts necessary to comply with the HOA Governing Documents or other Applicable Laws.  Resident hereby represents and warrants to Landlord that Resident (a) has received, reviewed and will comply with all applicable HOA Governing Documents and other instruments of record; (b) shall provide prompt written notice to Landlord if Resident receives any notice of violation of any HOA Governing Documents or other Applicable Law; (c) shall reimburse Landlord for any fines or charges imposed by any HOA or municipality as a result of Resident's violation or failure to comply with any applicable HOA Governing Documents or other Applicable Law.  Any such fines or charges shall be considered additional rent and be paid with Resident's next monthly Rent payment.  Resident agrees that in the event that Resident fails to comply with any provision of any applicable HOA Governing Documents or other Applicable Law within five (5) days following notice from Landlord of such failure to comply, Landlord shall have the right, but not the obligation, to access any non-secured areas of the Residence to effect compliance, and upon such action by Landlord, Resident shall pay to Landlord the cost of such compliance as additional Rent with Resident's next monthly Rent payment.  In Landlord's sole discretion and upon demand by Landlord, Resident shall also pay to Landlord as additional rent an administrative fee in the amount of $35.00 for each notice, violation, charge, or fine assessed due to Resident's failure to comply with any HOA Governing Documents or Applicable Law ("**HOA Admin Fee**") to reimburse Landlord for administrative time and effort expended in complying with the particular violation on Resident's behalf. Resident further agrees to notify Landlord prior to reporting any violation to the HOA or to the municipality's code compliance department.

The Residence may be located within a community that includes common areas, resident amenities or facilities, and/or recreational facilities (collectively, "Amenities").  Resident's use of any Amenities is a privilege and license granted by Landlord, and not a contractual right except as otherwise provided for in this Lease.  Such permission is expressly conditioned upon Resident's adherence to the terms of this Lease and any HOA Governing Documents.  Resident expressly agrees to assume all risks of every type, including but not limited to risks of personal injury or property damage, of whatever nature or severity, related to Resident's and any Resident Parties' use of the Amenities.  Resident shall hold Landlord harmless and release and waive any and all Claims that Resident may have against Landlord and that are in any way related to or arise from the use of any Amenities, including but not limited to, Resident's

Georgia_Renewal_Lease_2023UNL.v.1.03



Confidential and Proprietary – ©2023 Invitation Homes.  All Rights Reserved.

inability to use Amenities and any injury that may occur during use of the Amenities. Resident shall not be entitled to any reduction in Rent, in the event Resident is unable to use the Amenities for any reason. Resident shall indemnify and hold Landlord and Landlord's agents, employees, lenders, and affiliates harmless from and against any and all claims, liabilities, damages, injuries, costs, or expenses that arise from or are related to Resident's or any Resident Party's use of any Amenities.

**33.** **DAYS**. Except where stated otherwise in this Lease, all references to days in this Lease shall be construed as calendar days and a day shall begin at 12:00 a.m. and end at 11:59 p.m. local time where the Residence is located.

**34.** **SUBORDINATION/MORTGAGEE PROTECTION**. This Lease is and shall be subordinate to any mortgages or encumbrances that are now or may hereafter be placed upon the Residence and to any advances to be made thereunder and all renewals, replacements, and extensions thereof. Resident shall not cause or permit anything to be done that violates any mortgage on the Residence. Resident agrees to sign any document reasonably requested by Landlord's lender in connection with a mortgage on the Residence, including a Subordination, Non-Disturbance and Attornment Agreement in a form satisfactory to Landlord's lender.

**35.** **FORCE MAJEURE**. Any delay or failure in the performance by Landlord hereunder shall be excused if and to the extent caused by the occurrence of any event that is beyond Landlord's control, such as fires, floods, earthquakes, wars, sabotage, terrorism, vandalism, governmental acts, injunctions, or labor strikes, acts of God, and any other occurrences that are unavoidable or unpreventable despite reasonable efforts to prevent, avoid, delay, or mitigate the effects thereof.

**36.** **DAMAGE TO THE RESIDENCE**. If, through no fault of Resident, the Residence is completely or partially damaged or destroyed by fire, earthquake, flood, accident, or other casualty that renders the Residence totally or partially uninhabitable, as determined by Landlord, either Landlord or Resident may terminate this Lease by giving the other written notice or as otherwise provided by Applicable Law. Rent will be abated as of the date the Residence become totally or partially uninhabitable. The abated amount will be the current monthly Rent prorated on a 30-day period. If this Lease is not terminated, Landlord shall promptly repair the damage, and monthly Rent shall be reduced based on the extent to which the damage interferes with Resident's reasonable use of the Residence. If damages are caused by Resident or any Resident Party, Resident shall be responsible for all costs and expenses of repairing such damages, only Landlord shall have the right of termination, and no reduction in Rent shall be made.

**37.** **LEAD-BASED PAINT**. The Residence may have been constructed prior to 1978. Housing built before 1978 may contain lead-based paint. Lead from paint, paint chips, and dust can pose health hazards if not managed properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 housing, lessors must disclose the presence of lead-based paint and/or lead-based paint hazards in the dwelling. Residents must also receive a federally approved pamphlet on lead poisoning prevention. In accordance with federal law, Landlord has provided, and Resident acknowledges receipt of, the disclosures on the attached lead-based paint disclosure form. The most current version of the "Protect Your Family From Lead In Your Home" pamphlet provided by EPA can be obtained at any time by accessing the resident portal and/or from the EPA's website at https://www.epa.gov/sites/default/files/2020-04/documents/lead-in-your-home-portrait-color-2020-508.pdf

**38.** **ASBESTOS**. Asbestos is a generic term used to describe a group of naturally occurring, fibrous

Georgia_Renewal_Lease_2023UNL.v.1.03



Confidential and Proprietary – ©2023 Invitation Homes. All Rights Reserved.

minerals. These minerals occur as bundles of strong, flexible fibers that are chemically inert, do not burn, and have good insulating properties. Because of these properties, it was commonly used before 1983 for insulation, fireproofing, and a wide variety of other building materials commonly referred to as asbestos-containing materials ("**ACM**"). Landlord has no knowledge that the Residence contains asbestos or ACM. In the event the Residence contains asbestos, disturbance or damage to certain interior surfaces may increase the potential exposure to this substance. Resident, occupants, and their guests must not take or permit any action which in any way damages or disturbs the ceiling in the Residence or alters or disturbs the heating and ventilation system serving the Residence, including without limitation, any ducting connected thereto. Resident must notify Landlord and its agents immediately in writing of any damage to or deterioration of the ceiling in the Residence or any portion thereof, including without limitation flaking, loose, cracking, hanging, or dislodged material, water leaks, or stains in the ceiling. There are both federal and state resources that can provide further information on asbestos and ACM. The U.S. EPA provides numerous details and references: http://www.epa.gov/asbestos.

**39.     SATELLITE DISHES**. If Resident provides Landlord with prior written notice, Resident may install one dish on the Residence, provided it does not exceed one (1) meter (3.3 feet) in diameter. Resident's installation must comply with reasonable safety standards and may not interfere with any cable, telephone, or electrical systems within or serving the Residence. Installation must be done by a qualified person, or company and the satellite dish cannot be installed or affixed to the roof of the Residence. Resident will have the sole responsibility for maintaining any satellite dish or antenna and all related equipment. Resident must pay for any damages and for the cost of repairs or repainting which may be reasonably necessary to restore the Residence to its condition prior to the installation of any satellite dish or related equipment. Resident agrees to indemnify, defend, protect, and hold harmless Landlord and Landlord's agents for, from, and against any liability, costs (including reasonable attorney's fees), or claims for personal injuries or property damage caused by or related to Resident's installation of a satellite dish. If Resident installs a satellite dish or antenna prior to satisfying the conditions set forth above, then Resident shall be deemed in default under the Lease.

**40.     MILITARY SERVICE TERMINATION RIGHT**. In the event that Resident is, or hereafter becomes, a member of the United States Armed Forces on extended active duty and receives permanent change of station orders to depart from the area where the Residence is located (which for purposes of this Section means an area in excess of thirty-five (35) miles from the Residence), or is ordered into military housing, then in any of these events, or as otherwise allowed by Applicable Law, Resident may terminate this Lease upon giving not less than thirty (30) days' written notice to Landlord. Resident must also provide to Landlord a copy of the official orders or a letter signed by Resident's commanding officer, reflecting the change, which entitles Resident to the right to terminate this Lease early under this Section.

**41.     SEX OFFENDER REGISTRY**. If Resident has a concern about whether or not a registered sex offender is living in the neighborhood or nearby vicinity in which the Residence is located, Resident should take steps to review and confirm the same with the Georgia Sex Offender Registry, which is available at the Georgia Bureau of Investigation website at www.gbi.georgia.gov.

**42.     NO ENCUMBRANCES PERMITTED**. Resident has no authority or power to cause or permit any lien or encumbrance of any kind whatsoever, whether created by act of Resident, operation of law, or otherwise, to attach to or be placed upon the Residence. Landlord will have the right to post and keep posted on the Residence any notice which it deems necessary for protection from such liens. Resident covenants and agrees not to suffer or permit any mechanic's lien, municipal lien, or other lien to be



placed or recorded against the Residence, and, in case of any such lien attaching or notice of any lien, Resident covenants and agrees to cause it to be immediately released and removed of record. Notwithstanding anything to the contrary set forth in this Lease, if any such lien is not released and removed on or before the date notice of such lien is delivered by Landlord to Resident, Resident will be deemed in default hereunder and Landlord, at its sole option, may immediately take all action necessary to release and remove such lien, without any duty to investigate the validity thereof, and all sums, costs, and expenses, including reasonable attorneys' fees and costs, incurred by Landlord in connection with such lien will be deemed Rent under this Lease and will immediately be due and payable by Resident.

**43.     THIRD PARTY DISCLOSURE**. Unless required by law, Landlord shall not be obligated to provide any party with information with respect to this Lease or the Residence other than the undersigned Resident or such Resident's permitted assignee or sublessee pursuant to this Lease. Landlord may, at its discretion, provide information regarding this Lease to law enforcement or any government agency.

**44.     COMMUNICATIONS.**

    **44.1.     Consent to Receive Communications.** Resident consents to receive electronic and other forms of communication including, but not limited to, phone calls, emails and text messages, including such communications via an automated dialing system or other automated technology, from Landlord and Landlord's agents and third-party service providers in order to convey information regarding the Residence, such as rent reminders, maintenance request information and other information related to the provision of the services described in this Lease and its Addenda, and including any new or existing ancillary services Landlord may provide during the Lease term. Resident understands that standard text messaging rates will apply to any messages received and agrees not to hold Landlord or its agents liable for any electronic messaging charges or fees generated by this service.

Resident Initial: _ℓℓ_ __ Resident Initial: _____ Resident Initial: _____ Resident Initial: _____

Resident Initial: _____ Resident Initial: _____ Resident Initial: _____ Resident Initial: _____

    **44.2.     Consent to Transfer of Personal Information.** Resident acknowledges and agrees that the provision of the services described in this Lease and its Addenda, including any new or existing ancillary services Landlord may provide during the Lease term, may require Landlord to transmit certain personal information of Resident to its third-party service providers and Resident hereby consents to the transfer of such personal information for this limited purpose. Resident further acknowledges and agrees that any of Resident's personal information transferred to Landlord's third-party service providers will be subject to the privacy policies and procedures implemented by such third-party service providers, which such policies may differ from those that have been implemented by Landlord.

Resident Initial: _ℓℓ_ __ Resident Initial: _____ Resident Initial: _____ Resident Initial: _____

Resident Initial: _____ Resident Initial: _____ Resident Initial: _____ Resident Initial: _____

**45.     AGREEMENT TO MEDIATE.** Other than claims and/or disputes relating to evictions, Resident agrees, before filing any action, to mediate in good faith with Landlord any dispute and/or claim arising

Georgia_Renewal_Lease_2023UNL.v.1.03



Confidential and Proprietary – ©2023 Invitation Homes. All Rights Reserved.

out of and/or relating to this Lease and/or the Residence. Mediation fees, if any, shall be divided equally among the parties who appear at the mediation. Resident understands, acknowledges, and agrees that such mediation is a condition precedent to filing any action by Resident in court, arbitration, and/or any other dispute resolution forum. Thus, if Resident commences any action against Landlord and/or any of Landlord's agents (whether in court, arbitration, and/or any other dispute resolution forum) without first attending and participating in good faith in the mediation referenced in this Section 45, then Resident's action shall be dismissed or stayed pending completion of this good faith mediation requirement, and Resident shall not be entitled to recover attorneys' fees and costs in such action, even if such fees and costs would otherwise be available to Resident in such action. For clarity, by failing to comply with the mediation requirement in this Section before filing any action, Resident waives its right to any attorneys' fees and costs (to the extent any right may exist) in the action even if Resident thereafter complies with this mediation requirement, and even for attorneys' fees and costs that may accrue following Resident's compliance with the mediation requirement set forth in this Section.

For clarity, and notwithstanding any other language in this Section 45, there is no obligation and/or requirement to mediate claims and/or disputes relating to evictions.

Resident Initial: _[initial]_ Resident Initial: _____ Resident Initial: _____ Resident Initial: _____

Resident Initial: _____ Resident Initial: _____ Resident Initial: _____ Resident Initial: _____

**46.**   **CLASS, COLLECTIVE, AND MASS ACTION WAIVER.** Resident understands, acknowledges, and agrees that, by executing this Lease, Resident waives any right and/or ability to file, and/or participate as a representative and/or member of, any class, collective, mass, and/or similar action (collectively, for ease of reference, "Class Action") arising out of and/or in any way relating to this Lease and/or the Residence against Landlord and/or any of Landlord's agents in any forum. While Resident is not waiving any right(s) to pursue claims against Landlord and/or any of Landlord's agents in this Section of the Lease, Resident does hereby agree to file any such claim(s) in Resident's individual capacity, and Resident may not be a Class Action plaintiff, representative, and/or member, whether or not the class is putative, in any lawsuit against Landlord and/or any of Landlord's agents that arises out of and/or in any way relates to this Lease and/or the Residence. Accordingly, Resident expressly waives any right and/or ability to bring, represent, join, and/or otherwise maintain a Class Action against Landlord and/or any of Landlord's agents that arises out of and/or in any way relates to this Lease and/or the Residence.

**RESIDENT UNDERSTANDS, ACKNOWLEDGES, AND AGREES THAT, WITHOUT THE WAIVER CONTAINED IN THIS SECTION 46, RESIDENT MAY HAVE POSSESSED THE ABILITY TO BE A PARTY TO A CLASS ACTION AS DEFINED HEREIN. BY SIGNING THIS LEASE, RESIDENT UNDERSTANDS AND CHOOSES TO WAIVE SUCH RIGHT AND ABILITY AND CHOOSES TO HAVE ANY OF ITS CLAIMS DECIDED SOLELY ON AN INDIVIDUAL BASIS. THIS CLASS ACTION WAIVER SHALL SURVIVE THE TERMINATION AND/OR EXPIRATION OF THIS LEASE.**

Resident Initial: _[initial]_ Resident Initial: _____ Resident Initial: _____ Resident Initial: _____

Resident Initial: _____ Resident Initial: _____ Resident Initial: _____ Resident Initial: _____

**47.**   **AGREEMENT TO SUBMIT MOLD CLAIMS TO ARBITRATION AND WAIVER OF ANY RIGHT TO A TRIAL BEFORE A JUDGE OR A JURY.** All disputes arising out of and/or in any way relating to



this Lease based on and/or related to mold in the Residence (no matter how styled, whether as breach of contract, tort, statutory, common law, or otherwise), and any supplemental and/or ancillary claims that are brought in conjunction with such mold-related claims, shall be submitted to binding, confidential arbitration before a single arbitrator, pursuant to the Federal Arbitration Act ("FAA") and conducted by the American Arbitration Association ("AAA") in accordance with the then-current and applicable rules of the AAA.

The arbitrator shall be selected by application of the rules of the AAA, or by mutual agreement of the parties, except that in all cases such arbitrator shall be an attorney admitted to practice in the state of the Residence. Nothing contained herein shall prevent a party from obtaining an injunction in the arbitration or in any court of competent jurisdiction. The final award of the arbitration shall be a reasoned award, and can be confirmed in any court with competent jurisdiction, but shall be treated as confidential and filed under seal.

The arbitration will be located, and the final hearing will take place, in the AAA office nearest the Residence, and within the same state. If there is no AAA office in the state of the Residence, then the arbitration will be located, and the final hearing will take place, in the AAA office nearest the Residence.

Each party is responsible for and will bear their own fees and costs in and related to the arbitration. For clarity, each party is responsible for any administrative filing fee related to their filings and/or submissions in the arbitration, and each party is responsible for their share of AAA administrative and arbitrator fees and costs. AAA administrative and arbitrator fees and costs shall be divided equally per side in the arbitration—*i.e.*, per each side of the "v" regardless of whether there is more than one party on any side of the "v".

The final hearing in the arbitration shall be completed within 180 days of the appointment of the arbitrator in the arbitration, and the final award shall be issued within 30 days of the completion of the final hearing. Discovery in the arbitration will be limited as follows, per each side (*i.e.*, per each side of the "v" regardless of whether there is more than one party on any side of the "v"):

- 15 interrogatories;
- 15 requests for production of documents;
- 40 collective hours of fact depositions, with no one deposition to exceed 12 hours of running deposition time;
- 3 affirmative expert reports, and rebuttal expert reports corresponding to the number of affirmative expert reports.

**FOR CLARITY, AS PROVIDED FOR DIRECTLY ABOVE IN SECTION 46, RESIDENT AGREES TO FILE ANY CLAIM(S) AGAINST LANDLORD AND/OR ANY OF LANDLORD'S AGENTS IN THE ARBITRATION IN RESIDENT'S INDIVIDUAL CAPACITY. RESIDENT UNDERSTANDS, ACKNOWLEDGES, AND AGREES THAT IT IS WAIVING ANY RIGHT AND/OR ABILITY TO PARTICIPATE IN ANY ARBITRATION AS A REPRESENTATIVE AND/OR MEMBER OF ANY CLASS ACTION (AS DEFINED IN SECTION 46) AGAINST LANDLORD AND/OR ANY OF LANDLORD'S AGENTS.**

**RESIDENT ALSO UNDERSTANDS, ACKNOWLEDGES, AND AGREES THAT BY EXECUTING THIS LEASE AND AGREEING TO THIS SECTION 47, RESIDENT IS WAIVING ANY RIGHTS THAT IT MAY HAVE TO ELECT A TRIAL BY A JUDGE OR A JURY OF ANY ISSUE TRIABLE OF RIGHT BY A JUDGE OR A JURY, AND WAIVES ANY RIGHT TO TRIAL BY A JUDGE OR A JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THE CLAIMS**

Georgia_Renewal_Lease_2023UNL.v.1.03



Confidential and Proprietary – ©2023 Invitation Homes. All Rights Reserved.

**THAT ARE SUBJECT OF THIS SECTION 47.  THIS WAIVER OF RIGHT TO TRIAL BY A JUDGE OR JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY RESIDENT AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY A JUDGE OR A JURY WOULD OTHERWISE ACCRUE. THIS WAIVER SHALL SURVIVE THE TERMINATION AND/OR EXPIRATION OF THIS LEASE.**

Resident Initial: _____ Resident Initial: _____ Resident Initial: _____ Resident Initial: _____

Resident Initial: _____ Resident Initial: _____ Resident Initial: _____ Resident Initial: _____

**48.    WAIVER**.  No failure of Landlord to enforce any term of this Lease will be deemed a waiver of that term or of any other provision of this Lease, nor will any acceptance of a partial payment of Rent be deemed a waiver of Landlord's right to the full amount of Rent owed.  Landlord's not enforcing or belatedly enforcing written notice requirements, rental due dates, liens, or other rights shall not be considered a waiver under any circumstances.  Landlord's representatives (including personnel, employees, and agents) have no authority to waive, amend, or terminate this Lease or any part of it, unless in writing, and no authority to make promises, representations, or agreements that impose any obligations on Landlord unless in writing.

**49.    WAIVER OF CLAIMS.** By signing this Lease, Resident represents, warrants, and affirms that Resident does not have any present knowledge of any potential or existing claims against Landlord or any of its subsidiaries or affiliates, nor does Resident have any present intent to file any; including, but not limited to, claims for negligence, breach of contract, or any damage to personal property. **By signing this Lease, Resident hereby waives and releases Landlord from any such claims against Landlord, regardless of whether the claim is based on past or present acts or omissions, to the maximum extent permitted by Applicable Law.**  Further, Resident expressly affirms that Resident is not aware of any mold in the Residence or any untreated condition in the Residence that may contribute to mold, such as water damage. Resident expressly affirms that Resident has exhibited no signs or symptoms of mold exposure and expressly waives and releases Landlord from any claims or causes of action related to mold exposure.

Nothing in this paragraph is intended to or does remove or limit Landlord's obligation to remedy future conditions at the Premises pursuant Applicable Law, but is a representation by Resident that no such conditions requiring repair or remedy presently exist. Further, nothing in this paragraph waives any provision, right of Resident, or duty of Landlord, that cannot be waived under Applicable Law.

**50.    CONSENT**.  Except as otherwise stated in this Lease, in all instances where Landlord's permission, consent or approval is required hereby, or where Landlord is entitled to use its discretion or exercise its judgment, Landlord shall be entitled to grant or withhold such consent, or approval, and to exercise its discretion, in Landlord's sole, absolute, and unfettered discretion.

**51.    TIME OF THE ESSENCE**.  Resident acknowledges and agrees that time is of the essence in all provisions of this Lease and all addenda hereto.

**52.    GUARANTY**.  If Resident is approved for occupancy of the Residence on condition of securing a guarantor for Resident's obligations under this Lease, Resident shall cause such guarantor to execute a separate guaranty agreement under which guarantor will guarantee the obligations of Resident for the Lease Term.  Resident acknowledges and agrees that, if a guarantor is required, this Lease shall not be effective until Landlord has received a signed lease guaranty and has approved the guarantor

Georgia_Renewal_Lease_2023UNL.v.1.03



Confidential and Proprietary – ©2023 Invitation Homes.  All Rights Reserved.

thereunder.

**53.     ATTORNEYS' FEES**.  In accordance with Applicable Law, in any legal action brought by either party to enforce the terms of this Lease, the prevailing party is entitled costs incurred in connection with such action, including reasonable attorneys' fees, expenses, and other costs of collection; provided, however, that such amount shall not exceed One Thousand Dollars ($1,000).

**54.     INTERPRETATION**.   For purposes of this Lease: (a) the words "include," "includes," and "including" are deemed to be followed by the words "without limitation"; (b) the words "herein," "hereof," "hereby," "hereto," and "hereunder" refer to this Agreement as a whole; (c) words denoting the singular have a comparable meaning when used in the plural, and vice-versa; (d) words denoting any gender include all genders; and (e) any pronouns used herein shall be deemed to refer to the masculine, feminine, neuter, singular or plural as the identity of the person or persons referred to may require. The attachments and addenda referred to herein are an integral part of this Agreement to the same extent as if they were set forth verbatim herein.

**55.     COMPLETE AGREEMENT**.  This Lease and the attachments and addenda referred to below represent the entire agreement between the parties, and that there are no other agreements between them or representations made by Landlord to Resident, including any oral agreements or representations outside of the written terms of this Lease.  No amendment to or modification of this Lease or any attachment or addenda hereto shall be valid unless written and executed by Landlord and Resident.  Landlord and Resident agree that the transaction contemplated by this Lease or any related transaction between the parties may be conducted by electronic/digital signatures in accordance with the Uniform Electronic Transactions Act.  Notwithstanding the foregoing, Resident may at any time request a physical (non-electronic) copy of this Lease.

**56.     PRIVACY.**  Resident's personal information collected in connection with this Lease or Resident's tenancy at the Residence will only be used in accordance with Landlord's privacy policy, as it is modified from time to time, and available at https://www.invitationhomes.com/privacy. Landlord's privacy policy is incorporated into this Lease by reference. By executing this Lease, Resident agrees to all of the terms and conditions contained in Landlord's privacy policy. Resident further authorizes Landlord and Property Manager to release information related to Resident and any other occupants of the Residence as may be required by Applicable Law or reasonably requested by governmental authorities or agencies.

**57.     AGENCY AND LICENSEE DISCLOSURE**.  Resident agrees and understands that Invitation Homes Realty LLC dba Invitation Homes (GA Brokerage Firm Lic.#: H-65710) is an affiliated entity of Landlord and any licensed real estate brokers or sales persons of Invitation Homes are not acting as Resident's agent in this transaction and are acting exclusively for Landlord's own benefit.  Resident agrees to hold Landlord and Invitation Homes free from all liability regarding the Residence and transaction arising from any claim of agency.

**Listing Broker**: Invitation Homes Realty LLC dba Invitation Homes
GA Brokerage Firm License Number:  H-65710
MLS Office Code:  RRSF01
Listing Broker Phone # 770-442-3372; Fax Number:  678-381-0371.
Listing Agent:  N/A_____ is the agent for Landlord exclusively.
Listing Agent's Georgia Real Estate License Number:  N/A_____
Multiple Listing Number:  N/A_____

Georgia_Renewal_Lease_2023UNL.v.1.03



No broker in this transaction shall owe any duty to Landlord or Resident greater than what is set forth in their respective brokerage agreements and the Brokerage Relationships in Real Estate Transactions Act, O.C.G.A. § 10-6A-1 et. seq.

**58.    ATTACHMENTS AND ADDENDA TO THE LEASE**.  Resident certifies that he/she has received a copy of this Lease and the following attachments and addenda, and understands that these attachments and addenda are incorporated into and form a part of this Lease:

1.    [X]  Rules and Regulations
2.    [X]  Utilities Addendum
3.    [X]  Lead-Based Paint and/or Lead-Based Hazards Disclosure
4.    [X]  Bed Bug Addendum
5.    [X] Mold Addendum
6.    [X]  Insurance Addendum
7.    [X]  Landscape Maintenance Addendum
8.    [X]  Lease Buy-Out Addendum
9.    [X] Air Filter Service Addendum
10.   [X]  Smart Home Addendum *(if applicable)*
11.   [X]  Animal Addendum
12.   [ ]  Swimming Pool Addendum *(if applicable)*
13.   [ ]  Rent Concession Addendum *(if applicable)*
14.   [ ]  Internet Package Addendum *(if applicable)*

The undersigned Residents further acknowledge receipt of the "**Protect Your Family From Lead In Your Home**" booklet provided by the USEPA and available on the EPA's website at: https://www.epa.gov/sites/default/files/2020-04/documents/lead-in-your-home-portrait-color-2020-508.pdf

[Signatures on Following Page]

Georgia_Renewal_Lease_2023UNL.v.1.03



Confidential and Proprietary – ©2023 Invitation Homes.  All Rights Reserved.

THIS IS A LEGALLY BINDING CONTRACT.  RESIDENT ACKNOWLEDGES THAT RESIDENT HAS HAD AN ADEQUATE OPPORTUNITY TO READ AND STUDY THIS LEASE AND TO CONSULT WITH LEGAL COUNSEL IF RESIDENT HAS SO DESIRED.

**RESIDENT:**

Signature: _Curtis Parker_
Name: _Curtis Parker_____

Signature: _____
Name: _____

Signature: _____
Name: _____

Signature: _____
Name: _____

Signature: _____
Name: _____

Signature: _____
Name: _____

Signature: _____
Name: _____

Signature: _____
Name: _____

**Landlord agrees to rent the Residence on the above terms and conditions.**

**LANDLORD:**

2017-1 IH Borrower LP

By: _Charles Young_____
    Charles Young
    Chief Operating Officer

_____DS____
  _BG_ ____
Reviewed By

Georgia_Renewal_Lease_2023UNL.v.1.03

Confidential and Proprietary – ©2023 Invitation Homes.  All Rights Reserved.



## RULES AND REGULATIONS

1.  **FURNITURE**. Resident will not bring any water-containing furniture into the Residence without Landlord's prior written consent and without first providing to Landlord written proof of insurance from a state-approved insurance company providing coverage for personal injury and/or property damage arising from the presence and/or use of such water-containing furniture.

2.  **WALLS AND WOODWORK**. Resident shall be responsible for any damage caused by nails or adhesives of any kind and will restore the doors, woodwork, or walls of the Residence to the same condition as originally rented by Resident.

3.  **LOCKS**. Resident will not change the locks on the doors of the Residence or install additional locks, chains, or other fasteners without the prior written consent of Landlord. Upon termination of the tenancy, all keys and garage door openers to the Residence must be returned to Landlord. If Resident fails to comply with this rule, Resident shall pay Landlord $75.00 for reimbursement of the cost of changing or re-keying the locks.

4.  **FIRE RISK**. Resident will not use or store at the Residence any flammable liquids and fuels or other materials that are combustible or could increase the risk of fire. Resident shall not leave burning candles unattended, leave food cooking on the stove, or in the oven unattended.

5.  **KEROSENE, SPACE OR PORTABLE HEATERS**. Resident will not store, install, or operate, in or about the Residence, any electric space or portable heaters or any heater fueled by kerosene, oil, or any other fluid. The use of any such heaters is strictly prohibited!

6.  **FIREPLACES**. Wood may be burned in wood-burning fireplaces in the Residence only if approved in advance by Landlord in writing. No artificial substances, such as Duraflame® logs, are permitted. Ashes must be disposed of in metal containers, after ensuring the ashes are cold. Resident will comply with any "no burn days" declared by local government authorities.

7.  **GRILLS AND BARBEQUES**. Grills, barbeques, and any other outdoor cooking or open flame devices shall only be used outside of the Residence on the ground level and shall be placed a minimum of ten (10) feet from any building or structure. Such devices shall not be used close to combustible materials, tall grass or weeds, on exterior walls or roofs, indoors, on balconies or patios, or in other locations vulnerable to fire. All coals or wood ash should be allowed to cool for 48 hours prior to disposal. Once coals or ash have cooled completely, they should be wrapped in aluminum foil and placed in a noncombustible trash bin. DO NOT PLACE HOT CHARCOAL IN A TRASH BIN!

8.  **WINDOW SILLS**. Resident will not place anything on the outer edges of the sills of windows.

9.  **STORAGE AND PLAY EQUIPMENT**. Resident will not install or erect any permanent or portable swimming or wading pools, playground equipment, trampolines, storage sheds, or other facilities anywhere at the Residence without Landlord's prior written consent.

10. **LOUD DISTURBANCES / QUIET ENJOYMENT OF RESIDENCE:** Resident will not disturb the peace and quiet enjoyment of any surrounding property by disruptive behavior on or near the Residence. Loud music or any other disturbance that can be heard two feet away from a closed door or ten feet away from an open window or door will not be tolerated at any time. The use of fireworks is strictly prohibited.

11. **GARBAGE AND RUBBISH**. Resident will place Resident's garbage and rubbish for disposal as directed by Landlord, any HOA, or municipality. Resident shall keep the entire Residence in a good state of preservation and cleanliness. Allowing trash and debris to accumulate is a material breach of this Lease. Resident is responsible for removal of trash and debris accumulating at the Residence; allowing

Georgia_Renewal_Lease_2023UNL.v.1.03

Confidential and Proprietary – ©2023 Invitation Homes. All Rights Reserved.



trash and debris to accumulate is a material breach of this Lease.  Resident agrees to pay, as additional Rent, any reasonable fees and fines incurred due to Resident's failure to properly store containers or dispose of trash.

12.    **CONDITION OF RESIDENCE**.  Resident will keep balconies and patios free of all personal belongings and trash receptacles, except that Resident may maintain lawn furniture thereon, provided the same is maintained in a neat and orderly manner.

13.    **DISPOSAL OF GREASE, ETC.**  Resident will dispose of grease or other drain-blocking material or waste in a sealed container (e.g. glass jar) and throw it away as rubbish. Resident shall not dispose of grease or other drain-blocking material or waste in the plumbing, drains, or disposal systems at the Residence, and if Resident causes any such blockage, Resident shall reimburse Landlord for all resulting costs of repair or replacement.

14.    **HEATING OF RESIDENCE**.  Resident will keep the thermostat at the Residence to a minimum temperature of 55 degrees Fahrenheit during cold weather.  Resident will not use the stove or other appliances for heating.  Resident shall reimburse Landlord for all costs incurred by Landlord in repairing or replacing frozen pipes serving the Residence.

15.    **MISCELLANEOUS.**  Resident will keep any sidewalks, steps, and driveway clear of ice and snow.  Landlord does not supply, repair, replace, or install storm doors, storm windows, screen doors, window screens or shades, fuses, light bulbs, batteries, furnace filters, laundry wash trays, janitor service, garbage collection, or any items or services not specifically listed as supplied in the Lease.

16.    **SMOKE DETECTOR TESTING**. If Landlord has installed smoke detector(s) or carbon monoxide detector(s) in the Residence, it is Resident's responsibility to test them on a regular basis, keep them in good operating condition, and change batteries as necessary. Resident must immediately notify Landlord, in writing, of any problem, malfunction, or damage in either a smoke alarm or carbon monoxide detector.  Resident shall also supply and maintain fire extinguisher(s).

17.    **PARKING**. Parking is only permitted in the driveway, garage, or designated spaces of the Residence.  The driveway, garage, and/or parking spaces are to be used for parking properly licensed and operable motor vehicles, except as otherwise prohibited by Applicable Law or homeowner's association.  Vehicles leaking oil, gas, or other motor vehicle fluids must not be parked on the Residence.  Mechanical work or storage of inoperable vehicles is not permitted on the Residence.  Resident is responsible for making sure that all Resident Parties park in the appropriate parking areas.  If any vehicles are parked in non-parking areas, such as grass, sidewalks, or in front of mailboxes, or in the neighbors' yards, or if there are inoperable vehicles parked at the Premises, then the vehicle may be towed at Resident's expense.

18.    **ATTIC AND CRAWL SPACE**. Except solely for the purpose of replacing air filters or performing other Resident responsibilities outlined in the Lease, Resident will not access the attic or crawl space nor use the attic or crawl space for storage for any reason without Landlord's prior written consent.

Georgia_Renewal_Lease_2023UNL.v.1.03



Confidential and Proprietary – ©2023 Invitation Homes.  All Rights Reserved.

## UTILITIES ADDENDUM

This Utilities Addendum ("**Addendum**") dated 2/18/2025 is part of that certain lease dated 2/18/2025 (the "**Lease**"), by and between 2017-1 IH Borrower LP ("**Landlord**") and the undersigned residents as ("**Resident**").  Capitalized terms not defined in this Addendum shall have the same meaning as in the Lease.

1.      **UTILITY BILLING AGENT**.  Landlord has contracted directly with a utility billing agent ("**Utility Billing Agent**") to provide utility administrative services, including, but not limited to, utility connections/disconnections and billing services.  The Utility Billing Agent shall bill Resident the Utility Fees as defined hereunder, which Utility Fees are subject to change upon thirty (30) days' written notice from Landlord or Utility Billing Agent to Resident.

2.      **GAS AND ELECTRIC CHARGES**. Resident must place all gas and electric utilities and services in Resident's name as of the Commencement Date.  Resident will be required to show written proof that the utilities for electricity and gas services have been transferred and are in the name of Resident as of the Commencement Date. Resident must pay all costs for the conversion from existing gas and electric utilities' service providers.  In the event that Resident fails to place service in Resident's name with the gas and electric providers as of the date of the Commencement Date (or allows the accounts to be placed in the name of the Landlord during the Lease Term), in addition to Landlord's ability to serve the notice and terminate the Lease as provided by law, the Utility Billing Agent may bill Resident for the estimate of Resident's gas and electric charges during that period plus an administrative fee of $25.00 per utility provider invoice.  Notwithstanding anything to the contrary in this Section, should Applicable Law prohibit Resident from placing gas and/or electric utilities and services in Resident's name, the administrative fee shall not be charged.

3.      **WATER, SEWER, STORMWATER, AND TRASH CHARGES**. Landlord shall contract directly with the water, sewer, stormwater, and trash utility service providers providing utilities or services to the Residence.  The Utility Billing Agent shall invoice Resident and Resident shall pay monthly for the water, sewer, stormwater, and trash, and all other charges on the relevant provider bills ("**Monthly Utility Charges**") plus the Utility Admin Fee in the amount **of $9.95 per month**.  Resident shall also pay a move-in fee or move-out fee, at Landlord's sole discretion, of $25.75.  The fees being referred to in this and the preceding paragraph shall be considered the "Utility Fees" and shall be paid within fifteen (15) days of Resident's receipt of the invoice from the Utility Billing Agent.

Resident Initial: _ℓ_ _ Resident Initial: _____ Resident Initial: _____ Resident Initial: _____

Resident Initial: _____ Resident Initial: _____ Resident Initial: _____ Resident Initial: _____

4.      **GREEN ENERGY.** Resident agrees to cooperate with Landlord's efforts to improve energy efficiency at the Residence, including research and development related thereto. At Landlord's request, Resident shall use its best efforts to provide information related to Resident's energy consumption at the Residence.

5.      The Monthly Utility Charges and Utility Fees will be deemed additional "Rent" under this Lease so that Resident's failure to pay the Monthly Utility Charges and Utility Fees when due or failure to place and continuously maintain utilities and services in Resident's name, if applicable, will constitute an Event of Default.

6.      In the event of any conflict between the terms of this Addendum and the Lease, the terms of this Addendum shall control.



Confidential and Proprietary – ©2023 Invitation Homes.  All Rights Reserved.

**RESIDENT**:

Signature:
Name: _Curtis Parker_

Signature: _____
Name: _____

Signature: _____
Name: _____

Signature: _____
Name: _____

Signature: _____
Name: _____

Signature: _____
Name: _____

Signature: _____
Name: _____

Signature: _____
Name: _____

**LANDLORD**:

2017-1 IH Borrower LP

By: _____

Charles Young
Chief Operating Officer

Georgia_Renewal_Lease_2023UNL.v.1.03

Confidential and Proprietary – ©2023 Invitation Homes. All Rights Reserved.

## PRE-1978 HOUSING RENTAL AND LEASES DISCLOSURE OF INFORMATION LEAD-BASED PAINT AND/OR LEAD-BASED PAINT HAZARDS

**Lead Warning Statement**

Housing built before 1978 may contain lead-based paint. Lead from paint, paint chips, and dust can pose health hazards if not managed properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 housing, lessors must disclose the presence of known lead-based paint and/or lead-based paint hazards in the dwelling. Lessees must also receive a federally approved pamphlet on lead poisoning prevention.

**Lessor's Disclosure**

(a)  Presence of lead-based paint and/or lead-based paint hazards (check one below):

[ ]  Known lead-based paint and/or lead-based paint hazards are present in the housing (explain):

_____

_____

[x]  Lessor has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

(b)  Records and Reports available to the Lessor (check one below):

[ ]  Lessor has provided the lessee with all available records and reports pertaining to lead-based paint and/or lead-based hazards in the housing (list documents below):

_____

_____

[x]  Lessor has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

**Resident's Acknowledgment**

(c)  The undersigned Residents acknowledge they have received copies of all information listed above.

(d) The undersigned Residents acknowledge they have received the pamphlet *Protect Your Family From Lead in Your Home.*

**Agent's Acknowledgment** (*initial*)

(e) _____    Manager has informed the lessor of the lessor's obligations under 42 U.S.C. 4852d and is aware of its responsibility to ensure compliance.

**Certification of Accuracy**

The following parties have reviewed the information above and certify to the best of their knowledge, that the information they have provided is true and accurate.

[Signatures on Following Page]

Georgia_Renewal_Lease_2023UNL.v.1.03



Confidential and Proprietary – ©2023 Invitation Homes. All Rights Reserved.

Docusign Envelope ID: EE8F3960-4434-4121-9D08-8CE3278BA4E9

**RESIDENT**:

Signature:
Name: _Curtis Parker_

Signature:
Name: _____

Signature:
Name: _____

Signature:
Name: _____

Signature:
Name: _____

Signature:
Name: _____

Signature:
Name: _____

Signature:
Name: _____

**LANDLORD**:

2017-1 IH Borrower LP

By: _____

Charles Young
Chief Operating Officer

Georgia_Renewal_Lease_2023UNL.v.1.03

Confidential and Proprietary – ©2023 Invitation Homes.  All Rights Reserved.

## BED BUG ADDENDUM

This bed bug addendum ("**Addendum**") dated 2/18/2025___ is part of that certain lease dated 2/18/2025___ (the "**Lease**"), by and between 2017-1 IH Borrower LP_____ ("**Landlord**") and the undersigned residents as ("**Resident**").  Capitalized terms not defined in this Addendum shall have the same meaning as in the Lease.  This Addendum sets forth the agreement of Resident and Landlord for prevention of bed bugs at the Residence.  As used herein, the terms "you" or "your" refer to all individuals listed as Resident under the Lease.

1.     **PURPOSE**.  This Addendum modifies the Lease and addresses situations related to bed bugs (*cimex lectularius*) which may be discovered infesting the dwelling or personal property in the dwelling. You understand that we relied on your representations to us in this Addendum.

2.     **INSPECTION**.  You agree that you will inspect the dwelling within 48 hours after move-in/renewal and notify Landlord of any bed bugs or bed bug infestation.   Landlord has no knowledge of any bed bug infestation or presence in the Residence.

3.     **INFESTATIONS**.  You agree that you have read the information in this Addendum about bed bugs and you agree that if you previously lived anywhere that had a bed bug infestation that all your personal property (including furniture, clothing, and other belongings) has been treated by a licensed pest control professional. You agree that such items are free of further infestation. If you disclose a previous experience of bed bug infestation, we can require documentation of the treatment and inspect your personal property and possessions to confirm the absence of bed bugs. You agree to provide documentation of any previous bed bug infestation which you may have experienced.

4.     **ACCESS FOR INSPECTION AND PEST TREATMENT**.  You must allow us and our pest control agents access to the dwelling at reasonable times to inspect for or treat bed bugs as allowed by law. You and your family members, occupants, guests, and invitees must cooperate and will not interfere with inspections or treatments. We have the right to select any licensed pest control professional to treat the dwelling and building. We can select the method of treating the dwelling, building, and common areas for bed bugs. You are responsible for and must, at your own expense, have your own personal property, furniture, clothing, and possessions treated according to accepted treatment methods established by a licensed pest control firm that we approve. You must do so as close as possible to the time we treated the dwelling. If you fail to do so, you will be in default of the Lease and we will have the right to terminate your right of occupancy and exercise all rights and remedies under the Lease. You agree not to treat the dwelling for a bed bug infestation on your own.

5.     **NOTIFICATION**.  You must promptly notify us:

- Of any known or suspected bed bug infestation or presence in the dwelling, or in any of your clothing, furniture, or personal property.

- If you discover any condition or evidence that might indicate the presence or infestation of bed bugs, or any confirmation of bed bug presence by a licensed pest control professional or other authoritative source.

6.     **COOPERATION**.  If we confirm the presence or infestation of bed bugs, you must cooperate and coordinate with us and our pest control agents to treat and eliminate the bed bugs. You must follow all directions from us or our agents to clean and treat the dwelling and building that are infested. You must remove or destroy personal property that cannot be treated or cleaned as close as possible to the time we treated the dwelling. Any items you remove from the dwelling must be disposed of off-site and not



in the property's trash receptacles. If we confirm the presence or infestation of bed bugs in your dwelling, we have the right to require you to temporarily vacate the dwelling and remove all furniture, clothing, and personal belongings in order for us to perform pest control services. If you fail to cooperate with us, you will be in default, and we will have the right to terminate your right of occupancy and exercise all rights and remedies under the Lease.

7.    **RESPONSIBILITIES**.   You may be required to pay all reasonable costs of cleaning and pest control treatments incurred by us to treat your dwelling for bed bugs. If we confirm the presence or infestation of bed bugs after you vacate your dwelling, you may be responsible for the cost of cleaning and pest control treatments. If you fail to pay us for any costs you are liable for, you will be in default, and we will have the right to terminate your right of occupancy and exercise all rights and remedies under the Lease.

8.    **TRANSFERS**.   If we allow you to transfer to another property because of the presence of bed bugs, you must have your personal property and possessions treated according to accepted treatment methods or procedures established by a licensed pest control professional. You must provide proof of such cleaning and treatment to our satisfaction.

## Information about Bed Bugs

**Bed bug Appearance**.
Bed bugs have six legs. Adult bed bugs have flat bodies about 1/4 of an inch in length. Their color can vary from red and brown to copper colored. Young bed bugs are very small. Their bodies are about 1/16 of an inch in length. They have almost no color. When a bed bug feeds, its body swells, may lengthen, and becomes bright red, sometimes making it appear to be a different insect. Bed bugs do not fly. They can either crawl or be carried from place to place on objects, people, or animals. Bed bugs can be hard to find and identify because they are tiny and try to stay hidden.

**Life Cycle and Reproduction**.
An average bed bug lives for about 10 months. Female bed bugs lay one to five eggs per day. Bed bugs grow to full adulthood in about 21 days.  Bed bugs can survive for months without feeding.

**Bed bug Bites**.
Because bed bugs usually feed at night, most people are bitten in their sleep and do not realize they were bitten. A person's reaction to insect bites is an immune response and so varies from person to person. Sometimes the red welts caused by the bites will not be noticed until many days after a person was bitten, if at all.

**Common signs and symptoms of a possible bed bug infestation**.
- Small red to reddish brown fecal spots on mattresses, box springs, bed frames, mattresses, linens, upholstery, or walls.
- Molted bed bug skins, white, sticky eggs, or empty eggshells.
- Very heavily infested areas may have a characteristically sweet odor.
- Red, itchy bite marks, especially on the legs, arms, and other body parts exposed while sleeping. However, some people do not show bed bug lesions on their bodies even though bed bugs may have fed on them.

For more information, see the Internet websites of the United States Environmental Protection Agency and the National Pest Management Association.

Georgia_Renewal_Lease_2023UNL.v.1.03



Confidential and Proprietary – ©2023 Invitation Homes.  All Rights Reserved.

**Bed Bugs Don't Discriminate**.
Bed bugs' increased presence across the United States in recent decades can be attributed largely to a surge in international travel and trade. It's no surprise then that bed bugs have been found time and time again to have taken up residence in some of the fanciest hotels and apartment buildings in some of the nation's most expensive neighborhoods.

Nonetheless, false claims that associate bed bugs' presence with poor hygiene and uncleanliness have caused rental housing residents, out of shame, to avoid notifying owners of their presence. This serves only to enable the spread of bed bugs.

**Bed Bugs Don't Transmit Disease**.
There exists no scientific evidence that bed bugs carry disease. In fact, federal agencies tasked with addressing pests of public health concern, namely the U.S. Environmental Protection Agency and the Centers for Disease Control and Prevention, have refused to elevate bed bugs to the threat level posed by disease-carrying pests. Claims associating bed bugs with disease are false.

**Preventing Bed Bug Encounters When Traveling**.
Because humans serve as bed bugs' main mode of transportation, it is extremely important to be mindful of bed bugs when away from home. Experts agree that the spread of bed bugs across all regions of the United States is largely attributed to an increase in international travel and trade. Travelers are therefore encouraged to take a few minutes upon arriving to their temporary destination to thoroughly inspect their accommodations, to ensure that any uninvited guests are detected before the decision is made to unpack.

Because bed bugs can easily travel from one room to another, it is also recommended that travelers thoroughly inspect their luggage and belongings for bed bugs before departing for home.

**Bed Bug Do's and Don'ts**.
- **Do not bring used furniture from unknown sources into your dwelling.** Countless bed bug infestations have stemmed directly from the introduction into a resident's unit of second-hand and abandoned furniture.
- **Do address bed bug sightings immediately.** Residents who suspect the presence of bed bugs in their property must immediately notify the Landlord.
- **Do not attempt to treat bed bug infestations.** Under no circumstances should you attempt to eradicate bed bugs. Health hazards associated with the misapplication of traditional and non-traditional, chemical-based insecticides and pesticides poses too great a risk to you and your neighbors.
- **Do comply with eradication protocol.** If the determination is made that your property is indeed playing host to bed bugs, you must comply with the bed bug eradication protocol set forth by both the Landlord and their designated pest management company.

9.      **Controlling Provisions**. In the event of any conflict between the terms of this Addendum and the Lease, the terms of this Addendum shall control.

[Signatures on Following Page]

Georgia_Renewal_Lease_2023UNL.v.1.03

Confidential and Proprietary – ©2023 Invitation Homes. All Rights Reserved.



**RESIDENT**:

Signature:
Name: _Curtis Parker_
      Curtis Parker

Signature:
Name: _____

Signature:
Name: _____

Signature:
Name: _____

Signature:
Name: _____

Signature:
Name: _____

Signature:
Name: _____

Signature:
Name: _____

**LANDLORD**:

2017-1 IH Borrower LP

By: _____

      Charles Young
      Chief Operating Officer

Georgia_Renewal_Lease_2023UNL.v.1.03

Confidential and Proprietary – ©2023 Invitation Homes. All Rights Reserved.

## MOLD PREVENTION AND INFORMATION ADDENDUM

This Mold Information and Prevention Addendum ("**Addendum**") dated 2/18/2025___ is part of that certain lease dated 2/18/2025___ (the "**Lease**"), by and between 2017-1 IH Borrower LP_____ ("**Landlord**") and the undersigned residents as ("**Resident**"). Capitalized terms not defined in this Addendum shall have the same meaning as in the Lease. This Addendum sets forth the agreement of Resident and Landlord for the management of mold growth at the Residence.

1. **NATURE OF MOLD GROWTH**. Mold is a type of fungi which occurs naturally in the environment and is necessary for the natural decomposition of plant and other organic material. It spreads by means of sharing in microscopic spores borne on the wind and is found everywhere life can be supported. Most people are familiar with mold growth in the form of bread mold and mold that may grow on bathroom tile. Residential home construction is not, and cannot be, designed to exclude mold spores. If the growing conditions are right, mold can grow in the Residence. In order to grow, mold requires a food source. This might be supplied by items found in the home, such as fabric, carpet, or even wallpaper, or by building materials, such as drywall, wood, and insulation, to name a few. Also, mold growth requires a temperate climate. The best growth occurs at temperatures between 40ºF and 100ºF. Most importantly, mold growth requires moisture.

2. **MOISTURE AND MOLD GROWTH**. Moisture availability is the only mold growth factor that can be controlled in a residential setting. By minimizing moisture, Resident can reduce or eliminate mold growth. Moisture in the home can have many causes. Spills, leaks, overflows, condensation, and high humidity are common sources of home moisture. Good housekeeping and home maintenance practices are essential in the effort to prevent or eliminate mold growth. If moisture is allowed to remain on the growth medium, mold can develop within 24 to 48 hours. And if moisture sources are not removed or addressed, mold will continue to grow. A 2004 Federal Centers for Disease Control and Prevention study found that there is currently no scientific evidence that the accumulation of mold causes any significant health risks for persons with normally functioning immune systems. Nonetheless, appropriate precautions need to be taken, as mold may be linked with adverse health effects in susceptible persons. While there are no specific mold cleanup levels or established numerical abatement standards for mold remediation, the most effective remedy for mold is to remove the source of excess water or continuing moisture intrusion.

3. **STEPS TO REDUCE MOLD GROWTH**. Mold growth depends largely on how Resident maintains the Residence. Resident shall act to prevent conditions which cause mold or moisture build-up, and minimize any effects that may be caused by mold growth, including the following:
   a. Before bringing items into the Residence, check for signs of mold on the items. For example, potted plants (roots and soil), furnishings, or stored clothing and bedding material, as well as many other household goods, could already contain mold growth.
   b. Regular vacuuming and cleaning will help reduce mold levels. Mild bleach solutions and most tile cleaners are effective in eliminating or preventing mold growth if used in accordance with the manufacturer's recommendations.
   c. Keep the humidity in the Residence low. Vent clothes dryers to the outdoors. Ventilate kitchens and bathrooms by opening the windows, by using exhaust fans, or by running the air conditioning to remove excess moisture in the air and to facilitate evaporation of water from wet surfaces.
   d. Promptly clean up spills, condensation, and other sources of moisture. Thoroughly dry any wet surfaces or material. Do not let water pool or stand in your home.
   e. Inspect for leaks on a regular basis. Look for discolorations or wet spots. Empty water from condensation pans (refrigerators and air conditioners). Take notice of musty odors and any visible signs of mold. Promptly notify Landlord of any visible or apparent leaks.

Georgia_Renewal_Lease_2023UNL.v.1.03



Confidential and Proprietary – ©2023 Invitation Homes. All Rights Reserved.

    f.   Should mold develop, thoroughly clean the affected area.  First, test to see if the affected material or surface is color safe.  Porous materials, such as fabric, upholstery, or carpet should be discarded.  Should the mold growth be substantial, contact Landlord for further direction on the use of services from a qualified mold abatement professional.

4.    **ADDITIONAL INFORMATION AND RESOURCES**.  The U.S. EPA provides information and resources regarding excess water, moisture intrusion, and mold: http://www.epa.gov/mold/.  The U.S. Centers for Disease Control and Prevention also provide details about mold growth and human health:  http://www.cdc.gov/mold/.

5.    **DUTIES OF RESIDENT**.  Resident agrees to assume responsibility for following the recommendations set forth in this Addendum.  It is the responsibility of Resident to reduce or eliminate the occurrence of mold growth in the home including but not limited to periodically running the heating, ventilation, and air conditioning (HVAC) system, changing air filters, and ensuring there is proper ventilation in the Residence.  Resident's failure to take preventative actions may reduce or preclude Landlord's responsibility for water damage or water intrusion.  If there is any water damage or water intrusion to the Residence, Resident shall take prompt action to prevent conditions which cause mold growth to develop.  Resident shall immediately notify Landlord of water intrusion and allow Landlord the opportunity to inspect the problem.  Failure to notify Landlord of water intrusion or water damage and/or the failure of Resident to allow Landlord access to the Residence for the purpose of inspection, evaluation, and/or failure to take the steps listed above to mitigate or eliminate the occurrence of mold growth, and/or failure to take corrective action shall be an affirmative defense to any claims by Resident arising from water damage or water intrusion.

6.    **LIMITATIONS ON LANDLORD LIABILITY**.  Resident acknowledges and agrees that Landlord shall not be liable for any claims with respect to the presence and/or existence of molds, mildew, and/or microscopic spores unless caused by the sole gross negligence or willful misconduct of Landlord.  To the extent Landlord may be liable, if at all, Resident, on behalf of itself and any Resident Parties, hereby indemnifies Landlord and Landlord's officers, directors, partners, members, affiliates, successors, and assigns from and against any and all Claims for property damage, injury, or death resulting from the exposure to microscopic spores, mold, fungi, and/or mildew and from any loss of resale value due to the presence and/or existence of mold, mildew, and/or microscopic spores; provided, however, that in no event is Resident indemnifying Landlord as a result of the presence and/or existence of mold, mildew, and/or microscopic spores if caused by the sole gross negligence or willful misconduct of Landlord.

7.    **CONTROLLING PROVISIONS**.  In the event of any conflict between the terms of this Addendum and the Lease, the terms of this Addendum shall control.

[Signatures on Following Page]

Georgia_Renewal_Lease_2023UNL.v.1.03



Confidential and Proprietary – ©2023 Invitation Homes.  All Rights Reserved.

**RESIDENT**:

Signature: _Curtis Parker_
Name: _Curtis Parker_

Signature: _____
Name: _____

Signature: _____
Name: _____

Signature: _____
Name: _____

Signature: _____
Name: _____

Signature: _____
Name: _____

Signature: _____
Name: _____

Signature: _____
Name: _____

**LANDLORD**:

2017-1 IH Borrower LP

By: _Charles Young_

Charles Young
Chief Operating Officer

Georgia_Renewal_Lease_2023UNL.v.1.03

Confidential and Proprietary – ©2023 Invitation Homes.  All Rights Reserved.

## INSURANCE ADDENDUM
## (Insurance Required by Resident)

This Insurance Addendum ("**Addendum**") dated 2/18/2025    is part of that certain lease dated 2/18/2025    (the "**Lease**"),  by  and  between    2017-1 IH Borrower LP    ("**Landlord**") and the undersigned residents as ("**Resident**").  Capitalized terms not defined in this Addendum shall have the same meaning as in the Lease.

     1.     **NO LANDLORD LIABILITY**.  Landlord shall not be liable for personal injury or for damage to or loss of Resident's personal property (furniture, jewelry, clothing, etc.) from fire, flood, water leaks, rain, hail, ice, snow, smoke, explosions, interruption of utilities, theft, acts of God, or any other event whatsoever except the gross negligence or willful misconduct of Landlord.  Resident understands that Landlord's insurance for these risks does not cover Resident, any of Resident's personal property, or any family members, guests, or invitees or their personal property, and that Resident and its family members, guests, and invitees are not considered a co-insured of the Landlord.

     2.     **PERSONAL LIABILITY INSURANCE**.  Resident agrees to maintain, at Resident's sole cost and expense, during the Lease Term and any subsequent renewal periods, a policy of personal liability insurance, which provides coverage to third parties in the amount not less than $100,000 per occurrence.  Landlord shall be named as an interested party on such policy.  Resident understands that such liability insurance does not protect against loss or damage to personal property or belongings.

     3.     **DOG BITE LIABILITY INSURANCE**.    If Landlord has authorized Resident to keep a dog or dogs at the Residence under this Addendum, Resident shall obtain and maintain a personal liability policy that includes a minimum of $100,000 in dog bite liability coverage for all dogs at the Residence. If Resident's personal liability policy excludes coverage for any dog at the Residence, then Resident must obtain and maintain a separate, stand-alone dog bite liability insurance policy with at least $100,000 in liability coverage for the excluded dogs in a policy form reasonably satisfactory to Landlord. Resident's liability is not limited to the amount covered by such insurance policy. Prior to receiving possession of the Residence, Resident must provide proof of insurance and Landlord may demand proof of Resident's dog bite insurance policy at any time during the Lease Term. If Resident fails to provide proof of insurance prior to move-in, or fails to maintain insurance as required herein, Landlord may, but shall not be required to, obtain insurance on behalf of Resident (as Resident's agent), to the extent permitted by the laws of the jurisdiction in which the Residence is located, the cost of which (premium plus administrative charges) will be added to Resident's monthly Rent. Failure to provide adequate proof of insurance to Landlord, in Landlord's sole judgment, shall constitute a breach of the Lease.

     4.     **LOSSES AND DAMAGES TO PROPERTY**.  Resident is solely responsible for any damage or loss to the personal property (furniture, jewelry, clothing, etc.) of Resident and its family members, guests, and invitees and their personal property from fire, flood, water leaks, rain, hail, ice, snow, smoke, explosions, interruption of utilities, theft, acts of God, or any other event whatsoever except the gross negligence or willful misconduct of Landlord, and for obtaining insurance against these risks.

     5.     **INSURANCE PROGRAM**.  Resident acknowledges that Landlord has made available to Resident a program (the "**Program**") providing an opportunity to purchase policies of renter's insurance or personal liability insurance directly from Get Covered.  You may access this Program at *https://invitationhomes.policyverify.io/*.  However, Resident is under no obligation to purchase



Confidential and Proprietary – ©2023 Invitation Homes.  All Rights Reserved.

renter's insurance or personal liability insurance through this Program.

6.    **GROUP INSURANCE**.  To satisfy the personal liability insurance requirements of the Lease and this Addendum, Resident may, but is not obligated to, participate in a group insurance program that may be made available by Landlord from time to time ("**Group Insurance**"), the terms and conditions of which shall be provided to Resident separately. Resident shall pay, as additional rent, the amount of $8.00 per month for such Group Insurance for all periods that Resident is enrolled in Group Insurance. Resident's participation in Group Insurance and timely payment of the monthly Group Insurance charges shall constitute satisfactory evidence of insurance.

7.    **PROOF OF INSURANCE; NOTICE OF LAPSE IN COVERAGE; NOTICE OF CANCELLATION OF COVERAGE; FAILURE TO INSURE**.  Prior to receiving possession of the Residence, Resident must provide proof that Resident has obtained $100,000 personal liability coverage as described in Section 2.  Resident shall also provide proof that it is maintaining this insurance from time to time thereafter upon Landlord's reasonable request.  If Resident fails to provide proof of insurance prior to move-in, or fails to maintain insurance as required herein, Landlord may, but shall not be required to, obtain insurance on behalf of Resident (as Resident's agent), to the extent permitted by the laws of the jurisdiction in which the Residence is located, the cost of which plus a reasonable administrative charge in the amount of $7.50 per month, will be due and payable along with Resident's monthly Rent.  Notwithstanding the above, Resident's failure to provide proof of the required insurance will constitute an Event of Default under the Lease.

Proof of insurance, whether obtained through Get Covered or another insurance carrier, agent or broker, must be uploaded to:

https://invitationhomes.policyverify.io/upload-coverage-proof

Interested Party notifications (any notice of lapse in coverage or notice of cancellation of coverage) must be uploaded to:

https://getcovered.my.site.com/forms/s/resident-support?origin=invitationhomes.policyverify.io

or forwarded by U.S. Mail to:

Get Covered
PO Box 660121
Dallas, TX  75266

8.    **CONTROLLING PROVISIONS**.  In the event of any conflict between the terms of this Addendum and the Lease, the terms of this Addendum shall control.

[Signatures on Following Page]

Georgia_Renewal_Lease_2023UNL.v.1.03

Confidential and Proprietary – ©2023 Invitation Homes.  All Rights Reserved.



**RESIDENT**:

Signature: _Curtis Parker_
Name: Curtis Parker

Signature: _____
Name: _____

Signature: _____
Name: _____

Signature: _____
Name: _____

Signature: _____
Name: _____

Signature: _____
Name: _____

Signature: _____
Name: _____

Signature: _____
Name: _____

**LANDLORD**:

2017-1 IH Borrower LP

By: _____

Charles Young
Chief Operating Officer

Georgia_Renewal_Lease_2023UNL.v.1.03

Confidential and Proprietary – ©2023 Invitation Homes. All Rights Reserved.

**LANDSCAPING ADDENDUM**

This Landscaping Addendum ("**Addendum**") dated 2/18/2025 is part of that certain lease dated 2/18/2025 (the "**Lease**"), by and between 2017-1 IH Borrower LP ("**Landlord**") and the undersigned residents as ("**Resident**"). Capitalized terms not defined in this Addendum shall have the same meaning as in the Lease.

Resident hereby agrees and acknowledges that Resident will maintain the yard area and related landscape located at the Residence during the Lease Term (collectively, "Landscape Maintenance"). The Landscape Maintenance shall be performed by Resident in strict conformance with and pursuant to the following standards:

1.    **COMPLIANCE.**  Resident must comply with all state laws, county, township, and municipal ordinances, as well as all homeowner's association rules and regulations with respect to Landscape Maintenance which shall control if in conflict with this Addendum.

2.    **LAWN WATERING**.  Resident must sufficiently water all lawn and grass areas as needed to keep the lawn green.  To minimize evaporation and promote deeper saturation, the recommended watering time is early in the morning. Watering times and duration may need to be adjusted to accommodate different types of sprinklers and climates.  Note:  Any watering schedules may also need to be adjusted to comply with local watering restrictions.

3.    **LAWN MAINTENANCE**.  Resident is responsible for all mowing and edging.  The lawn should be mowed weekly during the spring and summer and as needed in the fall and winter. Resident should edge around the driveway, sidewalks, and planter areas at the same time the lawn is mowed.  All debris and grass clippings must be blown off or swept clean from the driveway and surrounding yard and placed in the trash or a green recycling/compost bin.

4.    **PLANT WATERING AND MAINTENANCE**. Resident must sufficiently water all planted areas as needed to keep plants green and growing and remove weeds. Resident is responsible for regularly mulching of and maintaining pine straw for (as the case may be) flowerbeds and, if necessary, trees. To minimize evaporation and promote deeper saturation, the best watering time is early morning. Watering times and duration may need to be adjusted to accommodate different types of sprinklers, climates, and seasonal changes.

5.    **IRRIGATION SYSTEMS**.  Resident's Residence may be equipped with an automatic sprinkler system and timer that can be set to water at the appropriate time and frequency.  Please be aware of warning signs that your sprinkler system might need adjustment. Inspect the lawn and plants bi-weekly for mildew or excessive yellow coloration. These can be signs that the system timer is incorrect or malfunctioning.

6.    **BASIC MAINTENANCE**.  Resident should check the irrigation system regularly to ensure that it is working properly.  Resident is responsible for any costs related to maintenance, including those related to winterization, replacement of any damaged or broken sprinkler heads, mini sprayers, or drip lines and/or accessories associated with the irrigation system at the Residence with parts of "like kind".  In colder climates, Resident shall be responsible for regular snow and ice removal.

7.    **TREES, SHRUBS, AND HEDGES**.  Resident must trim or prune all trees, branches, shrubs, and hedges that are under ten feet high as needed and necessary to prevent excessive or unkempt growth.  For the portions of any trees, branches, shrubs and hedges that are higher than ten feet, Resident agrees to notify Landlord of excessive or unkempt growth, including if any trees and/or branches are leaning against the Residence or a fence. In the event the Residence is at the corner of intersecting streets, Resident must keep all hedges or shrubs trimmed to a height that does not



Confidential and Proprietary – ©2023 Invitation Homes. All Rights Reserved.

obstruct or obscure traffic visibility across the Residence.  Any fallen tree branches or debris shall be removed by Resident in a timely manner.

8.        **PERIODIC INSPECTIONS**.    Landlord shall have the right to conduct exterior inspections of the Landscape Maintenance.  Residents whose Landscape Maintenance is not consistent with the guidelines set forth in this Addendum will be in default of the Lease if maintenance is not remediated as set forth in the Lease.

9.        **PROFESSIONAL LANDSCAPING SERVICES**.    Notwithstanding anything to the contrary in the Lease or this Addendum, Landlord, in its sole discretion, may provide or require professional landscaping services at the Residence, including but not limited to, maintenance of the garden, landscaping, trees, shrubs, and grass, weed control, and proper disposal of all clippings and waste (the "Landscaping Services").

10.        **PAYMENT**.  If Landlord assumes Resident's obligations with respect to Landscaping Services, Resident shall pay, at the time and place and in the same manner as Resident pays Rent and all other amounts due under the Lease, an additional monthly fee, as additional rent, in the amount set forth in the Summary (the "**Landscaping Fee**").  Resident's failure to timely pay the Landscaping Fee shall be considered a default under the Lease and shall entitle Landlord to all remedies available to Landlord thereunder.

11.        **CONTROLLING PROVISIONS**.  In the event of any conflict between the terms of this Addendum and the Lease, the terms of this Addendum shall control.

[Signatures on Following Page]

Georgia_Renewal_Lease_2023UNL.v.1.03

Confidential and Proprietary – ©2023 Invitation Homes.  All Rights Reserved.



**RESIDENT**:

Signature: _Curtis Parker_
Name: Curtis Parker
_____

Signature:
Name: _____

Signature:
Name: _____

Signature:
Name: _____

Signature:
Name: _____

Signature:
Name: _____

Signature:
Name: _____

Signature:
Name: _____

**LANDLORD**:

2017-1 IH Borrower LP

By: _Charles Young_
_____

Charles Young
Chief Operating Officer

Georgia_Renewal_Lease_2023UNL.v.1.03

Confidential and Proprietary – ©2023 Invitation Homes. All Rights Reserved.

**LEASE BUY-OUT ADDENDUM**

This Lease Buy-Out Addendum ("**Addendum**") dated 2/18/2025 is part of that certain lease dated 2/18/2025 (the "**Lease**"), by and between ___2017-1 IH Borrower LP_____ ("**Landlord**") and the undersigned residents as ("**Resident**"). Capitalized terms not defined in this Addendum shall have the same meaning as in the Lease.

This Addendum sets forth the agreement of Resident and Landlord in the event that Resident decides to move out of the Residence at any time prior to the end of the Lease term as stated in the Lease.

1. **BUY-OUT OPTION**. After at least sixty (60) days of full compliance with the terms of this Lease, as long as Resident is not in default of the Lease either at the time Resident desires to terminate the Lease or when the Lease will be terminated, Resident shall have the option of terminating the Lease by complying with all of the following procedures:

    a. At least thirty (30) days prior to the date Resident desires to terminate the Lease, Resident shall provide written notice to Landlord ("Notice"), stating Resident's desire to exercise Resident's buy-out option and the date of proposed termination (the "Termination Date"); and

    b. With the Notice, Resident shall deliver to Landlord a payment, by electronic payment or cashier's check in the amount of: (i) Rent due under the Lease through the Termination Date; (ii) a cancellation fee equal to two months' Rent; and (iii) repayment of move-in or special concessions received by Resident at the commencement of the Lease or during the term of the Lease, if any (such amount shall be collectively referred to herein as the "Buy-Out Payment"); and

    c. Resident shall also execute, no later than ten (10) days from the date of providing the Notice, a Termination of Lease Agreement (the "Termination Agreement") on Landlord's form and submit the Termination Agreement to Landlord; and

    d. Resident shall vacate the Residence on or before the Termination Date.

If Resident vacates the Residence prior to the expiration of the Lease without exercising Resident's buy-out option, Landlord shall have the right to declare Resident in default and be entitled to collect from Resident all appropriate damages as authorized by the Lease and Applicable Law.

2. **NATURE OF BUY-OUT PAYMENT**. Resident acknowledges that: (i) the Buy-Out Payment is a buy-out fee which contemplates the various risks of the parties with respect to the early termination of the Lease, and in the event the Premises is re-rented, the Resident is not entitled to any return of part or all of the Buy-Out Payment; and (ii) this buy-out option may be exercised by Resident, in Resident's sole discretion. Notwithstanding the foregoing, in the event that Resident is in default of the Lease after Resident has executed the Termination Agreement, Landlord shall have the right, but not the obligation, to declare the Termination Agreement null and void and retain the Buy-Out Payment, subject to the terms of the Lease and applicable law.

3. **USE OF SECURITY DEPOSIT**. Resident and Landlord agree that the Security Deposit paid by Resident under the Lease may be used to pay for any portion of the Buy-Out Payment, if such Buy-Out Payment remains unpaid on the Termination Date, in Landlord's sole discretion and in accordance with Applicable Law, but only after the Security Deposit is applied in accordance with the Lease.

Georgia_Renewal_Lease_2023UNL.v.1.03

Confidential and Proprietary – ©2023 Invitation Homes. All Rights Reserved.



Docusign Envelope ID: EE8F3960-4434-4121-9D08-8CF3278BA4E9

4.    **RATIFICATION OF LEASE TERMS.** Except as modified by this Addendum, all terms and provisions of the Lease are hereby ratified by the parties and remain in full force and effect.

[Signature Page Follows]

Georgia_Renewal_Lease_2023UNL.v.1.03

Confidential and Proprietary – ©2023 Invitation Homes.  All Rights Reserved.



**RESIDENT**:

Signature: *Curtis Parker*
Name: Curtis Parker

Signature: _____
Name: _____

Signature: _____
Name: _____

Signature: _____
Name: _____

Signature: _____
Name: _____

Signature: _____
Name: _____

Signature: _____
Name: _____

Signature: _____
Name: _____

**LANDLORD**:

2017-1 IH Borrower LP

By: *Charles Young* _____

Charles Young
Chief Operating Officer

Georgia_Renewal_Lease_2023UNL.v.1.03

Confidential and Proprietary – ©2023 Invitation Homes.  All Rights Reserved.

**AIR FILTER SERVICE ADDENDUM**

This Air Filter Service Addendum ("**Addendum**") dated 2/18/2025 is part of that certain lease dated 2/18/2025 (the "**Lease**"), by and between 2017-1 IH Borrower LP ("**Landlord**") and the undersigned residents as ("**Resident**"). Capitalized terms not defined in this Addendum shall have the same meaning as in the Lease.

1.      **DESCRIPTION OF AIR FILTER SERVICE**. Landlord will cause a vendor selected by Landlord to provide replacement air filters for the Residence on a quarterly basis **(collectively the "Air Filter Service").**

2.      **AGREEMENT FOR AIR FILTER SERVICE**. From and after the Effective Date and for the Term hereof, Resident agrees that Resident is responsible for replacing the air filter(s) located at the Residence promptly upon receipt of the air filters through the Air Filter Service. Resident must notify Landlord of any issues regarding the Air Filter Service, including but not limited to, delay in delivery of air filters, incorrect sizes of air filters, and delivery of damaged air filters.

3.      **LACK OF COMPLIANCE FEE**. In the event Resident fails to replace the air filter(s) at the Residence promptly upon receipt of the air filters provided through the Air Filter Service, Landlord shall charge Resident $25.00 lack of compliance fee **("Lack of Compliance Fee")**. All such charges shall be payable as additional rent

4.      **TERM**. The term of this Addendum shall last from the Effective Date until the expiration of the Lease Term as it is described in the Lease **("Term")**.

5.      **PRICING AND PAYMENT**. Resident shall pay to Landlord, as additional rent, the air filter service fee in the amount set forth in the Summary paid on a monthly basis **("Air Filter Service Fee")**. The terms of the Lease applicable to the monthly Rent, including, but not limited to, due dates and payment methods, shall apply to this Air Filter Service Fee.

6.      **CANCELLATION**. Landlord reserves the right to cancel the Air Filter Service in its sole and absolute discretion. Resident will be responsible for the Air Filter Service Fee until the expiration of the Term or through the date of cancellation of the Air Filter Service, whichever is earlier.

7.      **CONSENT TO RECEIVE ELECTRONIC COMMUNICATION**. Resident consents to receiving electronic and other forms of communication from Landlord regarding the Air Filter Service, the Air Filter Service Fee, or anything else related to Landlord's provision of the Air Filter Service.

8.      **CONSENT TO TRANSFER OF PERSONAL INFORMATION**. Resident acknowledges and agrees that the provision of the Air Filter Service may require Landlord to transmit certain personal information of Resident to its third party service providers and hereby consents to the transfer of such personal information. Resident further acknowledges and agrees that any personal information transferred to Landlord's third party service providers will be subject to the privacy policies and procedures implemented by such third party service providers, which such policies and procedures may differ from those that have been implemented by Landlord.

9.      **CONSENT TO RECEIVE COMMUNICATIONS**. Resident hereby consents to receive phone calls, emails, and text messages via an automated dialing system or other automated technology from the Landlord and the Landlord's third party service provider related to the provision of the Air Filter Service. Resident may unsubscribe from such communications by sending an email to Hello@secondnature.com with the subject line "STOP" or by calling 1-888-423-1555. Resident may

Confidential and Proprietary – ©2023 Invitation Homes. All Rights Reserved.



Docusign Envelope ID: EE8F3960-4434-4421-9D08-8CF3278BA4E9

reply "STOP" to unsubscribe from text communication.  Standard message and data rates may apply.

10.     **NO LANDLORD LIABILITY**. Landlord shall not be liable to Resident for any claim whatsoever, including, but not limited to claims resulting from the failure or malfunction of the Air Filter Service.

11.     **WARRANTY DISCLAIMER**.  LANDLORD MAKES NO WARRANTY OF ANY KIND, WHETHER EXPRESS, IMPLIED, STATUTORY OR OTHERWISE, INCLUDING WITHOUT LIMITATION, MERCHANTABILITY OR FITNESS FOR A PARTICULAR USE. THE AIR FILTER SERVICE IS PROVIDED BY LANDLORD "AS IS" AND "AS AVAILABLE." RESIDENT ASSUMES ALL RISK FOR RESIDENT'S USE OF THE AIR FILTER SERVICE, INCLUDING WITHOUT LIMITATION, LOSS OR DAMAGE TO ANY PERSONAL PROPERTY AS A RESULT OF USING THE AIR FILTER SERVICE OR PERSONAL INJURY OR ANY OTHER HARM. IN NO EVENT DOES LANDLORD GUARANTEE THAT RESIDENT'S USE OF THE AIR FILTER SERVICE WILL BE UNINTERRUPTED OR ERROR FREE, OR THAT THE AIR FILTER'S SERVICE'S OPERATION WILL NOT NEGATIVELY AFFECT RESIDENT'S USE AND QUIET ENJOYMENT OF THE RESIDENCE. THIS SECTION 11 APPLIES TO THE MAXIMUM EXTENT ALLOWED BY APPLICABLE LAW.

12.     **LIMITATION OF LIABILITY**.  IN NO EVENT WILL LANDLORD AND/OR ITS OFFICERS, DIRECTORS, EMPLOYEES, AGENTS OR REPRESENTATIVES BE LIABLE (i) FOR ANY INDIRECT, SPECIAL, INCIDENTAL, CONSEQUENTIAL, EXEMPLARY OR PUNITIVE DAMAGES RELATED TO OR ARISING FROM RESIDENT'S USE, MISUSE, OR INABILITY TO USE THE AIR FILTER SERVICE, INCLUDING BUT NOT LIMITED TO, DAMAGES TO PERSONAL OR REAL PROPERTY OF ANY NATURE WHATSOEVER, PERSONAL OR BODILY INJURY, FOR ANY CLAIM RESULTING FROM RESIDENT'S NON-COMPLIANCE WITH OR BREACH OF THE TERMS HEREOF OR ANY OTHER STATE OR FEDERAL LAWS. IN NO EVENT SHALL LANDLORD'S AGGREGATE LIABILITY UNDER THIS ADDENDUM EXCEED THE TOTAL SUM OF MONIES PAID BY RESIDENT TO LANDLORD AS CONSIDERATION FOR USE OF THE AIR FILTER SERVICE DURING THE TWELVE (12) MONTHS IMMEDIATELY PRECEDING THE EVENT GIVING RISE TO SUCH LIABILITY.

13.     **INDEMNIFICATION**.  RESIDENT AGREES, AT RESIDENT'S EXPENSE, TO INDEMNIFY, DEFEND AND HOLD HARMLESS LANDLORD, ITS LICENSORS, AND THEIR RESPECTIVE DIRECTORS, OFFICERS, EMPLOYEES AND AGENTS FROM AND AGAINST ALL DEMANDS, LIABILITIES, LOSSES, CLAIMS AND EXPENSES, INCLUDING ATTORNEY'S FEES, ARISING OUT OF (i) RESIDENT'S USE OF THE AIR FILTER SERVICE, (ii) THIRD PARTY CLAIMS, ACTIONS OR ALLEGATIONS OF INFRINGEMENT BASED ON INFORMATION, DATA OR CONTENT RESIDENT SUBMITTED IN CONNECTION WITH THE AIR FILTER SERVICE, (iii) ANY FRAUD OR MANIPULATION, OR OTHER BREACH OF THIS ADDENDUM, BY RESIDENT.   LANDLORD RESERVES THE RIGHT, AT ITS OWN EXPENSE AND IN ITS SOLE DISCRETION, TO ASSUME THE EXCLUSIVE DEFENSE AND CONTROL OF ANY MATTER OTHERWISE SUBJECT TO INDEMNIFICATION BY RESIDENT.

14.     **CONTROLLING PROVISIONS**.  In the event of any conflict between the terms of this Addendum and the Lease, the terms of this Addendum shall control with respect to the subject matter hereof.

[Signatures on Following Page]

Georgia_Renewal_Lease_2023UNL.v.1.03



Confidential and Proprietary – ©2023 Invitation Homes. All Rights Reserved.

**RESIDENT**:                                    **LANDLORD**:

                                                2017-1 IH Borrower LP

Signature: Curtis Parker
Name: Curtis Parker

Signature: _____              By: _____
Name: _____

Signature: _____                  Charles Young
Name: _____                       Chief Operating Officer

Signature: _____
Name: _____

Signature: _____
Name: _____

Signature: _____
Name: _____

Signature: _____
Name: _____

Signature: _____
Name: _____

Georgia_Renewal_Lease_2023UNL.v.1.03

Confidential and Proprietary – ©2023 Invitation Homes.  All Rights Reserved.

# ANIMAL ADDENDUM

This Animal Addendum ("**Addendum**") dated 2/18/2025   is part of that certain lease dated 2/18/2025   (the "**Lease**"), by and between 2017-1 IH Borrower LP                              ("**Landlord**") and the undersigned residents (collectively, "**Resident**").  Capitalized terms not defined in this Addendum shall have the same meaning as in the Lease. In the event the terms of this Addendum conflict with those of the Lease, the terms of the Addendum shall control to the extent of the conflict.

1.  **ATTESTATION**:  Resident attests to the following (mark one):

    a.  Resident ❑ OWNS at least one dog and/or cat that is not considered a service, assist, or comfort animal ("Pet") and will keep a Pet at the Residence.

    b.  Resident ☒ DOES NOT OWN a Pet that will be kept at the Residence.

2.  **CONDITIONAL AUTHORIZATION**.  Landlord hereby authorizes Resident to keep at the Residence the Pet(s) identified by Resident in this Addendum until the Lease expires or is terminated, whichever occurs first, subject to the terms and conditions of the Lease, including this Addendum.  Landlord may revoke this authorization sooner if, in Landlord's judgment, Resident, Resident's Pet, Resident's guest or any Residence occupant violates the terms of this Addendum. Resident shall promptly remove from the Residence any offspring of any animal unless Landlord provides written authorization that such animal's offspring may remain at the Residence, and applicable additional Pet-related charges are paid with respect to such offspring. Resident must remove any animal, including Pets, previously permitted pursuant to this Addendum within 24 hours of written notification from Landlord that the animal, in Landlord's sole and absolute judgment, creates a nuisance or disturbance or is undesirable or dangerous.  Resident's failure to remove an animal, after authorization is revoked shall be deemed a breach of the Lease and this Addendum, allowing Landlord to terminate Resident's tenancy.

3.  **NUMBER OF PETS**.  Resident may keep up to three (3) approved Pets at the Residence. The burden is on Resident to notify Landlord of any Pets and, upon receipt of Landlord's approval pursuant to this Addendum, to pay the applicable Pet Fees and Pet Rent.  Landlord's approval is conditioned on Resident's continued compliance with the terms of the Lease and this Addendum.

4.  **BREED RESTRICTIONS**.  Unless specifically authorized in this Addendum, following dog breeds are not permitted at the Residence: American Pit Bull Terriers, Rottweilers, Staffordshire Terriers, or any dog that includes a percentage or mix of any of these breeds.  Any canines other than domestic dogs are not permitted including, but not limited to, wolves, coyotes, dingoes, and jackals, along with any canine or wolf hybrids. For example, and not by limitation, a Husky-Wolf or Timber-Wolf mix is not permitted. Resident acknowledges that Landlord may, in its sole discretion, require Resident, at Resident's expense, to provide DNA test results or other proof, to Landlord's reasonable satisfaction, showing that a Pet kept at the Residence is not prohibited. Landlord reserves the right to modify or restrict certain animal breeds in its sole discretion at any time.  Except as expressly set forth in this Addendum, Resident shall not keep or harbor at the Residence any animals of any kind including, but not limited to, dogs, cats, other mammals, birds, reptiles, and marine animals.

5.  **NON-RESIDENT ANIMALS.**  Pets and other animals of guests, visitors or any other non-resident are not authorized at the Residence, except as permitted by Applicable Law.

6.  **ADDITIONAL PETS.** If Resident becomes an owner of one or more Pets during the Lease Term, Resident must notify Landlord and obtain Landlord's approval of the new Pet(s) prior to the Pet(s) entering the Residence and pay any Pet Fee or Pet Rent as required by Landlord. Failure to do so will result in Resident being assessed the non-compliance fees described below and could result in termination of the Lease.

Georgia_Renewal_Lease_2023UNL.v.1.03

Confidential and Proprietary – ©2023 Invitation Homes. All Rights Reserved.



7.  **PET FEE.**  Consistent with Applicable Law, and in consideration for Landlord's permission to keep a Pet at the Residence, Resident must pay the one-time fee in the amount of $ _325_ per Pet (the "Pet Fee") prior to any Landlord approved Pet(s) entering the Residence during the Lease Term.  Except as otherwise required by Applicable Law, the Pet Fee is NON-REFUNDABLE, nor is it part of the Security Deposit, nor Rent; and it is not a deposit to repair damages caused by Pets.

8.  **PET RENT.**  Resident shall be responsible for payment of additional monthly rent in the amount set forth in the Summary per Pet plus any applicable rental tax (the "Pet Rent") for the Pets Landlord authorizes to be kept at the Residence.  Except as otherwise required by Applicable Law, the Pet Rent is in addition to the Rent due to Landlord pursuant to the Lease, is subject to all non-payment provisions of the Lease, and is not a deposit to repair damages caused by Pets.  Pet Rent amounts are subject to change and, if Resident is found to be out of compliance with the terms of this Addendum or adds an additional Pet, Resident will be charged the then-current rate for any newly added Pets.

9.  Pet Fee(s) and Pet Rent(s) shall be deemed additional rent under the Lease.

10. **ANIMAL RULES**.  Resident is responsible for the animal's actions and agrees to the following rules:

    a.  Pets and service, assist, and companion animals must be housebroken.  All other animals must be caged.  Resident will immediately remove and clean up all animal waste at the Residence, including all interior and exterior areas of the home, as well as any common areas.

    b.  Resident will safely secure or arrange for animal care when maintenance vendors or employees of Landlord need to enter the Residence.

    c.  Resident will keep animals on a leash when not indoors or in a fenced backyard area.

    d.  Resident will comply with all applicable statutes, ordinances, restrictions, homeowners' association rules, and other enforceable regulations regarding any animal.

    e.  Resident agrees to treat all Pets, approved service, assist, and companion animals for fleas as preventative maintenance.

    f.  Resident shall not allow animals to disturb neighbors or other residents.

    g.  Resident shall provide adequate food, water, and veterinary care for all animals.  Resident shall not leave food or water outside the Residence that would attract pests or other nuisances.  Resident shall not leave any animal unattended at the Residence for an unreasonable period of time.

    h.  Resident shall have all animals licensed and vaccinated, including but not limited to rabies vaccinations, as required by Applicable Law.  Upon Landlord's request, Resident shall provide documentation evidencing compliance with Applicable Law.

    i.  Fish tanks are limited to 20 gallons and predator fish, such as piranhas, are strictly prohibited.

11. **ADDITIONAL RULES.**  Landlord may, from time to time and in its sole discretion, make reasonable updates to this Addendum and will notify Residents of any such updates.

12. **DOG BITE LIABILITY INSURANCE**. If Landlord has authorized Resident to keep a dog or dogs at the Residence under this Addendum, Resident shall obtain and maintain a personal liability policy that includes a minimum of $100,000 in dog bite liability coverage for all dogs at the Residence. If Resident's personal liability policy excludes coverage for any dog at the Residence, then Resident must obtain and maintain a separate, stand-alone dog bite liability insurance policy with at least $100,000 in liability coverage for each excluded dog in a policy form reasonably satisfactory to Landlord. Resident's liability is not limited to the amount covered by such insurance policy. Prior to receiving possession of the

Page 51 of 54



Confidential and Proprietary – ©2023 Invitation Homes.  All Rights Reserved.

Residence, Resident must provide proof of insurance and Landlord may demand proof of Resident's dog bite insurance policy at any time during the Lease Term. If Resident fails to provide proof of insurance prior to move-in, or fails to maintain insurance as required herein, Landlord may, but shall not be required to, obtain insurance on behalf of Resident (as Resident's agent), to the extent permitted by the laws of the jurisdiction in which the Residence is located, the cost of which (premium plus administrative charges), all as additional rent, will be added to Resident's monthly Rent. Failure to provide adequate proof of insurance to Landlord, in Landlord's sole judgment, shall constitute a breach of the Lease.

Proof of insurance, whether obtained through Get Covered or another insurance carrier, agent or broker, must be uploaded to:

https://invitationhomes.policyverify.io/upload-coverage-proof

Interested Party notifications (any notice of lapse in coverage or notice of cancellation of coverage) must be uploaded to:

https://getcovered.my.site.com/forms/s/resident-support?origin=invitationhomes.policyverify.io

or forwarded by U.S. Mail to:

Get Covered<br>
PO Box 660121<br>
Dallas, TX 75266

13. **SERVICE, ASSIST, AND COMPANION ANIMALS.** As permitted by Applicable Law, Landlord may require written verification of, or make other inquiries regarding, the disability-related need for a service, assist, or companion animal. Landlord will not charge a Pet Fee, Pet Rent or require additional insurance for any authorized service, assist, or companion animal. Except as provided by Applicable Law, all other provisions of this Addendum apply to service, assist, and companion animals.

14. **DESCRIPTION OF AUTHORIZED PETS.** Resident may keep only the Pets described below at the Residence. Resident may not substitute any other animals.

| | |
|---|---|
| Pet's name: | Pet's name: |
| Type: | Type: |
| Breed: | Breed: |
| Weight: | Weight: |
| | |
| Pet's name: | |
| Type: | |
| Breed: | |
| Weight: | |

15. **REPRESENTATIONS.** Resident represents and warrants that none of the above Pets have any history or propensity for aggressive behavior or violent actions, including biting, scratching, chewing or otherwise. Resident represents to Landlord that the animals are housebroken or, if not, will be caged, and will be kept in good health and up to date on vaccinations. Resident agrees to provide proof of vaccinations and veterinarian records upon request by Landlord.



Confidential and Proprietary – ©2023 Invitation Homes. All Rights Reserved.

Docusign Envelope ID: EE8F3960-4434-4121-9D09-8EF3278BA4E9

16. **NON-COMPLIANCE.** In the event Resident fails to disclose any Pet kept at the Residence to Landlord, in addition to the other remedies as provided by law, including serving notice and terminating the Lease, Landlord may charge Resident, in Landlord's sole discretion, a one-time non-compliance fee in the amount of $300, payable as additional Rent for that particular month.

17. **LIABILITY NOT LIMITED.** The Pet Fee and Pet Rent under this Addendum do not limit any Resident's liability for any damage to the Residence including, but not limited to, property damage, replacements, personal injury and death, cleaning, deodorization, and flea extermination.

18. **DAMAGES AND INDEMNIFICATION.** Residents will be jointly and severally liable for the entire amount of any damages or injuries caused by any animals. Resident agrees upon demand to reimburse Landlord for any and all damages caused by an animal, whether such damage is to the Residence or to any common areas used in conjunction with the Residence, and Resident shall indemnify, protect, defend, and hold Landlord harmless for, from, and against all claims, costs, actions, fees, or liability of any kind arising out of the Resident's keeping of any animal at the Residence.

19. **WAIVER.** No failure of Landlord to enforce any term of this Addendum will be deemed a waiver of that term or of any other provision of this Addendum, nor will any acceptance of a partial payment be deemed a waiver of Landlord's right to the full amount owed. Landlord's not enforcing or belatedly enforcing any terms of this Addendum shall not considered a waiver under any circumstances. Landlord's representatives (including personnel, employees, and agents) have no authority to waive, amend, or terminate this Addendum or any part of it, unless in writing, and no authority to make promises, representations, or agreements that impose any obligations on Landlord unless in writing.

20. **CONTROLLING PROVISIONS.** In the event of any conflict between the terms of this Addendum and the Lease, the terms of this Addendum shall control.

[Signature Page Follows]

Georgia_Renewal_Lease_2023UNL.v.1.03

Confidential and Proprietary – ©2023 Invitation Homes. All Rights Reserved.



**RESIDENT**:

Signature: *Curtis Parker*
Name: Curtis Parker    _____

Signature:
Name:    _____

Signature:
Name:    _____

Signature:
Name:    _____

Signature:
Name:    _____

Signature:
Name:    _____

Signature:
Name:    _____

Signature:
Name:    _____

**LANDLORD**:

2017-1 IH Borrower LP

By: _____

Charles Young
Chief Operating Officer

Georgia_Renewal_Lease_2023UNL.v.1.03

Confidential and Proprietary – ©2023 Invitation Homes.  All Rights Reserved.



**SMART HOME ADDENDUM**

This Smart Home Addendum ("**Addendum**") dated ___2/18/2025___ **("Effective Date")** is part of that certain lease dated __2/18/2025___ (the "**Lease**"), by and between ___2017-1 IH Borrower LP_____("**Landlord**") and the undersigned residents as ("**Resident**").  Capitalized terms not defined in this Addendum shall have the same meaning as in the Lease.

1.      **DESCRIPTION OF SERVICE**.  The Smart Home System ("System") gives Resident remote and keyless access capability, remote HVAC control and remote monitoring capabilities, as applicable, via the online dashboard and mobile application (collectively, "the Service").

2.      **SERVICE**.  From and after the Effective Date and until the expiration of the Lease Term as it is described in the Lease ("Term"), Landlord will make available the Service via the Hardware (defined below) and System.

3.      **ACKNOWLEDGEMENT OF HARDWARE**.  Resident acknowledges that Landlord has installed or, during the Term, may install various hardware and other System components necessary to the operation, maintenance and functioning of System, including, but not limited to an electronic lock system, video doorbell, digital thermostat, network connectivity hub, leak sensor and other wiring and fixtures (collectively, "the Hardware"). Resident agrees to provide Landlord and its third party service providers with access to the Residence at such times as may be reasonably requested by Landlord or such third party service providers for purposes of installing, maintaining or replacing the Hardware. Resident agrees to maintain and keep in good care and condition all Hardware.  Resident may not: (a) remove any Hardware; (b) disconnect any Hardware from any power source; or (c) interfere with the operation of any Hardware or any other System functionality.  Resident acknowledges that all Hardware is and shall remain, during and after the term of the Lease, the sole property of Landlord, and Resident shall have no ownership thereof or right thereto except in connection with Resident's use of the Residence during the term of the Lease.  Resident shall be solely responsible for the full cost of the Hardware should Resident damage, uninstall or interfere with the System, including all installation, service, and maintenance fees. Resident agrees to promptly notify Landlord in the event any Hardware or the System is not functioning in accordance with the advertised specifications.  Resident shall reimburse Landlord, immediately upon demand, for any amounts expended by Landlord in connection with Resident's breach of this Section 3.  Resident's failure to so reimburse Landlord within five (5) days of such demand shall constitute a default by Resident under the Lease, and Landlord shall thereafter be entitled to any and all remedies available to Landlord in connection with a Resident Default under the Lease.

4.      **OTHER HARDWARE**.  Resident acknowledges and agrees that any additional smart home hardware or technology that Resident may obtain directly from a manufacturer, reseller or other third party ("Other Hardware") shall not comprise part of the System and shall not be subject to the terms or conditions of this Addendum, regardless of whether or not such Other Hardware is integrated into, or accessible through, the Service.  Other Hardware will be provided pursuant to the terms and conditions of the applicable manufacturer, reseller or other third party, and Landlord shall have no responsibility to Resident for the availability or performance of such Other Hardware.

5.      **PRICING AND PAYMENT**.  Resident shall pay to Landlord, as Additional Rent, $_40.00_ .  The terms of the Lease applicable to the monthly Rent, including, but not limited to, due dates and payment methods, shall apply to this Smart Home Fee.  Resident acknowledges and agrees that the provision of





the Service may require Resident to obtain and maintain broadband internet access, wireless networking capabilities or other network connectivity and that the obtainment or maintenance of such connectivity may require the payment of additional fees to third party service providers, which such fees shall be the sole responsibility of Resident.

6.      **CONSENT TO RECEIVE ELECTRONIC COMMUNICATION**. Resident consents to receiving electronic and other forms of communication from Landlord regarding the Service, the Smart Home Fee, or anything else related to Landlord's provision of the Service.

7.      **CONSENT TO TRANSFER OF PERSONAL INFORMATION**. Resident acknowledges and agrees that the provision of the Service may require Landlord to transmit certain personal information of Resident to its third party service providers and hereby consents to the transfer of such personal information.  Resident further acknowledges and agrees that any personal information transferred to Landlord's third party service providers will be subject to the privacy policies and procedures implemented by such third party service providers, which such policies and procedures may differ from those that have been implemented by Landlord.

8.      **NO LANDLORD LIABILITY**. Landlord shall not be liable to Resident for any claim whatsoever, including, but not limited to claims resulting from the failure or malfunction of the Hardware or the System, any inability to access the Residence or to use any other feature provided by the Service, or any invasion of privacy, intrusion upon seclusion or trespass claim related to the placement of the Hardware in the Residence or the monitoring, capture, storage and/or accidental dissemination of personal information or other data that may be stored by the System.

9.      **WARRANTY DISCLAIMER**.  LANDLORD MAKES NO WARRANTY OF ANY KIND, WHETHER EXPRESS, IMPLIED, STATUTORY OR OTHERWISE, INCLUDING WITHOUT LIMITATION, MERCHANTABILITY OR FITNESS FOR A PARTICULAR USE. THE SERVICE IS PROVIDED BY LANDLORD "AS IS" AND "AS AVAILABLE." RESIDENT ASSUMES ALL RISK FOR RESIDENT'S USE OF THE SERVICE, INCLUDING WITHOUT LIMITATION, INABILITY TO ACCESS THE RESIDENCE, LOSS OR DAMAGE TO ANY PERSONAL PROPERTY AS A RESULT OF USING THE SERVICE OR PERSONAL INJURY OR ANY OTHER HARM. IN NO EVENT DOES LANDLORD GUARANTEE THAT THE SERVICE OR ANY PORTION THEREOF, ARE ACCURATE, ERROR OR BUG FREE, THAT RESIDENT'S USE OF THE SERVICE WILL BE UNINTERRUPTED OR ERROR FREE, OR THAT THE SERVICE'S OPERATION WILL NOT NEGATIVELY AFFECT RESIDENT'S USE AND QUIET ENJOYMENT OF THE RESIDENCE. THIS SECTION 11 APPLIES TO THE MAXIMUM EXTENT ALLOWED BY APPLICABLE LAW.

10.     **LIMITATION OF LIABILITY**.  IN NO EVENT WILL LANDLORD AND/OR ITS OFFICERS, DIRECTORS, EMPLOYEES, AGENTS OR REPRESENTATIVES BE LIABLE (i) FOR ANY INDIRECT, SPECIAL, INCIDENTAL, CONSEQUENTIAL, EXEMPLARY OR PUNITIVE DAMAGES RELATED TO OR ARISING FROM RESIDENT'S USE, MISUSE, OR INABILITY TO USE THE SERVICE, INCLUDING BUT NOT LIMITED TO, DAMAGES TO PERSONAL OR REAL PROPERTY OF ANY NATURE WHATSOEVER, PERSONAL OR BODILY INJURY, INCREASED ENERGY OR TELECOMMUNICATIONS EXPENSES, ANY DAMAGES RESULTING FROM UNAUTHORIZED ACCESS TO LANDLORD'S SERVERS, SERVER UNAVAILABILITY, AND ANY PERSONAL INFORMATION STORED THEREIN, HOWEVER CAUSED UNDER ANY THEORY OF LIABILITY, INCLUDING BUT NOT LIMITED, TO CONTRACT OR TORT AND WHETHER OR NOT EITHER PARTY WAS OR SHOULD HAVE BEEN AWARE OR ADVISED OF THE POSSIBILITY OF SUCH DAMAGE; (ii) FOR ANY CLAIM ATTRIBUTABLE TO ERRORS, OMISSIONS, OR OTHER INACCURACIES IN THE SERVICE OR DESTRUCTIVE PROPERTIES OF THE SERVICE, AND (iii) FOR ANY CLAIM RESULTING FROM RESIDENT'S NON-COMPLIANCE WITH OR BREACH OF THE TERMS HEREOF OR ANY APPLICABLE





TERMS OF SERVICE FOUND ONLINE OR ANY OTHER STATE OR FEDERAL LAWS. IN NO EVENT SHALL LANDLORD'S AGGREGATE LIABILITY UNDER THIS ADDENDUM EXCEED THE TOTAL SUM OF MONIES PAID BY RESIDENT TO LANDLORD AS CONSIDERATION FOR USE OF THE SERVICE DURING THE TWELVE (12) MONTHS IMMEDIATELY PRECEDING THE EVENT GIVING RISE TO SUCH LIABILITY.

11.     **INDEMNIFICATION**.  RESIDENT AGREES, AT RESIDENT'S EXPENSE, TO INDEMNIFY, DEFEND AND HOLD HARMLESS LANDLORD, ITS LICENSORS, AND THEIR RESPECTIVE DIRECTORS, OFFICERS, EMPLOYEES AND AGENTS FROM AND AGAINST ALL DEMANDS, LIABILITIES, LOSSES, CLAIMS AND EXPENSES, INCLUDING ATTORNEY'S FEES, ARISING OUT OF (i) RESIDENT'S USE OF THE SERVICE, (ii) THIRD PARTY CLAIMS, ACTIONS OR ALLEGATIONS OF INFRINGEMENT BASED ON INFORMATION, DATA OR CONTENT RESIDENT SUBMITTED IN CONNECTION WITH THE SERVICE, (iii) ANY FRAUD OR MANIPULATION, OR OTHER BREACH OF THIS ADDENDUM, BY RESIDENT, (iv) THIRD PARTY CLAIMS, ACTIONS OR ALLEGATIONS BROUGHT AGAINST LANDLORD ARISING OUT OF RESIDENT'S USE OF THE SERVICE OR THE WEBSITE, OR (v) FOR ANY CLAIM WHATSOEVER RESULTING FROM RESIDENT'S OR RESIDENT'S AFFILIATES', EMPLOYEES', CONTRACTORS' OR AGENTS' BREACH OF THE CHILDREN'S ONLINE PRIVACY PROTECTION ACT OR ANY OTHER STATE OR FEDERAL PRIVACY OR INFORMATION SECURITY LAWS. LANDLORD RESERVES THE RIGHT, AT ITS OWN EXPENSE AND IN ITS SOLE DISCRETION, TO ASSUME THE EXCLUSIVE DEFENSE AND CONTROL OF ANY MATTER OTHERWISE SUBJECT TO INDEMNIFICATION BY RESIDENT.

12.     **CONTROLLING PROVISIONS**.  In the event of any conflict between the terms of this Addendum and the Lease, the terms of this Addendum shall control with respect to the subject matter hereof.

**RESIDENT**:                                          **LANDLORD**:

                                                              2017-1 IH Borrower LP

Signature:  _Curtis Parker_
Name:       Curtis Parker

Signature:  _____
Name:       _____                    By: _____

Signature:  _____                              Charles Young
Name:       _____                        Chief Operating Officer

Signature:  _____
Name:       _____

Signature:  _____
Name:       _____

Signature:  _____
Name:       _____

Signature:  _____
Name:       _____

Signature:  _____
Name:       _____



Case 1:26-cv-00584-SDG   Document 8514   Filed 03/02/26   Page 174 of 247

**Fill in this information to identify your case:**

United States Bankruptcy Court for the:

NORTHERN DISTRICT OF GEORGIA

Case number *(if known)* _____

Chapter you are filing under:

- ■ Chapter 7
- ☐ Chapter 11
- ☐ Chapter 12
- ☐ Chapter 13

☐ Check if this is an amended filing

Official Form 101

# Voluntary Petition for Individuals Filing for Bankruptcy

06/24

The bankruptcy forms use *you* and *Debtor 1* to refer to a debtor filing alone. A married couple may file a bankruptcy case together—called a *joint case*—and in joint cases, these forms use *you* to ask for information from both debtors. For example, if a form asks, "Do you own a car," the answer would be *yes* if either debtor owns a car. When information is needed about the spouses separately, the form uses *Debtor 1* and *Debtor 2* to distinguish between them. In joint cases, one of the spouses must report information as *Debtor 1* and the other as *Debtor 2*. The same person must be *Debtor 1* in all of the forms.

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

| Part 1: | Identify Yourself |
|---|---|

| | | About Debtor 1: | About Debtor 2 (Spouse Only in a Joint Case): |
|---|---|---|---|
| **1.** | **Your full name**<br><br>Write the name that is on your government-issued picture identification (for example, your driver's license or passport).<br><br>Bring your picture identification to your meeting with the trustee. | *Curtis*<br>First name<br><br>Middle name<br><br>*Parker*<br>Last name and Suffix (Sr., Jr., II, III) | First name<br><br>Middle name<br><br>Last name and Suffix (Sr., Jr., II, III) |
| **2.** | **All other names you have used in the last 8 years**<br><br>Include your married or maiden names and any assumed, trade names and *doing business as* names.<br><br>Do NOT list the name of any separate legal entity such as a corporation, partnership, or LLC that is not filing this petition. | | |
| **3.** | **Only the last 4 digits of your Social Security number or federal Individual Taxpayer Identification number (ITIN)** | *xxx-xx-0841* | |

Debtor 1    *Curtis Parker*                                                Case number *(if known)*  _____

|  | About Debtor 1: | About Debtor 2 (Spouse Only in a Joint Case): |
|---|---|---|
| **4.** **Your Employer Identification Number (EIN), if any.** | _____<br>EIN | _____<br>EIN |

**5.** **Where you live**

| About Debtor 1: | About Debtor 2 (Spouse Only in a Joint Case): |
|---|---|
| | **If Debtor 2 lives at a different address:** |
| ***1149 Autumn Glen Way***<br>***Dacula, GA 30019***<br>Number, Street, City, State & ZIP Code | _____<br>Number, Street, City, State & ZIP Code |
| ***Gwinnett***<br>County | _____<br>County |
| **If your mailing address is different from the one above, fill it in here.** Note that the court will send any notices to you at this mailing address. | **If Debtor 2's mailing address is different from yours, fill it in here.** Note that the court will send any notices to this mailing address. |
| _____<br>Number, P.O. Box, Street, City, State & ZIP Code | _____<br>Number, P.O. Box, Street, City, State & ZIP Code |

**6.** **Why you are choosing *this district* to file for bankruptcy**

*Check one:*

■ Over the last 180 days before filing this petition, I have lived in this district longer than in any other district.

☐ I have another reason.
  Explain. (See 28 U.S.C. § 1408.)

*Check one:*

☐ Over the last 180 days before filing this petition, I have lived in this district longer than in any other district.

☐ I have another reason.
  Explain. (See 28 U.S.C. § 1408.)

Debtor 1   *Curtis Parker*   Case number *(if known)* _____

| Part 2: | Tell the Court About Your Bankruptcy Case |

**7. The chapter of the Bankruptcy Code you are choosing to file under**

*Check one.* (For a brief description of each, see *Notice Required by 11 U.S.C. § 342(b) for Individuals Filing for Bankruptcy (Form 2010)).* Also, go to the top of page 1 and check the appropriate box.

- ■ Chapter 7
- ☐ Chapter 11
- ☐ Chapter 12
- ☐ Chapter 13

**8. How you will pay the fee**

- ■ **I will pay the entire fee when I file my petition**. Please check with the clerk's office in your local court for more details about how you may pay. Typically, if you are paying the fee yourself, you may pay with cash, cashier's check, or money order. If your attorney is submitting your payment on your behalf, your attorney may pay with a credit card or check with a pre-printed address.

- ☐ **I need to pay the fee in installments.** If you choose this option, sign and attach the *Application for Individuals to Pay The Filing Fee in Installments* (Official Form 103A).

- ☐ **I request that my fee be waived** (You may request this option only if you are filing for Chapter 7. By law, a judge may, but is not required to, waive your fee, and may do so only if your income is less than 150% of the official poverty line that applies to your family size and you are unable to pay the fee in installments). If you choose this option, you must fill out the *Application to Have the Chapter 7 Filing Fee Waived* (Official Form 103B) and file it with your petition.

**9. Have you filed for bankruptcy within the last 8 years?**

- ■ No.
- ☐ Yes.

| District | _____ | When | _____ | Case number | _____ |
| District | _____ | When | _____ | Case number | _____ |
| District | _____ | When | _____ | Case number | _____ |

**10. Are any bankruptcy cases pending or being filed by a spouse who is not filing this case with you, or by a business partner, or by an affiliate?**

- ■ No
- ☐ Yes.

| Debtor | _____ | | | Relationship to you | _____ |
| District | _____ | When | _____ | Case number, if known | _____ |
| Debtor | _____ | | | Relationship to you | _____ |
| District | _____ | When | _____ | Case number, if known | _____ |

**11. Do you rent your residence?**

- ☐ No.   Go to line 12.
- ■ Yes.   Has your landlord obtained an eviction judgment against you?

  - ■ No. Go to line 12.

  - ☐ Yes. Fill out *Initial Statement About an Eviction Judgment Against You* (Form 101A) and file it with this bankruptcy petition.

Debtor 1    *Curtis Parker*                                          Case number *(if known)* _____

---

| **Part 3:** | **Report About Any Businesses You Own as a Sole Proprietor** |
|---|---|

**12. Are you a sole proprietor of any full- or part-time business?**

A sole proprietorship is a business you operate as an individual, and is not a separate legal entity such as a corporation, partnership, or LLC.

If you have more than one sole proprietorship, use a separate sheet and attach it to this petition.

■ No.    Go to Part 4.

☐ Yes.    Name and location of business

_____
Name of business, if any

_____

_____
Number, Street, City, State & ZIP Code

*Check the appropriate box to describe your business:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ None of the above

---

**13. Are you filing under Chapter 11 of the Bankruptcy Code, and are you a *small business debtor?***
For a definition of *small business debtor*, see 11 U.S.C. § 101(51D).

*If you are filing under Chapter 11, the court must know whether you are a small business debtor so that it can set appropriate deadlines.* If you indicate that you are a small business debtor, you must attach your most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

■ No.    I am not filing under Chapter 11.

☐ No.    I am filing under Chapter 11, but I am NOT a small business debtor according to the definition in the Bankruptcy Code.

☐ Yes.    I am filing under Chapter 11, I am a small business debtor according to the definition in the Bankruptcy Code, and I do not choose to proceed under Subchapter V of Chapter 11.

☐ Yes.    I am filing under Chapter 11, I am a small business debtor according to the definition in the Bankruptcy Code, and I choose to proceed under Subchapter V of Chapter 11.

---

| **Part 4:** | **Report if You Own or Have Any Hazardous Property or Any Property That Needs Immediate Attention** |
|---|---|

**14. Do you own or have any property that poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety? Or do you own any property that needs immediate attention?**

*For example, do you own perishable goods, or livestock that must be fed, or a building that needs urgent repairs?*

■ No.

☐ Yes.

What is the hazard?    _____

If immediate attention is needed, why is it needed?    _____

Where is the property?    _____

_____
Number, Street, City, State & Zip Code

---

Debtor 1    *Curtis Parker*                                         Case number *(if known)*

---

| Part 5: | Explain Your Efforts to Receive a Briefing About Credit Counseling |
|---|---|

| | **About Debtor 1:** | **About Debtor 2 (Spouse Only in a Joint Case):** |
|---|---|---|

**15. Tell the court whether you have received a briefing about credit counseling.**

The law requires that you receive a briefing about credit counseling before you file for bankruptcy. You must truthfully check one of the following choices. If you cannot do so, you are not eligible to file.

If you file anyway, the court can dismiss your case, you will lose whatever filing fee you paid, and your creditors can begin collection activities again.

**About Debtor 1:**

*You must check one:*

☑ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, and I received a certificate of completion.**

Attach a copy of the certificate and the payment plan, if any, that you developed with the agency.

☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, but I do not have a certificate of completion.**

Within 14 days after you file this bankruptcy petition, you MUST file a copy of the certificate and payment plan, if any.

☐ **I certify that I asked for credit counseling services from an approved agency, but was unable to obtain those services during the 7 days after I made my request, and exigent circumstances merit a 30-day temporary waiver of the requirement.**

To ask for a 30-day temporary waiver of the requirement, attach a separate sheet explaining what efforts you made to obtain the briefing, why you were unable to obtain it before you filed for bankruptcy, and what exigent circumstances required you to file this case.

Your case may be dismissed if the court is dissatisfied with your reasons for not receiving a briefing before you filed for bankruptcy. If the court is satisfied with your reasons, you must still receive a briefing within 30 days after you file. You must file a certificate from the approved agency, along with a copy of the payment plan you developed, if any. If you do not do so, your case may be dismissed.

Any extension of the 30-day deadline is granted only for cause and is limited to a maximum of 15 days.

☐ **I am not required to receive a briefing about credit counseling because of:**

☐ **Incapacity.**
I have a mental illness or a mental deficiency that makes me incapable of realizing or making rational decisions about finances.

☐ **Disability.**
My physical disability causes me to be unable to participate in a briefing in person, by phone, or through the internet, even after I reasonably tried to do so.

☐ **Active duty.**
I am currently on active military duty in a military combat zone.

If you believe that you are not required to receive a briefing about credit counseling, you must file a motion for waiver credit counseling with the court.

**About Debtor 2 (Spouse Only in a Joint Case):**

*You must check one:*

☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, and I received a certificate of completion.**

Attach a copy of the certificate and the payment plan, if any, that you developed with the agency.

☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, but I do not have a certificate of completion.**

Within 14 days after you file this bankruptcy petition, you MUST file a copy of the certificate and payment plan, if any.

☐ **I certify that I asked for credit counseling services from an approved agency, but was unable to obtain those services during the 7 days after I made my request, and exigent circumstances merit a 30-day temporary waiver of the requirement.**

To ask for a 30-day temporary waiver of the requirement, attach a separate sheet explaining what efforts you made to obtain the briefing, why you were unable to obtain it before you filed for bankruptcy, and what exigent circumstances required you to file this case.

Your case may be dismissed if the court is dissatisfied with your reasons for not receiving a briefing before you filed for bankruptcy.

If the court is satisfied with your reasons, you must still receive a briefing within 30 days after you file. You must file a certificate from the approved agency, along with a copy of the payment plan you developed, if any. If you do not do so, your case may be dismissed.

Any extension of the 30-day deadline is granted only for cause and is limited to a maximum of 15 days.

☐ **I am not required to receive a briefing about credit counseling because of:**

☐ **Incapacity.**
I have a mental illness or a mental deficiency that makes me incapable of realizing or making rational decisions about finances.

☐ **Disability.**
My physical disability causes me to be unable to participate in a briefing in person, by phone, or through the internet, even after I reasonably tried to do so.

☐ **Active duty.**
I am currently on active military duty in a military combat zone.

If you believe that you are not required to receive a briefing about credit counseling, you must file a motion for waiver of credit counseling with the court.

---

| Debtor 1 | *Curtis Parker* | Case number *(if known)* | |

| **Part 6:** | **Answer These Questions for Reporting Purposes** |

**16. What kind of debts do you have?**

16a. **What kind of debts do you have?** *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

☐ No. Go to line 16b.

■ Yes. Go to line 17.

16b. **Are your debts primarily business debts?** *Business debts* are debts that you incurred to obtain money for a business or investment or through the operation of the business or investment.

☐ No. Go to line 16c.

☐ Yes. Go to line 17.

16c. State the type of debts you owe that are not consumer debts or business debts

**17. Are you filing under Chapter 7?**

☐ No.    I am not filing under Chapter 7. Go to line 18.

**Do you estimate that after any exempt property is excluded and administrative expenses are paid that funds will be available for distribution to unsecured creditors?**

■ Yes.    I am filing under Chapter 7. Do you estimate that after any exempt property is excluded and administrative expenses are paid that funds will be available to distribute to unsecured creditors?

■ No

☐ Yes

**18. How many Creditors do you estimate that you owe?**

| ■ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
| ☐ 50-99 | ☐ 5001-10,000 | ☐ 50,001-100,000 |
| ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than100,000 |
| ☐ 200-999 | | |

**19. How much do you estimate your assets to be worth?**

| ☐ $0 - $50,000 | ☐ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
| ■ $50,001 - $100,000 | ☐ $10,000,001 - $50  million | ☐ $1,000,000,001 - $10 billion |
| ☐ $100,001 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| ☐ $500,001 - $1 million | ☐ $100,000,001 - $500 million | ☐ More than $50 billion |

**20. How much do you estimate your liabilities to be?**

| ☐ $0 - $50,000 | ☐ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
| ☐ $50,001 - $100,000 | ☐ $10,000,001 - $50  million | ☐ $1,000,000,001 - $10 billion |
| ■ $100,001 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| ☐ $500,001 - $1 million | ☐ $100,000,001 - $500 million | ☐ More than $50 billion |

| **Part 7:** | **Sign Below** |

**For you**

I have examined this petition, and I declare under penalty of perjury that the information provided is true and correct.

If I have chosen to file under Chapter 7, I am aware that I may proceed, if eligible, under Chapter 7, 11,12, or 13 of title 11, United States Code. I understand the relief available under each chapter, and I choose to proceed under Chapter 7.

If no attorney represents me and I did not pay or agree to pay someone who is not an attorney to help me fill out this document, I have obtained and read the notice required by 11 U.S.C. § 342(b).

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I understand making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

*/s/ Curtis Parker*

| *Curtis Parker* | | Signature of Debtor 2 |
| Signature of Debtor 1 | | |

| Executed on | *September 29, 2025* | Executed on | |
| | MM / DD / YYYY | | MM / DD / YYYY |

| Debtor 1 | *Curtis Parker* | Case number *(if known)* |
|---|---|---|

---

**For your attorney, if you are represented by one**

**If you are not represented by an attorney, you do not need to file this page.**

I, the attorney for the debtor(s) named in this petition, declare that I have informed the debtor(s) about eligibility to proceed under Chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each chapter for which the person is eligible. I also certify that I have delivered to the debtor(s) the notice required by 11 U.S.C. § 342(b) and, in a case in which § 707(b)(4)(D) applies, certify that I have no knowledge after an inquiry that the information in the schedules filed with the petition is incorrect.

| */s/ Karmel Sunzette Davis* | Date | *September 29, 2025* |
|---|---|---|
| Signature of Attorney for Debtor | | MM / DD / YYYY |

*Karmel Sunzette Davis 007707*
Printed name

*Karmel S. Davis & Associates*
Firm name

*P.O. Box 5736*
*Douglasville, GA 30154*
Number, Street, City, State & ZIP Code

| Contact phone | *(678) 715-0967* | Email address | *info@karmeldavislaw.com* |
|---|---|---|---|

*007707 GA*
Bar number & State

---

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | *Curtis Parker* |
| | First Name   Middle Name   Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name   Middle Name   Last Name |
| United States Bankruptcy Court for the: | NORTHERN DISTRICT OF GEORGIA |
| Case number (if known) | _____ |

☐ Check if this is an amended filing

## Official Form 107
## Statement of Financial Affairs for Individuals Filing for Bankruptcy

04/25

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information.  If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:**   Give Details About Your Marital Status and Where You Lived Before

1.   **What is your current marital status?**

☐ Married
■ Not married

2.   **During the last 3 years, have you lived anywhere other than where you live now?**

■ No
☐ Yes. List all of the places you lived in the last 3 years. Do not include where you live now.

| Debtor 1: | Dates Debtor 1 lived there | Debtor 2 Prior Address: | Dates Debtor 2 lived there |
|---|---|---|---|
| | | | |

3.   **Within the last 8 years, did you ever live with a spouse or legal equivalent in a community property state or territory?** (*Community property states and territories* include Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington and Wisconsin.)

■ No
☐ Yes. Make sure you fill out *Schedule H: Your Codebtors* (Official Form 106H).

**Part 2**   Explain the Sources of Your Income

4.   **Did you have any income from employment or from operating a business during this year or the two previous calendar years?**
Fill in the total amount of income you received from all jobs and all businesses, including part-time activities.
If you are filing a joint case and you have income that you receive together, list it only once under Debtor 1.

☐ No
■ Yes. Fill in the details.

| | Debtor 1 | | Debtor 2 | |
|---|---|---|---|---|
| | **Sources of income** Check all that apply. | **Gross income** (before deductions and exclusions) | **Sources of income** Check all that apply. | **Gross income** (before deductions and exclusions) |
| From January 1 of current year until the date you filed for bankruptcy: | ■ Wages, commissions, bonuses, tips | *$14,837.00* | ☐ Wages, commissions, bonuses, tips | |
| | ☐ Operating a business | | ☐ Operating a business | |

Software Copyright (c) 1996-2025 Best Case, LLC - www.bestcase.com

Debtor 1    *Curtis Parker*                                                Case number *(if known)*

| | Debtor 1 | | Debtor 2 | |
|---|---|---|---|---|
| | **Sources of income**<br>Check all that apply. | **Gross income**<br>(before deductions and exclusions) | **Sources of income**<br>Check all that apply. | **Gross income**<br>(before deductions and exclusions) |
| **For last calendar year:**<br>(January 1 to December 31, 2024 ) | ■ Wages, commissions, bonuses, tips<br>☐ Operating a business | *$21,619.00* | ☐ Wages, commissions, bonuses, tips<br>☐ Operating a business | |
| **For the calendar year before that:**<br>(January 1 to December 31, 2023 ) | ■ Wages, commissions, bonuses, tips<br>☐ Operating a business | *$31,037.00* | ☐ Wages, commissions, bonuses, tips<br>☐ Operating a business | |

**5.    Did you receive any other income during this year or the two previous calendar years?**

Include income regardless of whether that income is taxable. Examples of *other income* are alimony; child support; Social Security, unemployment, and other public benefit payments; pensions; rental income; interest; dividends; money collected from lawsuits; royalties; and gambling and lottery winnings. If you are filing a joint case and you have income that you received together, list it only once under Debtor 1.

List each source and the gross income from each source separately. Do not include income that you listed in line 4.

☐    No

■    Yes. Fill in the details.

| | Debtor 1 | | Debtor 2 | |
|---|---|---|---|---|
| | **Sources of income**<br>Describe below. | **Gross income from each source**<br>(before deductions and exclusions) | **Sources of income**<br>Describe below. | **Gross income**<br>(before deductions and exclusions) |
| **From January 1 of current year until the date you filed for bankruptcy:** | *Food Stamps* | *$596.00* | | |
| | *Household Contribution* | *$300.00* | | |

| Part 3: | List Certain Payments You Made Before You Filed for Bankruptcy |
|---|---|

**6.    Are either Debtor 1's or Debtor 2's debts primarily consumer debts?**

☐    No.    **Neither Debtor 1 nor Debtor 2 has primarily consumer debts.** *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

During the 90 days before you filed for bankruptcy, did you pay any creditor a total of $8,575* or more?

☐    No.    Go to line 7.

☐    Yes    List below each creditor to whom you paid a total of $8,575* or more in one or more payments and the total amount you paid that creditor. Do not include payments for domestic support obligations, such as child support and alimony. Also, do not include payments to an attorney for this bankruptcy case.

\* Subject to adjustment on 4/01/28 and every 3 years after that for cases filed on or after the date of adjustment.

■    Yes.    **Debtor 1 or Debtor 2 or both have primarily consumer debts.**

During the 90 days before you filed for bankruptcy, did you pay any creditor a total of $600 or more?

■    No.    Go to line 7.

☐    Yes    List below each creditor to whom you paid a total of $600 or more and the total amount you paid that creditor. Do not include payments for domestic support obligations, such as child support and alimony. Also, do not include payments to an attorney for this bankruptcy case.

| Creditor's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Was this payment for ... |
|---|---|---|---|---|
| | | | | |

Software Copyright (c) 1996-2025 Best Case, LLC - www.bestcase.com

| Debtor 1 | *Curtis Parker* | Case number *(if known)* |
|---|---|---|

7. **Within 1 year before you filed for bankruptcy, did you make a payment on a debt you owed anyone who was an insider?**
*Insiders* include your relatives; any general partners; relatives of any general partners; partnerships of which you are a general partner; corporations of which you are an officer, director, person in control, or owner of 20% or more of their voting securities; and any managing agent, including one for a business you operate as a sole proprietor. 11 U.S.C. § 101. Include payments for domestic support obligations, such as child support and alimony.

- ☑ No
- ☐ Yes. List all payments to an insider.

| Insider's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Reason for this payment |
|---|---|---|---|---|

8. **Within 1 year before you filed for bankruptcy, did you make any payments or transfer any property on account of a debt that benefited an insider?**
Include payments on debts guaranteed or cosigned by an insider.

- ☑ No
- ☐ Yes. List all payments to an insider

| Insider's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Reason for this payment Include creditor's name |
|---|---|---|---|---|

**Part 4:**   Identify Legal Actions, Repossessions, and Foreclosures

9. **Within 1 year before you filed for bankruptcy, were you a party in any lawsuit, court action, or administrative proceeding?**
List all such matters, including personal injury cases, small claims actions, divorces, collection suits, paternity actions, support or custody modifications, and contract disputes.

- ☐ No
- ☑ Yes. Fill in the details.

| Case title<br>Case number | Nature of the case | Court or agency | Status of the case |
|---|---|---|---|
| *Discrimination Case* | | | ☐ Pending<br>☐ On appeal<br>☐ Concluded |
| | | | *Filed September 2024* |
| *Unknown Plaintiff vs Unknown Defendant*<br>*1758727WLH* | *BankruptcyChapter7* | *US BKPT CT GA ATLANTA* | ☐ Pending<br>☐ On appeal<br>☐ Concluded |
| | | | *Discharged - 0.00* |

10. **Within 1 year before you filed for bankruptcy, was any of your property repossessed, foreclosed, garnished, attached, seized, or levied?**
Check all that apply and fill in the details below.

- ☑ No. Go to line 11.
- ☐ Yes. Fill in the information below.

| Creditor Name and Address | Describe the Property<br><br>Explain what happened | Date | Value of the property |
|---|---|---|---|

11. **Within 90 days before you filed for bankruptcy, did any creditor, including a bank or financial institution, set off any amounts from your accounts or refuse to make a payment because you owed a debt?**

- ☑ No
- ☐ Yes. Fill in the details.

| Creditor Name and Address | Describe the action the creditor took | Date action was taken | Amount |
|---|---|---|---|

**Statement of Financial Affairs for Individuals Filing for Bankruptcy**

Software Copyright (c) 1996-2025 Best Case, LLC - www.bestcase.com

| Debtor 1 | *Curtis Parker* | Case number *(if known)* | |

12. **Within 1 year before you filed for bankruptcy, was any of your property in the possession of an assignee for the benefit of creditors, a court-appointed receiver, a custodian, or another official?**

■ No
☐ Yes

---

**Part 5:    List Certain Gifts and Contributions**

13. **Within 2 years before you filed for bankruptcy, did you give any gifts with a total value of more than $600 per person?**

■ No
☐ Yes. Fill in the details for each gift.

| Gifts with a total value of more than $600 per person<br><br>Person to Whom You Gave the Gift and Address: | Describe the gifts | Dates you gave the gifts | Value |
|---|---|---|---|

14. **Within 2 years before you filed for bankruptcy, did you give any gifts or contributions with a total value of more than $600 to any charity?**

■ No
☐ Yes. Fill in the details for each gift or contribution.

| Gifts or contributions to charities that total more than $600<br>Charity's Name<br>Address (Number, Street, City, State and ZIP Code) | Describe what you contributed | Dates you contributed | Value |
|---|---|---|---|

---

**Part 6:    List Certain Losses**

15. **Within 1 year before you filed for bankruptcy or since you filed for bankruptcy, did you lose anything because of theft, fire, other disaster, or gambling?**

■ No
☐ Yes.  Fill in the details.

| Describe the property you lost and how the loss occurred | Describe any insurance coverage for the loss<br>Include the amount that insurance has paid. List pending insurance claims on line 33 of *Schedule A/B: Property.* | Date of your loss | Value of property lost |
|---|---|---|---|

---

**Part 7:    List Certain Payments or Transfers**

16. **Within 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf pay or transfer any property to anyone you consulted about seeking bankruptcy or preparing a bankruptcy petition?**
Include any attorneys, bankruptcy petition preparers, or credit counseling agencies for services required in your bankruptcy.

☐ No
■ Yes. Fill in the details.

| Person Who Was Paid<br>Address<br>Email or website address<br>Person Who Made the Payment, if Not You | Description and value of any property transferred | Date payment or transfer was made | Amount of payment |
|---|---|---|---|
| *Karmel S. Davis & Associates*<br>*P.O. Box 5736*<br>*Douglasville, GA 30154*<br>*info@karmeldavislaw.com* | *Credit Report and Filing Fee* | *9/29/2025* | *$400.00* |

---

Software Copyright (c) 1996-2025 Best Case, LLC - www.bestcase.com

| Debtor 1 | **Curtis Parker** | | Case number *(if known)* |

17. **Within 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf pay or transfer any property to anyone who promised to help you deal with your creditors or to make payments to your creditors?**
Do not include any payment or transfer that you listed on line 16.

- ■ No
- ☐ Yes. Fill in the details.

| Person Who Was Paid Address | Description and value of any property transferred | Date payment or transfer was made | Amount of payment |
| --- | --- | --- | --- |

18. **Within 2 years before you filed for bankruptcy, did you sell, trade, or otherwise transfer any property to anyone, other than property transferred in the ordinary course of your business or financial affairs?**
Include both outright transfers and transfers made as security (such as the granting of a security interest or mortgage on your property). Do not include gifts and transfers that you have already listed on this statement.

- ■ No
- ☐ Yes. Fill in the details.

| Person Who Received Transfer Address <br><br> Person's relationship to you | Description and value of property transferred | Describe any property or payments received or debts paid in exchange | Date transfer was made |
| --- | --- | --- | --- |

19. **Within 10 years before you filed for bankruptcy, did you transfer any property to a self-settled trust or similar device of which you are a beneficiary?** (These are often called *asset-protection devices.*)

- ■ No
- ☐ Yes. Fill in the details.

| Name of trust | Description and value of the property transferred | Date Transfer was made |
| --- | --- | --- |

**Part 8:**   List of Certain Financial Accounts, Instruments, Safe Deposit Boxes, and Storage Units

20. **Within 1 year before you filed for bankruptcy, were any financial accounts or instruments held in your name, or for your benefit, closed, sold, moved, or transferred?**
**Include checking, savings, money market, or other financial accounts; certificates of deposit; shares in banks, credit unions, brokerage houses, pension funds, cooperatives, associations, and other financial institutions.**

- ■ **No**
- ☐ **Yes. Fill in the details.**

| Name of Financial Institution and Address *(Number, Street, City, State and ZIP Code)* | Last 4 digits of account number | Type of account or instrument | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
| --- | --- | --- | --- | --- |

21. **Do you now have, or did you have within 1 year before you filed for bankruptcy, any safe deposit box or other depository for securities, cash, or other valuables?**

- ■ No
- ☐ Yes. Fill in the details.

| Name of Financial Institution Address *(Number, Street, City, State and ZIP Code)* | Who else had access to it? Address *(Number, Street, City, State and ZIP Code)* | Describe the contents | Do you still have it? |
| --- | --- | --- | --- |

22. **Have you stored property in a storage unit or place other than your home within 1 year before you filed for bankruptcy?**

- ■ No
- ☐ Yes. Fill in the details.

| Name of Storage Facility Address *(Number, Street, City, State and ZIP Code)* | Who else has or had access to it? Address *(Number, Street, City, State and ZIP Code)* | Describe the contents | Do you still have it? |
| --- | --- | --- | --- |

Software Copyright (c) 1996-2025 Best Case, LLC - www.bestcase.com

Debtor 1    **Curtis Parker**                                                                            Case number *(if known)*

| Part 9: | Identify Property You Hold or Control for Someone Else |
|---|---|

23. **Do you hold or control any property that someone else owns? Include any property you borrowed from, are storing for, or hold in trust for someone.**

   ■ No
   ☐ Yes. Fill in the details.

| Owner's Name Address (Number, Street, City, State and ZIP Code) | Where is the property? (Number, Street, City, State and ZIP Code) | Describe the property | Value |
|---|---|---|---|

| Part 10: | Give Details About Environmental Information |
|---|---|

For the purpose of Part 10, the following definitions apply:

■ *Environmental law* means any federal, state, or local statute or regulation concerning pollution, contamination, releases of hazardous or toxic substances, wastes, or material into the air, land, soil, surface water, groundwater, or other medium, including statutes or regulations controlling the cleanup of these substances, wastes, or material.

■ *Site* means any location, facility, or property as defined under any environmental law, whether you now own, operate, or utilize it or used to own, operate, or utilize it, including disposal sites.

■ *Hazardous material* means anything an environmental law defines as a hazardous waste, hazardous substance, toxic substance, hazardous material, pollutant, contaminant, or similar term.

Report all notices, releases, and proceedings that you know about, regardless of when they occurred.

24. **Has any governmental unit notified you that you may be liable or potentially liable under or in violation of an environmental law?**

   ■ No
   ☐ Yes. Fill in the details.

| Name of site Address (Number, Street, City, State and ZIP Code) | Governmental unit Address (Number, Street, City, State and ZIP Code) | Environmental law, if you know it | Date of notice |
|---|---|---|---|

25. **Have you notified any governmental unit of any release of hazardous material?**

   ■ No
   ☐ Yes. Fill in the details.

| Name of site Address (Number, Street, City, State and ZIP Code) | Governmental unit Address (Number, Street, City, State and ZIP Code) | Environmental law, if you know it | Date of notice |
|---|---|---|---|

26. **Have you been a party in any judicial or administrative proceeding under any environmental law? Include settlements and orders.**

   ■ No
   ☐ Yes. Fill in the details.

| Case Title Case Number | Court or agency Name Address (Number, Street, City, State and ZIP Code) | Nature of the case | Status of the case |
|---|---|---|---|

| Part 11: | Give Details About Your Business or Connections to Any Business |
|---|---|

27. **Within 4 years before you filed for bankruptcy, did you own a business or have any of the following connections to any business?**

   ☐ A sole proprietor or self-employed in a trade, profession, or other activity, either full-time or part-time

   ☐ A member of a limited liability company (LLC) or limited liability partnership (LLP)

   ☐ A partner in a partnership

   ☐ An officer, director, or managing executive of a corporation

   ☐ An owner of at least 5% of the voting or equity securities of a corporation

Software Copyright (c) 1996-2025 Best Case, LLC - www.bestcase.com

Debtor 1    *Curtis Parker*                                    Case number *(if known)* _____

☐  No. None of the above applies.  Go to Part 12.

☑  Yes. Check all that apply above and fill in the details below for each business.

| Business Name<br>Address<br>(Number, Street, City, State and ZIP Code) | Describe the nature of the business<br><br>Name of accountant or bookkeeper | Employer Identification number<br>Do not include Social Security number or ITIN.<br><br>Dates business existed |
|---|---|---|
| *Park & Sons*<br>*1149 Autumn Glen Way*<br>*Dacula, GA 30019* | *Land Leasing* | EIN:<br><br>From-To    *2017* |

28. **Within 2 years before you filed for bankruptcy, did you give a financial statement to anyone about your business? Include all financial institutions, creditors, or other parties.**

☑  No

☐  Yes. Fill in the details below.

| Name<br>Address<br>(Number, Street, City, State and ZIP Code) | Date Issued |
|---|---|
| | |

| Part 12: | Sign Below |
|---|---|

I have read the answers on this *Statement of Financial Affairs* and any attachments, and I declare under penalty of perjury that the answers are true and correct. I understand that making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both.
18 U.S.C. §§ 152, 1341, 1519, and 3571.

*/s/ Curtis Parker*
_____              _____
*Curtis Parker*                                          **Signature of Debtor 2**
**Signature of Debtor 1**

Date   *September 29, 2025*                   Date   _____
_____

**Did you attach additional pages to *Your Statement of Financial Affairs for Individuals Filing for Bankruptcy* (Official Form 107)?**
☑ No
☐ Yes

**Did you pay or agree to pay someone who is not an attorney to help you fill out bankruptcy forms?**
☑ No
☐ Yes. Name of Person _____. Attach the *Bankruptcy Petition Preparer's Notice, Declaration, and Signature* (Official Form 119).

**Fill in this information to identify your case and this filing:**

| | |
|---|---|
| Debtor 1 | *Curtis Parker* |
| | First Name      Middle Name      Last Name |
| Debtor 2 | |
| (Spouse, if filing) | First Name      Middle Name      Last Name |
| United States Bankruptcy Court for the: | NORTHERN DISTRICT OF GEORGIA |
| Case number | |

☐ Check if this is an amended filing

## Official Form 106A/B
# Schedule A/B: Property
**12/15**

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

| Part 1: | Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In |
|---|---|

1. **Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**

☐ No. Go to Part 2.

■ Yes. Where is the property?

---

**1.1**

*2 Acres Land*
Street address, if available, or other description

*Montevallo*      *AL*
City      State      ZIP Code

County

**What is the property?** Check all that apply

☐ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
■ Land
☐ Investment property
☐ Timeshare
☐ Other

**Who has an interest in the property?** Check one

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:

*2 Acres are joint with Son*

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| *$9,000.00* | *$4,500.00* |

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

*Fee Simple*

☐ Check if this is community property (see instructions)

---

Debtor 1  *Curtis Parker*                                      Case number *(if known)* _____

**1.2**  *If you own or have more than one, list here:*

*1 Acre*
_____
Street address, if available, or other description

| | |
|---|---|
| | |

*Montevallo*          *AL*
_____
City          State     ZIP Code

_____

_____
County

**What is the property?** Check all that apply

☐ Single-family home

☐ Duplex or multi-unit building

☐ Condominium or cooperative

☐ Manufactured or mobile home

■ Land

☐ Investment property

☐ Timeshare

☐ Other _____

**Who has an interest in the property?** Check one

■ Debtor 1 only

☐ Debtor 2 only

☐ Debtor 1 and Debtor 2 only

☐ At least one of the debtors and another

**Other information you wish to add about this item, such as local property identification number:**

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| *$5,000.00* | *$5,000.00* |

**Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.**

*Fee Simple*

☐ **Check if this is community property**
(see instructions)

---

**2.** Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here..........................................=>      | *$9,500.00* |

---

| **Part 2:** | **Describe Your Vehicles** |
|---|---|

Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not? Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

**3.** Cars, vans, trucks, tractors, sport utility vehicles, motorcycles

☐ No

■ Yes

**3.1**  Make:  *Lexus*

Model:  *RX*

Year:  *2022*

Approximate mileage:  *50k*

Other information:

*Location: 1149 Autumn Glen Way, Dacula GA 30019*

**Who has an interest in the property?** Check one

■ Debtor 1 only

☐ Debtor 2 only

☐ Debtor 1 and Debtor 2 only

☐ At least one of the debtors and another

☐ **Check if this is community property**
(see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| *$38,964.00* | *$38,964.00* |

**4.** Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories
*Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

■ No

☐ Yes

---

**5** Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here..........................................=>      | *$38,964.00* |

---

| **Part 3:** | **Describe Your Personal and Household Items** |
|---|---|

Do you own or have any legal or equitable interest in any of the following items?

**Current value of the portion you own?**
Do not deduct secured claims or exemptions.

Debtor 1  *Curtis Parker*

Case number *(if known)*

6. **Household goods and furnishings**
   *Examples:* Major appliances, furniture, linens, china, kitchenware
   ☐ No
   ■ Yes. Describe.....

   | Household Goods | $2,000.00 |
   |---|---|

7. **Electronics**
   *Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games
   ☐ No
   ■ Yes. Describe.....

   | Electronics | $400.00 |
   |---|---|

8. **Collectibles of value**
   *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other collections, memorabilia, collectibles
   ■ No
   ☐ Yes. Describe.....

9. **Equipment for sports and hobbies**
   *Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools; musical instruments
   ■ No
   ☐ Yes. Describe.....

10. **Firearms**
    *Examples:* Pistols, rifles, shotguns, ammunition, and related equipment
    ■ No
    ☐ Yes. Describe.....

11. **Clothes**
    *Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories
    ☐ No
    ■ Yes. Describe.....

    | Clothes | $200.00 |
    |---|---|

12. **Jewelry**
    *Examples:* Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver
    ☐ No
    ■ Yes. Describe.....

    | Jewelry | $100.00 |
    |---|---|

13. **Non-farm animals**
    *Examples:* Dogs, cats, birds, horses
    ■ No
    ☐ Yes. Describe.....

14. **Any other personal and household items you did not already list, including any health aids you did not list**
    ■ No
    ☐ Yes. Give specific information.....

15. **Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached for Part 3. Write that number here** ...........................................................................

   | | $2,700.00 |
   |---|---|

| Debtor 1 | *Curtis Parker* | | Case number *(if known)* | |

**Part 4:** Describe Your Financial Assets

| Do you own or have any legal or equitable interest in any of the following? | **Current value of the portion you own?** Do not deduct secured claims or exemptions. |
|---|---|

16. **Cash**
   *Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition
   ■ No
   ☐ Yes.................................................................................................

17. **Deposits of money**
   *Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions. If you have multiple accounts with the same institution, list each.
   ☐ No
   ■ Yes.......................        Institution name:

|  | 17.1. | *Checking and Savings* | *Delta Community Credit Union* | *$0.00* |

18. **Bonds, mutual funds, or publicly traded stocks**
   *Examples:* Bond funds, investment accounts with brokerage firms, money market accounts
   ■ No
   ☐ Yes..................        Institution or issuer name:

19. **Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**
   ■ No
   ☐ Yes.  Give specific information about them...................
        Name of entity:                                          % of ownership:

20. **Government and corporate bonds and other negotiable and non-negotiable instruments**
   *Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
   *Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.
   ■ No
   ☐ Yes. Give specific information about them
        Issuer name:

21. **Retirement or pension accounts**
   *Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans
   ■ No
   ☐ Yes. List each account separately.
        Type of account:              Institution name:

22. **Security deposits and prepayments**
   Your share of all unused deposits you have made so that you may continue service or use from a company
   *Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others
   ■ No
   ☐ Yes. .....................        Institution name or individual:

23. **Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)
   ■ No
   ☐ Yes.............        Issuer name and description.

24. **Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
   26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).
   ■ No
   ☐ Yes.............        Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

25. **Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**
   ■ No
   ☐ Yes.  Give specific information about them...

| Debtor 1 | *Curtis Parker* | Case number *(if known)* |
|---|---|---|

**26. Patents, copyrights, trademarks, trade secrets, and other intellectual property**
   *Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements

   ■ No
   ☐ Yes. Give specific information about them...

**27. Licenses, franchises, and other general intangibles**
   *Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses

   ■ No
   ☐ Yes. Give specific information about them...

| Money or property owed to you? | Current value of the portion you own? Do not deduct secured claims or exemptions. |
|---|---|

**28. Tax refunds owed to you**
   ■ No
   ☐ Yes. Give specific information about them, including whether you already filed the returns and the tax years.......

_____

**29. Family support**
   *Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement

   ■ No
   ☐ Yes. Give specific information......

**30. Other amounts someone owes you**
   *Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay, workers' compensation, Social Security benefits; unpaid loans you made to someone else

   ■ No
   ☐ Yes. Give specific information..

**31. Interests in insurance policies**
   *Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance

   ■ No
   ☐ Yes. Name the insurance company of each policy and list its value.
   
   Company name:                    Beneficiary:                    Surrender or refund value:

**32. Any interest in property that is due you from someone who has died**
   If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because someone has died.

   ■ No
   ☐ Yes. Give specific information..

**33. Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
   *Examples:* Accidents, employment disputes, insurance claims, or rights to sue

   ■ No
   ☐ Yes. Describe each claim.........

**34. Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**
   ■ No
   ☐ Yes. Describe each claim.........

**35. Any financial assets you did not already list**
   ■ No
   ☐ Yes. Give specific information..

**36. Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached for Part 4. Write that number here.................................................................................................................**

| *$0.00* |
|---|

| **Part 5:** | Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1. |
|---|---|

Debtor 1   *Curtis Parker*                                   Case number *(if known)* _____

37. **Do you own or have any legal or equitable interest in any business-related property?**
   ■ No. Go to Part 6.
   ☐ Yes.  Go to line 38.

| Part 6: | **Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In.**<br>If you own or have an interest in farmland, list it in Part 1. |
|---|---|

46. **Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**
   ■ No. Go to Part 7.
   ☐ Yes.  Go to line 47.

| Part 7: | **Describe All Property You Own or Have an Interest in That You Did Not List Above** |
|---|---|

53. **Do you have other property of any kind you did not already list?**
   *Examples:* Season tickets, country club membership
   ■ No
   ☐ Yes. Give specific information.........

54. **Add the dollar value of all of your entries from Part 7. Write that number here**  ....................................   | *$0.00* |

| Part 8: | **List the Totals of Each Part of this Form** |
|---|---|

55. **Part 1: Total real estate, line 2**  ........................................................................................   *$9,500.00*

56. **Part 2: Total vehicles, line 5**                                      *$38,964.00*
57. **Part 3: Total personal and household items, line 15**                 *$2,700.00*
58. **Part 4: Total financial assets, line 36**                                 *$0.00*
59. **Part 5: Total business-related property, line 45**                        *$0.00*
60. **Part 6: Total farm- and fishing-related property, line 52**               *$0.00*
61. **Part 7: Total other property not listed, line 54**            +           *$0.00*

62. **Total personal property.** Add lines 56 through 61...   *$41,664.00*   Copy personal property total   *$41,664.00*

63. **Total of all property on Schedule A/B.** Add line 55 + line 62   | *$51,164.00* |

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | *Curtis Parker* |
| | First Name   Middle Name   Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name   Middle Name   Last Name |
| United States Bankruptcy Court for the: | NORTHERN DISTRICT OF GEORGIA |
| Case number | |
| (if known) | |

☐ Check if this is an amended filing

## Official Form 106C

# Schedule C: The Property You Claim as Exempt                4/25

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Using the property you listed on *Schedule A/B: Property* (Official Form 106A/B) as your source, list the property that you claim as exempt. If more space is needed, fill out and attach to this page as many copies of *Part 2: Additional Page* as necessary. On the top of any additional pages, write your name and case number (if known).

**For each item of property you claim as exempt, you must specify the amount of the exemption you claim. One way of doing so is to state a specific dollar amount as exempt. Alternatively, you may claim the full fair market value of the property being exempted up to the amount of any applicable statutory limit. Some exemptions—such as those for health aids, rights to receive certain benefits, and tax-exempt retirement funds—may be unlimited in dollar amount. However, if you claim an exemption of 100% of fair market value under a law that limits the exemption to a particular dollar amount and the value of the property is determined to exceed that amount, your exemption would be limited to the applicable statutory amount.**

**Part 1:**   Identify the Property You Claim as Exempt

1.  **Which set of exemptions are you claiming?** *Check one only, even if your spouse is filing with you.*

    ☑ You are claiming state and federal nonbankruptcy exemptions.   11 U.S.C. § 522(b)(3)

    ☐ You are claiming federal exemptions.   11 U.S.C. § 522(b)(2)

2.  **For any property you list on *Schedule A/B* that you claim as exempt, fill in the information below.**

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own<br>Copy the value from *Schedule A/B* | Amount of the exemption you claim<br>*Check only one box for each exemption.* | Specific laws that allow exemption |
|---|---|---|---|
| ***2 Acres Land Montevallo, AL***<br>***2 Acres are joint with Son***<br>Line from *Schedule A/B*: **1.1** | *$4,500.00* | ☑ *$4,500.00*<br>☐ 100% of fair market value, up to any applicable statutory limit | *O.C.G.A. § 44-13-100(a)(6)* |
| ***1 Acre Montevallo, AL***<br>Line from *Schedule A/B*: **1.2** | *$5,000.00* | ☑ *$5,000.00*<br>☐ 100% of fair market value, up to any applicable statutory limit | *O.C.G.A. § 44-13-100(a)(6)* |
| ***Household Goods***<br>Line from *Schedule A/B*: **6.1** | *$2,000.00* | ☑ *$2,000.00*<br>☐ 100% of fair market value, up to any applicable statutory limit | *O.C.G.A. § 44-13-100(a)(4)* |
| ***Electronics***<br>Line from *Schedule A/B*: **7.1** | *$400.00* | ☑ *$400.00*<br>☐ 100% of fair market value, up to any applicable statutory limit | *O.C.G.A. § 44-13-100(a)(4)* |
| ***Clothes***<br>Line from *Schedule A/B*: **11.1** | *$200.00* | ☑ *$200.00*<br>☐ 100% of fair market value, up to any applicable statutory limit | *O.C.G.A. § 44-13-100(a)(4)* |

Debtor 1    **Curtis Parker**                                                    Case number (if known)

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own  Copy the value from *Schedule A/B* | Amount of the exemption you claim  *Check only one box for each exemption.* | Specific laws that allow exemption |
|---|---|---|---|
| **Jewelry**  Line from *Schedule A/B*: **12.1** | **$100.00** | ■ **$100.00**  ☐ 100% of fair market value, up to any applicable statutory limit | **O.C.G.A. § 44-13-100(a)(5)** |

3. **Are you claiming a homestead exemption of more than $214,000?**
   (Subject to adjustment on 4/01/28 and every 3 years after that for cases filed on or after the date of adjustment.)

   ■ No

   ☐ Yes. Did you acquire the property covered by the exemption within 1,215 days before you filed this case?

   　　☐ No

   　　☐ Yes

Software Copyright (c) 1996-2025 Best Case, LLC - www.bestcase.com

**Fill in this information to identify your case:**

| Debtor 1 | *Curtis Parker* | | |
|---|---|---|---|
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the:   NORTHERN DISTRICT OF GEORGIA

Case number
(if known)

☐ Check if this is an
   amended filing

Official Form 106D

# Schedule D: Creditors Who Have Claims Secured by Property                    12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

**1. Do any creditors have claims secured by your property?**

   ☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

   ■ Yes. Fill in all of the information below.

**Part 1:** List All Secured Claims

| 2. List all secured claims. If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name. | Column A<br>Amount of claim<br>Do not deduct the<br>value of collateral. | Column B<br>Value of collateral<br>that supports this<br>claim | Column C<br>Unsecured<br>portion<br>If any |
|---|---|---|---|

| 2.1 | *Toyota Financial Services* | Describe the property that secures the claim: | *$39,203.00* | *$38,964.00* | *$239.00* |
|---|---|---|---|---|---|

Creditor's Name

*Credit Dispute Research Team*
*Dallas, TX 75265*

Number, Street, City, State & Zip Code

*2022 Lexus RX 50k miles*
*Location: 1149 Autumn Glen Way,*
*Dacula GA 30019*

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a
   community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured
   car loan)

☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

| Date debt was incurred | *Opened 06/24  Last Active 8/06/25* | Last 4 digits of account number | *0001* |
|---|---|---|---|

Add the dollar value of your entries in Column A on this page. Write that number here:       *$39,203.00*

If this is the last page of your form, add the dollar value totals from all pages.
Write that number here:       *$39,203.00*

**Part 2:** List Others to Be Notified for a Debt That You Already Listed

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.

Debtor 1   *Curtis Parker*

|  |  |  |
|---|---|---|
| First Name | Middle Name | Last Name |

Case number (*if known*) _____

[ ]   Name, Number, Street, City, State & Zip Code
      ***Toyota Financial Services***
      ***Attn: Bankruptcy***
      ***Po Box 22171***
      ***Tempe, AZ 85285***

On which line in Part 1 did you enter the creditor?   ___*2.1*___

Last 4 digits of account number ___

**Fill in this information to identify your case:**

Debtor 1   *Curtis Parker*
First Name          Middle Name          Last Name

Debtor 2
(Spouse if, filing)   First Name          Middle Name          Last Name

United States Bankruptcy Court for the:   NORTHERN DISTRICT OF GEORGIA

Case number
(if known)

☐ Check if this is an amended filing

## Official Form 106E/F
## Schedule E/F: Creditors Who Have Unsecured Claims                    12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY claims and Part 2 for creditors with NONPRIORITY claims. List the other party to any executory contracts or unexpired leases that could result in a claim.  Also list executory contracts on Schedule A/B: Property (Official Form 106A/B) and on Schedule G: Executory Contracts and Unexpired Leases (Official Form 106G). Do not include any creditors with partially secured claims that are listed in Schedule D: Creditors Who Have Claims Secured by Property. If more space is needed, copy the Part you need, fill it out, number the entries in the boxes on the left. Attach the Continuation Page to this page. If you have no information to report in a Part, do not file that Part. On the top of any additional pages, write your name and case number (if known).

| Part 1: | List All of Your PRIORITY Unsecured Claims |
| --- | --- |

1. **Do any creditors have priority unsecured claims against you?**

   ☐ No. Go to Part 2.

   ☐ Yes.

2. **List all of your priority unsecured claims.** If a creditor has more than one priority unsecured claim, list the creditor separately for each claim. For each claim listed, identify what type of claim it is. If a claim has both priority and nonpriority amounts, list that claim here and show both priority and nonpriority amounts. As much as possible, list the claims in alphabetical order according to the creditor's name. If you have more than two priority unsecured claims, fill out the Continuation Page of Part 1. If more than one creditor holds a particular claim, list the other creditors in Part 3.

   (For an explanation of each type of claim, see the instructions for this form in the instruction booklet.)

| | | Total claim | Priority amount | Nonpriority amount |
| --- | --- | --- | --- | --- |

2.1   **Georgia Department of  Revenue**
Priority Creditor's Name
**1800 Century Boulevard**
**Suite 9100**
**Atlanta, GA 30345**
Number Street City State Zip Code

Last 4 digits of account number _____   **$20,000.00**   **$20,000.00**   **$0.00**

When was the debt incurred? _____

**Who incurred the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ **Check if this claim is for a  community debt**

**Is the claim subject to offset?**

■ No
☐ Yes

As of the date you file, the claim is: Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of PRIORITY unsecured claim:**

☐ Domestic support obligations
■ Taxes and certain other debts you owe the government
☐ Claims for death or personal injury while you were intoxicated
☐ Other. Specify _____

*2014, 2015, 2016, 2017*

Debtor 1   *Curtis Parker*                                                    Case number *(if known)* _____

| 2.2 | **Internal Revenue Service** | Last 4 digits of account number ____ ____ ____ ____ | **$20,000.00** | **$20,000.00** | **$0.00** |

*Internal Revenue Service*
Priority Creditor's Name

*401 West Peachtree Street, NW*
*Stop 334D*
*Atlanta, GA 30308-3539*
Number Street City State Zip Code

**Who incurred the debt?** Check one.

■ Debtor 1 only
□ Debtor 2 only
□ Debtor 1 and Debtor 2 only
□ At least one of the debtors and another

□ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No
□ Yes

When was the debt incurred?   _____

**As of the date you file, the claim is:** Check all that apply

□ Contingent
□ Unliquidated
□ Disputed

**Type of PRIORITY unsecured claim:**

□ Domestic support obligations
■ Taxes and certain other debts you owe the government
□ Claims for death or personal injury while you were intoxicated
□ Other. Specify   *2014, 2015, 2016, 2017*

---

| **Part 2:** | **List All of Your NONPRIORITY Unsecured Claims** |

3. **Do any creditors have nonpriority unsecured claims against you?**

□ No. You have nothing to report in this part. Submit this form to the court with your other schedules.

■ Yes.

4. List all of your nonpriority unsecured claims in the alphabetical order of the creditor who holds each claim. If a creditor has more than one nonpriority unsecured claim, list the creditor separately for each claim. For each claim listed, identify what type of claim it is. Do not list claims already included in Part 1. If more than one creditor holds a particular claim, list the other creditors in Part 3.If you have more than three nonpriority unsecured claims fill out the Continuation Page of Part 2.

|  |  | Total claim |
|---|---|---|

| 4.1 | **Affirm, Inc.** | Last 4 digits of account number | *CN9W* | **$235.00** |

*Affirm, Inc.*
Nonpriority Creditor's Name

*650 California St Fl 12*
*San Francisco, CA 94108*
Number Street City State Zip Code

**Who incurred the debt?** Check one.

■ Debtor 1 only
□ Debtor 2 only
□ Debtor 1 and Debtor 2 only
□ At least one of the debtors and another

□ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No
□ Yes

When was the debt incurred?   *Opened 02/25  Last Active 6/24/25*

**As of the date you file, the claim is:** Check all that apply

□ Contingent
□ Unliquidated
□ Disputed

**Type of NONPRIORITY unsecured claim:**

□ Student loans
□ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
□ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify   *Unsecured*

---

Official Form 106 E/F                     Schedule E/F: Creditors Who Have Unsecured Claims                     Page  2 of 12

Debtor 1    *Curtis Parker*                                                                              Case number (if known) _____

---

| 4.2 | *Afterpay* | Last 4 digits of account number _____ | **$1,500.00** |

Nonpriority Creditor's Name

*GPO Box 2269*
*Norcross, GA 30010*

Number Street City State Zip Code

**Who incurred the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No
☐ Yes

When was the debt incurred? _____

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify *Account*

---

| 4.3 | *Ally Credit Card/cws* | Last 4 digits of account number *6839* | **$1,061.00** |

Nonpriority Creditor's Name

*Po Box 9222*
*Old Bethpage, NY 11804*

Number Street City State Zip Code

**Who incurred the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No
☐ Yes

When was the debt incurred? *Opened 07/21  Last Active 6/10/25*

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify *Credit Card*

---

| 4.4 | *American Express* | Last 4 digits of account number _____ | **$5,000.00** |

Nonpriority Creditor's Name

*P.O. Box 981535*
*El Paso, TX 79998-1535*

Number Street City State Zip Code

**Who incurred the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No
☐ Yes

When was the debt incurred? _____

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify *Account*

---

Debtor 1    *Curtis Parker*                                                    Case number *(if known)* _____

---

| 4.5 | *Amex* | Last 4 digits of account number | *6773* | $817.00 |

Nonpriority Creditor's Name

*P.o. Box 981537*
*El Paso, TX 79998*

When was the debt incurred?    *Opened 02/23  Last Active 8/26/25*

Number City State Zip Code

**Who incurred the debt?** Check one.

As of the date you file, the claim is: Check all that apply

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
**☐ Check if this claim is for a  community debt**

**Is the claim subject to offset?**

■ No
☐ Yes

☐ Contingent
☐ Unliquidated
☐ Disputed
**Type of NONPRIORITY unsecured claim:**
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify   *Credit Card* _____

---

| 4.6 | *Aspire Credit Card* | Last 4 digits of account number | *1924* | $1,403.00 |

Nonpriority Creditor's Name

*Po Box 105555*
*Atlanta, GA 30348*

When was the debt incurred?    *Opened 08/21  Last Active 6/25/25*

Number Street City State Zip Code

**Who incurred the debt?** Check one.

As of the date you file, the claim is: Check all that apply

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
**☐ Check if this claim is for a  community debt**

**Is the claim subject to offset?**

■ No
☐ Yes

☐ Contingent
☐ Unliquidated
☐ Disputed
**Type of NONPRIORITY unsecured claim:**
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify   *Credit Card* _____

---

| 4.7 | *Avant/WebBank* | Last 4 digits of account number | *2096* | $879.00 |

Nonpriority Creditor's Name

*222 W Merchandise Mart Plaza*
*Chicago, IL 60654*

When was the debt incurred?    *Opened 02/22  Last Active 6/28/25*

Number Street City State Zip Code

**Who incurred the debt?** Check one.

As of the date you file, the claim is: Check all that apply

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
**☑ Check if this claim is for a  community debt**

**Is the claim subject to offset?**

■ No
☐ Yes

☐ Contingent
☐ Unliquidated
☐ Disputed
**Type of NONPRIORITY unsecured claim:**
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify   *Credit Card* _____

---

Debtor 1  *Curtis Parker*                                                Case number *(if known)* _____

| 4.8 | *Carter Young* | Last 4 digits of account number _____ | **$1,500.00** |

Nonpriority Creditor's Name

*882 N. Main Street*
*Suite 120*
*Conyers, GA 30012*

Number Street City State Zip Code

**Who incurred the debt? Check one.**

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a  community debt**

**Is the claim subject to offset?**

■ No
☐ Yes

When was the debt incurred? _____

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify   *Account*

---

| 4.9 | *Comenity Bank/Jared* | Last 4 digits of account number  *7967* | **$4,245.00** |

Nonpriority Creditor's Name

*Po Box 182789*
*Columbus, OH 43218*

Number Street City State Zip Code

**Who incurred the debt? Check one.**

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a  community debt**

**Is the claim subject to offset?**

■ No
☐ Yes

When was the debt incurred?   *Opened 12/23  Last Active 7/16/25*

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify   *Charge Account*

---

| 4.1 0 | *Comenitycapital/lxvisa* | Last 4 digits of account number  *1396* | **$1,084.00** |

Nonpriority Creditor's Name

*Po Box 182120*
*Columbus, OH 43218*

Number Street City State Zip Code

**Who incurred the debt? Check one.**

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a  community debt**

**Is the claim subject to offset?**

■ No
☐ Yes

When was the debt incurred?   *Opened 10/24  Last Active 7/11/25*

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify   *Credit Card*

---

Debtor 1    *Curtis Parker*

Case number *(if known)* _____

---

**4.1 1**

**Credit Collection Services**
Nonpriority Creditor's Name

**Po Box 607**
**Norwood, MA 02062**
Number Street City State Zip Code

**Who incurred the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No
☐ Yes

Last 4 digits of account number    *0001*                    **$54.00**

When was the debt incurred?    *Opened 02/25*

As of the date you file, the claim is: Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify    *Collection Attorney Liberty Mutual In. Co.*

---

**4.1 2**

**Credit One Bank**
Nonpriority Creditor's Name

**Po Box 98872**
**Las Vegas, NV 89193**
Number Street City State Zip Code

**Who incurred the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No
☐ Yes

Last 4 digits of account number    *3152*                    **$1,664.00**

When was the debt incurred?    *Opened  3/28/21  Last Active 8/11/25*

As of the date you file, the claim is: Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify    *Credit Card*

---

**4.1 3**

**Goldman Sachs Bank USA**
Nonpriority Creditor's Name

**Lockbox 6112**
**Philadelphia, PA 19170**
Number Street City State Zip Code

**Who incurred the debt?** Check one.

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No
☐ Yes

Last 4 digits of account number    *6790*                    **$3,136.00**

When was the debt incurred?    *Opened 02/24  Last Active 7/01/25*

As of the date you file, the claim is: Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify    *Credit Card*

---

Debtor 1    *Curtis Parker*                                                    Case number *(if known)* _____

| 4.14 | **Lab Corp** | Last 4 digits of account number _____ | $0.00 |

Nonpriority Creditor's Name

**P.O. Box 2240**
**Burlington, NC 27216**
Number Street City State Zip Code

**Who incurred the debt? Check one.**

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No
☐ Yes

When was the debt incurred? _____

**As of the date you file, the claim is: Check all that apply**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify    *Account*

---

| 4.15 | **Mercury/FBT** | Last 4 digits of account number *1478* | $2,739.00 |

Nonpriority Creditor's Name

**Po Box 84064**
**Columbus, GA 31908**
Number Street City State Zip Code

**Who incurred the debt? Check one.**

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No
☐ Yes

When was the debt incurred?    *Opened 06/21  Last Active 7/13/25*

**As of the date you file, the claim is: Check all that apply**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify    *Credit Card*

---

| 4.16 | **Mission Lane LLC** | Last 4 digits of account number *1453* | $1,554.00 |

Nonpriority Creditor's Name

**Po Box 105286**
**Atlanta, GA 30348**
Number Street City State Zip Code

**Who incurred the debt? Check one.**

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No
☐ Yes

When was the debt incurred?    *Opened 02/20  Last Active 7/13/25*

**As of the date you file, the claim is: Check all that apply**

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify    *Credit Card*

---

Debtor 1    *Curtis Parker*                                                    Case number *(if known)* _____

---

| 4.1 7 | **Onemain** | Last 4 digits of account number | **8596** | **$12,990.00** |

Nonpriority Creditor's Name

**Po Box 1010**
**Evansville, IN 47706**

When was the debt incurred?    **Opened 04/25  Last Active 6/27/25**

Number Street City State Zip Code

As of the date you file, the claim is: Check all that apply

Who incurred the debt? Check one.

- ■ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ **Check if this claim is for a community debt**

Is the claim subject to offset?

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Type of NONPRIORITY unsecured claim:

- ☐ Student loans
- ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- ☐ Debts to pension or profit-sharing plans, and other similar debts
- ☐ No
- ☐ Yes
- ☐ Other. Specify   **Unsecured**

---

| 4.1 8 | **Prosper Funding LLC** | Last 4 digits of account number | **2456** | **$15,534.00** |

Nonpriority Creditor's Name

**221 Main Street**
**San Francisco, CA 94105**

When was the debt incurred?    **Opened 01/25  Last Active 7/06/25**

Number Street City State Zip Code

As of the date you file, the claim is: Check all that apply

Who incurred the debt? Check one.

- ☐ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ **Check if this claim is for a community debt**

Is the claim subject to offset?

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Type of NONPRIORITY unsecured claim:

- ☐ Student loans
- ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- ☐ Debts to pension or profit-sharing plans, and other similar debts
- ☐ No
- ☐ Yes
- ☐ Other. Specify   **Unsecured**

---

| 4.1 9 | **Prosper Funding, Llc** | Last 4 digits of account number | **0352** | **$967.00** |

Nonpriority Creditor's Name

**221 Main Street**
**San Francisco, CA 94105**

When was the debt incurred?    **Opened 03/24  Last Active 7/05/25**

Number Street City State Zip Code

As of the date you file, the claim is: Check all that apply

Who incurred the debt? Check one.

- ☐ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ **Check if this claim is for a community debt**

Is the claim subject to offset?

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Type of NONPRIORITY unsecured claim:

- ☐ Student loans
- ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- ☐ Debts to pension or profit-sharing plans, and other similar debts
- ☐ No
- ☐ Yes
- ☐ Other. Specify   **Credit Card**

---

Debtor 1  *Curtis Parker*

Case number (if known) _____

---

**4.20**

*Syncb/Rooms To Go*

Nonpriority Creditor's Name

*Po Box 71757*
*Philadelphia, PA 19176*

Number Street City State Zip Code

**Who incurred the debt?** Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a  community debt**

**Is the claim subject to offset?**

☑ No
☐ Yes

Last 4 digits of account number  *4167*                      $5,180.00

**When was the debt incurred?**   *Opened 04/23  Last Active 8/12/25*

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☑ Other. Specify  *Charge Account*

---

**4.21**

*Synchrony Bank*

Nonpriority Creditor's Name

*Po Box 71757*
*Philadelphia, PA 19176*

Number Street City State Zip Code

**Who incurred the debt?** Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a  community debt**

**Is the claim subject to offset?**

☑ No
☐ Yes

Last 4 digits of account number  *3485*                      $2,937.00

**When was the debt incurred?**   *Opened 05/23  Last Active 8/17/25*

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☑ Other. Specify  *Charge Account*

---

**4.22**

*Synchrony Bank/Care Credit*

Nonpriority Creditor's Name

*Po Box 71757*
*Philadelphia, PA 19176*

Number Street City State Zip Code

**Who incurred the debt?** Check one.

☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a  community debt**

**Is the claim subject to offset?**

☑ No
☐ Yes

Last 4 digits of account number  *8095*                      $309.00

**When was the debt incurred?**   *Opened 07/25  Last Active 8/28/25*

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☑ Other. Specify  *Charge Account*

---

Debtor 1    *Curtis Parker*

| 4.2 3 | | | |
|---|---|---|---|

**Uprova Credit**                                    Last 4 digits of account number _____              **$1,200.00**

Nonpriority Creditor's Name
**635 E Hwy 20 V**                                   When was the debt incurred? _____
**Upper Lake, CA 95485**
Number Street City State Zip Code                   **As of the date you file, the claim is:** Check all that apply
**Who incurred the debt?** Check one.

■ Debtor 1 only                                     ☐ Contingent

☐ Debtor 2 only                                     ☐ Unliquidated

☐ Debtor 1 and Debtor 2 only                        ☐ Disputed

☐ At least one of the debtors and another           **Type of NONPRIORITY unsecured claim:**

☐ **Check if this claim is for a community           ☐ Student loans
debt**
                                                    ☐ Obligations arising out of a separation agreement or divorce that you did not
**Is the claim subject to offset?**                 report as priority claims

■ No                                                ☐ Debts to pension or profit-sharing plans, and other similar debts

☐ Yes                                               ☐ Other. Specify   *Account*

---

| **Part 3:** | **List Others to Be Notified About a Debt That You Already Listed** |
|---|---|

5. Use this page only if you have others to be notified about your bankruptcy, for a debt that you already listed in Parts 1 or 2. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the original creditor in Parts 1 or 2, then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Parts 1 or 2, list the additional creditors here. If you do not have additional persons to be notified for any debts in Parts 1 or 2, do not fill out or submit this page.

Name and Address                        On which entry in Part 1 or Part 2 did you list the original creditor?
*Affirm, Inc.*                          Line **4.1** of (Check one):
*Attn: Bankruptcy*                                      ☐ Part 1: Creditors with Priority Unsecured Claims
*650 California St, Fl 12*                              ■ Part 2: Creditors with Nonpriority Unsecured Claims
*San Francisco, CA 94108*

                                        Last 4 digits of account number

Name and Address                        On which entry in Part 1 or Part 2 did you list the original creditor?
*Amex*                                  Line **4.5** of (Check one):
*Correspondence/Bankruptcy*                            ☐ Part 1: Creditors with Priority Unsecured Claims
*Po Box 981535*                                        ■ Part 2: Creditors with Nonpriority Unsecured Claims
*El Paso, TX 79998*

                                        Last 4 digits of account number

Name and Address                        On which entry in Part 1 or Part 2 did you list the original creditor?
*Aspire Credit Card*                    Line **4.6** of (Check one):
*Attn: Bankruptcy*                                     ☐ Part 1: Creditors with Priority Unsecured Claims
*Po Box 105555*                                        ■ Part 2: Creditors with Nonpriority Unsecured Claims
*Atlanta, GA 30348*

                                        Last 4 digits of account number

Name and Address                        On which entry in Part 1 or Part 2 did you list the original creditor?
*Avant/WebBank*                         Line **4.7** of (Check one):
*222 North Lasalle Street*                             ☐ Part 1: Creditors with Priority Unsecured Claims
*Suite 1600*                                           ■ Part 2: Creditors with Nonpriority Unsecured Claims
*Chicago, IL 60601*

                                        Last 4 digits of account number

Name and Address                        On which entry in Part 1 or Part 2 did you list the original creditor?
*Comenity Bank/Jared*                   Line **4.9** of (Check one):
*Attn: Bankruptcy*                                     ☐ Part 1: Creditors with Priority Unsecured Claims
*P.O. Box 182125*                                      ■ Part 2: Creditors with Nonpriority Unsecured Claims
*Columbus, OH 43218*

                                        Last 4 digits of account number

Name and Address                        On which entry in Part 1 or Part 2 did you list the original creditor?
*Comenitycapital/Ixvisa*                Line **4.10** of (Check one):
*Attn: Bankruptcy*                                     ☐ Part 1: Creditors with Priority Unsecured Claims
*Pob 182125*                                           ■ Part 2: Creditors with Nonpriority Unsecured Claims
*Columbus, OH 43218*

                                        Last 4 digits of account number

Name and Address                        On which entry in Part 1 or Part 2 did you list the original creditor?

Debtor 1 *Curtis Parker*

Case number (if known) _____

| | |
|---|---|
| **Credit Collection Services**<br>*Attn: Bankruptcy*<br>*725 Canton St*<br>*Norwood, MA 02062* | Line **4.11** of (Check one):<br>☐ Part 1: Creditors with Priority Unsecured Claims<br>☑ Part 2: Creditors with Nonpriority Unsecured Claims |
| Last 4 digits of account number | |

Name and Address
**Credit One Bank**
*Attn: Bankruptcy Department*
*6801 Cimarron Rd*
*Las Vegas, NV 89113*

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.12** of (Check one):
☐ Part 1: Creditors with Priority Unsecured Claims
☑ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

Name and Address
**Goldman Sachs Bank USA**
*Attn: Bankruptcy*
*Po Box 70379*
*Philadelphia, PA 19176*

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.13** of (Check one):
☐ Part 1: Creditors with Priority Unsecured Claims
☑ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

Name and Address
**IRS**
*Attn: Insolvency Dept*
*PO Box 7346*
*Philadelphia, PA 19101-7346*

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **2.2** of (Check one):
☑ Part 1: Creditors with Priority Unsecured Claims
☐ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

Name and Address
**Mercury/FBT**
*Attn: Bankruptcy*
*Po Box 84064*
*Columbus, GA 31908*

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.15** of (Check one):
☐ Part 1: Creditors with Priority Unsecured Claims
☑ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

Name and Address
**Mission Lane LLC**
*Mission Lane LLC, Attn: Bankruptcy*
*Po Box 105286*
*Atlanta, GA 30348*

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.16** of (Check one):
☐ Part 1: Creditors with Priority Unsecured Claims
☑ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

Name and Address
**Prosper Funding LLC**
*Attn: Bankruptcy*
*221 Main Street Suite 300*
*San Francisco, CA 94105*

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.18** of (Check one):
☐ Part 1: Creditors with Priority Unsecured Claims
☑ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

Name and Address
**Prosper Funding, Llc**
*Attn: Bankruptcy Dept*
*221 Main Street, Ste 300*
*San Francisco, CA 94105*

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.19** of (Check one):
☐ Part 1: Creditors with Priority Unsecured Claims
☑ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

Name and Address
**Syncb/Rooms To Go**
*Attn: Bankruptcy*
*Po Box 965065*
*Orlando, FL 32896*

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.20** of (Check one):
☐ Part 1: Creditors with Priority Unsecured Claims
☑ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

Name and Address
**Synchrony Bank**
*Attn: Bankruptcy Dept.*
*P.O. Box 965064*
*Orlando, FL 32896*

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.21** of (Check one):
☐ Part 1: Creditors with Priority Unsecured Claims
☑ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

| Debtor 1 | *Curtis Parker* | Case number (if known) | |
|---|---|---|---|

| Name and Address | On which entry in Part 1 or Part 2 did you list the original creditor? | |
|---|---|---|
| **Synchrony Bank/Care Credit**<br>**Attn: Bankruptcy**<br>**Po Box 965060**<br>**Orlando, FL 32896** | Line **4.22** of (Check one): | ☐ Part 1: Creditors with Priority Unsecured Claims<br>■ Part 2: Creditors with Nonpriority Unsecured Claims |
| | Last 4 digits of account number | |

| **Part 4:** | **Add the Amounts for Each Type of Unsecured Claim** |
|---|---|

6.  **Total the amounts of certain types of unsecured claims.** This information is for statistical reporting purposes only. 28 U.S.C. §159. Add the amounts for each type of unsecured claim.

|  |  |  |  | Total Claim |
|---|---|---|---|---|
| **Total claims from Part 1** | 6a. | **Domestic support obligations** | 6a. | $                    0.00 |
| | 6b. | **Taxes and certain other debts you owe the government** | 6b. | $              40,000.00 |
| | 6c. | **Claims for death or personal injury while you were intoxicated** | 6c. | $                    0.00 |
| | 6d. | **Other.** Add all other priority unsecured claims. Write that amount here. | 6d. | $                    0.00 |
| | 6e. | **Total Priority.** Add lines 6a through 6d. | 6e. | $              40,000.00 |

|  |  |  |  | Total Claim |
|---|---|---|---|---|
| **Total claims from Part 2** | 6f. | **Student loans** | 6f. | $                    0.00 |
| | 6g. | **Obligations arising out of a separation agreement or divorce that you did not report as priority claims** | 6g. | $                    0.00 |
| | 6h. | **Debts to pension or profit-sharing plans, and other similar debts** | 6h. | $                    0.00 |
| | 6i. | **Other.** Add all other nonpriority unsecured claims. Write that amount here. | 6i. | $              65,988.00 |
| | 6j. | **Total Nonpriority.** Add lines 6f through 6i. | 6j. | $              65,988.00 |

**Fill in this information to identify your case:**

| Debtor 1 | *Curtis Parker* | | |
|---|---|---|---|
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | NORTHERN DISTRICT OF GEORGIA | | |
| Case number | | | |
| (if known) | | | |

☐ Check if this is an amended filing

## Official Form 106G
## Schedule G: Executory Contracts and Unexpired Leases          12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the additional page, fill it out, number the entries, and attach it to this page. On the top of any additional pages, write your name and case number (if known).

1.  **Do you have any executory contracts or unexpired leases?**
    ■ No. Check this box and file this form with the court with your other schedules.  You have nothing else to report on this form.
    ☐ Yes. Fill in all of the information below even if the contacts of leases are listed on *Schedule A/B:Property* (Official Form 106 A/B).

2.  **List separately each person or company with whom you have the contract or lease. Then state what each contract or lease is for (for example, rent, vehicle lease, cell phone).** See the instructions for this form in the instruction booklet for more examples of executory contracts and unexpired leases.

| Person or company with whom you have the contract or lease | State what the contract or lease is for |
|---|---|
| Name, Number, Street, City, State and ZIP Code | |
| 2.1 _____ Name | |
| _____ Number   Street | |
| _____ City          State       ZIP Code | |
| 2.2 _____ Name | |
| _____ Number   Street | |
| _____ City          State       ZIP Code | |
| 2.3 _____ Name | |
| _____ Number   Street | |
| _____ City          State       ZIP Code | |
| 2.4 _____ Name | |
| _____ Number   Street | |
| _____ City          State       ZIP Code | |
| 2.5 _____ Name | |
| _____ Number   Street | |
| _____ City          State       ZIP Code | |

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | *Curtis Parker* |
| | First Name    Middle Name    Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name    Middle Name    Last Name |
| United States Bankruptcy Court for the: | NORTHERN DISTRICT OF GEORGIA |
| Case number (if known) | _____ |

☐ Check if this is an amended filing

Official Form 106H

# Schedule H: Your Codebtors

12/15

Codebtors are people or entities who are also liable for any debts you may have. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, and number the entries in the boxes on the left. Attach the Additional Page to this page. On the top of any Additional Pages, write your name and case number (if known). Answer every question.

**1. Do you have any codebtors?** (If you are filing a joint case, do not list either spouse as a codebtor.

■ No
☐ Yes

**2. Within the last 8 years, have you lived in a community property state or territory?** (*Community property states and territories* include Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, and Wisconsin.)

■ No. Go to line 3.
☐ Yes. Did your spouse, former spouse, or legal equivalent live with you at the time?

**3. In Column 1, list all of your codebtors. Do not include your spouse as a codebtor if your spouse is filing with you. List the person shown in line 2 again as a codebtor only if that person is a guarantor or cosigner. Make sure you have listed the creditor on Schedule D (Official Form 106D), Schedule E/F (Official Form 106E/F), or Schedule G (Official Form 106G). Use Schedule D, Schedule E/F, or Schedule G to fill out Column 2.**

| *Column 1:* **Your codebtor** Name, Number, Street, City, State and ZIP Code | *Column 2:* **The creditor to whom you owe the debt** Check all schedules that apply: |
|---|---|
| **3.1** _____ <br> Name <br> _____ <br> Number    Street <br> City          State          ZIP Code | ☐ Schedule D, line _____ <br> ☐ Schedule E/F, line _____ <br> ☐ Schedule G, line _____ |
| **3.2** _____ <br> Name <br> _____ <br> Number    Street <br> City          State          ZIP Code | ☐ Schedule D, line _____ <br> ☐ Schedule E/F, line _____ <br> ☐ Schedule G, line _____ |

| Fill in this information to identify your case: | |
|---|---|
| Debtor 1 | *Curtis Parker* |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | NORTHERN DISTRICT OF GEORGIA |
| Case number (If known) | |

Check if this is:

☐ An amended filing

☐ A supplement showing postpetition chapter 13 income as of the following date:

_____
MM / DD/ YYYY

## Official Form 106I

## Schedule I: Your Income                                   12/15

**Be as complete and accurate as possible. If two married people are filing together (Debtor 1 and Debtor 2), both are equally responsible for supplying correct information. If you are married and not filing jointly, and your spouse is living with you, include information about your spouse. If you are separated and your spouse is not filing with you, do not include information about your spouse. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.**

### Part 1:    Describe Employment

1. **Fill in your employment information.**

   If you have more than one job, attach a separate page with information about additional employers.

   Include part-time, seasonal, or self-employed work.

   Occupation may include student or homemaker, if it applies.

| | Debtor 1 | Debtor 2 or non-filing spouse |
|---|---|---|
| Employment status | ☐ Employed<br>■ Not employed | ☐ Employed<br>☐ Not employed |
| Occupation | | |
| Employer's name | | |
| Employer's address | | |
| How long employed there? | | |

### Part 2:    Give Details About Monthly Income

**Estimate monthly income as of the date you file this form.** If you have nothing to report for any line, write $0 in the space. Include your non-filing spouse unless you are separated.

If you or your non-filing spouse have more than one employer, combine the information for all employers for that person on the lines below. If you need more space, attach a separate sheet to this form.

| | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|
| 2. | **List monthly gross wages, salary, and commissions** (before all payroll deductions).  If not paid monthly, calculate what the monthly wage would be. | 2. $       0.00 | $       N/A |
| 3. | **Estimate and list monthly overtime pay.** | 3. +$       0.00 | +$       N/A |
| 4. | **Calculate gross Income.**  Add line 2 + line 3. | 4. $       0.00 | $       N/A |

Debtor 1  **Curtis Parker**                                                Case number (*if known*)

|  |  | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| | Copy line 4 here | 4. | $        0.00 | $        N/A |

5. **List all payroll deductions:**

| | | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| 5a. | **Tax, Medicare, and Social Security deductions** | 5a. | $        0.00 | $        N/A |
| 5b. | **Mandatory contributions for retirement plans** | 5b. | $        0.00 | $        N/A |
| 5c. | **Voluntary contributions for retirement plans** | 5c. | $        0.00 | $        N/A |
| 5d. | **Required repayments of retirement fund loans** | 5d. | $        0.00 | $        N/A |
| 5e. | **Insurance** | 5e. | $        0.00 | $        N/A |
| 5f. | **Domestic support obligations** | 5f. | $        0.00 | $        N/A |
| 5g. | **Union dues** | 5g. | $        0.00 | $        N/A |
| 5h.+ | **Other deductions.** Specify: | 5h.+ | $        0.00  + | $        N/A |

6. **Add the payroll deductions.** Add lines 5a+5b+5c+5d+5e+5f+5g+5h.  6.  $        0.00   $        N/A

7. **Calculate total monthly take-home pay.** Subtract line 6 from line 4.  7.  $        0.00   $        N/A

8. **List all other income regularly received:**

| | | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| 8a. | **Net income from rental property and from operating a business, profession, or farm** <br> Attach a statement for each property and business showing gross receipts, ordinary and necessary business expenses, and the total monthly net income. | 8a. | $        0.00 | $        N/A |
| 8b. | **Interest and dividends** | 8b. | $        0.00 | $        N/A |
| 8c. | **Family support payments that you, a non-filing spouse, or a dependent regularly receive** <br> Include alimony, spousal support, child support, maintenance, divorce settlement, and property settlement. | 8c. | $        0.00 | $        N/A |
| 8d. | **Unemployment compensation** | 8d. | $        0.00 | $        N/A |
| 8e. | **Social Security** | 8e. | $        0.00 | $        N/A |
| 8f. | **Other government assistance that you regularly receive** <br> Include cash assistance and the value (if known) of any non-cash assistance that you receive, such as food stamps (benefits under the Supplemental Nutrition Assistance Program) or housing subsidies. <br> Specify: | 8f. | $        0.00 | $        N/A |
| 8g. | **Pension or retirement income** | 8g. | $        0.00 | $        N/A |
| 8h.+ | **Other monthly income.** Specify: *Food Stamps* | 8h.+ | $      298.00  + | $        N/A |

9. **Add all other income.** Add lines 8a+8b+8c+8d+8e+8f+8g+8h.  9.  $      298.00   $        N/A

10. **Calculate monthly income.** Add line 7 + line 9.  10.  $      298.00  + $      N/A  = $      298.00
Add the entries in line 10 for Debtor 1 and Debtor 2 or non-filing spouse.

11. **State all other regular contributions to the expenses that you list in** *Schedule J.*
Include contributions from an unmarried partner, members of your household, your dependents, your roommates, and other friends or relatives.
Do not include any amounts already included in lines 2-10 or amounts that are not available to pay expenses listed in *Schedule J.*
Specify:  11.  +$        0.00

12. **Add the amount in the last column of line 10 to the amount in line 11.** The result is the combined monthly income.
Write that amount on the *Summary of Schedules* and *Statistical Summary of Certain Liabilities* and Related *Data,* if it applies  12.  $      298.00

**Combined monthly income**

13. **Do you expect an increase or decrease within the year after you file this form?**
 ■  No.
 ☐  Yes. Explain:

Fill in this information to identify your case:

Debtor 1  *Curtis Parker*

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:  NORTHERN DISTRICT OF GEORGIA

Case number
(If known)

Check if this is:

☐ An amended filing
☐ A supplement showing postpetition chapter 13 expenses as of the following date:

_____
MM / DD / YYYY

## Official Form 106J
## Schedule J: Your Expenses                                                  12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach another sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1:   Describe Your Household

1. **Is this a joint case?**

    ■ No. Go to line 2.
    ☐ Yes. **Does Debtor 2 live in a separate household?**

        ☐ No
        ☐ Yes. Debtor 2 must file Official Form 106J-2, *Expenses for Separate Household* of Debtor 2.

2. **Do you have dependents?**   ■ No
   Do not list Debtor 1 and    ☐ Yes.   Fill out this information for
   Debtor 2.                              each dependent..............
   Do not state the
   dependents names.

| | Dependent's relationship to Debtor 1 or Debtor 2 | Dependent's age | Does dependent live with you? |
|---|---|---|---|
| | | | ☐ No  ☐ Yes |
| | | | ☐ No  ☐ Yes |
| | | | ☐ No  ☐ Yes |
| | | | ☐ No  ☐ Yes |

3. **Do your expenses include expenses of people other than yourself and your dependents?**   ■ No   ☐ Yes

### Part 2:   Estimate Your Ongoing Monthly Expenses

Estimate your expenses as of your bankruptcy filing date unless you are using this form as a supplement in a Chapter 13 case to report expenses as of a date after the bankruptcy is filed. If this is a supplemental *Schedule J*, check the box at the top of the form and fill in the applicable date.

Include expenses paid for with non-cash government assistance if you know the value of such assistance and have included it on *Schedule I: Your Income* (Official Form 106I.)

| | **Your expenses** |
|---|---|

4. **The rental or home ownership expenses for your residence.** Include first mortgage payments and any rent for the ground or lot.                         4. $              2,600.00

    **If not included in line 4:**

    4a.  Real estate taxes                                                        4a. $                   0.00
    4b.  Property, homeowner's, or renter's insurance                             4b. $                   0.00
    4c.  Home maintenance, repair, and upkeep expenses                            4c. $                   0.00
    4d.  Homeowner's association or condominium dues                              4d. $                   0.00
5. **Additional mortgage payments for your residence,** such as home equity loans  5. $                   0.00

Debtor 1  *Curtis Parker*                                    Case number (if known) _____

| | | | | |
|---|---|---|---|---|
| 6. | **Utilities:** | | | |
| | 6a. | Electricity, heat, natural gas | 6a. $ | *150.00* |
| | 6b. | Water, sewer, garbage collection | 6b. $ | *0.00* |
| | 6c. | Telephone, cell phone, Internet, satellite, and cable services | 6c. $ | *200.00* |
| | 6d. | Other. Specify: | 6d. $ | *0.00* |
| 7. | **Food and housekeeping supplies** | | 7. $ | *400.00* |
| 8. | **Childcare and children's education costs** | | 8. $ | *0.00* |
| 9. | **Clothing, laundry, and dry cleaning** | | 9. $ | *30.00* |
| 10. | **Personal care products and services** | | 10. $ | *45.00* |
| 11. | **Medical and dental expenses** | | 11. $ | *0.00* |
| 12. | **Transportation.** Include gas, maintenance, bus or train fare. | | | |
| | Do not include car payments. | | 12. $ | *200.00* |
| 13. | **Entertainment, clubs, recreation, newspapers, magazines, and books** | | 13. $ | *0.00* |
| 14. | **Charitable contributions and religious donations** | | 14. $ | *0.00* |
| 15. | **Insurance.** | | | |
| | Do not include insurance deducted from your pay or included in lines 4 or 20. | | | |
| | 15a. | Life insurance | 15a. $ | *0.00* |
| | 15b. | Health insurance | 15b. $ | *0.00* |
| | 15c. | Vehicle insurance | 15c. $ | *150.00* |
| | 15d. | Other insurance. Specify: | 15d. $ | *0.00* |
| 16. | **Taxes.** Do not include taxes deducted from your pay or included in lines 4 or 20. | | | |
| | Specify: | | 16. $ | *0.00* |
| 17. | **Installment or lease payments:** | | | |
| | 17a. | Car payments for Vehicle 1 | 17a. $ | *730.00* |
| | 17b. | Car payments for Vehicle 2 | 17b. $ | *0.00* |
| | 17c. | Other. Specify: *IRS* | 17c. $ | *125.00* |
| | 17d. | Other. Specify: | 17d. $ | *0.00* |
| 18. | **Your payments of alimony, maintenance, and support that you did not report as deducted from your pay on line 5, *Schedule I, Your Income* (Official Form 106I).** | | 18. $ | *0.00* |
| 19. | **Other payments you make to support others who do not live with you.** | | $ | *0.00* |
| | Specify: | | 19. | |
| 20. | **Other real property expenses not included in lines 4 or 5 of this form or on *Schedule I: Your Income*.** | | | |
| | 20a. | Mortgages on other property | 20a. $ | *0.00* |
| | 20b. | Real estate taxes | 20b. $ | *0.00* |
| | 20c. | Property, homeowner's, or renter's insurance | 20c. $ | *0.00* |
| | 20d. | Maintenance, repair, and upkeep expenses | 20d. $ | *0.00* |
| | 20e. | Homeowner's association or condominium dues | 20e. $ | *0.00* |
| 21. | **Other:** Specify: | | 21. +$ | *0.00* |

| | | | | |
|---|---|---|---|---|
| 22. | **Calculate your monthly expenses** | | | |
| | 22a. Add lines 4 through 21. | | $ | *4,630.00* |
| | 22b. Copy line 22 (monthly expenses for Debtor 2), if any, from Official Form 106J-2 | | $ | |
| | 22c. Add line 22a and 22b.  The result is your monthly expenses. | | $ | *4,630.00* |
| 23. | **Calculate your monthly net income.** | | | |
| | 23a. Copy line 12 *(your combined monthly income)* from Schedule I. | | 23a. $ | *298.00* |
| | 23b. Copy your monthly expenses from line 22c above. | | 23b. -$ | *4,630.00* |
| | 23c. Subtract your monthly expenses from your monthly income. The result is your *monthly net income*. | | 23c. $ | *-4,332.00* |

24. **Do you expect an increase or decrease in your expenses within the year after you file this form?**
For example, do you expect to finish paying for your car loan within the year or do you expect your mortgage payment to increase or decrease because of a modification to the terms of your mortgage?

☑ No.

☐ Yes.     | Explain here:                               |

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | *Curtis Parker* |
| | First Name  Middle Name  Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name  Middle Name  Last Name |
| United States Bankruptcy Court for the: | NORTHERN DISTRICT OF GEORGIA |
| Case number (if known) | _____ |

☐ Check if this is an
   amended filing

Official Form 108

# Statement of Intention for Individuals Filing Under Chapter 7    12/15

**If you are an individual filing under chapter 7, you must fill out this form if:**

■ **creditors have claims secured by your property, or**

■ **you have leased personal property and the lease has not expired.**

**You must file this form with the court within 30 days after you file your bankruptcy petition or by the date set for the meeting of creditors, whichever is earlier, unless the court extends the time for cause. You must also send copies to the creditors and lessors you list on the form**

**If two married people are filing together in a joint case, both are equally responsible for supplying correct information. Both debtors must sign and date the form.**

**Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known).**

**Part 1:    List Your Creditors Who Have Secured Claims**

1. **For any creditors that you listed in Part 1 of Schedule D: Creditors Who Have Claims Secured by Property (Official Form 106D), fill in the information below.**

| Identify the creditor and the property that is collateral | What do you intend to do with the property that secures a debt? | Did you claim the property as exempt on Schedule C? |
|---|---|---|
| Creditor's name: *Toyota Financial Services* | ☐ Surrender the property. <br> ☐ Retain the property and redeem it. <br> ■ Retain the property and enter into a *Reaffirmation Agreement*. <br> ☐ Retain the property and [explain]: <br> _____ | ☐ No <br><br> ■ Yes |
| Description of property securing debt: *2022 Lexus RX 50k miles Location: 1149 Autumn Glen Way, Dacula GA 30019* | | |

**Part 2:    List Your Unexpired Personal Property Leases**

**For any unexpired personal property lease that you listed in Schedule G: Executory Contracts and Unexpired Leases (Official Form 106G), fill in the information below. Do not list real estate leases. Unexpired leases are leases that are still in effect; the lease period has not yet ended. You may assume an unexpired personal property lease if the trustee does not assume it. 11 U.S.C. § 365(p)(2).**

| Describe your unexpired personal property leases | Will the lease be assumed? |
|---|---|
| Lessor's name: <br> Description of leased Property: | ☐ No <br><br> ☐ Yes |
| Lessor's name: <br> Description of leased Property: | ☐ No <br><br> ☐ Yes |

| Debtor 1 | *Curtis Parker* | | Case number *(if known)* | |

| | | |
|---|---|---|
| Lessor's name: | | ☐ No |
| Description of leased Property: | | ☐ Yes |
| Lessor's name: | | ☐ No |
| Description of leased Property: | | ☐ Yes |
| Lessor's name: | | ☐ No |
| Description of leased Property: | | ☐ Yes |
| Lessor's name: | | ☐ No |
| Description of leased Property: | | ☐ Yes |
| Lessor's name: | | ☐ No |
| Description of leased Property: | | ☐ Yes |

## Part 3:    Sign Below

**Under penalty of perjury, I declare that I have indicated my intention about any property of my estate that secures a debt and any personal property that is subject to an unexpired lease.**

X  */s/ Curtis Parker*                           X _____

*Curtis Parker*                                     Signature of Debtor 2
Signature of Debtor 1

Date    *September 29, 2025*                   Date _____

**Fill in this information to identify your case:**

| | | | |
|---|---|---|---|
| Debtor 1 | *Curtis Parker* | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | NORTHERN DISTRICT OF GEORGIA | | |
| Case number (if known) | | | |

☐ Check if this is an amended filing

## Official Form 106Sum
## Summary of Your Assets and Liabilities and Certain Statistical Information   12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Fill out all of your schedules first; then complete the information on this form. If you are filing amended schedules after you file your original forms, you must fill out a new *Summary* and check the box at the top of this page.

**Part 1:   Summarize Your Assets**

| | **Your assets** Value of what you own |
|---|---|

1. **Schedule A/B: Property** (Official Form 106A/B)
   1a. Copy line 55, Total real estate, from Schedule A/B..................................................  $ **9,500.00**

   1b. Copy line 62, Total personal property, from Schedule A/B........................................  $ **41,664.00**

   1c. Copy line 63, Total of all property on Schedule A/B.................................................  $ **51,164.00**

**Part 2:   Summarize Your Liabilities**

| | **Your liabilities** Amount you owe |
|---|---|

2. *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 106D)
   2a. Copy the total you listed in Column A, *Amount of claim,* at the bottom of the last page of Part 1 of *Schedule D...*  $ **39,203.00**

3. *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 106E/F)
   3a. Copy the total claims from Part 1 (priority unsecured claims) from line 6e of *Schedule E/F*................................  $ **40,000.00**

   3b. Copy the total claims from Part 2 (nonpriority unsecured claims) from line 6j of *Schedule E/F*...........................  $ **65,988.00**

   **Your total liabilities** $ **145,191.00**

**Part 3:   Summarize Your Income and Expenses**

4. *Schedule I: Your Income* (Official Form 106I)
   Copy your combined monthly income from line 12 of *Schedule I*...............................................................  $ **298.00**

5. *Schedule J: Your Expenses* (Official Form 106J)
   Copy your monthly expenses from line 22c of *Schedule J*........................................................................  $ **4,630.00**

**Part 4:   Answer These Questions for Administrative and Statistical Records**

6. **Are you filing for bankruptcy under Chapters 7, 11, or 13?**

   ☐ No. You have nothing to report on this part of the form. Check this box and submit this form to the court with your other schedules.

   ☐ Yes

7. **What kind of debt do you have?**

   ■ **Your debts are primarily consumer debts.** *Consumer debts* are those "incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8). Fill out lines 8-9g for statistical purposes. 28 U.S.C. § 159.

   ☐ **Your debts are not primarily consumer debts.** You have nothing to report on this part of the form. *Check this box* and submit this form to the court with your other schedules.

Debtor 1  **Curtis Parker**                                                     Case number *(if known)* _____

8. **From the *Statement of Your Current Monthly Income*:** Copy your total current monthly income from Official Form 122A-1 Line 11; **OR,** Form 122B Line 11; **OR,** Form 122C-1 Line 14.

$ _____**1,854.62**

9. **Copy the following special categories of claims from Part 4, line 6 of *Schedule E/F*:**

| From Part 4 on *Schedule E/F*, copy the following: | Total claim |
|---|---|
| 9a. Domestic support obligations (Copy line 6a.) | $ **0.00** |
| 9b. Taxes and certain other debts you owe the government. (Copy line 6b.) | $ **40,000.00** |
| 9c. Claims for death or personal injury while you were intoxicated. (Copy line 6c.) | $ **0.00** |
| 9d. Student loans. (Copy line 6f.) | $ **0.00** |
| 9e. Obligations arising out of a separation agreement or divorce that you did not report as priority claims. (Copy line 6g.) | $ **0.00** |
| 9f. Debts to pension or profit-sharing plans, and other similar debts. (Copy line 6h.) | +$ **0.00** |
| 9g. **Total.** Add lines 9a through 9f. | $ **40,000.00** |

| Fill in this information to identify your case: |
|---|

| | |
|---|---|
| Debtor 1 | *Curtis Parker* |
| | First Name    Middle Name    Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name    Middle Name    Last Name |
| United States Bankruptcy Court for the: | NORTHERN DISTRICT OF GEORGIA |
| Case number | |
| (if known) | |

☐ Check if this is an
amended filing

Official Form 106Dec

# Declaration About an Individual Debtor's Schedules

12/15

If two married people are filing together, both are equally responsible for supplying correct information.

**You must file this form whenever you file bankruptcy schedules or amended schedules. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.**

| | **Sign Below** |
|---|---|

**Did you pay or agree to pay someone who is NOT an attorney to help you fill out bankruptcy forms?**

■ No

☐ Yes. Name of person _____    Attach *Bankruptcy Petition Preparer's Notice, Declaration, and Signature* (Official Form 119)

**Under penalty of perjury, I declare that I have read the summary and schedules filed with this declaration and that they are true and correct.**

| X */s/ Curtis Parker* | X |
|---|---|
| *Curtis Parker* | Signature of Debtor 2 |
| Signature of Debtor 1 | |
| Date *September 29, 2025* | Date |

Official Form 106Dec                    **Declaration About an Individual Debtor's Schedules**

B2030 (Form 2030) (12/15)

# United States Bankruptcy Court
## Northern District of Georgia

In re **Curtis Parker** _____  Case No. _____

_____  Debtor(s)   Chapter **7** _____

# DISCLOSURE OF COMPENSATION OF ATTORNEY FOR DEBTOR(S)

1. Pursuant to 11 U .S.C. § 329(a) and Fed. Bankr. P. 2016(b), I certify that I am the attorney for the above named debtor(s) and that compensation paid to me within one year before the filing of the petition in bankruptcy, or agreed to be paid to me, for services rendered or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case is as follows:

   For legal services, I have agreed to accept _____  $ _____ **900.00**

   Prior to the filing of this statement I have received _____  $ _____ **0.00**

   Balance Due _____  $ _____ **900.00**

2. $ **338.00** of the filing fee has been paid.

3. The source of the compensation paid to me was:

   ■ Debtor    ☐ Other (specify):

4. The source of compensation to be paid to me is:

   ☐ Debtor    ■ Other (specify):  **Metlife**

5. ■ I have not agreed to share the above-disclosed compensation with any other person unless they are members and associates of my law firm.

   ☐ I have agreed to share the above-disclosed compensation with a person or persons who are not members or associates of my law firm. A copy of the agreement, together with a list of the names of the people sharing in the compensation is attached.

6. In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:

   a. Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;
   b. Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;
   c. Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof;
   d. Representation of the debtor in adversary proceedings and other contested bankruptcy matters;
   e. [Other provisions as needed]

7. By agreement with the debtor(s), the above-disclosed fee does not include the following service:

| CERTIFICATION |
|---|
| I certify that the foregoing is a complete statement of any agreement or arrangement for payment to me for representation of the debtor(s) in this bankruptcy proceeding. |

**September 29, 2025** _____     /s/ Karmel Sunzette Davis _____
_Date_                                            **Karmel Sunzette Davis 007707**
                                                  _Signature of Attorney_
                                                  **Karmel S. Davis & Associates**
                                                  **P.O. Box 5736**
                                                  **Douglasville, GA 30154**
                                                  **(678) 715-0967  Fax: (678) 715-0987**
                                                  **info@karmeldavislaw.com**
                                                  _Name of law firm_

## United States Bankruptcy Court
### Northern District of Georgia

In re  **Curtis Parker**

_____

Debtor(s)

Case No. _____

Chapter  **7** _____

# VERIFICATION OF CREDITOR MATRIX

The above-named Debtor hereby verifies that the attached list of creditors is true and correct to the best of his/her knowledge.

Date:  **September 29, 2025**
_____

**/s/ Curtis Parker**
_____

**Curtis Parker**
Signature of Debtor

# Notice Required by 11 U.S.C. § 342(b) for Individuals Filing for Bankruptcy (Form 2010)

This notice is for you if:

> You are an individual filing for bankruptcy, and

> Your debts are primarily consumer debts. *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

**The types of bankruptcy that are available to individuals**

Individuals who meet the qualifications may file under one of four different chapters of Bankruptcy Code:

> Chapter 7 - Liquidation

> Chapter 11 - Reorganization

> Chapter 12 - Voluntary repayment plan for family farmers or fishermen

> Chapter 13 - Voluntary repayment plan for individuals with regular income

**You should have an attorney review your decision to file for bankruptcy and the choice of chapter.**

| Chapter 7: | Liquidation |
|---|---|
| $245 | filing fee |
| $78 | administrative fee |
| + $15 | trustee surcharge |
| $338 | total fee |

Chapter 7 is for individuals who have financial difficulty preventing them from paying their debts and who are willing to allow their non-exempt property to be used to pay their creditors. The primary purpose of filing under chapter 7 is to have your debts discharged. The bankruptcy discharge relieves you after bankruptcy from having to pay many of your pre-bankruptcy debts. Exceptions exist for particular debts, and liens on property may still be enforced after discharge. For example, a creditor may have the right to foreclose a home mortgage or repossess an automobile.

However, if the court finds that you have committed certain kinds of improper conduct described in the Bankruptcy Code, the court may deny your discharge.

You should know that even if you file chapter 7 and you receive a discharge, some debts are not discharged under the law. Therefore, you may still be responsible to pay:

> most taxes;

> most student loans;

> domestic support and property settlement obligations;

most fines, penalties, forfeitures, and criminal restitution obligations; and

certain debts that are not listed in your bankruptcy papers.

You may also be required to pay debts arising from:

fraud or theft;

fraud or defalcation while acting in breach of fiduciary capacity;

intentional injuries that you inflicted; and

death or personal injury caused by operating a motor vehicle, vessel, or aircraft while intoxicated from alcohol or drugs.

If your debts are primarily consumer debts, the court can dismiss your chapter 7 case if it finds that you have enough income to repay creditors a certain amount. You must file *Chapter 7 Statement of Your Current Monthly Income* (Official Form 122A–1) if you are an individual filing for bankruptcy under chapter 7. This form will determine your current monthly income and compare whether your income is more than the median income that applies in your state.

If your income is not above the median for your state, you will not have to complete the other chapter 7 form, the *Chapter 7 Means Test Calculation* (Official Form 122A–2).

If your income is above the median for your state, you must file a second form —the *Chapter 7 Means Test Calculation* (Official Form 122A–2). The calculations on the form— sometimes called the *Means Test*—deduct from your income living expenses and payments on certain debts to determine any amount available to pay unsecured creditors. If

your income is more than the median income for your state of residence and family size, depending on the results of the *Means Test*, the U.S. trustee, bankruptcy administrator, or creditors can file a motion to dismiss your case under § 707(b) of the Bankruptcy Code. If a motion is filed, the court will decide if your case should be dismissed. To avoid dismissal, you may choose to proceed under another chapter of the Bankruptcy Code.

If you are an individual filing for chapter 7 bankruptcy, the trustee may sell your property to pay your debts, subject to your right to exempt the property or a portion of the proceeds from the sale of the property. The property, and the proceeds from property that your bankruptcy trustee sells or liquidates that you are entitled to, is called *exempt property*. Exemptions may enable you to keep your home, a car, clothing, and household items or to receive some of the proceeds if the property is sold.

Exemptions are not automatic. To exempt property, you must list it on *Schedule C: The Property You Claim as Exempt* (Official Form 106C). If you do not list the property, the trustee may sell it and pay all of the proceeds to your creditors.

---

**Chapter 11: Reorganization**

| | | |
|---|---:|---|
| | $1,167 | filing fee |
| + | $571 | administrative fee |
| | $1,738 | total fee |

Chapter 11 is often used for reorganizing a business, but is also available to individuals. The provisions of chapter 11 are too complicated to summarize briefly.

**Read These Important Warnings**

Because bankruptcy can have serious long-term financial and legal consequences, including loss of your property, you should hire an attorney and carefully consider all of your options before you file. Only an attorney can give you legal advice about what can happen as a result of filing for bankruptcy and what your options are. If you do file for bankruptcy, an attorney can help you fill out the forms properly and protect you, your family, your home, and your possessions.

Although the law allows you to represent yourself in bankruptcy court, you should understand that many people find it difficult to represent themselves successfully. The rules are technical, and a mistake or inaction may harm you. If you file without an attorney, you are still responsible for knowing and following all of the legal requirements.

You should not file for bankruptcy if you are not eligible to file or if you do not intend to file the necessary documents.

Bankruptcy fraud is a serious crime; you could be fined and imprisoned if you commit fraud in your bankruptcy case. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

### Chapter 12: Repayment plan for family farmers or fishermen

|   |   |   |
|---|---|---|
|   | $200 | filing fee |
| + | $78 | administrative fee |
|   | $278 | total fee |

Similar to chapter 13, chapter 12 permits family farmers and fishermen to repay their debts over a period of time using future earnings and to discharge some debts that are not paid.

### Chapter 13: Repayment plan for individuals with regular income

|   |   |   |
|---|---|---|
|   | $235 | filing fee |
| + | $78 | administrative fee |
|   | $313 | total fee |

Chapter 13 is for individuals who have regular income and would like to pay all or part of their debts in installments over a period of time and to discharge some debts that are not paid. You are eligible for chapter 13 only if your debts are not more than certain dollar amounts set forth in 11 U.S.C. § 109.

Under chapter 13, you must file with the court a plan to repay your creditors all or part of the money that you owe them, usually using your future earnings. If the court approves your plan, the court will allow you to repay your debts, as adjusted by the plan, within 3 years or 5 years, depending on your income and other factors.

After you make all the payments under your plan, many of your debts are discharged. The debts that are not discharged and that you may still be responsible to pay include:

domestic support obligations,

most student loans,

certain taxes,

debts for fraud or theft,

debts for fraud or defalcation while acting in a fiduciary capacity,

most criminal fines and restitution obligations,

certain debts that are not listed in your bankruptcy papers,

certain debts for acts that caused death or personal injury, and

certain long-term secured debts.

> ### Warning: File Your Forms on Time
>
> Section 521(a)(1) of the Bankruptcy Code requires that you promptly file detailed information about your creditors, assets, liabilities, income, expenses and general financial condition. The court may dismiss your bankruptcy case if you do not file this information within the deadlines set by the Bankruptcy Code, the Bankruptcy Rules, and the local rules of the court.
>
> For more information about the documents and their deadlines, go to:
> http://www.uscourts.gov/forms/bankruptcy-forms

**Bankruptcy crimes have serious consequences**

If you knowingly and fraudulently conceal assets or make a false oath or statement under penalty of perjury—either orally or in writing—in connection with a bankruptcy case, you may be fined, imprisoned, or both.

All information you supply in connection with a bankruptcy case is subject to examination by the Attorney General acting through the Office of the U.S. Trustee, the Office of the U.S. Attorney, and other offices and employees of the U.S. Department of Justice.

**Make sure the court has your mailing address**

The bankruptcy court sends notices to the mailing address you list on *Voluntary Petition for Individuals Filing for Bankruptcy* (Official Form 101). To ensure that you receive information about your case, Bankruptcy Rule 4002 requires that you notify the court of any changes in your address.

A married couple may file a bankruptcy case together—called a *joint case*. If you file a joint case and each spouse lists the same mailing address on the bankruptcy petition, the bankruptcy court generally will mail you and your spouse one copy of each notice, unless you file a statement with the court asking that each spouse receive separate copies.

**Understand which services you could receive from credit counseling agencies**

The law generally requires that you receive a credit counseling briefing from an approved credit counseling agency. 11 U.S.C. § 109(h). If you are filing a joint case, both spouses must receive the briefing. With limited exceptions, you must receive it within the 180 days **before** you file your bankruptcy petition. This briefing is usually conducted by telephone or on the Internet.

In addition, after filing a bankruptcy case, you generally must complete a financial management instructional course before you can receive a discharge. If you are filing a joint case, both spouses must complete the course.

You can obtain the list of agencies approved to provide both the briefing and the instructional course from: http://www.uscourts.gov/services-forms/bankruptcy/credit-counseling-and-debtor-education-courses.

In Alabama and North Carolina, go to: http://www.uscourts.gov/services-forms/bankruptcy/credit-counseling-and-debtor-education-courses.

If you do not have access to a computer, the clerk of the bankruptcy court may be able to help you obtain the list.

| Fill in this information to identify your case: | Check one box only as directed in this form and in Form 122A-1Supp: |
|---|---|

Fill in this information to identify your case:

Debtor 1    **_Curtis Parker_**

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:    Northern District of Georgia

Case number
(if known)

Check one box only as directed in this form and in Form 122A-1Supp:

■ 1. There is no presumption of abuse

☐ 2. The calculation to determine if a presumption of abuse applies will be made under *Chapter 7 Means Test Calculation* (Official Form 122A-2).

☐ 3. The Means Test does not apply now because of qualified military service but it could apply later.

☐ Check if this is an amended filing

## Official Form 122A - 1
# Chapter 7 Statement of Your Current Monthly Income
**12/19**

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for being accurate. If more space is needed, attach a separate sheet to this form. Include the line number to which the additional information applies. On the top of any additional pages, write your name and case number (if known). If you believe that you are exempted from a presumption of abuse because you do not have primarily consumer debts or because of qualifying military service, complete and file *Statement of Exemption from Presumption of Abuse Under § 707(b)(2)* (Official Form 122A-1Supp) with this form.

**Part 1:**    **Calculate Your Current Monthly Income**

1. **What is your marital and filing status?** Check one only.

   ■ **Not married.** Fill out Column A, lines 2-11.

   ☐ **Married and your spouse is filing with you.** Fill out both Columns A and B, lines 2-11.

   ☐ **Married and your spouse is NOT filing with you.** You and your spouse are:

      ☐ **Living in the same household and are not legally separated.** Fill out both Columns A and B, lines 2-11.

      ☐ **Living separately or are legally separated.** Fill out Column A, lines 2-11; do not fill out Column B. By checking this box, you declare under penalty of perjury that you and your spouse are legally separated under nonbankruptcy law that applies or that you and your spouse are living apart for reasons that do not include evading the Means Test requirements. 11 U.S.C § 707(b)(7)(B).

Fill in the average monthly income that you received from all sources, derived during the 6 full months before you file this bankruptcy case. 11 U.S.C. § 101(10A). For example, if you are filing on September 15, the 6-month period would be March 1 through August 31. If the amount of your monthly income varied during the 6 months, add the income for all 6 months and divide the total by 6. Fill in the result. Do not include any income amount more than once. For example, if both spouses own the same rental property, put the income from that property in one column only. If you have nothing to report for any line, write $0 in the space.

| | | Column A Debtor 1 | Column B Debtor 2 or non-filing spouse |
|---|---|---|---|
| 2. | **Your gross wages, salary, tips, bonuses, overtime, and commissions** (before all payroll deductions). | $    *1,854.62* | $ |
| 3. | **Alimony and maintenance payments.** Do not include payments from a spouse if Column B is filled in. | $    *0.00* | $ |
| 4. | **All amounts from any source which are regularly paid for household expenses of you or your dependents, including child support.** Include regular contributions from an unmarried partner, members of your household, your dependents, parents, and roommates. Include regular contributions from a spouse only if Column B is not filled in. Do not include payments you listed on line 3. | $    *0.00* | $ |

5. **Net income from operating a business, profession, or farm**

| | | Debtor 1 | | |
|---|---|---|---|---|
| Gross receipts (before all deductions) | $   *0.00* | | | |
| Ordinary and necessary operating expenses | -$   *0.00* | | | |
| Net monthly income from a business, profession, or farm | $   *0.00* | Copy here -> | $   *0.00* | $ |

6. **Net income from rental and other real property**

| | | Debtor 1 | | |
|---|---|---|---|---|
| Gross receipts (before all deductions) | $   *0.00* | | | |
| Ordinary and necessary operating expenses | -$   *0.00* | | | |
| Net monthly income from rental or other real property | $   *0.00* | Copy here -> | $   *0.00* | $ |

7. **Interest, dividends, and royalties**      $   *0.00*    $

Software Copyright (c) 1996-2025 Best Case, LLC - www.bestcase.com

Debtor 1  *Curtis Parker*                     Case number (*if known*) _____

|  | Column A<br>Debtor 1 | Column B<br>Debtor 2 or<br>non-filing spouse |
|---|---|---|

8. **Unemployment compensation**                              $ _____ 0.00      $ _____

   Do not enter the amount if you contend that the amount received was a benefit under the Social Security Act. Instead, list it here:

   For you ......................................................... $ _____ 0.00

   For your spouse ........................................... $ _____

9. **Pension or retirement income.** Do not include any amount received that was a benefit under the Social Security Act. Also, except as stated in the next sentence, do not include any compensation, pension, pay, annuity, or allowance paid by the United States Government in connection with a disability, combat-related injury or disability, or death of a member of the uniformed services. If you received any retired pay paid under chapter 61 of title 10, then include that pay only to the extent that it does not exceed the amount of retired pay to which you would otherwise be entitled if retired under any provision of title 10 other than chapter 61 of that title.      $ _____ 0.00      $ _____

10. **Income from all other sources not listed above.** Specify the source and amount. Do not include any benefits received under the Social Security Act; payments received as a victim of a war crime, a crime against humanity, or international or domestic terrorism; or compensation  pension, pay, annuity, or allowance paid by the United States Government in connection with a disability, combat-related injury or disability, or death of a member of the uniformed services. If necessary, list other sources on a separate page and put the total below..

    . _____                           $ _____ 0.00      $ _____

    _____                             $ _____ 0.00      $ _____

    Total amounts from separate pages, if any.        + $ _____ 0.00      $ _____

11. **Calculate your total current monthly income.** Add lines 2 through 10 for each column. Then add the total for Column A to the total for Column B.      $ _____ 1,854.62  + $ _____  = $ _____ 1,854.62

                                                                                                  Total current monthly<br>income

**Part 2:    Determine Whether the Means Test Applies to You**

12. **Calculate your current monthly income for the year.** Follow these steps:

    12a. Copy your total current monthly income from line 11 ............... Copy line 11 here=>      $ _____ 1,854.62

         Multiply by 12 (the number of months in a year)                                      **x 12**

    12b. The result is your annual income for this part of the form        12b.  $ _____ 22,255.44

13. **Calculate the median family income that applies to you.** Follow these steps:

    Fill in the state in which you live.            *GA*

    Fill in the number of people in your household.     *1*

    Fill in the median family income for your state and size of household.      13.  $ _____ 62,401.00
    To find a list of applicable median income amounts, go online using the link specified in the separate instructions for this form. This list may also be available at the bankruptcy clerk's office.

14. **How do the lines compare?**

    14a. ■  Line 12b is less than or equal to line 13. On the top of page 1, check box 1, *There is no presumption of abuse*.
            Go to Part 3. Do NOT fill out or file Official Form 122A–2.

    14b. ☐  Line 12b is more than line 13. On the top of page 1, check box 2, *The presumption of abuse is determined by Form 122A-2*.
            Go to Part 3 and fill out Form 122A–2.

**Part 3:    Sign Below**

    By signing here, I declare under penalty of perjury that the information on this statement and in any attachments is true and correct.

    **X** */s/ Curtis Parker* _____
    *Curtis Parker*
    Signature of Debtor 1

    Date  *September 29, 2025*

Debtor 1     *Curtis Parker*                                              Case number (*if known*) _____

MM / DD  / YYYY

If you checked line 14a, do NOT fill out or file Form 122A-2.

If you checked line 14b, fill out Form 122A-2 and file it with this form.

Affirm, Inc.
650 California St Fl 12
San Francisco, CA 94108


Affirm, Inc.
Attn: Bankruptcy
650 California St, Fl 12
San Francisco, CA 94108


Afterpay
GPO Box 2269
Norcross, GA 30010


Ally Credit Card/cws
Po Box 9222
Old Bethpage, NY 11804


American Express
P.O. Box 981535
El Paso, TX 79998-1535


Amex
P.o. Box 981537
El Paso, TX 79998


Amex
Correspondence/Bankruptcy
Po Box 981535
El Paso, TX 79998


Aspire Credit Card
Po Box 105555
Atlanta, GA 30348


Aspire Credit Card
Attn: Bankruptcy
Po Box 105555
Atlanta, GA 30348

Avant/WebBank
222 W Merchandise Mart Plaza
Chicago, IL 60654


Avant/WebBank
222 North Lasalle Street
Suite 1600
Chicago, IL 60601


Carter Young
882 N. Main Street
Suite 120
Conyers, GA 30012


Comenity Bank/Jared
Po Box 182789
Columbus, OH 43218


Comenity Bank/Jared
Attn: Bankruptcy
P.O. Box 182125
Columbus, OH 43218


Comenitycapital/lxvisa
Po Box 182120
Columbus, OH 43218


Comenitycapital/lxvisa
Attn: Bankruptcy
Pob 182125
Columbus, OH 43218


Credit Collection Services
Po Box 607
Norwood, MA 02062

Credit Collection Services
Attn: Bankruptcy
725 Canton St
Norwood, MA 02062


Credit One Bank
Po Box 98872
Las Vegas, NV 89193


Credit One Bank
Attn: Bankruptcy Department
6801 Cimarron Rd
Las Vegas, NV 89113


Georgia Department of  Revenue
1800 Century Boulevard
Suite 9100
Atlanta, GA 30345


Goldman Sachs Bank USA
Lockbox 6112
Philadelphia, PA 19170


Goldman Sachs Bank USA
Attn: Bankruptcy
Po Box 70379
Philadelphia, PA 19176


Internal Revenue Service
401 West Peachtree Street, NW
Stop 334D
Atlanta, GA 30308-3539


IRS
Attn: Insolvency Dept
PO Box 7346
Philadelphia, PA 19101-7346

```
Lab Corp
P.O. Box 2240
Burlington, NC 27216


Mercury/FBT
Po Box 84064
Columbus, GA 31908


Mercury/FBT
Attn: Bankruptcy
Po Box 84064
Columbus, GA 31908


Mission Lane LLC
Po Box 105286
Atlanta, GA 30348


Mission Lane LLC
Mission Lane LLC, Attn: Bankruptcy
Po Box 105286
Atlanta, GA 30348


Onemain
Po Box 1010
Evansville, IN 47706


Prosper Funding LLC
221 Main Street
San Francisco, CA 94105


Prosper Funding LLC
Attn: Bankruptcy
221 Main Street Suite 300
San Francisco, CA 94105


Prosper Funding, Llc
221 Main Street
San Francisco, CA 94105
```

Prosper Funding, Llc
Attn: Bankruptcy Dept
221 Main Street, Ste 300
San Francisco, CA 94105


Syncb/Rooms To Go
Po Box 71757
Philadelphia, PA 19176


Syncb/Rooms To Go
Attn: Bankruptcy
Po Box 965065
Orlando, FL 32896


Synchrony Bank
Po Box 71757
Philadelphia, PA 19176


Synchrony Bank
Attn: Bankruptcy Dept.
P.O. Box 965064
Orlando, FL 32896


Synchrony Bank/Care Credit
Po Box 71757
Philadelphia, PA 19176


Synchrony Bank/Care Credit
Attn: Bankruptcy
Po Box 965060
Orlando, FL 32896


Toyota Financial Services
Credit Dispute Research Team
Dallas, TX 75265

Toyota Financial Services
Attn: Bankruptcy
Po Box 22171
Tempe, AZ 85285


Uprova Credit
635 E Hwy 20 V
Upper Lake, CA 95485

FILED IN CLERK'S OFFICE
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT
OF GEORGIA

2026 JAN -6 AM 1: 21

VANIA S. ALLEN
CLERK

BY: NS
DEPUTY CLERK

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF GEORGIA

## ATLANTA DIVISION

CURTIS PARKER, Debtor.

V.

2017-1 IH Borrower LP's ("IH")

**Chapter 7 Case No. 25-61216-bem**

## MOTION TO DISMISS BASED ON SETTLEMENT

COMES NOW the Plaintiff, Curtis Parker respectfully moves this Court to dismiss the above-
captioned action in its entirety **with prejudice**, pursuant to Rule 41(a)(2) of the Federal Rules of
Civil Procedure [or applicable rule], on the grounds that the parties have reached a full and final
settlement resolving all claims and issues in this matter.

In support thereof, the movant states as follows:

1. The parties have engaged in good-faith negotiations and have reached a mutually agreed-
   upon settlement resolving all claims asserted in this action.

2. The settlement fully resolves the disputes giving rise to this case and renders further
   litigation unnecessary.

3. The parties have agreed that dismissal of this action with prejudice is appropriate.

4. No party will be prejudiced by dismissal, and judicial economy will be served by
   terminating this matter.

5. The terms of the settlement are confidential and need not be disclosed to the Court.

Accordingly, the movant respectfully requests that the Court enter an Order dismissing this

action **with prejudice**, with each party to bear its own costs and fees, unless otherwise agreed.

Respectfully submitted,

January 6, 2026

/s/ Curtis Parker

Pro Se Plaintiff

1149 Autumn Glen Way

Dacula, GA  30019

(770) 369-6521

## CERTIFICATE OF SERVICE

This is to certify that I have this day served the foregoing Motion To Dismiss due to Settlement

by way of regular U.S. Mail and Email to the following party of record:

Matthew F. Totten
Email: mft@tottenfirm.com
Georgia Bar No. 798589
The Totten Law Firm, LLC
5579 Chamblee-Dunwoody Road, Suite B-136
Atlanta, Georgia 30338
Attorney of records for Invitation Homes

**On January 6, 2026.**

Curtis Parker
*Pro Se* Plaintiff
1149 Autumn Glen Way
Dacula, GA  30019

**IT IS ORDERED as set forth below:**

**Date: January 9, 2026**

_____

**Barbara Ellis-Monro**
**U.S. Bankruptcy Court Judge**

---

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| IN RE: | |
| CURTIS PARKER, | CASE NO. 25-61216-BEM |
| Debtor. | CHAPTER 7 |
| CURTIS PARKER, | |
| Movant, | |
| v. | Contested Matter |
| 2017-1 IH BORROWER, LP, | |
| Respondent. | |

### O R D E R

On November 10, 2025, Debtor filed a *Motion for Sanctions and Request for Rent Waiver for Violation of the Automatic Stay*, which he subsequently supplemented and amended several times (collectively, the "Motion for Sanctions"). [Docs. 11, 15, 17, 21, 22, 23]. The Motion for Sanctions was scheduled for an evidentiary hearing on March 31, 2026. [Doc. 24]. On

December 29, 2025, Respondent filed a *Notice of Settlement* stating that the parties have entered into a settlement resolving all claims against Respondent. [Doc. 30]. On January 6, 2026, Debtor filed a *Motion to Dismiss Based on Settlement*, in which he states that the parties have reached a settlement that fully resolves the disputes in this contested matter and requests that the matter be dismissed with prejudice the (the "Motion to Dismiss"). [Doc. 32]. Accordingly, it is

ORDERED that the Motion to Dismiss is GRANTED, and the Motion for Sanctions is DISMISSED with prejudice. The evidentiary hearing scheduled in this matter for March 31, 2026 is cancelled.

**END OF ORDER**

**Distribution List**

Curtis Parker
1149 Autumn Glen Way
Dacula, GA 30019

Kyle A. Cooper
Kyle A. Cooper Trustee
120 Travertine Trl
Alpharetta, GA 30022

Matthew Franklin Totten
The Totten Firm, LLC
5579 Chamblee Dunwoody Rd
Ste B-136
Atlanta, GA 30338

# Resident Ledger



**Date: 01/09/2026**

| Code | t0317101 | Property | 10105318 | Lease From | 04/13/2025 |
|------|----------|----------|----------|------------|------------|
| Name | Curtis Parker | Unit | 10105318 | Lease To | 04/12/2026 |
| Address | 1149 Autumn Glen Way | Status | Eviction | Move In | 04/13/2023 |
| | | Rent | 2408.00 | Move Out | 01/30/2026 |
| City | Dacula, GA 30019 | Phone (H) | (770) 369-6521 | Phone (W) | |

| Date | Chg Code | Description | Charge | Payment | Balance | Chg/Rec |
|------|----------|-------------|--------|---------|---------|---------|
| 03/04/2023 | appfee | Application Charges (Curtis Parker) | 50.00 | | 50.00 | 29756637 |
| 03/04/2023 | | chk# 176933067 Credit Card On-Line Payment ; Web - Online Leasing | | 50.00 | 0.00 | 9554025 |
| 03/05/2023 | holdfee | Pre-Lease Hold Fee | 500.00 | | 500.00 | 29765229 |
| 03/07/2023 | | chk# 177388992 Debit Card On-Line Payment ; Web - Online Leasing | | 500.00 | 0.00 | 9566017 |
| 04/12/2023 | deposit | Security Deposit | 2,241.00 | | 2,241.00 | 30643816 |
| 04/12/2023 | movein | Move in Funds | 924.57 | | 3,165.57 | 30644148 |
| 04/12/2023 | | chk# 182075391 Debit Card On-Line Payment ; Web - Online Leasing | | 2,241.00 | 924.57 | 9843310 |
| 04/12/2023 | | chk# 182075392 Debit Card On-Line Payment ; Web - Online Leasing | | 924.57 | 0.00 | 9843311 |
| 04/13/2023 | movein | Move-In Funds | (924.57) | | (924.57) | 30660850 |
| 04/13/2023 | rent | Rent for 18 days :Reversed by Charge Ctrl# 30660870 | 1,281.00 | | 356.43 | 30660851 |
| 04/13/2023 | smtreng2 | Smart Home Fee w/ Video Doorbell for 18 days | 24.00 | | 380.43 | 30660852 |
| 04/13/2023 | filter | HVAC Filter Fee for 18 days | 5.97 | | 386.40 | 30660853 |
| 04/13/2023 | admin | Administrative Setup Fee | 50.00 | | 436.40 | 30660854 |
| 04/13/2023 | holdfee | Pre-Lease Hold Fee - Reallocated to rent | (500.00) | | (63.60) | 30660855 |
| 04/14/2023 | rent | rent: Corrected prorated rent | 1,344.60 | | 1,281.00 | 30660864 |
| 04/14/2023 | rent | :Reverse Charge Ctrl#30660851 Incorrect Prorated Rent | (1,281.00) | | 0.00 | 30660870 |
| 04/27/2023 | | chk# 183048458 Debit Card On-Line Payment ; Mobile Web - Resident Services | | 2,290.95 | (2,290.95) | 9918570 |
| 05/01/2023 | rent | Resident Rent (05/2023) | 2,241.00 | | (49.95) | 31109418 |
| 05/01/2023 | smtreng2 | Smart Home Fee w/ Video Doorbell (05/2023) | 40.00 | | (9.95) | 31109419 |
| 05/01/2023 | filter | HVAC Filter (05/2023) | 9.95 | | 0.00 | 31109420 |
| 06/01/2023 | rent | Resident Rent (06/2023) | 2,241.00 | | 2,241.00 | 31945594 |
| 06/01/2023 | smtreng2 | Smart Home Fee w/ Video Doorbell (06/2023) | 40.00 | | 2,281.00 | 31945595 |
| 06/01/2023 | filter | HVAC Filter (06/2023) | 9.95 | | 2,290.95 | 31945596 |
| 06/04/2023 | late | Late Fee, 10% of $2241.00 | 224.10 | | 2,515.05 | 32246647 |
| 06/04/2023 | | chk# 189748264 Debit Card On-Line Payment ; Mobile Web - Resident Services | | 2,290.95 | 224.10 | 10262432 |
| 06/07/2023 | | chk# 190358050 Debit Card On-Line Payment ; Mobile Web - Resident Services | | 224.10 | 0.00 | 10285233 |
| 07/01/2023 | utlsetup | Acct. Setup | 25.00 | | 25.00 | 32398453 |
| 07/01/2023 | utlsetup | Service Fee | 9.95 | | 34.95 | 32398454 |
| 07/01/2023 | utlsewcb | Sewer - 04/13/23-05/04/23 | 25.03 | | 59.98 | 32398455 |
| 07/01/2023 | utlgascb | Vacant Gas - 04/13/23-04/28/23 | 24.80 | | 84.78 | 32398456 |
| 07/01/2023 | utlsetup | Vacant Service Fee - 04/13/23-04/28/23 | 25.00 | | 109.78 | 32398457 |
| 07/01/2023 | utlwatcb | Water - 04/13/23-05/04/23 | 17.31 | | 127.09 | 32398458 |
| 07/01/2023 | rent | Resident Rent (07/2023) | 2,241.00 | | 2,368.09 | 32792927 |
| 07/01/2023 | smtreng2 | Smart Home Fee w/ Video Doorbell (07/2023) | 40.00 | | 2,408.09 | 32792928 |
| 07/01/2023 | filter | HVAC Filter (07/2023) | 9.95 | | 2,418.04 | 32792929 |
| 07/03/2023 | | chk# :ACH-WEB Online Payment - EFT Payment. Mobile Web - Resident Services | | 2,418.04 | 0.00 | 10498026 |
| 08/01/2023 | utlsetup | Service Fee | 9.95 | | 9.95 | 33252167 |
| 08/01/2023 | utlsewcb | Sewer - 05/05/23-06/06/23 | 55.31 | | 65.26 | 33252168 |
| 08/01/2023 | utlgascb | Vacant Gas - 04/28/23-05/30/23 | 54.92 | | 120.18 | 33252169 |
| 08/01/2023 | utlsetup | Vacant Service Fee - 04/28/23-05/30/23 | 25.00 | | 145.18 | 33252170 |
| 08/01/2023 | utlwatcb | Water - 05/05/23-06/06/23 | 36.41 | | 181.59 | 33252171 |

| Date | Code | Description | Charge | Payment | Balance | Ref# |
|---|---|---|---|---|---|---|
| 08/01/2023 | filter | HVAC Filter (08/2023) | 9.95 | | 2,472.54 | 33657265 |
| 08/03/2023 | | chk# :ACH-WEB Online Payment - EFT Payment. Mobile Web - Resident Services | | 2,472.54 | 0.00 | 10758272 |
| 09/01/2023 | utlsetup | Service Fee | 9.95 | | 9.95 | 34114801 |
| 09/01/2023 | utlsewcb | Sewer - 06/07/23-07/07/23 | 46.29 | | 56.24 | 34114802 |
| 09/01/2023 | utlgascb | Vacant Gas - 05/30/23-06/30/23 | 48.99 | | 105.23 | 34114803 |
| 09/01/2023 | utlsetup | Vacant Service Fee - 05/30/23-06/30/23 | 25.00 | | 130.23 | 34114804 |
| 09/01/2023 | utlwatcb | Water - 06/07/23-07/07/23 | 30.88 | | 161.11 | 34114805 |
| 09/01/2023 | rent | Resident Rent (09/2023) | 2,241.00 | | 2,402.11 | 34501736 |
| 09/01/2023 | smtreng2 | Smart Home Fee w/ Video Doorbell (09/2023) | 40.00 | | 2,442.11 | 34501737 |
| 09/01/2023 | filter | HVAC Filter (09/2023) | 9.95 | | 2,452.06 | 34501738 |
| 09/03/2023 | | chk# :ACH-WEB Online Payment - EFT Payment. Mobile Web - Resident Services | | 2,452.06 | 0.00 | 10996734 |
| 10/01/2023 | utlsetup | Service Fee | 9.95 | | 9.95 | 34932938 |
| 10/01/2023 | utlsewcb | Sewer - 07/08/23-08/07/23 | 42.68 | | 52.63 | 34932939 |
| 10/01/2023 | utlgascb | Vacant Gas - 06/30/23-07/28/23 | 46.60 | | 99.23 | 34932940 |
| 10/01/2023 | utlsetup | Vacant Service Fee - 06/30/23-07/28/23 | 25.00 | | 124.23 | 34932941 |
| 10/01/2023 | utlwatcb | Water - 07/08/23-08/07/23 | 28.67 | | 152.90 | 34932942 |
| 10/01/2023 | filter | HVAC Filter (10/2023) | 9.95 | | 162.85 | 35362503 |
| 10/01/2023 | smtreng2 | Smart Home Fee w/ Video Doorbell (10/2023) | 40.00 | | 202.85 | 35362504 |
| 10/01/2023 | rent | Resident Rent (10/2023) | 2,241.00 | | 2,443.85 | 35362505 |
| 10/02/2023 | | chk# :ACH-WEB Online Payment - EFT Payment. Mobile Web - Resident Services | | 2,443.85 | 0.00 | 11221012 |
| 11/01/2023 | utlsetup | Service Fee | 9.95 | | 9.95 | 35837394 |
| 11/01/2023 | utlsewcb | Sewer - 08/08/23-09/07/23 | 34.56 | | 44.51 | 35837395 |
| 11/01/2023 | utlgascb | Vacant Gas - 07/28/23-08/30/23 | 47.83 | | 92.34 | 35837396 |
| 11/01/2023 | utlsetup | Vacant Service Fee - 07/28/23-08/30/23 | 25.00 | | 117.34 | 35837397 |
| 11/01/2023 | utlwatcb | Water - 08/08/23-09/07/23 | 23.69 | | 141.03 | 35837398 |
| 11/01/2023 | rent | Resident Rent (11/2023) | 2,241.00 | | 2,382.03 | 36210553 |
| 11/01/2023 | smtreng2 | Smart Home Fee w/ Video Doorbell (11/2023) | 40.00 | | 2,422.03 | 36210554 |
| 11/01/2023 | filter | HVAC Filter (11/2023) | 9.95 | | 2,431.98 | 36210555 |
| 11/03/2023 | | chk# :ACH-WEB Online Payment - EFT Payment. Web - Resident Services | | 2,431.98 | 0.00 | 11481334 |
| 12/01/2023 | utlsetup | Service Fee | 9.95 | | 9.95 | 36671798 |
| 12/01/2023 | utlsewcb | Sewer - 09/08/23-10/05/23 | 48.99 | | 58.94 | 36671799 |
| 12/01/2023 | utlgascb | Vacant Gas - 08/30/23-09/27/23 | 49.12 | | 108.06 | 36671800 |
| 12/01/2023 | utlsetup | Vacant Service Fee - 08/30/23-09/27/23 | 25.00 | | 133.06 | 36671801 |
| 12/01/2023 | utlwatcb | Water - 09/08/23-10/05/23 | 32.54 | | 165.60 | 36671802 |
| 12/01/2023 | rent | Resident Rent (12/2023) | 2,241.00 | | 2,406.60 | 37045135 |
| 12/01/2023 | filter | HVAC Filter (12/2023) | 9.95 | | 2,416.55 | 37045136 |
| 12/01/2023 | smtreng2 | Smart Home Fee w/ Video Doorbell (12/2023) | 40.00 | | 2,456.55 | 37045137 |
| 12/02/2023 | | chk# :ACH-WEB Online Payment - EFT Payment. Mobile Web - Resident Services | | 2,456.55 | 0.00 | 11691591 |
| 01/01/2024 | utlsetup | Service Fee | 9.95 | | 9.95 | 37510944 |
| 01/01/2024 | utlsewcb | Sewer - 10/06/23-11/02/23 | 41.78 | | 51.73 | 37510945 |
| 01/01/2024 | utlgascb | Vacant Gas - 09/27/23-10/27/23 | 53.36 | | 105.09 | 37510946 |
| 01/01/2024 | utlsetup | Vacant Service Fee - 09/27/23-10/27/23 | 25.00 | | 130.09 | 37510947 |
| 01/01/2024 | utlwatcb | Water - 10/06/23-11/02/23 | 28.11 | | 158.20 | 37510948 |
| 01/01/2024 | filter | HVAC Filter (01/2024) | 9.95 | | 168.15 | 37891021 |
| 01/01/2024 | smtreng2 | Smart Home Fee w/ Video Doorbell (01/2024) | 40.00 | | 208.15 | 37892785 |
| 01/01/2024 | rent | Resident Rent (01/2024) | 2,241.00 | | 2,449.15 | 37892877 |
| 01/03/2024 | | chk# :ACH-WEB Online Payment - EFT Payment. Mobile Web - Resident Services | | 2,449.15 | 0.00 | 11914006 |
| 02/01/2024 | utlsetup | Service Fee | 9.95 | | 9.95 | 38402402 |
| 02/01/2024 | utlsewcb | Sewer - 11/03/23-12/05/23 | 47.19 | | 57.14 | 38402403 |
| 02/01/2024 | utlgascb | Vacant Gas - 10/27/23-11/30/23 | 99.83 | | 156.97 | 38402404 |
| 02/01/2024 | utlsetup | Vacant Service Fee - 10/27/23-11/30/23 | 25.00 | | 181.97 | 38402405 |
| 02/01/2024 | utlwatcb | Water - 11/03/23-12/05/23 | 31.43 | | 213.40 | 38402406 |
| 02/01/2024 | rent | Resident Rent (02/2024) | 2,241.00 | | 2,454.40 | 38791845 |
| 02/01/2024 | smtreng2 | Smart Home Fee w/ Video Doorbell (02/2024) | 40.00 | | 2,494.40 | 38791846 |
| 02/01/2024 | filter | HVAC Filter (02/2024) | 9.95 | | 2,504.35 | 38791847 |

| Date | Code | Description | Charge | Payment | Balance | Ref |
|---|---|---|---|---|---|---|
| 03/01/2024 | utlsetup | Service Fee | 9.95 | | 9.95 | 39314947 |
| 03/01/2024 | utlsewcb | Sewer - 11/08/23-01/03/24 | 4.55 | | 57.14 | 39314948 |
| 03/01/2024 | utlgascb | Vacant Gas - 11/30/23-12/29/23 | 141.62 | | 198.76 | 39314949 |
| 03/01/2024 | utlsetup | Vacant Service Fee - 11/30/23-12/29/23 | 25.00 | | 223.76 | 39314950 |
| 03/01/2024 | utlwatcb | Water - 12/06/23-01/05/24 | 31.43 | | 255.19 | 39314951 |
| 03/01/2024 | rent | Resident Rent (03/2024) | 2,241.00 | | 2,496.19 | 39762250 |
| 03/01/2024 | smtreng2 | Smart Home Fee w/ Video Doorbell (03/2024) | 40.00 | | 2,536.19 | 39762251 |
| 03/01/2024 | filter | HVAC Filter (03/2024) | 9.95 | | 2,546.14 | 39762252 |
| 03/03/2024 | | chk# :ACH-WEB Online Payment - EFT Payment. Mobile Web - Resident Services | | 2,546.14 | 0.00 | 12533457 |
| 04/01/2024 | utlsetup | Service Fee | 9.95 | | 9.95 | 40227683 |
| 04/01/2024 | utlsewcb | Sewer - 01/06/24-02/05/24 | 44.48 | | 54.43 | 40227684 |
| 04/01/2024 | utlgascb | Vacant Gas - 12/29/23-01/30/24 | 201.83 | | 256.26 | 40227685 |
| 04/01/2024 | utlsetup | Vacant Service Fee - 12/29/23-01/30/24 | 25.00 | | 281.26 | 40227686 |
| 04/01/2024 | utlwatcb | Water - 01/06/24-02/05/24 | 29.77 | | 311.03 | 40227687 |
| 04/01/2024 | rent | Resident Rent (04/2024) 12 days | 896.40 | | 1,207.43 | 40703971 |
| 04/01/2024 | rent | Resident Rent (04/2024) 18 days | 1,444.80 | | 2,652.23 | 40703972 |
| 04/01/2024 | smtreng2 | Smart Home Fee w/ Video Doorbell (04/2024) | 40.00 | | 2,692.23 | 40703973 |
| 04/01/2024 | filter | HVAC Filter (04/2024) | 9.95 | | 2,702.18 | 40703974 |
| 04/03/2024 | | chk# 234087226 Debit Card On-Line Payment ; Web - Resident Services | | 2,702.18 | 0.00 | 12818029 |
| 05/01/2024 | utlsetup | Service Fee | 9.95 | | 9.95 | 41198686 |
| 05/01/2024 | utlsewcb | Sewer - 02/06/24-03/05/24 | 40.87 | | 50.82 | 41198687 |
| 05/01/2024 | utlgascb | Vacant Gas - 01/30/24-02/29/24 | 138.13 | | 188.95 | 41198688 |
| 05/01/2024 | utlsetup | Vacant Service Fee - 01/30/24-02/29/24 | 25.00 | | 213.95 | 41198689 |
| 05/01/2024 | utlwatcb | Water - 02/06/24-03/05/24 | 27.56 | | 241.51 | 41198690 |
| 05/01/2024 | filter | HVAC Filter (05/2024) | 9.95 | | 251.46 | 41674276 |
| 05/01/2024 | smtreng2 | Smart Home Fee w/ Video Doorbell (05/2024) | 40.00 | | 291.46 | 41674277 |
| 05/01/2024 | rent | Resident Rent (05/2024) | 2,408.00 | | 2,699.46 | 41674278 |
| 05/03/2024 | | chk# 238482351 Debit Card On-Line Payment ; Web - Resident Services | | 2,699.46 | 0.00 | 13071934 |
| 06/01/2024 | utlsetup | Service Fee | 9.95 | | 9.95 | 42165020 |
| 06/01/2024 | utlsewcb | Sewer - 03/06/24-04/03/24 | 47.19 | | 57.14 | 42165021 |
| 06/01/2024 | utlgascb | Vacant Gas - 02/29/24-03/28/24 | 89.10 | | 146.24 | 42165022 |
| 06/01/2024 | utlsetup | Vacant Service Fee - 02/29/24-03/28/24 | 25.00 | | 171.24 | 42165023 |
| 06/01/2024 | utlwatcb | Water - 03/06/24-04/03/24 | 31.43 | | 202.67 | 42165024 |
| 06/01/2024 | rent | Resident Rent (06/2024) | 2,408.00 | | 2,610.67 | 42658618 |
| 06/01/2024 | smtreng2 | Smart Home Fee w/ Video Doorbell (06/2024) | 40.00 | | 2,650.67 | 42658619 |
| 06/01/2024 | filter | HVAC Filter (06/2024) | 9.95 | | 2,660.62 | 42658620 |
| 06/03/2024 | | chk# :ACH-WEB Online Payment - EFT Payment. Mobile Web - Resident Services | | 2,660.62 | 0.00 | 13317636 |
| 07/01/2024 | utlsetup | Service Fee | 9.95 | | 9.95 | 43196373 |
| 07/01/2024 | utlsewcb | Sewer - 04/04/24-05/03/24 | 47.19 | | 57.14 | 43196374 |
| 07/01/2024 | utlgascb | Vacant Gas - 03/28/24-04/30/24 | 73.06 | | 130.20 | 43196375 |
| 07/01/2024 | utlsetup | Vacant Service Fee - 03/28/24-04/30/24 | 25.00 | | 155.20 | 43196376 |
| 07/01/2024 | utlwatcb | Water - 04/04/24-05/03/24 | 31.43 | | 186.63 | 43196377 |
| 07/01/2024 | smtreng2 | Smart Home Fee w/ Video Doorbell (07/2024) | 40.00 | | 226.63 | 43706210 |
| 07/01/2024 | filter | HVAC Filter (07/2024) | 9.95 | | 236.58 | 43706211 |
| 07/01/2024 | rent | Resident Rent (07/2024) | 2,408.00 | | 2,644.58 | 43706212 |
| 07/03/2024 | | chk# :ACH-WEB Online Payment - EFT Payment. Mobile Web - Resident Services | | 2,644.58 | 0.00 | 13623787 |
| 08/01/2024 | utlsetup | Service Fee | 9.95 | | 9.95 | 44198608 |
| 08/01/2024 | utlsewcb | Sewer - 05/04/24-06/05/24 | 76.95 | | 86.90 | 44198609 |
| 08/01/2024 | utlgascb | Vacant Gas - 04/30/24-05/31/24 | 59.55 | | 146.45 | 44198610 |
| 08/01/2024 | utlsetup | Vacant Service Fee - 04/30/24-05/31/24 | 25.00 | | 171.45 | 44198611 |
| 08/01/2024 | utlwatcb | Water - 05/04/24-06/05/24 | 49.68 | | 221.13 | 44198612 |
| 08/01/2024 | smtreng2 | Smart Home Fee w/ Video Doorbell (08/2024) | 40.00 | | 261.13 | 44708284 |
| 08/01/2024 | filter | HVAC Filter (08/2024) | 9.95 | | 271.08 | 44708285 |
| 08/01/2024 | rent | Resident Rent (08/2024) | 2,408.00 | | 2,679.08 | 44708286 |
| 08/03/2024 | | chk# :ACH-WEB Online Payment - EFT Payment. Mobile Web - Resident Services | | 2,679.08 | 0.00 | 13896687 |
| 09/01/2024 | utlsetup | Service Fee | 9.95 | | 9.95 | 45216019 |

| Date | Code | Description | Charge | Payment | Balance | Ref |
|---|---|---|---|---|---|---|
| 09/01/2024 | utlsetup | Vacant Service Fee - 05/31/24-06/28/24 | 25.00 | | 227.03 | 45216022 |
| 09/01/2024 | utlwatcb | Water - 06/06/24-07/06/24 | | | 338.09 | 45216023 |
| 09/01/2024 | smtreng2 | Smart Home Fee w/ Video Doorbell (09/2024) | 40.00 | | 378.09 | 45768778 |
| 09/01/2024 | filter | HVAC Filter (09/2024) | 9.95 | | 388.04 | 45768779 |
| 09/01/2024 | rent | Resident Rent (09/2024) | 2,408.00 | | 2,796.04 | 45768780 |
| 09/03/2024 | | chk# :ACH-WEB Online Payment - EFT Payment. Web - Resident Services | | 2,796.04 | 0.00 | 14145370 |
| 10/01/2024 | utlsetup | Service Fee | 9.95 | | 9.95 | 46272324 |
| 10/01/2024 | utlsewcb | Sewer - 07/06/24-08/06/24 | 155.43 | | 165.38 | 46272325 |
| 10/01/2024 | utlgascb | Vacant Gas - 06/28/24-07/30/24 | 62.93 | | 228.31 | 46272326 |
| 10/01/2024 | utlsetup | Vacant Service Fee - 06/28/24-07/30/24 | 25.00 | | 253.31 | 46272327 |
| 10/01/2024 | utlwatcb | Water - 07/06/24-08/06/24 | 133.18 | | 386.49 | 46272328 |
| 10/01/2024 | smtreng2 | Smart Home Fee w/ Video Doorbell (10/2024) | 40.00 | | 426.49 | 46802047 |
| 10/01/2024 | filter | HVAC Filter (10/2024) | 9.95 | | 436.44 | 46802048 |
| 10/01/2024 | rent | Resident Rent (10/2024) | 2,408.00 | | 2,844.44 | 46802049 |
| 10/03/2024 | | chk# 260062951 Debit Card On-Line Payment ; Web - Resident Services | | 2,844.44 | 0.00 | 14463013 |
| 10/30/2024 | | chk# 262691847 Debit Card On-Line Payment ; Web - Resident Services | | 2,753.02 | (2,753.02) | 14687481 |
| 11/01/2024 | utlsetup | Service Fee | 9.95 | | (2,743.07) | 47277166 |
| 11/01/2024 | utlsewcb | Sewer - 08/07/24-09/06/24 | 117.54 | | (2,625.53) | 47277167 |
| 11/01/2024 | utlgascb | Vacant Gas - 07/30/24-08/30/24 | 55.85 | | (2,569.68) | 47277168 |
| 11/01/2024 | utlsetup | Vacant Service Fee - 07/30/24-08/30/24 | 25.00 | | (2,544.68) | 47277169 |
| 11/01/2024 | utlwatcb | Water - 08/07/24-09/06/24 | 86.73 | | (2,457.95) | 47277170 |
| 11/01/2024 | rent | Resident Rent (11/2024) | 2,408.00 | | (49.95) | 47819400 |
| 11/01/2024 | filter | HVAC Filter (11/2024) | 9.95 | | (40.00) | 47819401 |
| 11/01/2024 | smtreng2 | Smart Home Fee w/ Video Doorbell (11/2024) | 40.00 | | 0.00 | 47819402 |
| 12/01/2024 | utlsetup | Service Fee | 9.95 | | 9.95 | 48414829 |
| 12/01/2024 | utlsewcb | Sewer - 09/07/24-10/05/24 | 53.50 | | 63.45 | 48414830 |
| 12/01/2024 | utlgascb | Vacant Gas - 08/30/24-09/30/24 | 59.00 | | 122.45 | 48414831 |
| 12/01/2024 | utlsetup | Vacant Service Fee - 08/30/24-09/30/24 | 25.00 | | 147.45 | 48414832 |
| 12/01/2024 | utlwatcb | Water - 09/07/24-10/05/24 | 35.30 | | 182.75 | 48414833 |
| 12/01/2024 | smtreng2 | Smart Home Fee w/ Video Doorbell (12/2024) | 40.00 | | 222.75 | 49000752 |
| 12/01/2024 | rent | Resident Rent (12/2024) | 2,408.00 | | 2,630.75 | 49000753 |
| 12/01/2024 | filter | HVAC Filter (12/2024) | 9.95 | | 2,640.70 | 49000754 |
| 12/03/2024 | | chk# 268296578 Debit Card On-Line Payment ; Web - Resident Services | | 2,640.70 | 0.00 | 15153458 |
| 01/01/2025 | utlsetup | Service Fee | 9.95 | | 9.95 | 49444542 |
| 01/01/2025 | utlsewcb | Sewer - 10/06/24-11/05/24 | 60.72 | | 70.67 | 49444543 |
| 01/01/2025 | utlgascb | Vacant Gas - 09/30/24-10/30/24 | 71.81 | | 142.48 | 49444544 |
| 01/01/2025 | utlsetup | Vacant Service Fee - 09/30/24-10/30/24 | 25.00 | | 167.48 | 49444545 |
| 01/01/2025 | utlwatcb | Water - 10/06/24-11/05/24 | 39.73 | | 207.21 | 49444546 |
| 01/01/2025 | rent | Resident Rent (01/2025) | 2,408.00 | | 2,615.21 | 50027960 |
| 01/01/2025 | smtreng2 | Smart Home Fee w/ Video Doorbell (01/2025) | 40.00 | | 2,655.21 | 50030573 |
| 01/01/2025 | filter | HVAC Filter (01/2025) | 9.95 | | 2,665.16 | 50030719 |
| 01/03/2025 | | chk# 272172476 Debit Card On-Line Payment ; Web - Resident Services | | 2,665.16 | 0.00 | 15439733 |
| 02/01/2025 | utlsetup | Service Fee | 9.95 | | 9.95 | 50495597 |
| 02/01/2025 | utlsewcb | Sewer - 11/06/24-12/05/24 | 61.62 | | 71.57 | 50495598 |
| 02/01/2025 | utlgascb | Vacant Gas - 10/30/24-11/26/24 | 90.00 | | 161.57 | 50495599 |
| 02/01/2025 | utlsetup | Vacant Service Fee - 10/30/24-11/26/24 | 25.00 | | 186.57 | 50495600 |
| 02/01/2025 | utlwatcb | Water - 11/06/24-12/05/24 | 40.28 | | 226.85 | 50495601 |
| 02/01/2025 | filter | HVAC Filter (02/2025) | 9.95 | | 236.80 | 50955648 |
| 02/01/2025 | smtreng2 | Smart Home Fee w/ Video Doorbell (02/2025) | 40.00 | | 276.80 | 50955649 |
| 02/01/2025 | rent | Resident Rent (02/2025) | 2,408.00 | | 2,684.80 | 50955650 |
| 02/03/2025 | | chk# :ACH-WEB Online Payment - EFT Payment. Web - Resident Services NSFed by ctrl# 15800395 Automatic NSF 0Z3HFWVRLJ4, Return Code: R01 Uncollected NSF | | 2,684.80 | 0.00 | 15752635 |
| 02/04/2025 | late | Late Fee | 115.00 | | 115.00 | 51239196 |
| 02/07/2025 | nsf | Returned check charge | 30.00 | | 145.00 | 51235989 |
| 02/07/2025 | | chk# :ACH-WEB NSF receipt Ctrl# 15752635 Automatic NSF 0Z3HFWVRLJ4, Return Code: R01 Uncollected NSF | | (2,684.80) | 2,829.80 | 15800395 |
| 02/08/2025 | | chk# 277579635 Debit Card On-Line Payment ; Web - Resident Services | | 2,829.80 | 0.00 | 15807429 |
| 03/01/2025 | utlsetup | Service Fee | 9.95 | | 9.95 | 51332902 |
| 03/01/2025 | utlsewcb | Sewer - 12/06/24-01/07/25 | 68.55 | | 78.50 | 51332903 |

| Date | Code | Description | Charge | Payment | Balance | Ref |
|---|---|---|---|---|---|---|
| 03/01/2025 | utlwatcb | Water - 12/06/24-01/07/25 | 44.50 | | 379.01 | 51332906 |
| 03/01/2025 | filter | HVAC Filter (03/2025) | 9.95 | | 388.96 | 51920168 |
| 03/01/2025 | rent | Resident Rent (03/2025) | 2,408.00 | | 2,796.96 | 51920169 |
| 03/01/2025 | smtreng2 | Smart Home Fee w/ Video Doorbell (03/2025) | 40.00 | | 2,836.96 | 51920170 |
| 03/02/2025 | | chk# :ACH-WEB Online Payment - EFT Payment. Web - Resident Services NSFed by ctrl# 16004067 Automatic NSF G07YXLYRLJ4, Return Code: R01 Uncollected NSF | | 2,836.96 | 0.00 | 16007869 |
| 03/04/2025 | late | Late Fee | 115.00 | | 115.00 | 52178219 |
| 03/06/2025 | nsf | Returned check charge | 30.00 | | 145.00 | 52174179 |
| 03/06/2025 | | chk# :ACH-WEB NSF receipt Ctrl# 16007869 Automatic NSF G07YXLYRLJ4, Return Code: R01 Uncollected NSF | | (2,836.96) | 2,981.96 | 16064067 |
| 03/07/2025 | | chk# 281681878 Credit Card On-Line Payment ; Web - Resident Services | | 2,981.96 | 0.00 | 16074854 |
| 04/01/2025 | utlsewcb | Sewer - 01/08/25-02/05/25 | 66.91 | | 66.91 | 52286106 |
| 04/01/2025 | utlgascb | Vacant Gas - 12/30/24-01/30/25 | 258.15 | | 325.06 | 52286107 |
| 04/01/2025 | utlsetup | Vacant Service Fee - 12/30/24-01/30/25 | 25.00 | | 350.06 | 52286108 |
| 04/01/2025 | utlwatcb | Water - 01/08/25-02/05/25 | 43.51 | | 393.57 | 52286109 |
| 04/01/2025 | rent | Resident Rent (04/2025) 12 days | 963.20 | | 1,356.77 | 52878681 |
| 04/01/2025 | rent | Resident Rent (04/2025) 18 days | 1,444.80 | | 2,801.57 | 52878682 |
| 04/01/2025 | smtreng2 | Smart Home Fee w/ Video Doorbell (04/2025) | 40.00 | | 2,841.57 | 52878683 |
| 04/01/2025 | filter | HVAC Filter (04/2025) | 9.95 | | 2,851.52 | 52878684 |
| 04/03/2025 | | chk# 285328292 Debit Card On-Line Payment ; Web - Resident Services | | 2,851.52 | 0.00 | 16353743 |
| 05/01/2025 | utlsetup | Service Fee | 9.95 | | 9.95 | 53379026 |
| 05/01/2025 | utlsewcb | Sewer - 02/06/25-03/06/25 | 59.37 | | 69.32 | 53379027 |
| 05/01/2025 | utlgascb | Vacant Gas - 01/30/25-02/28/25 | 162.26 | | 231.58 | 53379028 |
| 05/01/2025 | utlsetup | Vacant Service Fee - 01/30/25-02/28/25 | 25.00 | | 256.58 | 53379029 |
| 05/01/2025 | utlwatcb | Water - 02/06/25-03/06/25 | 38.89 | | 295.47 | 53379030 |
| 05/01/2025 | filter | HVAC Filter (05/2025) | 9.95 | | 305.42 | 53889003 |
| 05/01/2025 | smtreng2 | Smart Home Fee w/ Video Doorbell (05/2025) | 40.00 | | 345.42 | 53889004 |
| 05/01/2025 | rent | Resident Rent (05/2025) | 2,408.00 | | 2,753.42 | 53889005 |
| 05/04/2025 | late | Late Fee | 115.00 | | 2,868.42 | 54126359 |
| 05/11/2025 | | chk# 290811029 Credit Card On-Line Payment ; Web - Resident Services | | 2,868.42 | 0.00 | 16695234 |
| 06/01/2025 | utlsetup | Service Fee | 9.95 | | 9.95 | 54242152 |
| 06/01/2025 | utlsewcb | Sewer - 03/07/25-04/03/25 | 41.45 | | 51.40 | 54242153 |
| 06/01/2025 | utlgascb | Vacant Gas - 02/28/25-03/31/25 | 119.68 | | 171.08 | 54242154 |
| 06/01/2025 | utlsetup | Vacant Service Fee - 02/28/25-03/31/25 | 25.00 | | 196.08 | 54242155 |
| 06/01/2025 | utlwatcb | Water - 03/07/25-04/03/25 | 27.91 | | 223.99 | 54242156 |
| 06/01/2025 | smtreng2 | Smart Home Fee w/ Video Doorbell (06/2025) | 40.00 | | 263.99 | 54859083 |
| 06/01/2025 | filter | HVAC Filter (06/2025) | 9.95 | | 273.94 | 54859084 |
| 06/01/2025 | rent | Resident Rent (06/2025) | 2,408.00 | | 2,681.94 | 54859085 |
| 06/04/2025 | late | Late Fee | 115.00 | | 2,796.94 | 55102549 |
| 06/14/2025 | | chk# 295612244 Debit Card On-Line Payment ; Web - Resident Services | | 2,796.94 | 0.00 | 16983999 |
| 07/01/2025 | utlsetup | Service Fee | 9.95 | | 9.95 | 55215564 |
| 07/01/2025 | utlsewcb | Sewer - 04/04/25-05/05/25 | 42.39 | | 52.34 | 55215565 |
| 07/01/2025 | utlgascb | Vacant Gas - 03/31/25-04/30/25 | 57.85 | | 110.19 | 55215566 |
| 07/01/2025 | utlsetup | Vacant Service Fee - 03/31/25-04/30/25 | 25.00 | | 135.19 | 55215567 |
| 07/01/2025 | utlwatcb | Water - 04/04/25-05/05/25 | 28.49 | | 163.68 | 55215568 |
| 07/01/2025 | filter | HVAC Filter (07/2025) | 9.95 | | 173.63 | 55817419 |
| 07/01/2025 | smtreng2 | Smart Home Fee w/ Video Doorbell (07/2025) | 40.00 | | 213.63 | 55817420 |
| 07/01/2025 | rent | Resident Rent (07/2025) | 2,408.00 | | 2,621.63 | 55817421 |
| 07/04/2025 | late | Late Fee | 115.00 | | 2,736.63 | 56105596 |
| 07/12/2025 | | chk# 299965713 Debit Card On-Line Payment ; Web - Resident Services | | 2,736.63 | 0.00 | 17252838 |
| 07/25/2025 | vioadmin | VI-366084 | 35.00 | | 35.00 | 56663159 |
| 08/01/2025 | utlsetup | Service Fee | 9.95 | | 44.95 | 56217815 |
| 08/01/2025 | utlsewcb | Sewer - 05/06/25-06/05/25 | 31.08 | | 76.03 | 56217816 |
| 08/01/2025 | utlgascb | Vacant Gas - 04/30/25-05/29/25 | 53.39 | | 129.42 | 56217817 |
| 08/01/2025 | utlsetup | Vacant Service Fee - 04/30/25-05/29/25 | 25.00 | | 154.42 | 56217818 |
| 08/01/2025 | utlwatcb | Water - 05/06/25-06/05/25 | 21.55 | | 175.97 | 56217819 |
| 08/01/2025 | smtreng2 | Smart Home Fee w/ Video Doorbell (08/2025) | 40.00 | | 215.97 | 56838046 |
| 08/01/2025 | filter | HVAC Filter (08/2025) | 9.95 | | 225.92 | 56838047 |
| 08/01/2025 | rent | Resident Rent (08/2025) | 2,408.00 | | 2,633.92 | 56838048 |

| Date | Code | Description | Charge | Payment | Balance | Link |
|------|------|-------------|--------|---------|---------|------|
| 09/01/2025 | utlsewcb | Sewer - 06/06/25-07/07/25 | 80.11 | | 2,838.98 | 57199427 |
| 09/01/2025 | utlgascb | Vacant Gas - 05/29/25-06/30/25 | 48.84 | | 2,887.82 | 57199428 |
| 09/01/2025 | utlsetup | Vacant Service Fee - 05/29/25-06/30/25 | 25.00 | | 2,912.82 | 57199429 |
| 09/01/2025 | utlwatcb | Water - 06/06/25-07/07/25 | 51.61 | | 2,964.43 | 57199430 |
| 09/01/2025 | filter | HVAC Filter (09/2025) | 9.95 | | 2,974.38 | 57802426 |
| 09/01/2025 | smtreng2 | Smart Home Fee w/ Video Doorbell (09/2025) | 40.00 | | 3,014.38 | 57802427 |
| 09/01/2025 | rent | Resident Rent (09/2025) | 2,408.00 | | 5,422.38 | 57802428 |
| 09/02/2025 | | chk# 40197691264118 :CHECKscan Payment | | 500.00 | 4,922.38 | 17748801 |
| 09/02/2025 | | chk# 40197691264100 :CHECKscan Payment | | 500.00 | 4,422.38 | 17748802 |
| 09/02/2025 | | chk# 40197691264091 :CHECKscan Payment | | 500.00 | 3,922.38 | 17748803 |
| 09/02/2025 | | chk# 40197691264073 :CHECKscan Payment | | 500.00 | 3,422.38 | 17748804 |
| 09/02/2025 | | chk# 40197691264082 :CHECKscan Payment | | 500.00 | 2,922.38 | 17748805 |
| 09/02/2025 | | chk# 40197691264127 :CHECKscan Payment | | 250.00 | 2,672.38 | 17748806 |
| 09/04/2025 | late | Late Fee | 115.00 | | 2,787.38 | 58048938 |
| 10/01/2025 | utlsetup | Service Fee | 9.95 | | 2,797.33 | 58289113 |
| 10/01/2025 | utlsewcb | Sewer - 07/08/25-08/06/25 | 40.51 | | 2,837.84 | 58289114 |
| 10/01/2025 | utlgascb | Vacant Gas - 06/30/25-07/30/25 | 45.17 | | 2,883.01 | 58289115 |
| 10/01/2025 | utlsetup | Vacant Service Fee - 06/30/25-07/30/25 | 25.00 | | 2,908.01 | 58289116 |
| 10/01/2025 | utlwatcb | Water - 07/08/25-08/06/25 | 27.33 | | 2,935.34 | 58289117 |
| 10/01/2025 | smtreng2 | Smart Home Fee w/ Video Doorbell (10/2025) | 40.00 | | 2,975.34 | 58788212 |
| 10/01/2025 | rent | Resident Rent (10/2025) | 2,408.00 | | 5,383.34 | 58788213 |
| 10/01/2025 | filter | HVAC Filter (10/2025) | 9.95 | | 5,393.29 | 58788214 |
| 10/04/2025 | late | Late Fee | 115.00 | | 5,508.29 | 59028547 |
| 10/14/2025 | legalfee | Legal Fee | 100.00 | | 5,608.29 | 59083748 |
| 11/01/2025 | utlsetup | Service Fee | 9.95 | | 5,618.24 | 59142436 |
| 11/01/2025 | utlsewcb | Sewer - 08/07/25-09/04/25 | 48.99 | | 5,667.23 | 59142437 |
| 11/01/2025 | utlgascb | Vacant Gas - 07/30/25-08/28/25 | 53.73 | | 5,720.96 | 59142438 |
| 11/01/2025 | utlsetup | Vacant Service Fee - 07/30/25-08/28/25 | 25.00 | | 5,745.96 | 59142439 |
| 11/01/2025 | utlwatcb | Water - 08/07/25-09/04/25 | 32.53 | | 5,778.49 | 59142440 |
| 11/01/2025 | filter | HVAC Filter (11/2025) | 9.95 | | 5,788.44 | 59743567 |
| 11/01/2025 | rent | Resident Rent (11/2025) | 2,408.00 | | 8,196.44 | 59743568 |
| 11/01/2025 | smtreng2 | Smart Home Fee w/ Video Doorbell (11/2025) | 40.00 | | 8,236.44 | 59743569 |
| 11/04/2025 | late | Late Fee | 115.00 | | 8,351.44 | 60106402 |
| 12/01/2025 | utlsetup | Service Fee | 9.95 | | 8,361.39 | 60276624 |
| 12/01/2025 | utlsewcb | Sewer - 09/05/25-10/03/25 | 55.59 | | 8,416.98 | 60276625 |
| 12/01/2025 | utlgascb | Vacant Gas - 08/28/25-09/29/25 | 59.07 | | 8,476.05 | 60276626 |
| 12/01/2025 | utlsetup | Vacant Service Fee - 08/28/25-09/29/25 | 25.00 | | 8,501.05 | 60276627 |
| 12/01/2025 | utlwatcb | Water - 09/05/25-10/03/25 | 36.58 | | 8,537.63 | 60276628 |
| 12/01/2025 | smtreng2 | Smart Home Fee w/ Video Doorbell (12/2025) | 40.00 | | 8,577.63 | 60862640 |
| 12/01/2025 | rent | Resident Rent (12/2025) | 2,408.00 | | 10,985.63 | 60862641 |
| 12/01/2025 | filter | HVAC Filter (12/2025) | 9.95 | | 10,995.58 | 60862642 |
| 12/04/2025 | late | Late Fee | 115.00 | | 11,110.58 | 61094471 |
| 01/01/2026 | utlsetup | Service Fee | 9.95 | | 11,120.53 | 61243672 |
| 01/01/2026 | utlsewcb | Sewer - 10/04/25-11/04/25 | 55.59 | | 11,176.12 | 61243673 |
| 01/01/2026 | utlgascb | Vacant Gas - 09/29/25-10/31/25 | 73.62 | | 11,249.74 | 61243674 |
| 01/01/2026 | utlsetup | Vacant Service Fee - 09/29/25-10/31/25 | 25.00 | | 11,274.74 | 61243675 |
| 01/01/2026 | utlwatcb | Water - 10/04/25-11/04/25 | 36.58 | | 11,311.32 | 61243676 |
| 01/01/2026 | smtreng2 | Smart Home Fee w/ Video Doorbell (01/2026) | 40.00 | | 11,351.32 | 61828821 |
| 01/01/2026 | rent | Resident Rent (01/2026) | 2,408.00 | | 13,759.32 | 61830055 |
| 01/01/2026 | filter | HVAC Filter (01/2026) | 9.95 | | 13,769.27 | 61837479 |
| 01/04/2026 | late | Late Fee | 115.00 | | 13,884.27 | 62068434 |
| 01/05/2026 | baddebt | Settlement due to defaulting on BK Filing | (7,000.00) | | 6,884.27 | 62082532 |